CLINTON MIKEL (SBN 251319)
E-mail: cmikel@thehlp.com
THE HEALTH LAW PARTNERS, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
Phone (248) 996-8510
Fax (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, FRANK ADOMITIS, <br><br> Plaintiff, <br><br> vs. <br><br> SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT; DOES 1 through 20, inclusive. <br><br> Defendants. | Case No.: 5:17-cv-00002-JGB-KK (Hon. Jesus G. Bernal) <br><br> **DEFENDANT SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT UNDER FED.R.CIV.P. 9(b), 12(b)(1), and 12(b)(6)** <br><br> **DATE: JANUARY 29, 2018; TIME: 9:00 AM, COURTROOM: 1** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ........................................................................... 1

STATEMENT OF FACTS ............................................................... 2

LEGAL STANDARD ....................................................................... 7

REQUEST FOR JUDICIAL NOTICE ............................................ 8

ARGUMENT ................................................................................... 9

    A.    Relator's Allegations are Subject to Public Disclosure
and Relator is Not an Original Source. ............................................. 9

        1.    Relator's Allegations Were Publicly Disclosed
Before the Filing of His Amended Complaint. . ................. 10

        2.    Relator Does Not Qualify as an Original Source. ............. 13

    B.    Relator Does Not Allege with Particularity the Scheme to
Defraud and Set Forth What is False or Misleading, and Why it is
False, As Necessary to Comply with Rule 9(b) for a Civil FCA
Case. ...................................................................................... 15

        1.    The Factual Allegations as to Mountains do not
Comport with Rule 9(b) or the Federal Pleading
Requirement. ....................................................................... 16

        2.    Relator's Fraud Allegations do not Demonstrate a Reliable
Indicia that False Claims were Actually Submitted. .......... 18

    C.    Relator's Claims Under the FCA are Inappropriate. ................... 20

        1.    Relator's FCA Claims are Inappropriate When Other
Regulatory Enforcement Schemes Govern Compliance... 20

i

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

        2.      Relator's FCA Claims Lack Materiality, Knowledge, and Intent. ........................................................................ 21

   D.    Relator's Claims are Barred by the FCA Statute of Limitations. ................................................................... 23

        1.      Relator's FCA Claims are Barred by 31 U.S.C. §§ 3731(b)(1) and (2). ........................................... 23

        2.      Relator's Claims Against Mountains Pursuant to 31 U.S.C. § 3729(a)(1)(G) are Limited. ............................... 24

CONCLUSION ...................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662; 129 S.Ct. 1937;
    173 L.Ed.2d 868 (2009) ................................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544; 127 S.Ct. 1955;
    167 L.Ed.2d 929 (2007) ........................................................... 7, 8

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ............................. 20

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ......................... 8

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ........................................ 7

*Decker v. GlenFed. Inc. (In re GlenFed. Inc. Sec. Litig.)*,
    42 F.3d 1541 (9th Cir. 1994) ....................................................... 16

*Ebeid, M.D., ex rel., United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) .........................15, 16, 17, 19, 20, 21

*Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764 (8th Cir. 2003) ......................... 8

*Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416 (9th Cir. 1991) ................. 16

*Holmberg v. Armbrecht*, 327 U.S. 392; 66 S.Ct. 582 (1946) ........................... 23

*Labojewski v. Gonzales*, 407 F.3d 814 (7th Cir. 2005) ................................... 25

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ............................... 24, 25

*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ......................... 7

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987) .................................. 7

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ........................... 7

iii

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

*Stock W. Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.2d 1221 (9th Cir. 1989) ........................................................ 7

*United States v. Alcan Elec. & Eng'g, Inc.*,
    197 F.3d 1014 (9th Cir. 1999) .................................... 10, 11, 12, 14

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)............................ 16

*United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914 (9th Cir. 2006) .................. 14

*United States ex rel. Devlin v. California*, 84 F.3d 358 (9th Cir. 1996) ...................... 14

*United States ex rel. Durcholz v. FKW, Inc.*,
    189 F.3d 542 (7th Cir. 1999) ........................................................ 23

*United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir. 1995) ................ 12

*United States ex rel. Gear v. Emergency Med. Assocs., Inc.*,
    436 F.2d 726 (7th Cir. 2006) ........................................................ 12

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009)......................................................... 18

*United States Hastings v. Wells Fargo Bank, NA, Inc.*,
    656 FedAppx 328 (C.A. 9 2016) .................................................. 15

*United States ex rel. Hendow v. University of Phoenix*,
    461 F.3d 1166 (9th Cir.2006) ....................................................... 21

*United States ex rel. Hooper v. Lockheed Martin Corp.*,
    688 F.3d 1037, 1050-51 (9th Cir. 2012) ..................................... 23

*United States ex rel. Hyatt v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. 1996) ..................................................23, 24

*United States ex rel v Medtronic, Inc.*,
    No. LACV1501212JAKASX, 2017 WL 4023092,
    (C.D. Cal. September 11, 2017) ................................................... 20

iv

*United States ex rel. Sanchez v. Lymphatx, Inc.,*
    596 F.3d 1300 (11th Cir. 2010) ....................................................... 18

*Universal Health Services, Inc v United States ex rel Escobar,*
    136 S.Ct. 1989; 195 L.Ed.2d 348 (2016) ..................................... 21, 22

*U.S. ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908 (4th Cir. 2013) ................ 15

*U.S. ex rel. Rosales v. San Francisco Housing Authority,*
    173 F.Supp.2d 987 (N.D. Cal. 2001) ............................................. 11

*U.S. ex rel. Stone v. Omnicare, Inc.,* 2011 WL 2669659
    (N.D. Ill. Case No. 09-cv-4319, July 7, 2011) ............................. 25

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003) ................... 8, 16

*Wang v. FMC Corp.,* 975 F.2d 1412 (9th Cir. 1992) ............................ 12, 16

## Federal Statutes

28 U.S.C. § 1919 ........................................................................ 25

28 U.S.C. § 1927 ........................................................................ 25

31 U.S.C. §§ 3729, *et seq.* ..................................................... 2, 15

31 U.S.C. § 3729(a)(1)(A) ......................................................... 2

31 U.S.C. § 3729(a)(1)(B) ......................................................... 2

31 U.S.C. § 3729(a)(1)(G) ................................................. 2, 24, 25

31 U.S.C. § 3729(b)(1)(A) ....................................................... 22

31 U.S.C. § 3729(b)(3) ........................................................... 24

31 U.S.C. § 3729(b)(4) ........................................................... 22

31 U.S.C. § 3730(d)(4) ........................................................... 25

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

31 U.S.C. § 3730(e)(4)(A) ................................................................................... 1

31 U.S.C. § 3730(e)(4)(A)(ii) ........................................................... 9, 10, 11, 12

31 U.S.C. § 3730(e)(4)(A)(iii) .......................................................... 9, 10, 11, 12

31 U.S.C. § 3730(e)(4)(B) ....................................................................... 10, 13

31 U.S.C. § 3730(g) ................................................................................ 25

31 U.S.C. § 3731(b) ............................................................................. 2, 23

31 U.S.C. § 3731(b)(1) ......................................................................... 23, 24

31 U.S.C. § 3731(b)(2) ......................................................................... 23, 24

42 U.S.C. § 1320a-7k(d)(2) ..................................................................... 24

42 U.S.C. § 1395i-4(c)(2)(B)(i)(I) .............................................................. 18

## Rules

Fed.R.Civ.P. 9(b) ........................................................................... *passim*

Fed.R.Civ.P. 11 .................................................................................. 25

Fed.R.Civ.P. 12(b)(1) ..................................................................... 1, 7, 25

Fed.R.Civ.P. 12(b)(6) ............................................................. 7, 8, 18, 25

Fed.R.Civ.P. 54(d) ............................................................................... 25

Fed.R.Evid. 201(b) ........................................................................... 8, 9

## Regulations

42 C.F.R. § 485.610 .............................................................................. 6

42 C.F.R. § 485.610(c) .................................................................. *passim*

## Miscellaneous

CMS Guidance, Clarification of the Critical Access Mountains
(CAH) Criteria for Rural Location and Mountainous
Terrain Distance Standard (April 19, 2013) ............................................. 3, 8

CMS Policy, Critical Access Hospital (CAH) Recertification
Checklist for Evaluation of Compliance with the Location
and Distance Requirements (February 12, 2016) ...................... 6, 9, 21, 22

Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21 .............2, 24, 25

OIG Report, Most Critical Access Hospitals Would Not Meet the
Location Requirements If Required to Re-Enroll in
Medicare (Aug. 2013) ....................................................................... *passim*

Patient Protection and Affordable Care Act of 2010,
Pub. L. 111-148 .................................................................................2, 24, 25

## **INTRODUCTION**

Relator's Amended Complaint, at its core, alleges that San Bernardino Mountains Community Hospital District ("**Mountains**") does not meet certain 15-mile "mountainous terrain or areas where only secondary roads are available" Condition of Participation regulatory requirements for Critical Access Hospitals.

Relator's allegations and claims against Mountains are inappropriate and fail because they duplicate publicly disclosed facts – the Relator is not an original source, and his direct allegations were publicly disclosed and investigated by the Federal OIG and CMS in 2013.[1] In August 2013, the Office of Inspector General, U.S. Department of Health and Human Services ("**OIG**") publicly released an official investigation/audit report regarding a survey it did of all critical access hospitals in the United States (Mountains included) – the official report is entitled "Most Critical Access Hospitals Would Not Meet the Location Requirements If Required to Re-Enroll in Medicare"[2] (the "**OIG 2013 CAH Distance Audit/Investigation**"). Relator's Amended Complaint regarding Mountains purportedly not meeting the CAH distance requirements is the **_exact_** allegation/investigation previously conducted and publicly reported in the OIG 2013 CAH Distance Audit/Investigation. This Court must ("shall") dismiss Relator's claims under Rule 12(b)(1) and 31 U.S.C. § 3730(e)(4)(A). The OIG, after surveying all Critical Access Hospitals ("**CAHs**") (Mountains included) in the OIG 2013 CAH Distance Audit/Investigation, found that "[o]verall, 849 of the 1,329 CAHs (64 percent) would not meet the location requirements if required to re-enroll in Medicare. The vast majority of these CAHs would not meet the distance requirement..." **_Yet, despite this OIG finding, there was not a flood of qui tam FCA litigation against CAHs (this is the first impression of this issue) – because of the well-known public disclosure bar!_**

---

[1] Due to the public disclosure, this Court must ("shall") dismiss Relator's claims under Rule 12(b)(1) and 31 U.S.C. § 3730(e)(4)(A).

[2] https://oig.hhs.gov/oei/reports/oei-05-12-00080.pdf

*In fact, Relator concedes that the OIG found that Mountains met the distance/location requirements in 2013.* See (¶¶ 25-26). Whether Mountains meets the requirements is, however, irrelevant, since the allegations were publicly disclosed and Relator is not an original source. In addition, Relator's Amended Complaint is fatally flawed and must be dismissed because his alleged violations of the Federal False Claims Act do not satisfy federal pleading standards and the specificity requirements of Rule 9(b). He fails to allege any false, fraudulent, misleading, or incomplete information submitted by Mountains. Lastly, Relator fails to meet the statute of limitations requirements under 31 U.S.C. § 3731(b) in relation to his causes of action against Mountains.

## STATEMENT OF FACTS

On January 3, 2017, Relator filed a Complaint alleging violations of the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (the "**FCA**"), as amended by the False Claims Act Amendments of 1986, the Fraud Enforcement and Recovery Act of 2009, Pub L. 111-21 ("**FERA**"), and the Patient Protection and Affordable Care Act of 2010, Pub. L. 111-148 ("**PPACA**"). (¶ 1). On November 13, 2017, Relator amended the complaint.

The parties are Mountains, a CAH located in Lake Arrowhead, California, 92352, and Relator, an individual residing in San Bernardino, California. (¶¶ 7-8). Relator alleges he worked as the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008. (¶ 7).[3]

Relator alleges that, from 2002 to the present, Mountains engaged in some sort of fraudulent scheme in violation of 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and 31 U.S.C. § 3729(a)(1)(G) of the FCA. (¶¶ 45, 50, and 55). All of the foregoing require certain knowledge, intent, and materiality standards to trigger liability under the FCA. To support these theories, Relator describes the operations of CAHs and how CAHs receive reimbursement through Medicare with the CAH's submissions of medical claims. (¶ 15).

---

[3] Relator's Amended Complaint, however, provides no other foundational support to support the basis for the allegations in his Amended Complaint. It is unclear what knowledge or information Relator would have on the submission of alleged false claims from any time period outside of July 1, 2007, to November 24, 2008.

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

1      Relator next alleges that Mountains must meet certain distance requirements to qualify

2   as a CAH (¶ 19). Relator alleges that the pertinent distance requirement is that Mountains must

3   be located in a position with more than a 15-mile travel route from St. Bernardine Medical

4   Center in San Bernardino in which the areas of travel within that route contain *either*

5   mountainous terrain or areas where only secondary roads are available. (¶¶ 19 and 31). *See also*

6   42 C.F.R. § 485.610(c). Relator also alleges that, based on his interpretation, there are both

7   12.4 miles of secondary roads, and an additional 10.4 miles of mountainous terrain, between

8   St. Bernadine Medical Center ("**SBMC**") and Mountains. (¶ 31(a)).

9      Relator explains in his Amended Complaint that, before 2013, the Centers for Medicare

10  & Medicaid Services ("**CMS**") defined "mountainous terrain" as areas identified as such on

11  any official maps or other documents published by the State agency responsible for highways

12  in the State (typically a Department of Transportation or Highways) or by [United States

13  Geological Survey] ("USGS")." (¶ 19.) However, Relator provides no allegations that

14  Mountains did not meet these requirements prior to 2013.

15     On April 19, 2013, CMS published new guidance for classifying mountainous terrain.

16  A true and accurate copy of this guidance is attached as **EXHIBIT 1**. (*See* p. 7). Relator has

17  alleged this is CMS's guidance for determining mountainous terrain characteristics for any

18  CAH operating after April 19, 2013. (¶ 31). In addition, Relator has alleged guidance from

19  CMS about what constitutes primary and secondary roads (¶¶ 20 and 31).

20     Relator further alleges that Mountains was certified as a CAH in July 2002, but that

21  Mountains does not, according to Relator, meet the required 15-mile distance requirement as

22  detailed in 42 C.F.R. § 485.610(c). (¶¶ 29 and 30). Neither CMS nor any other applicable

23  governmental agency has challenged or revoked Mountains's CAH status during any of the

24  certification surveys conducted by CMS from 2002 through date, and the U.S. Government

25  has declined to intervene.

26     In August 2013, the OIG publicly released an official report regarding a survey it did of

27  all CAHs in the United States – the aforementioned OIG 2013 CAH Distance

28

3

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

Audit/Investigation.[4] The OIG believed, based on its review of road data and addresses, interviews with state agencies, surveys of necessary provider status, *et cetera*, that many CAHs would not meet the location requirements identified in 42 C.F.R. § 485.610(c). A true and accurate copy of this public report is attached as **EXHIBIT 2**. The OIG performed an extensive investigation of CAHs in the country utilizing the CMS CASPER database, roads data, Google Maps, state highway data, *et cetera*. (**Id**. at p. 12). This investigation consisted of reviewing, measuring, and analyzing CAHs that either met or did not meet the 15-mile or more requirement through either mountainous terrain or on secondary roads. (**Id**.). The OIG found that nearly two-thirds of CAHs may not meet the location/distance requirements. (**Id**. at p. 15). Relator discloses the existence of the OIG 2013 CAH Distance Audit/Investigation at ¶ 24,[5] yet somehow still states that the Amended Complaint is "not based upon allegations or transactions that have been publicly disclosed under 31 U.S.C. § 3730(e)" at ¶ 11.

Relator alleges that Mountains filed false or fraudulent cost reports with Medicare because it allegedly did not meet the distance requirement. (¶ 37). However, this is inconsistent with Relator's pleadings. ***In fact, Relator states that the OIG found, in its OIG 2013 CAH Distance Audit/Investigation, that in 2013 Mountains was not one of the four California CAHs that did not meet the location/distance requirements!*** (¶ 26).[6] Furthermore, Relator fails to allege why Mountains didn't meet the distance requirements prior-to-2013, or what has changed after the 2013 OIG audit that did not identify Mountains among the 846 CAHs in the country who did not meet the distance requirements. Moreover, Relator's Amended Complaint is devoid of any specific knowledge or allegations regarding Mountains's CAH certification process. He makes no allegations as to what was submitted to

---

[4] This OIG publication received extensive and widespread national news media coverage and backlash from the hospital industry and rural health advocates. This is discussed further in this Motion regarding the public disclosure issue (31 U.S.C. § 3730(e)(4)(A)(iii)).

[5] This disclosure was made in the Amended Complaint only after Mountains pointed out that Relator copied from the same in our initial Motion to Dismiss.

[6] "Notably, the list of 846 hospitals that do not meet the location requirement put together by the OIG does not include Hospital. In fact, of the 846 CAHs throughout the United States that the OIG claims do not meet the location requirements, only four (4) are located in California." (¶ 26).

CMS or any other governmental entity for CAH certification related to the distance requirement, or whether CMS relied on the submission of false information. The Amended Complaint is absent of any particular claim allegedly submitted by Mountains to show what was being falsely claimed or not claimed. None of Relator's allegations show that he has "insider information" not available to the general public, much less post-2008 insider information. Relator merely alleges that he "verified the distance by driving the route" while reciting his own conclusory interpretation of CAH location/distance requirements. (¶ 31). Relator also alleges, without support, that during his short employment with Mountains in 2007-2008 "defendant purposefully conducted no survey or audit to certify, re-certify or otherwise verify all CAH Conditions of Participation (including the distance requirement) to submit claims to CMS so that it would not have to correct the erroneous representation that Hospital was properly designated as a CAH… and Hospital willfully ignored scrutinizing compliance by failing to implement any internal policy or procedure that would to jeopardize its status." (¶ 42). Relator fails to plead any particulars, or any requirement or need for Mountains to adopt this "self-audit the surveyor's findings" process. Relator also fails to allege any occurrence after 2008, or whether Mountains has implemented a process/policy of the sort that Relator imagines would be helpful, post-2008.

Throughout Relator's Amended Complaint, there are no specific allegations about any particular falsehoods, false statements, false records, false reports, false claims, or specific factual allegations about the concealment of the same to any governmental entity. In Counts I-III of Relator's Amended Complaint, Relator repeatedly alleges that Mountains made fraudulent or false representations, records, statements, reports, and certifications, but Relator cannot articulate what particular fraudulent or false representations, records, statements, reports, or certifications were made by Mountains. (¶¶ 46, 47, 51, 52, 53, 55, and 56). Relator merely concludes these alleged falsehoods must have been made because, in Relator's opinion, certain distance requirements were not met by Mountains according to his interpretation of Google Maps and state highway data. (¶ 31).

The CAH Conditions of Participation at 42 C.F.R. § 485.610, inclusive of the distance/location requirements, have a lengthy and evolving regulatory history.[7] CMS has issued further guidance to interpret the same in notices and in RO survey procedures manuals.[8] Relator is silent about at which point in the foregoing Mountains did not allegedly meet the ever-changing CAH distance/location requirements. Instead, Relator attempts to take definitions of "secondary roads" and "mountainous terrain" (changed in April 2013),[9] and apply them to all years that Mountains has been a CAH.

The Department of Health & Human Services ("**HHS**") and CMS have established a policy regarding the CAH certification and recertification process. A true and accurate copy of this policy is attached as **EXHIBIT 3**. CMS has set standards for *certifying* and *recertifying* the rural, distance, and necessary provider verification of CAHs. (**Id.** at p. 1). Under these standards, Regional CMS Offices ("**ROs**") (not Mountains) must complete a CAH Recertification Checklist for evaluating, determining, and documenting compliance with the CAH's location-related conditions of participation. (**Id.**). In other words, the ROs, in both their initial surveys and in re-certification efforts, make their own independent determination regarding whether the CAH meets the location/distance requirements based on the CAH's address. Accordingly, the RO makes their own independent regulatory determination in the manner set forth in **EXHIBIT 3**, regardless of any other input from CAHs.

The CAH Recertification Checklist also states specific procedures for a CAH that does not meet distance requirements. If a CAH does not meet the distance requirements of 42 C.F.R. § 485.610(c), *as determined by the RO based upon its independent review,* then the RO sends the CAH a letter indicating its CAH status will be terminated and informing the

---

[7] 62 FR 46036, Aug. 29, 1997; 65 FR 47052, Aug. 1, 2000; 66 FR 39932, 39938, Aug. 1, 2001; 69 FR 49271, Aug. 11, 2004; 69 FR 60252, Oct. 7, 2004; 69 FR 78530, Dec. 30, 2004; 70 FR 47490, Aug. 12, 2005; 71 FR 48143, Aug. 18, 2006; 72 FR 66934, Nov. 27, 2007; 73 FR 9862, Feb. 22, 2008; 74 FR 44001, Aug. 27, 2009; 75 FR 50419, Aug. 16, 2010; 79 FR 50359, Aug. 22, 2014.

[8] November 14, 2005, S&C-06-04; September 7, 2007, S&C-07-35; April 19, 2014, S&C: 13-26-CAH, June 26, 2015, S&C: 15-45-CAH, and February 12, 2016, S&C: 16-08-CAH

[9] Oddly, Relator seems to allege that in August of 2013 the OIG found that Mountains met the CAH location/distance criteria using the April 2013 definition. *See* (¶¶ 25-26).

CAH of appeal rights, and allow it time to remedy any deficiencies in its CAH status or have its Medicare participation terminated or convert to a standard hospital participation agreement. (**Id**. at pgs. 3 and 6). Thus, CMS has its own enforcement and decertification methods to deal with CAHs not meeting certification standards, and CMS's ROs make their own independent determination regarding distance requirements (not relying upon Mountains' certification). Relator's Amended Complaint does not reveal that CMS nor any other applicable governmental agency has challenged or revoked Mountains's CAH status and the U.S. Government has declined to intervene.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) is appropriate when the complaint or extrinsic evidence fails to establish the court's subject matter jurisdiction over the cause of action. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes a lack of jurisdiction until Relator proves differently. *Stock W. Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) motion may challenge a complaint's allegations on their face or by pointing to evidence outside of the complaint. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). Once the moving party has presented evidence to show a lack of subject matter jurisdiction, the burden shifts to the plaintiff to present evidence to satisfy its burden of establishing subject matter jurisdiction. *Id* at 1039.

A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true in a light favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). In considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662; 129 S.Ct. 1937, 1949; 173 L.Ed.2d 868 (2009). A complaint under a Rule 12(b)(6) motion to dismiss must provide a basis for relief that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) (internal citations omitted). Bare assertions alone will not be assumed to be true. *Iqbal*, 129 S.Ct. at 1951. A court may ignore "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). "[A] complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

When alleging fraud or mistake, a relator is held to a heightened pleading standard, and is required to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). When an entire complaint is pled or grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## REQUEST FOR JUDICIAL NOTICE

Under Fed.R.Evid. 201(b), Mountains respectfully requests this Court take judicial notice of **EXHIBITS 1, 2, 3, and 4**. These exhibits consist of: **Exhibit 1**: April 19, 2013, CMS Guidance, Clarification of the Critical Access Mountains (CAH) Criteria for Rural Location and Mountainous Terrain Distance Standard; available at CMS's website;[10] **Exhibit 2**: August 2013, OIG Report, Most Critical Access Hospitals Would Not Meet the Location Requirements If Required to Re-Enroll in Medicare; available at Office of Inspector General's

---

[10]https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-13-26.pdf

website;[11] **Exhibit 3:** February 12, 2016, CMS Policy, Critical Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements; available at CMS's website;[12] and **Exhibit 4:** Listings of news media and legal journals publicizing critical access hospital distance requirements and certification.

The above-mentioned documents are either official publications or periodicals made publicly available by either the news media or CMS pursuant to Rules 902(5) and (6). These documents provide facts that are capable of accurate and ready determination by referring to sources whose accuracy cannot reasonably be questioned. Therefore, they meet the requirements of Fed.R.Evid. 201(b). Accordingly, Mountains respectfully requests this Court take judicial notice of the same.

## ARGUMENT

A.   **Relator's Allegations are Subject to Public Disclosure and Relator is Not an Original Source.**

The FCA has a jurisdictional/statutory bar precluding *qui tam* suits based upon evidence or information already in possession of the government (publicly disclosed information). This is necessary, and was designed, to prevent "parasitic" suits like this Amended Complaint.

Under 31 U.S.C. § 3730(e)(4)(A)(ii) and (iii), this Court **_must:_**

> **_"shall dismiss an action or claim under this section… if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed"_** in… **"**(ii) a congressional, Government Accountability Office, or **_other Federal report_**, hearing, **_audit, or investigation; or (iii) from the news media, …_** unless… the person bringing the action is an original source of the information."
>
> **_Emphasis added._**

---

[11] https://oig.hhs.gov/oei/reports/oei-05-12-00080.pdf
[12] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-16-08.pdf

9

This requirement must be met for Relator to bring an action before this Court.

According to 31 U.S.C. § 3730(e)(4)(B), an original source is identified as an individual who either:

"(i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is *independent of* and *materially adds to* the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."

*Emphasis added*.

Relator bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence and he has not fulfilled the same. *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir.1999).

1. **Relator's Allegations Were Publicly Disclosed Before the Filing of His Amended Complaint.**

Relator's FCA claims and allegations were publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A)(ii) and (iii). Relator filed his Amended Complaint on January 3, 2017, approximately three years after an official OIG investigation about CAHs that purportedly did not meet the distance requirements of 42 C.F.R. § 485.610(c) – the OIG 2013 CAH Distance Audit/Investigation. (**EXHIBIT 2**). There, the OIG extensively investigated all 1,329 CAHs in the country and determined that two-thirds of CAHs did not meet the location/distance requirements of 42 C.F.R. § 485.610(c). (**Id**. at pgs. 12 and 15). However, Mountains was not included as one of the CAHs not meeting the distance location requirements. In contrast, Relator's claims *all* hinge upon Mountains purportedly not meeting the 15-mile distance requirement through either mountainous terrain or secondary roads. **The government knew about potential CAH mileage deficiencies in CAHs well before Relator filed his Amended Complaint – the OIG did an extensive report on the very same issue,**

**purportedly surveying Mountains and all other CAHs!** Here, Relator's allegations are not merely substantially the same, they are exactly the same as the allegations investigated in the OIG 2013 CAH Distance Audit/Investigation – accordingly, this Court "shall dismiss" Relator's Amended Complaint. *See Alcan*, 197 F.3d at 1018; 31 U.S.C. § 3730(e)(4)(A)(ii) and (iii).

Audits issued by inspectors general have been referred to as "paradigmatic example[s]" of administrative audits within the meaning of the public disclosure bar".[13] For another example, in *U.S. ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987 (N.D. Cal. 2001), a relator's complaint was dismissed, when the allegations had been publicly disclosed by a HUD Inspector General audit, then covered by newspapers.

The OIG 2013 CAH Distance Audit/Investigation is not an obscure publication that has never seen the light of day. Instead, the report, and the issue of CAH reimbursements and distance requirements, has been widely and extensively covered in the news media and legal journals, and hotly debated/contested by rural health advocacy organizations. *See* **EXHIBIT 4** (sample of nineteen (19) news media disclosures). This coverage clearly establishes an additional ground for finding a "public disclosure" bar, "news media" coverage under 31 U.S.C. § 3730(e)(4)(A)(iii).

Relator may argue[14] that the OIG 2013 CAH Distance Audit/Investigation was dated, reached inaccurate results (*e.g.*, argue that the OIG found that Mountains met the distance requirements, as has CMS's ROs, but that their findings[15] are/were erroneous), or he obtained FOIA information about the public disclosure allegation from the OIG,[16] or he obtained

---

[13] *U.S. ex rel. Waris v. Staff Builders, Inc.*, 1999 WL 788766, at *4 (E.D.Pa.,1999).
[14] Relator certainly does not plead any of the foregoing.
[15] The statutory language is "allegations or transactions", not findings.
[16] Relator cannot become an "original source" by FOIA'ing or otherwise receiving information from the OIG's investigation in its 2013 public disclosure report. Relator appears to have received the data gathered by the OIG in its 2013 public disclosure of the allegations but has refused to provide the same in the Complaint in a meritless attempt to make himself an "original source". *See, Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401; 131 S. Ct. 1885; 179 L. Ed. 2d 825 (2011). Multiple citations omitted for brevity purposes.

information from the government during its sealed investigation period, or that Mountains was not named or surveyed in the OIG 2013 CAH Distance Audit/Investigation. **Courts have held that none of these matter** – the **allegations** are what must be publicly disclosed. Courts "shall dismiss an action or claim under this section… if substantially the same *allegations* or transactions as alleged in the action or claim were publicly disclosed."[17] In *United States ex rel. Gear v. Emergency Med. Assocs., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006), the HHS OIG audited allegations at 125 medical schools – this was found to be a public disclosure implicating the entire industry. **Here, however, the OIG went further – it investigated these allegations against all 1,329 CAHs in the United States (Mountains included)!** The 9th Circuit has determined that the public disclosure bars of 31 U.S.C. § 3730(e)(4)(A)(ii) and (iii) are triggered where either: 1) public allegations of fraud substantially similar to the one described in the FCA complaint are disclosed, or (2) enough information is publicly disclosed regarding fraudulent transactions so the government is on notice to either investigate further or to decide whether to proceed with its own claim. *Alcan*, 197 F.3d 1014 at 1018. It is not a requirement that the public disclosure even name the defendant, "provide explanatory details, or to have alleged overcharging, false-invoicing, false certification, or any other specific fraud." *Id.* at 1019. No specific allegations of fraud from the public disclosure need be made to qualify under the statute. *Id.* The public disclosure only needs to provide the government with enough information to pursue an investigation. *Id.* The test is whether the Relator's allegations, "fairly characterized," simply echo what the public already knows. *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992). Here, the OIG actually conducted an investigation on the location/distance allegations, and CMS strengthened its process in 2016 whereby ROs annually assess and certify/re-certify the same. *See* **EXHIBITs 2** and **3**. Thus, this allegation was publicly disclosed and Relator is not an original source, as in *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995), where a relator was not an original source when

---

[17] *See* 31 U.S.C. § 3730(e)(4)(A).

a prior GAO report "detailed the mechanics" of a FCA defendant's conduct such that the government was "sufficiently alerted" to the likelihood of fraud.

The only way for the Amended Complaint to proceed after the OIG's public disclosure in the OIG 2013 CAH Distance Audit/Investigation, and the extensive news media coverage of the same, would be if Relator was an original source of the publicly disclosed information (*e.g.*, Relator must have timely brought the CAH distance requirements issue to the OIG's attention and triggered the OIG to conduct the OIG 2013 CAH Distance Audit/Investigation).[18] Relator is not an original source, nor does he/could he allege to be.

## 2. Relator Does Not Qualify as an Original Source.

The FCA's public disclosure bar and its original source exception balance two competing policy goals: "blocking ***opportunistic lawsuits filed by plaintiffs seeking to capitalize on information already in the public domain*** and encouraging lawsuits by relators who have ***firsthand knowledge*** of fraud against the government."[19] To be an original source, Relator must meet the requirements of 31 U.S.C. § 3730(e)(4)(B). Relator does not meet the "original source" requirements, has filed a lawsuit seeking to capitalize on information already in the public domain, and does not have any firsthand knowledge. Before August 2013, or before his Complaint, Relator does not have firsthand knowledge ***that is [1] independent of and [2] materially adds*** to the publicly disclosed allegations or transactions. Further, Relator did not voluntarily provide such non-existent independent and materially additive information to the government before his Complaint was filed in 2017.

The only foundational background about the basis for Relator's information is: 1) that he was the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008; 2) that Mountains allegedly didn't have a (non-required) policy in 2007/08 regarding re-doing the RO's survey/certification efforts; and 3) that he "verified" his flawed interpretation

---

[18] This OIG publication received extensive and widespread national news media coverage and backlash from the hospital industry and rural health advocates. This is discussed further in this Motion regarding the public disclosure issue (31 U.S.C. § 3730(e)(4)(A)(iii).

[19] *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 910 (7th Cir. 2009). *emphasis added.*

13

of the distance/location requirements by driving the route on some unknown date (¶¶ 7, 42, and 31)).

A FCA relator must state with sufficient specificity the basis for his or her insider knowledge supporting allegations of false claims within the complaint. *United States ex rel. Bly–Magee v. Premo*, 470 F.3d 914, 917 (9th Cir. 2006). Relators do not have direct independent knowledge when they do not see fraud with their own eyes or obtain knowledge of the fraud through their own work without intervention by anything else. *United States ex rel. Devlin v. California*, 84 F.3d 358, 361 (9th Cir. 1996). A relator does not have direct knowledge when he learned of the alleged fraud merely because of his or her position within a company. *Alcan*, 197 F.3d at 1020-21. Here, Relator gives no independent or additional material information within his Amended Complaint to illustrate how he would be in a position to know what Mountains allegedly omitted or represented during its CAH certification process. Merely citing the alleged submission of standardized forms available to the general public (*e.g.*, CMS Form 2552 and 855A) is an insufficient basis for independent knowledge that materially adds to the already publicly disclosed information. (¶¶ 32, 33, 34, 35, 38, and 40).

Last, Relator has not provided any information that was unknown by the OIG when it publicly disclosed allegations in its OIG 2013 CAH Distance Audit/Investigation. To cure public-disclosure bar deficiencies, the relator-bar often argues that not all of the information provided in their *qui tam* complaint was included in a public disclosure – *i.e.*, that their material was **both** independent of and materially adds to the public disclosure. Typically, courts find that any alleged additional information is "redundant" or "derivative" of the publicly disclosed information[20] -- here, however, that line of argument is not available to Relator. Using Google Maps, checking on Mountains' necessary provider status, measuring roads and grades, driving on them, contacting state administrative agencies, alleging that in 2008 Mountains didn't have a policy that it wasn't required to have, and quoting other publicly accessible information to allege that Mountains does not comply with the CAH distance requirements is not adding any

[20] *See, e.g.*, *United States ex rel. Siller v. Becton Dickinson*, 21 F.3d 1339 (4th Cir. 1994). Additional citations omitted.

14

independent material information not already known to the government. Further, CMS RO regulations show that it uses this type of information and methods when it independently certifies/investigates/evaluates CAH status distance/location requirements, including Mountains. Finally, Relator used the information, copying and pasting it into his original Complaint without attribution (thus, his "investigation" was hardly independent of the OIG). As in *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013), unexplained similarities between Relator's Complaint and a public disclosure OIG report "serve as 'significant proof' that the substantive allegations were actually derived from the Audit Report [OIG 2013 Report]". A true and accurate comparison is attached as **EXHIBIT 5**.

In *Hastings*, the appellate court determined that a relator who merely sent comments, a list of FHA claims, and internal lending guidelines to HUD could not be classified as an original source. *United States Hastings v. Wells Fargo Bank, NA, Inc*, 656 FedAppx 328, 331–32 (C.A. 9 2016). A true and accurate copy is attached as **EXHIBIT 6**. ***Relator here didn't even do that much – he merely parrots methodology, data, and sources already utilized and publicly disclosed by the OIG in 2013!*** Relator brings nothing independent or materially additive to the table (and certainly does not include anything post-2008)!

In conclusion, Relator cannot bring FCA claims against Mountains because his allegations were already publicly disclosed through the OIG 2013 CAH Distance Audit/Investigation and he is not an original source of the same.

**B.** **Relator Does Not Allege with Particularity the Scheme to Defraud and Set Forth What is False or Misleading, and Why it is False, As Necessary to Comply with Rule 9(b) for a Civil FCA Case.**

A complaint brought under the Civil FCA, 31 U.S.C. § 3729, must comply with Rule 9(b). *See Ebeid, M.D., ex rel., United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010).

In dismissing the plaintiff's complaint for failure to comply with Rule 9(b), the Court in *Ebeid*, set forth the requirements of Rule 9(b):

. . . "[I]n alleging fraud or mistake," Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the

who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). In addition, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed. Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

616 F.3d at 998.

### 1. The Factual Allegations as to Mountains do not Comport with Rule 9(b) or the Federal Pleading Requirement.

The first element to a FCA claim is stating a false statement or fraudulent course of conduct with sufficient specificity. *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011). "One violates the [FCA] if one has 'actual knowledge' that one is submitting a false or fraudulent claim for payment or approval, acts in deliberate ignorance of the truth or falsity of one's false claim, or acts in reckless disregard of the truth or falsity of one's false claim." *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992); *Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).

Relator concedes that Mountains is a recognized CAH authorized by CMS since 2002. However, he bases his entire theory of liability on a *res ipsa loquitur* implication of false or fraudulent misrepresentation. Throughout Relator's Amended Complaint, he cites various requirements for CAH certification. His entire theory of liability against Mountains rests with whether Mountains meets certain distance requirements as required by 42 C.F.R. § 485.610(c). (¶ 41). However, Relator merely provides conclusory statements indicating there is allegedly no way Mountains could meet the requirements of 42 C.F.R. § 485.610(c), therefore Mountains must have made false claims or false representations. Conclusory allegations alone are not enough to pass muster under Rule 9(b). *Ebeid, M.D., ex rel.*, 616 F.3d at 1000.

Relator provides a lengthy factual explanation that 42 C.F.R. § 485.610(c) has been subjected to evolving agency interpretation over the years. Before 2013, Relator alleges CMS had a differing definition of defined "mountainous terrain". (¶ 19). However, Relator provides no factual basis as to why Mountains's roads would not qualify as mountainous terrain under

16

the pre-2013 CMS agency interpretation. Then, in an attempt to allege a factually sufficient claim against Mountains, Relator alleges post-2013 CMS interpretive guidance. (¶ 31) Relator merely concludes, through his own opinion, that Mountains does not meet these characteristics, which is factually insufficient under the heightened fraudulent pleading standards of Rule 9(b). Relator further fails to realize that the above-mentioned criteria is subject to agency interpretation, and provides no fast and hardline rules on what will and will not be considered in conformity with CMS regulations and, ultimately, satisfy the distance requirements stated in 42 C.F.R. § 485.610(c).

More important, Relator provides no evidence of any false statements, schemes, claims, or otherwise made by Mountains to any federal regulatory agency, a necessary pleading requirement. *Ebeid, M.D., ex rel.*, 616 F.3d at 990. Relator makes no allegations regarding any specific claim submitted by Mountains for reimbursement under its CAH status. Thus, Mountains is not put on adequate notice about any particular alleged misconduct which constitutes the alleged fraud so that it can defend against the charge and not just deny wrongdoing. *Ebeid, M.D., ex rel.*, 616 F.3d at 990. Relator's Amended Complaint is derelict of any showing as to which false claims were allegedly submitted to induce reimbursement/certification which would apprise Mountains of the amount of damages or particular alleged fraud. As a result, Relator has not met the pleading requirements of Rule 9(b) and federal pleading standards.

Relator simply concludes through conjecture that Mountains cannot be classified as a CAH. However, Relator's own pleadings are his undoing. For instance, Relator alleges that 15 or more miles of the route between SBMC and Mountains must be either mountainous terrain or secondary roads as a condition of participation for the Mountains's CAH status. (¶ 30). Relator also alleges there are ***both*** 12.4 miles of secondary roads, ***and*** 10.4 miles of mountainous terrain, between SBMC and Mountains (under Relator's interpretation of CMS standards). (¶ 31). By simply adding these distances together, Mountains has 22.8 miles between itself and SBMC in which there are either mountainous or secondary roads between

the two hospitals, well over the "more than 15-mile" requirement. Nothing in 42 C.F.R. §
485.610(c) states that mountainous terrain and secondary roads must be kept separate. To the
contrary, the plain unambiguous meaning of the rule states ". . .in the case of mountainous
terrain or in areas with only secondary roads available, a 15-mile drive from a hospital or
another CAH[.]" 42 C.F.R. § 485.610(c). *See also* 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I). Moreover,
Relator concedes that the OIG, in 2013, found that Mountains met the distance/location
requirements. (¶¶ 25-26).

Relator also fails to consider changes in road conditions, construction, and other
relevant factors over the years that may have led to Mountains's CAH certification. Relator
merely takes a one-size-fits-all approach and boldly alleges that for 16 years there were no
changes in routes or distances between SBMC and Mountains. These speculative, unsupported
conclusions do not give the indicia of reliability required under federal pleading standards, and
they do not comport with the findings of CMS or its ROs or the OIG.

Relator alleges that Mountains made fraudulent or false representations, records,
statements, reports, and certifications. However, Relator cannot articulate what fraudulent or
false representations, records, statements, reports, or certifications were made by Mountains
for either claims submitted to the government for reimbursement, or representations made by
Mountains for CAH certification. (¶¶ 46, 47, 51, 52, 56). Courts have determined that this type
of pleading without alleging an actual false claim, statement, report, or certification, is wholly
insufficient. *See United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 n.4 (11th Cir.
2010) (rejecting relator's vague allegations that she had "found" unspecified documents, and
"discovered" or "learned" that defendants submitted false claims); *United States ex rel. Grubbs
v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) (FCA claims require a strong inference that
false claims were actually submitted "such as dates and descriptions of recorded, but
unprovided, services and a description of the billing system that the records were likely entered
into."). Relator fails to state a claim upon which relief can be granted under 12(b)(6).

### 2. Relator's Fraud Allegations do not Demonstrate a Reliable Indicia that False Claims were Actually Submitted.

18

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

Under *Ebeid*, Relator must submit "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." 616 F.3d at 998-999. Here, Relator's Amended Complaint is rife with unreliable allegations, and provides little, if any, foundational support as an original or credible source of information. Relator lacks information to support what, if anything, was falsely submitted to any federal regulator/agency. Finally, Relator does not possess information that is either unavailable to the general public or specific to Mountains's credentialing process as a CAH.

According to Relator's pleadings, he was the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008, and Mountains purportedly failed to create in 2008 a non-required "survey or audit the surveyor's findings" policy. (¶¶ 7 and 42). However, Relator's Amended Complaint is absent of any foundational support to show that he has specific knowledge about alleged false claims submitted to the government. The Amended Complaint also fails to allege what information Relator was privy to at Mountains. Relator merely alleges generic forms purportedly used by Mountains (*e.g.*, CMS Form 2552 and 855A), and the unspecified contents of those forms, but makes no allegations as to specific claims or Mountains' CAH certification process in his Compliant. (¶¶ 32, 33, 34, 35, 38, and 40). These forms are standardized forms available to the general public that offer no insight or clarity on Mountains's operations or specific alleged representations or claims made to the federal government. Undaunted, Relator, without support or even pointing to a specific provision of the generic forms (much less the actual forms filled out by Mountains), concludes that false or fraudulent claims were submitted by Mountains from 2002 to the present. (¶¶ 45, 50, and 55). Relator's Amended Complaint is derelict of any allegations showing he had any independent or material knowledge of Mountains's CAH certification process, the entire basis of his causes of action in his Amended Complaint. Relator has not provided reliable indicia that false claims were knowingly and actually submitted in compliance with the pleading standards in *Ebeid*.

The plaintiff in *Ebeid* was not privy to the details of patient billing or billing to the Medicare program. *Id.* at 999. Just as in *Ebeid*, Relator has not shown that he was privy to the details of patient billing or billing to Medicare, or, more importantly, Mountains's CAH certification process. The absence of allegations stating with particularity as to the circumstances establishing fraud or mistake dooms Relator's claims just as it doomed Ebeid's claims. *Id.* at 999. Relator's reliance upon common public knowledge (standardized CMS forms submitted for payment to Medicare) and general information and speculative characterization of travel routes in the San Bernardino area are wholly insufficient, and must be dismissed under Rule 9(b) and the federal pleading requirements.

## C. <u>Relator's Claims Under the FCA are Inappropriate.</u>

### 1. Relator's FCA Claims are Inappropriate When Other Regulatory Enforcement Schemes Govern Compliance.

This Court, and several others, have determined that claims for fraud "are disfavored if made by third parties who seek to second guess a decision by the [Food and Drug Administration ("FDA")] to certify a device." *See United States ex rel v Medtronic, Inc.*, No. LACV1501212JAKASX, 2017 WL 4023092, at *7 (C.D. Cal. September 11, 2017). Though this case involves CAH certification, versus certification of a medical device, the analytic principles remain the same. The District Court in *Medtronic* held that the FDA had a process along with resources to investigate and approve, and enforcement jurisdiction to regulate Food, Drug, and Cosmetic Act ("**FDCA**") violations. (*Id.*). *See also Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348-350 (2001). As a result, FCA claims are not appropriate in cases that already have a mandated enforcement process.

Here, a CMS RO, then CMS, then the OIG, ***independently evaluated*** Mountains's distance and certified it as a CAH. CMS and its ROs have been given similar resources, enforcement jurisdiction, and regulatory authority to monitor and regulate any CAH that does not meet proper approval through the certification process.. CMS has its own enforcement and decertification methods to deal with CAHs that do not meet CAH certification standards. CMS already has set standards for annually certifying and recertifying the rural, distance, and

necessary provider verification of CAHs. (**EXHIBIT 3**, at pgs. 1-2). Even if this Court were to take Relator's facts and allegations as true, if a CAH is non-compliant with the distance requirements of 42 C.F.R. § 485.610(c), then the RO from CMS would have had to notify Mountains of its options and allow it time to resolve any deficiencies in its CAH status or have its Medicare participation terminated or switch to standard hospital based status. (**Id**. at p. 3). The remedy for the discovery of a CAH distance deficiency (of the type alleged by the OIG in its 2013 report) in CMS's certification process is possible revocation of CAH status and further administrative relief afforded by law, not an FCA claim. As a result, Relator's claims against Mountains are inappropriate.

### 2.  Relator's FCA Claims Lack Materiality, Knowledge, and Intent.

Relator alleges liability against Mountains based on an implied false certification theory. However, he cannot articulate what implied false certification was made by Mountains (even in the generic, non-Mountains specific forms he cites). This legal theory has been explored by the 9th Circuit in *Ebeid* in which it was determined that false certification claims have four elements: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Ebeid, M.D., ex rel.*, 616 F.3d at 997 (*citing United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). In addition, the U.S. Supreme Court has determined that implied false certification liability attaches when a defendant submits claims with specific representations about services provided, "but fails to disclose noncompliance with material statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services." *Universal Health Services, Inc. v United States ex rel Escobar*, 136 S.Ct. 1989, 1993–94; 195 L.Ed.2d 348 (2016). Here, Relator failed to point to any false representation made by Mountains (much less a failure to disclose purported noncompliance).

Also at issue is whether Defendant knowingly violated a requirement, or provided false information, it knew to be material to the government's decision to pay the claim. *United States ex rel Escobar*, 136 S.Ct. at 1994. The scienter requirement in any FCA claim requires a showing

that the person or entity actually knew of the information at issue and either acted in deliberate ignorance of the truth or falsity of the information or acted with reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Materiality is defined as having a tendency to influence, or being capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4). The U.S. Supreme Court in *Escobar* has stated that the FCA's materiality standard is demanding. *Id.* A misrepresentation is not material merely because the Government specifies "compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 2003. Moreover, if the government pays a claim in full despite knowing that certain requirements were potentially violated (*e.g.*, after the OIG 2013 CAH Distance Audit/Investigation, or Mountains' repeated certification surveys by an RO), that is "very strong evidence that those requirements are not material."

According to Relator's Amended Complaint, since 2002, Mountains has been certified as a CAH and has submitted medical claims for payments to Medicare. (¶ 29). To qualify as a CAH, Mountains must have applied for certification to CMS for CAH certification. Mountains is then subject to annual recertification under CMS's Recertification Checklist. (*See* **EXHIBIT 3**). Even assuming arguendo that a false claim or claims were made by Mountains due to an omission or false statement in its CAH certification process (such as Mountains giving a false address, or giving false mileage,[21] none of which are alleged by Relator), CMS has allegedly made numerous payments to Mountains, and continues to do so. Relator either knew or should have known about these alleged false claims in 2007, the date when he worked for Mountains. On January 3, 2017, Relator filed his Complaint under seal with this Court. The government was already apprised of any alleged FCA violations when Relator filed his original Complaint. Relator's claims fail because the government either knew or should have known about any alleged false certification made by Mountains, but paid/continues to pay the claims anyway. Further, when the OIG publicly disclosed Relator's allegations in its OIG 2013 CAH Distance Audit/Investigation, CMS chose not to de-certify Mountains and to continue to pay

---

[21] ROs determine mileage, not the CAH.

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

Mountains as a CAH. The 9th Circuit has found the requisite scienter requirement to be lacking in situations where the government has made payments despite its knowledge about alleged false certifications during the claim submission process. *See United States ex rel. Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1050-51 (9th Cir. 2012) (no fraud where the Air Force knew of testing methods used, even though they did not comply with contract); *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999) (government knowledge of an improper claim negates falsity and intent). Here, CMS, the CMS RO, and the OIG either knew or should have known about Mountains's applications for certification or recertification, but made payments despite any alleged omission or false statement regarding Mountains meeting the distance requirements. Accordingly, Relator and the government have waived any claim against Mountains for the causes of action alleged in the Amended Complaint.

### D.   Relator's Claims are Barred by the FCA Statute of Limitations.

31 U.S.C. § 3731(b) provides for a statute of limitations for FCA claims. In *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1214 (9th Cir. 1996), the United States Court of Appeals for the 9th Circuit unequivocally determined that a *qui tam* plaintiff or relator is subject to the tolling provision of 31 U.S.C. § 3731(b)(2).

#### 1.   Relator's FCA Claims are Barred by 31 U.S.C. §§ 3731(b)(1) and (2).

Relator has made numerous claims under the FCA which are all subject to 31 U.S.C. §§ 3731(b)(1) and (2), which state, in relative part, that Relator's statute of limitations for claims brought against Mountains began to run when the facts underlying the fraud are or should have been discovered by Relator. *United States ex rel. Hyatt*, 91 F.3d at 1217 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396; 66 S.Ct. 582, 584, (1946)). The three-year extension of the statute of limitations runs once the Relator knew or should have known the facts material to his right of action. *Id.* at 1217-1218.

Relator has alleged that he worked as the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008. (¶ 7). Then, Relator either knew or should have known about Mountains's alleged fraudulent CAH status. However, instead of filing his case

within the statute of limitations period, Relator filed his claim nearly ten years after the statute of limitations had lapsed. The *Hyatt* Court expressly forbade this practice because it would frustrate the purpose of the statute of limitations period and the FCA. *Id.* at 1218. *Qui tam* relators cannot be allowed to sit on their laurels, wait nearly ten years to sue, and allow alleged fraud losses to mount. *Id.* at 1218. Relator is subject to the 3-year statute of limitations tolling. Relator has alleged three causes of action in his Amended Complaint under the FCA, that allegedly occurred "from 2002 through the present." (¶¶ 45, 50, and 55). Relator's claims are barred by both the six and three-year applicable statutes of limitation. 31 U.S.C. §§ 3731(b)(1) and (2).

### 2. Relator's Claims Against Mountains Pursuant to 31 U.S.C. § 3729(a)(1)(G) are Limited

Under 31 U.S.C. § 3729(a)(1)(G), Relator has also claimed that Mountains knowingly failed to return wrongfully-obtained money to Medicare. (¶ 55). As amended on May 20, 2009, by FERA, the FCA defines an "obligation" as "an established duty, whether or not fixed, arising ... from the retention of an overpayment." 31 U.S.C. § 3729(b)(3). However, before May 20, 2009, there was no provision under the FCA imposing liability for knowingly failing to return ill-gotten money or an overpayment to a federally approved program. The statute did not address its retroactive effect. PPACA became effective on March 23, 2010, and provided that "[a]n overpayment must be reported and returned ... by ... the date which is 60 days after the date on which the overpayment was identified." 42 U.S.C. § 1320a–7k(d)(2).

Due to the possible retroactive application of both 31 U.S.C. § 3729(b)(3) and 42 U.S.C. § 1320a–7k(d)(2), Relator's claims under 31 U.S.C. § 3729(a)(1)(G) should be limited to all claims after May 22, 2010, sixty days after the passage of PPACA. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994), the United States Supreme Court utilized a two-part test to determine the retroactive application of a statute: (i) whether Congress spoke directly on the point of whether the statute should have retroactive effect, *Id.* at 280; and (ii) if given retroactive effect, would the statute "impair rights a party possessed when he acted, increase a party's liability for

past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. The presumption is against retroactivity. *Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005). Since neither FERA nor PPACA have clear statements about retroactivity, Relator's claims under 31 U.S.C. § 3729(a)(1)(G) should be limited as they pertain to allegations concerning the knowing failure to return ill-gotten monies before May 22, 2010. *See U.S. ex rel. Stone v. Omnicare, Inc.*, 2011 WL 2669659 (N.D. Ill. Case No. 09-cv-4319, July 7, 2011).

## CONCLUSION

Plaintiff's Amended Complaint should be dismissed for failure to comply with Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6). Relator and Relator's counsel knew this action was barred by the public disclosure provisions of the FCA, yet still brought it maliciously, vexatiously, frivolously, and intending to harass Mountains and subject Mountains to costly litigation and attorneys' fees. His Amended Complaint has no basis in law or fact. For this, and other reasons, Mountains respectfully requests sanctions, fees, costs, expenses, and attorneys' fees against both Relator and Relator's counsel under 31 U.S.C. § 3730(g), 31 U.S.C. § 3730(d)(4), 28 U.S.C. § 1919, 28 U.S.C. § 1927, Fed.R.Civ.P. 54(d), and Fed.R.Civ.P. 11.[22]

Dated: November 27, 2017

Respectfully submitted,
THE HEALTH LAW PARTNERS, P.C.
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
SAN BERNARDINO MOUNTAINS
COMMUNITY HOSPITAL DISTRICT

---

[22] *See, e.g., U.S. ex rel Bain v. Georgia Gulf Corp.*, 208 Fed.Appx. 280 (C.A.5 (La.), 2006) (finding that relator's suit was frivolous because it was filed without foundation due to procedural and jurisdictional defects related to the allegations already being publicly disclosed and the relator not being the original source); *U.S. ex rel. Lewis v. Walker*, 2012 WL 1672992 (M.D. Ga., May 14, 2012, No. 3:06-CV-16 CDL) (awarding costs found justified due to dismissal of *qui tam* suit for lack of jurisdiction based on publicly disclosed allegations where relators were not the original sources); *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 856 F.3d 696 (9th Cir. 2017), and *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 2015 WL 4511573 (C.D. Cal., July 20, 2015, No. EDCV-09-0023 MJG); aff'd in part, rev'd in part and remanded, 856 F.3d 696 (9th Cir. 2017) (awarding attorneys' fees and costs to defendant who was found to have prevailed on the merits when relator was not original source of publicly disclosed information); and *Johnson v. University of Rochester Medical Center*, 642 F.3d 121 (2d Cir. 2011) (upholding decision to grant sanctions against relator's attorney under 28 U.S.C. § 1927 for pursuing claims that she knew had no basis in law or fact).

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

# PROOF OF SERVICE

**STATE OF MICHIGAN, COUNTY OF OAKLAND**

At the time of service, I was over 18 and **not a party to this action**. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On November 27, 2017, I served true copies of the foregoing document(s) described as **DEFENDANT SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT UNDER FED.R.CIV.P. 9(b), 12(b)(1), AND 12(b)(6)** on the interested parties as follows:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

1

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

Executed on November 27, 2017, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre
Marianna M. McIntyre

2

Defendant San Bernardino Mountains Community Hospital District's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Plaintiff's
First Amended Complaint for Violation of the Federal False Claims Act Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK