1   Esperanza Cervantes Anderson | SBN 197953
    **LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**
2   1037 North Allen Avenue
    Pasadena, California 91104
3   Tel.:  (626) 486-2477
    Fax:  (626) 389-8911
4
    Attorney for Plaintiff Relator
5   FRANK ADOMITIS

6

7

8                  UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA          Case No. 5:17-cv-00002- JGB-KK
     ex rel. FRANK ADOMITIS, an
12   individual,                        **PLAINTIFF/RELATOR'S**
                                        **MEMORANDUM OF POINTS**
13              Relator,                **AND AUTHORITIES IN**
                                        **OPPOSITION TO**
14        v.                            **DEFENDANT'S MOTION TO**
                                        **DISMISS**
15   SAN BERNARDINO
     MOUNTAINS COMMUNITY
16   HOSPITAL DISTRICT; DOES 1          **Date: January 29, 2018**
     through 20, inclusive,             **Time: 9:00 a.m.**
17                                      **Courtroom: 1**
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   LEGAL STANDARD ....................................................................................2

III.  ARGUMENT.................................................................................................3

A.    This Matter Is Not Barred by the Public Disclosure Bar .........................3

    1.    The Purpose of the Amendments to the False Claims Act...............4

    2.    The Bar Does Not Apply As The Public Disclosure Is Not
          Substantially the Same as the Relator's Allegations........................5

    3.    Relator Is an Original Source.........................................................10

       i.    Relator Had Independent Knowledge .............................................11

       ii.   Relator's Allegations Materially Add to Adomitis's
            Complaint.......................................................................................12

B.    Relator Pled his Claims with Sufficient Particularity .............................14

C.    Relator Adequately Pleaded Scienter......................................................15

D.    Statute of Limitations .............................................................................16

E.    Relator Adequately Pleaded Reverse FCA Violations............................17

IV.   RELATOR'S CONDITIONAL MOTION TO AMEND.............................18

V.    CONCLUSION ..........................................................................................19

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Baltazar v. Warden*, 635 F.3d 866 (7th Cir. 2011) ..........................................10

*Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) ..................................................2

*Ciolino v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173 (9th Cir. 2013) ..........................................................................................12

*Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) .............................................14

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................18, 19

*In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541 (9th Cir. 1994) ...........................15

*Leveski v. ITT Educ. Servs. Inc.*, 719 F.3d 818 (7th Cir. 2013) ........................9

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ..................................15

*Padilla v. Yoo,* 633 F. Supp. 2d 1005 (N.D. Cal. 2009) .....................................2

*Prather v. AT&T, Inc.*, 996 F. Supp. 2d 861 (N.D. Cal. 2013), *aff'd* 847 F. 3d 1097 (9th Cir. 2017) .............................................................5

*San Bernardino Mountains Community Hosp. Dist. v. Secretary of Health & Human Servs.*, 63 F.3d 882 (9th Cir. 1995) ...............................1

*Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973) ...................................................19

*U.S. ex rel. Booker v. Pfizer, Inc.*, 9 F.Supp.3d 34 (D. Mass. 2014) ...............11

*U.S. ex rel. Condie v. Bd. of Regents of Univ. of California*, No. C89-3550-FMS, 1993 WL 740185 (N.D. Cal. Sept. 7, 1993) ..........................16

*U.S. ex rel. Devlin v. State of California*, 84 F.3d 358 (9th Cir. 1996) .............11

*U.S. ex rel. Dugan v. ADT Sec. Servs., Inc.*, No. CIV.A.DKC 20033485, 2009 WL 3232080 (D. Md. Sept. 29, 2009) ...........................16

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ...................14

*U.S. ex rel. Hagood v. Sonoma Cty Water Agency*, 929 F.2d 1416 (9th Cir. 1991) ..................................................................................................10

*U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) .......17

*U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996) .................16

*U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016) .5, 6, 8, 9, 13, 15

*U.S. ex rel. Mathews v. Bank of Farmington,* 166 F.3d 853 (7th Cir. 1999) ..................................................................................................11

*U.S. ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987 (N.D. Cal. 2001) ...........................................................15

*U.S. ex rel. Sanchez v. Abuabara*, No. 10-6163-CIV, 2012 WL 1999527 (S.D. Fla. June 4, 2012) .........................................................6

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496 (6th Cir. 2008) ....................................................................................................3

*U.S. v. Estate of Hage*, 810 F. 3d 712 (9th Cir. 2016) .....................................12

*U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796 (N.D. Cal. 2014) ..............11, 12, 13

*UMC Elecs. Co. v. United States*, 43 Fed. Cl. 776 (1999) ................................13

Opposition to Motion To Dismiss

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

*United States ex rel. Ab- sher v. Momence Meadows Nursing Ctr., Inc.,*
764 F.3d 699 (7th Cir. 2014) ................................................................ 9

*United States ex rel. Goldberg v. Rush Univ. Med. Ctr.,* 680 F.3d 933
(7th Cir. 2012) ......................................................................................... 9

*United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C., 336*
*F. Supp. 2d 430 (E.D. Pa. 2004)* .......................................................... 13

*United States ex rel. Perales v. St. Margaret's Hosp.,* 243 F. Supp. 2d
843 (C.D. Ill. 2003) ................................................................................. 13

*United States v. Alcan Elec. & Eng'g, Inc.,* 197 F.3d 1014 (9th Cir.
1999) ........................................................................................................... 9

*United States v. McNinch,* 356 U.S. 595 (1958) ........................................ 17

*United States v. Rachel,* 289 F. Supp. 2d 688 (D. Md. 2003) .................... 13

*United States v. Ueber,* 299 F.2d 310 (6th Cir. 1962) .............................. 17

*Waste Control Specialists v. Envirocare of Texas, Inc.,* 199 F.3d 781
(5th Cir. 2000) ......................................................................................... 18

## STATUTES

31 U.S.C. § 3729(a)(1)(G) ........................................................................... 18

31 U.S.C. § 3729(b) ...................................................................................... 15

31 U.S.C. § 3730(a)(4)(A) ............................................................................. 3

31 U.S.C. § 3730(e)(4) ................................................................................... 6

31 U.S.C. § 3731(b) ...................................................................................... 16

32 U.S.C. § 3740(e)(4)(B) ............................................................................ 11

## REGULATIONS

*A.G. Harmon, Bounty Hunters and Whistleblowers: Constitutional*
*Concerns for False Claims Actions After Passage of the Patient*
*Protection and Affordable Care Act of 2010,* 2 ULELF 1 (2011) ........... 5

*Beverly Cohen, KABOOM! The Explosion of Qui Tam False Claims*
*Under the Health Reform Law,* 116 Penn. St. L. Rev. 1 (2011) ............. 5

Federal Rule of Civil Procedure 12(b)(6) ................................... 2, 3, 15, 18

Federal Rule of Civil Procedure 15(a) ........................................................ 19

Federal Rule of Civil Procedure 15(a)(2) ............................................. 18, 19

S. Rep. No. 345, 99th Cong., 1st Sess. 2 (1986), *reprinted in* 1986
U.S.C.C.A.N. 5266 ............................................................................... 4, 10

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iii -

## I.   PRELIMINARY STATEMENT

Relator Frank Adomitis is the paradigmatic whistleblower. During his employment as Chief Financial Officer at defendant San Bernardino Community Mountains Hospital ("Mountains Hospital") he was an insider and closely observed:

- Mountains Hospital's scheme to bill Medicare and Medicaid for patient care at the unlawful (but more profitable) rate provided by the federal Critical Access Hospital ("CAH") program;

- Mountains Hospital's blatant disregard to observe heightened compliance obligations following a failed challenge by Mountains to its Medicare status with the Department of Health and Human Services. *See San Bernardino Mountains Community Hosp. Dist. v. Secretary of Health & Human Servs.*, 63 F.3d 882, 886-87 (9th Cir. 1995) (upholding summary judgment dismissing Mountains action to reinstate status as a "sole community" hospital under Medicare Act); and

- Mountains Hospital's active participation in the scheme, witnessed by its failure to implement any practice, policy or procedure to evaluate, certify, re-certify (or otherwise verify) various CAH Conditions of Participation (including the distance and rural requirements) for submission of accurate claims to Centers for Medicare & Medicaid Services ("CMS").

Aware that Plaintiff's First Amended Complaint ("FAC") may cause it to lose its CAH status and return the monies it unlawfully took—at great cost to American taxpayers—Mountains Hospital seeks to dismiss Plaintiff's FAC. Mountains' motion to dismiss should be denied, however, because it is based on several deeply flawed theories for dismissal.

First, Mountains challenges Plaintiff's FAC on the ground that the allegations therein are a "matter of public record" and as such, barred by the public disclosure bar codified in 31 U.S.C. § 3730(e)(4)(A). Mountains asserts that the

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   FAC contains no new allegations in light of an Inspector General Report, which is

2   a found that many Critical Access Hospitals would fail to meet the distance

3   requirements if required to re-certify. Mountains argument, however, is both

4   legally and factually false.  As explained more fully below, Plaintiff's FAC, which

5   is replete with facts and allegations ***not previously disclosed publicly*** that he

6   observed first-hand by working as the CFO come from his unique position as an

7   insider. Because Plaintiff's claims are different in kind and degree than the one

8   asserted in the Inspector General Report, the public disclosure bar does not apply.

9   Even if it did, Plaintiff would qualify as an original source as defined by the

10   expanded statute.

11       Mountains' second argument that the FAC was not pled with sufficient

12   particularity as required by Federal Rule of Civil Procedure ("FRCP") 9(b) also

13   misses the mark.  Plaintiff's FAC is brimming with details of Mountains'

14   fraudulent misconduct based on his first-hand, insider knowledge and/or his own

15   documentary research, as well as multiple examples of specific false claims. That

16   Rule 9(b) argument also fails because it wrongfully attempts to apply Rule 9(b)

17   to *scienter*, which only needs to be pled generally.

18       For all the foregoing reasons, and those set forth below, Mountains

19   Hospital's motion to dismiss should be denied.

20

21   **II.    LEGAL STANDARD**

22       To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint need

23   not provide detailed factual allegations. *Padilla* v. *Yoo,* 633 F. Supp. 2d 1005, 1018

24   (N.D. Cal. 2009) (citing *Bell Atlantic* v. *Twombly,* 550 U.S. 544 (2007)). Plaintiff's

25   burden in opposing a motion to dismiss is limited: "A plaintiff need only plead

26   enough facts to raise a reasonable expectation that discovery will reveal evidence'"

27   and that "the issue is not whether a plaintiff will ultimately prevail but whether the

28   claimant is entitled to offer evidence to support the claims." *Id.* at 1019.

1   In a *qui tam* action, these same principles apply: "[T]he court must construe

2   a complaint in the light most favorable to the plaintiff, accept all factual allegations

3   as true, and determine whether the complaint contains enough facts to state a claim

4   to relief that is plausible on its face." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*,

5   532 F.3d 496, 502 (6th Cir. 2008).

6   Mountains Hospital invokes the Public Disclosure Bar. As set forth below,

7   Public Disclosure does not implicate this Court's subject matter jurisdiction.

8   Where applicable, it only provides an affirmative defense to which ordinary Rule

9   12(b)(6) standards apply.

10

11   **III.   ARGUMENT**

12   **A.   This Matter Is Not Barred by the Public Disclosure Bar**

13   31 U.S.C. § 3730(e)(4)(A), the "public disclosure" provision of the False

14   Claims Act, prevents relators from bringing claims under the False Claims Act

15   under only very limited circumstances: "The court shall dismiss an action or claim

16   under this section, unless opposed by the Government, *if substantially* the same

17   allegations or transactions as alleged in the action or claim were publicly

18   disclosed—(i) in a Federal criminal, civil, or administrative hearing in which the

19   Government or its agent is a party; (ii) in a congressional, Government

20   Accountability Office, or other Federal report, hearing, audit, or investigation; or

21   (iii) from the news media, unless the action is brought by the Attorney General or

22   the person bringing the action is an original source of the information." 31 U.S.C.

23   § 3730(a)(4)(A) (emphasis added).

24   Thus, even if there were a public disclosure, it will not bar a *qui tam* action

25   so long as the action's allegations are not "substantially" the same. Further, once

26   the court finds that the public disclosure bar does not apply, it need not consider

27   whether the relator qualifies as an original source of the information.

28   Finally, even if the court finds that the *qui tam* suit was in fact based on a

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

- 3 -

Opposition to Motion To Dismiss

1   public disclosure, the relator will in no way be barred from bringing the suit so

2   long as he is an original source. For the reasons set forth below, the public

3   disclosure bar in no way bars Mr. Adomitis from bringing this claim, and

4   Defendants misapprehend and misstate the law in arguing that it does.

5          **1.**    **The Purpose of the Amendments to the False Claims**

6              **Act**

7       In 1986, Congress enacted a major overhaul of the Federal False Claims Act

8   in response to reports of the "growing pervasiveness of fraud" in Government

9   contracts and programs. S. Rep. No. 345, 99th Cong., 1st Sess. 2 (1986), *reprinted*

10  *in* 1986 U.S.C.C.A.N. 5266 (herein "S. Rep."). Prior to 1986, the False Claims Act

11  did not allow any *qui tam* actions when the federal government knew of the fraud

12  before the relator filed suit. The 1986 False Claims Amendment Act was created to

13  correct "restrictive court interpretations of the False Claims Act which tend to

14  thwart the effectiveness of the statute," *see* S. Rep. No. 99-345, at 4, 13, *i.e.*,

15  restrictions which would limit relators' role in thwarting frauds on the United

16  States Government.

17       Recognizing that the Government alone lacks the resources to detect fraud

18  adequately, that Act amended the False Claims Act to "allow and encourage

19  assistance from the private citizenry," which it expected to "make a significant

20  impact on bolstering the Government's fraud enforcement effort." S. Rep. No. 99-

21  345, at 8. The legislation sought not only to provide the Government's law

22  enforcers with more effective tools, but to encourage any individual knowing of

23  fraud on the Government to bring that information forward. "In the face of

24  sophisticated and widespread fraud, a coordinated effort of both the Government

25  and the citizenry will decrease this wave of defrauding public funds." S. Rep. No.

26  99-345 at 2, 1986 U.S.C.C.A.N. at 5266-67.

27       The Public Disclosure section of the False Claim Act was enacted as part the

28  1986 amendments, and was intended to encourage insiders with first-hand

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   knowledge to come forward to root out fraud. *U.S. ex rel. Mateski v. Raytheon Co.,*

2   816 F.3d 565, 570 (9th Cir. 2016). The provision was intended to encourage

3   lawsuits like Mr. Adomitis's, that are based upon information obtained from the

4   relator's own efforts, and to deter only those claims which are considered to be

5   "parasitic." *Id.* Adomitis is precisely the type of person whom the False Claims Act

6   encourages to come forward.

7           The False Claims Act was amended yet again under the 2010 Health Care

8   Reform Law. Those amendments to the Public Disclosure Bar "broaden[ed]" the

9   ability of relators to commence *qui tam* lawsuits under the Act enormously.

10  Beverly Cohen, *KABOOM! The Explosion of Qui Tam False Claims Under the*

11  *Health Reform Law,* 116 Penn. St. L. Rev. 1, 79 (2011). The amendment both

12  narrowed the definition of "public disclosure" and expanded the definition of

13  original source. Moreover, it changed the Public Disclosure Bar from a

14  jurisdictional requirement to a mere affirmative defense, thus shifting the burden of

15  proof to the defendants. *See A.G. Harmon, Bounty Hunters and Whistleblowers:*

16  *Constitutional Concerns for False Claims Actions After Passage of the Patient*

17  *Protection and Affordable Care Act of 2010,* 2 ULELF 1, *11 (2011); *Prather v.*

18  *AT&T, Inc.,* 996 F. Supp. 2d 861, 866 (N.D. Cal. 2013), *aff'd* 847 F. 3d 1097, 1102

19  (9th Cir. 2017). Mountains Hospital does not challenge or otherwise address the

20  simple fact that the 2010 amendments govern here and that the public disclosure

21  bar is now only an affirmative defense.

22          Mr. Adomitis's claims clearly fall within the letter and spirit of the Act, and

23  his acts as a whistleblower are exactly the sort of citizen acts that the Act sought to

24  encourage.

25          **2.    The Bar Does Not Apply As The Public Disclosure Is**

26                 **Not Substantially the Same as the Relator's Allegations**

27          This action survives unless the alleged public disclosures are "substantially

28  the same" as those alleged in the Inspector General's August 2013 Report

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Opposition to Motion To Dismiss

1   ("Inspector General report"). 31 U.S.C. § 3730(e)(4). Prior to the 2010

2   amendments, the applicable section included the words "based upon." Some courts

3   previously interpreted that language to mean that a complaint based even *in part* on

4   public disclosures would still be barred under the Public Disclosure Bar. However,

5   the 2010 amendments, which are applicable here, removed those words and

6   "expanded the Court's jurisdiction by lowering the Public Disclosure Bar." *U.S. ex*

7   *rel. Sanchez v. Abuabara*, No. 10-6163-CIV, 2012 WL 1999527, at *3 (S.D. Fla.

8   June 4, 2012).

9          This Circuit has been crystal clear that if some fraud is disclosed previously

10  at the highest level of generality, it cannot wipe out a later-filed *qui tam* action.

11  *Mateski*, 816 F.3d at 576-77. ("Allowing a public document describing

12  "problems"—or even some generalized fraud in a massive project or across a

13  swath of an industry—to bar all FCA suits identifying specific instances of fraud in

14  that project or industry would deprive the Government of information that could

15  lead to recovery of misspent Government funds and prevention of further fraud.")

16         Mountains Hospital argues that the Public Disclosure Bar applies because

17  the Inspector General Daniel R. Levinson's August 2013 Report, titled with the

18  *prospective* language "Most Critical Access Hospitals *Would Not* Meet the

19  Location Requirements *if Required* to Re-Enroll in Medicare" (emphasis added),

20  was published and publicly disclosed *before* Mr. Adomitis's under-seal allegations

21  of actual Mountains Hospital specific misconduct. This argument fails. The FAC is

22  not substantially the same as the findings in Inspector General Report, nor was it

23  even "based upon" that Report, even in part, meeting even the older more stringent

24  standard.

25         The Inspector General Report was published in August 2013. *See* Docket

26  ECF No. 19-4. The Inspector General Report never mentions *any hospital by*

27  *name*, nor with any detail sufficient to identify *any hospital*, and not does not

28  mention defendant Mountains Hospital. The Inspector General Report is

- 6 -

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1    characterized as a "study" as conducted as follows: "We [OIG] plotted the
2    locations of CAHs and other hospitals onto digital maps to determine whether
3    CAHs would meet the location requirements if they were required to re-enroll in
4    Medicare. Additionally, we calculated (using 2011 claims data) the potential
5    savings to Medicare and beneficiaries if the Centers for Medicare & Medicaid
6    Services (CMS) were to decertify CAHs that would not meet the location
7    requirements." *Id*. at p. 2. The Report also included a generalized finding that
8    "[n]early two-thirds of CAHs would not meet the location requirements if required
9    to re-enroll." *Id* at p.2.

10       Therefore, the Inspector General Report Complaint is qualitatively different
11   from the FAC on many levels:

12   •   *Inspector General Report devotes focuses its study on the extent to*
13       *which Critical Access Hospitals would (not) meet the location*
14       *requirements if required to re-enroll in Medicare.* **Admomitis**
15       **uncovered an actual scheme where despite engaging in**
16       **unsuccessful litigation of its Medicare status in the Central**
17       **District of California, Mountains Hospital thereafter failed to**
18       **undertake implementation of *any* policy or procedure to ensure**
19       **necessary compliance with the Medicare Requirements, and**
20       **indeed submitted false claims to the Government.** FAC ¶¶ 28, 35,
21       42;

22   •   *Inspector General Report's study involved a review of 1,329 CAH*
23       *hospitals and other hospitals, but did not involve Mountains Hospital,*
24       *at all,* **while Adomitis's claims exclusively involve Mountains**
25       **Hospital.** FAC ¶¶ 25, 26, 29, 30;

26   •   *The only connection to Mountains Hospital in the Inspector General*
27       *Report Complaint is conceptual — Mountains Hospital holds itself out*
28       *as a CAH which is the subject of the study,* **while all of Adomitis's**

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   fraud allegations specifically involve Mountains Hospital;

2   • *Inspector General Report was issued in August of 2013*, **while**

3   **Adomitis alleges the fraud continues through the present**; and

4   • *Inspector General Report named only the apparent and prospective*

5   *finding that "Medicare and beneficiaries could have saved more than*

6   *$1.3 million per decertified CAH in 2011. These savings would come*

7   *from paying the decertified CAH at the rates set by prospective*

8   *payment systems and fee schedules,"* **while Mr. Adomitis allegations**

9   **of fraud to Medicare for the period of 2010-present exceeds $30**

10  **million by Mountains Hospital specifically, as alleged in a**

11  **schedule, identifying specific amounts for each year.** FAC ¶ 43.

12  Thus, the Inspector General Report Complaint is not substantially the same

13  as Mr. Adomitis's allegations. Defendant Mountains Hospital, in direct

14  contravention of *Mateski*, seeks to use general prospective findings of the Inspector

15  General Report to wipe out all future cases that generally involve fraud concerning

16  *any* CAH's compliance with the rural and distance requirements.

17  Mountains Hospital makes several factual leaps and assumptions in its

18  argument that Inspector General Report and this action are substantially the same.

19  Mountains Hospital argues that Inspector General Report and Adomitis allege the

20  same fraud because they contain allegations of a failure to satisfy the location

21  requirements for CAHs. Mountains Hospital Br. at 11:1-5. Under Mountains

22  Hospital's argument, the Inspector General Report would prevent any relator from

23  ever bringing a *qui tam* case against any CAH alleging a fraud related to the

24  location requirements. As set forth above, Adomitis's complaint involved a

25  previously unidentified hospital, an unidentified location, a different time, a

26  different scheme, and failure(s) to implement needed policies and procedures. The

27  latter is an issue never considered or addressed in the Inspector General Report.

28  Mountains Hospital next argues a public disclosure need not even name the

- 8 -

Opposition to Motion To Dismiss

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  defendant, or "provide explanatory details, or to have alleged overcharging, false-

2  invoicing, false certi6cation, or any other specific fraud," citing to *United States v.*

3  *Alcan Elec. & Eng'g, Inc.,* 197 F.3d 1014, 1017 (9th Cir. 1999)[1]. This argument

4  fails because it is illogical and misstates both the pled facts and the current law.

5  Mountains Hospital states that Inspector General Report disclosed that generally—

6  most CAHs would fail the location requirements in 2013—while Adomitis alleged

7  specific fraud occurred from 2010 to the present at Mountains Hospital. *Alcan* is

8  distinguishable. In the subsequent decision of *Mateski*, the Ninth Circuit held that

9  where the public allegations failed to disclose the fraud alleged by the relator,

10  although both related to cost overruns, mismanagement, and noncompliance with

11  contract specifications in the design of a specific satellite component, the bar did

12  not apply. 816 F.3d at 579. Similarly, the Seventh Circuit has found that public

13  allegations do not bar False Claims Act claims even where both involve

14  supervision of hospital residents, *United States ex rel. Goldberg v. Rush Univ.*

15  *Med. Ctr.*, 680 F.3d 933 (7th Cir. 2012), compensation of proprietary school

16  recruiters, *Leveski v. ITT Educ. Servs. Inc.*, 719 F.3d 818 (7th Cir. 2013), non-

17  compliant care at a specific nursing home, *United States ex rel. Absher v.*

18  *Momence Meadows Nursing Ctr.*, Inc., 764 F.3d 699 (7th Cir. 2014), and

19  _____

20  [1] In *Alcan*, the FCA complaint was "substantially similar" to an earlier publicly

21  filed complaint because there was no difference in the substance of the fraud

22  alleged in the two. The only difference was that the earlier complaint described the

23  defendant in **"a fairly identifiable way"** but without actually using the defendant's

24  name, whereas the later complaint added the defendant's name specifically. *Id.* at

25  1018–19.  This is not an *Alcan* case.  The Inspector General Report did not identify

26  Mountains in a "fairly identifiable way" and Relator has identified additional basis

27  for FCA violations.

28

Opposition to Motion To Dismiss

1  "upcoding" of procedures performed by chiropractors, *Baltazar v. Warden*, 635

2  F.3d 866 (7th Cir. 2011)

3         **3.**    **Relator Is an Original Source**

4         The Court need not decide whether the relator is "an original source"

5  because the public disclosure bar does not apply for the reasons set forth above.

6  *See U.S. ex rel. Hagood v. Sonoma Cty Water Agency*, 929 F.2d 1416, 1420 (9th

7  Cir. 1991) (holding relator did not need to show that he was an original source

8  where the public disclosure bar did not apply).

9         Mr. Adomitis is precisely the relator that Congress had in mind when it

10  drafted the 1986 Amendments. As a "whistleblowing insider," he is, in fact, the

11  "paradigmatic original source." *See* S. Rep. No. 345, at 4, *reprinted* in

12  U.S.C.C.A.N. 5269. That is so because, throughout the Amended Complaint, he

13  demonstrates his first-hand knowledge, and close observation of Mountains

14  Hospital's fraudulent acts, which he discovered through his own research,

15  involvement, and observations. Indeed, as set forth below, all the information upon

16  which he based this action came from his position at Mountains Hospital.

17         Moreover, the original source definition was greatly expanded in the 2010

18  Amendments. Prior to the Amendments, in order to qualify as an original source,

19  the relator had to have both direct and independent knowledge of the publicly

20  disclosed allegations. Now, the relator no longer needs to have direct knowledge.

21  The definition of "original source" now reads: "(B) For purposes of this paragraph,

22  "original source" means an individual who either (i) prior to a public disclosure

23  under subsection (e)(4)(a), has voluntarily disclosed to the Government the

24  information on which allegations or transactions in a claim are based, or (2) who

25  has knowledge that is independent of and materially adds to the publicly disclosed

26  allegations or transactions, and who has voluntarily provided the information to the

27  Government before filing an action under this section."

28         At least one Court in this Circuit has recognized that the effect of the 2010

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Opposition to Motion To Dismiss

Amendment was to broaden the original source exception and make it less demanding. *See U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 807 (N.D. Cal. 2014) ("Though few courts have addressed the 2010 amendments to the definition of "original source," the removal of the word "direct" appears to broaden the exception and permit a relator to qualify as an "original source" of information even if that information was obtained indirectly."), citing *U.S. ex rel. Booker v. Pfizer, Inc.*, 9 F.Supp.3d 34, 45-46, (D. Mass. 2014) (noting 2010 amendments to False Claims Act render "original source" exception "less demanding"; in particular, the removal of the "direct" requirement).

As set forth below, Mr. Adomitis has readily met the prior more strenuous requirements, let alone the new less demanding ones. Thus, he is an original source because he has independent knowledge of the allegations which materially added to the allegations that Mountains Hospital now argues were publicly disclosed, and which he voluntarily disclosed to the Government before commencing this action. 32 U.S.C. § 3740(e)(4)(B).

### i.   Relator Had Independent Knowledge

"Independent knowledge" is knowledge that is not itself dependent on public disclosure and the relator must be "someone who would have learned of the allegations or transactions independently of the public disclosure." *U.S. ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 865 (7th Cir. 1999). Thus, relators who uncover fraud through their own labor, such as during the course of their employment, have independent knowledge, and would even be considered to have direct knowledge as well under the earlier, more stringent standard. *U.S. ex rel. Devlin v. State of California*, 84 F.3d 358, 362 (9th Cir. 1996).

Adomitis was exposed to Mountains Hospital's misconduct first-hand, through his access to relevant documents, and through his day-to-day work, and employment as the CFO for Mountains Hospital, not from the Inspector General's August 2013 Report. FAC ¶¶ 26, 29-31, 40-43. Thus, Adomitis had both

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Opposition to Motion To Dismiss

1    independent and even direct knowledge. Mountains Hospital does not contest this.

2    **ii.    Relator's Allegations Materially Add to**
3    **Adomitis's Complaint**

4    As established above, Mountains Hospital has presented an Inspector
5    General Report issued in August of 2013 for the general proposition that – as the
6    title of the report indicates, *Most Critical Access Hospitals Would Not Meet the*
7    *Location Requirements if Required to Re-Enroll in Medicare,* in which Mountains
8    Hospital is never mentioned or described. Even if the Court were to determine that
9    this amounts to a public disclosure of Adomitis's allegations, his pleadings
10   certainly materially add to what the Inspector General disclosed. In other words,
11   each of the differences that Adomitis asserts above render the FAC not
12   substantially similar to the Inspector General Report Complaint, at minimum, are
13   material additions to the Inspector General Report Complaint. *See Kiewit* 41
14   F.Supp.3d at 806, 808-9 (holding that even where the "particular allegations of
15   fraud" have been publicly disclosed, a relator will have materially added to that
16   scheme by "augment[ing]" the disclosed fraud).

17   Contrary to *Kiewit*, Mountains Hospital now argues that for the same
18   reasons that render Adomitis's pleadings substantially similar to the Inspector
19   General Report – that the Adomitis's pleadings cannot materially add to the
20   Inspector General Report Complaint. This interpretation would render this section
21   of the False Claims Act a "nullity," contrary to the standards for statutory
22   interpretation in this Circuit. *U.S. v. Estate of Hage*, 810 F. 3d 712, 718 n.2 (9th
23   Cir. 2016), *citing Ciolino v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173,
24   1184 (9th Cir. 2013) ("Under accepted canons of statutory interpretation, we must
25   make every effort not to interpret a provision in a manner that renders other
26   provisions of the same statute inconsistent, meaningless or superfluous."why).
27   Mountains Hospital ignores this "materially adds" standard by simply asserting
28   that the absence of adequate (or any) compliance policies and procedures as

- 12 -

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1     alleged in paragraph 42 of the First Amended Complaint is mere argument made

2     by Adomitis, without citation or authority. Mountains Hospital Br. at 5:8-17.

3     Mountains Hospital misses the mark. The failure to adopt compliance policy and

4     procedures can indeed result in a violation of the FCA. *United States ex rel. Hunt*

5     *v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 441 (E.D. Pa.

6     2004*)* (holding that allegations that defendant's regulator and compliance programs

7     were either non-existent or insufficient could show FCA scienter); *United States v.*

8     *Rachel*, 289 F. Supp. 2d 688, 696 (D. Md. 2003) (holding that failure to satisfy

9     fiduciary duties to oversee company billing activity could demonstrate reckless

10    disregard under the FCA); *United States ex rel. Perales v. St. Margaret's Hosp.*,

11    243 F. Supp. 2d 843, 856 (C.D. Ill. 2003) (holding that evidence that defendant

12    received and considered relevant publications in this area of the law, established a

13    corporate compliance committee, and routinely consulted counsel in drafting the

14    contracts and agreements defeated allegation of scienter); *UMC Elecs. Co. v.*

15    *United States*, 43 Fed. Cl. 776, 794 (1999) (noting that "a failure to make a

16    minimal examination of records constitutes deliberate ignorance or reckless

17    disregard, and a contractor that deliberately ignored false information submitted as

18    part of a claim is liable under the False Claims Act"). *See United States ex*

19    *rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 579 (9th Cir. 2016) (holding that suits

20    alleging "genuinely new and material information of fraud" can surmount the

21    public disclosure bar)

22          Mountains Hospital cites several out-of-circuit cases for the proposition that

23    Adomitis's allegations only add detail to what is already in the public knowledge.

24    That is contrary to *Kiewit*. In any event, Adomitis has done more than merely add

25    details to the Inspector General Report, and as described above, and has offered

26    fraud allegations concerning a *specific* entity, at a *specific* location, a different

27    (larger) timeframe, a qualitatively different *issue* (the Inspector General Report

28    never uses the word "fraud" or any synonym,) facts supporting scienter, and

- 13 -

1  allegations supporting that the fraud continued *after* the issuance of the Inspector

2  General Report.

### B. Relator Pled his Claims with Sufficient Particularity

4  Despite the fact that the First Amended Complaint provides details

5  describing Mountains' fraud, including specific instances of Mountains Hospital

6  submitting false Claims, Mountains Hospital argues that it does not contain the

7  particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

8  Mountains Hospital has misstated and misapplied the law in this Circuit, arguing

9  that Adomitis has merely parroted publicly available information. This directly

10  contravenes Ninth Circuit law. In some circuits, relators are required to plead

11  specific examples of false claims, but in the Ninth Circuit relators are required only

12  to allege "'particular details of a scheme to submit false claims paired with reliable

13  indicia that lead to a strong inference that claims were actually submitted.'" *Ebeid*

14  *v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (quoting *U.S. ex rel. Grubbs v.*

15  *Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Pleading representative claims is

16  not required, but it is one way that a Relator can meet this standard. *Id.*

17  Relator described the Mountains Hospital scheme, explaining how and why

18  the overbilling occurred. He described how although a simple review of the

19  location requirements needed to qualify as a CAH would have jeopardized status,

20  Mountains Hospital buried its head in the sand and failed to implement ordinary

21  and necessary processes to ensure even cursory compliance with Medicare

22  Conditions of Payment. Defendant actually knew, or was grossly reckless and

23  should have known that it failed the necessary location requirements, but continued

24  to bill the Government for the pricier healthcare costs recoverable by a legitimate

25  CAH.

26  It is apparent from his pleadings that Mr. Adomitis described how

27  Mountains Hospital regularly submitted false claims CMS for Medicare in

28  violation of the location requirements. Mountains Hospital's absurd reading of the

Law Office of Esperanza Cervantes Anderson<br>Pasadena, California

- 14 -

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1    pleadings, on a 12(b)(6) motion nonetheless, as being barred by public disclosure

2    ignores this Circuit's recent case law, and specifically. *U.S. ex rel. Mateski v.*

3    *Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016).

4    **C.    Relator Adequately Pleaded Scienter**

5    Mountains Hospital implies that Mr. Adomitis does not allege with

6    particularity Mountains Hospital's knowledge of the fraud—because the FAC does

7    not detail fraudulent intent by Mountains Hospital management. Mountains

8    Hospital Br. at 19-20. In making this argument, Mountains Hospital ignores the

9    plain language of Rule 9(b) that while the circumstances constituting fraud must be

10   pled with particularity, "knowledge and other conditions of a person's mind may be

11   alleged generally." *See also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir.

12   2007) ("While the factual circumstances of the fraud itself must be alleged with

13   particularity, the state of mind—or scienter—of the defendants may be alleged

14   more generally"); *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.

15   1994) ("We conclude that plaintiffs may aver scienter generally, just as the rule

16   states— that is, simply by saying that scienter existed"). Mountains Hospital's

17   argument also directly contradicts the plain language of the False Claims Act,

18   which requires only deliberate ignorance or reckless disregard and requires "no

19   proof of specific intent to defraud." 31 U.S.C. § 3729(b). Further, in a False Claims

20   Act action, a company's knowledge can be imputed from its employee's actions.

21   *U.S. ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987, 1003

22   (N.D. Cal. 2001).

23   Mr. Adomitis has properly pleaded that Mountains Hospital knowingly

24   submitted false claims simply by pleading generally the same. FAC at ¶¶ 29-35. In

25   any event, Adomitis pleaded numerous facts supporting the allegations of *scienter*

26   and rejecting Mountains Hospital's conclusory assertion that the false claims were

27   erroneous or barred by public disclosure. These include that Mountains Hospital

28   was on heightened notice when failing before the Central District of California to

- 15 -

1    reverse its status as a "sole community" hospital and failing to implement any

2    policy and procedure to ensure compliance with the necessary location

3    requirements. FAC at ¶¶ 28-43.

4            **D.**     **Statute of Limitations**

5       Mr. Adomitis was employed from 2007-2008. FAC, ¶ 7. This action was

6    filed on January 3, 2017. In the Ninth Circuit, a *qui tam* plaintiff must initiate a

7    civil action under the FCA "no more than (1) six years after the date on which the

8    FCA violation is committed or (2) three years after the date when facts material to

9    the right of action are known or reasonably should have been known by the qui tam

10   plaintiff, whichever occurs last." *U.S. ex rel. Hyatt v. Northrop Corp.,* 91 F.3d

11   1211, 1218 (9th Cir. 1996); *see* 31 U.S.C. § 3731(b). "A suit under the Act must, in

12   any event, be brought no more than ten years after the date on which the violation

13   occurred." *Id.*; see 31 U.S.C. § 3731(b).  The limitations period begins to run at the

14   time a claim is made, or, if the claim is paid, at the time of payment. Also, even

15   were accrual to begin at the time a claim is made, the limitations period began

16   when Mountains Hospital submitted claims to CMS requesting payment, not upon

17   submission of Medicare applications or agreements.

18       Regarding accrual, case law on the issue is sparse, particularly within this

19   Circuit. However, absent instruction from the Ninth Circuit or the Supreme Court,

20   this Court should side with the majority of courts, and the only court in California,

21   that have addressed the issue. *See U.S. ex rel. Dugan v. ADT Sec. Servs., Inc.*, No.

22   CIV.A.DKC 20033485, 2009 WL 3232080, at *4 (D. Md. Sept. 29, 2009) ("Courts

23   in the majority of the federal circuits have concluded that the statute of limitations

24   starts to run when a false claim is submitted to the government."); *U.S. ex rel.*

25   *Condie v. Bd. of Regents of Univ. of California*, No. C89-3550-FMS, 1993 WL

26   740185, at *3 (N.D. Cal. Sept. 7, 1993). Accordingly, Plaintiff requests that this

27   Court finds that the statute of limitations begins to run on an FCA claim upon

28   *submission* of a false claim. It is the submission of the claims for payment that

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Opposition to Motion To Dismiss

1    trigger potential FCA liability here, not submission of the applications for payment

2    or execution of the agreements, despite that those documents may have contained

3    false or fraudulent statements and thus rendered subsequent claims for payment

4    fraudulent under a promissory fraud theory of liability. *See United States v.*

5    *McNinch*, 356 U.S. 595, 599 (1958) ("[T]he conception of a claim against the

6    government normally connotes a demand for money or for some transfer of public

7    property."); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir.

8    2006) (defining a claim as "a call on the government fisc" and as involving "some

9    sort of request for the government to pay out money or forfeit moneys due");

10   *United States v. Ueber*, 299 F.2d 310, 313 (6th Cir. 1962) ("[T]he causes of action

11   sued upon did not come into being, nor was there an actual violation of [the FCA],

12   until the first voucher seeking payment of the false claims was presented to the

13   United States.").

14          Here, Plaintiff commenced this action on January 3, 2017. Thus, Plaintiff

15   may not rely on any claims for payment that Defendant filed prior to January 3,

16   2007 as grounds for his FCA claims. Accordingly, should this Court elect to grant

17   Defendant's motion to dismiss—it should only do so to the extent that any of

18   Plaintiff's causes of action rely on claims for payment or reimbursement dated

19   prior to January 3, 2007. Whether claims for payment that occurred between

20   January 3, 2007 and September 2, 2014, are timely depends on when relator knew

21   or reasonably should [have] known the material facts for his claims. That issue is

22   not before the Court in its consideration of this Motion.

23          **E.      Relator Adequately Pleaded Reverse FCA Violations**

24          The False Claims Act imposes liability on any person who

25   knowingly makes, uses, or causes to be made or used, a false record or statement

26   material to an obligation to pay or transmit money or property to the Government,

27   or knowingly conceals or knowingly and improperly avoids or decreases an

28   obligation to pay or transmit money or property to the Government. 31 U.S.C. §

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

3729(a)(1)(G). This is known as the reverse False Claims Act provision. Recipients of Medicare and Medicaid funds who have "received an overpayment" must "report and return the overpayments" to HHS or the State, as appropriate. *See* 42 U.S.C. § 1320a-7k(d)(1) The ACA defines "overpayment" to mean "any funds that a person receives or retains under [the Medicare or Medicaid programs] to which the person, after applicable reconciliation, is not entitled." 42 U.S.C. § 1320a-7k(d)(4)(B) Relator pleaded both that Mountains Hospital submitted false claims that resulted in overpayments, and failed to return those overpayments. FAC ¶¶ 54-57. Therefore, Relator sufficiently pleaded separate reverse False Claims Act violations.

Even if this Court were to dismiss the reverse False Claims Act counts, the obligations and breaches are relevant to the other counts and to Mountains Hospital's heightened knowledge of its obligations regarding Medicare compensation status.

## IV.   RELATOR'S CONDITIONAL MOTION TO AMEND

As set forth above, Plaintiff-Relator Adomitis has pleaded his claims, and those of the United States Government, in the manner required by the Federal Rules of Civil Procedure and, as a matter of both substance and procedure, has stated plausible claims upon which relief may be granted. However, should the Court disagree and grant Defendant's Motion to Dismiss, in whole or in part, the Relator Adomitis should be allowed to amend its First Amended Complaint. A dismissal under FRCP Rule 12(b)(6) should not be final, and any court purporting to dismiss a plaintiff's complaint, in whole or in part, should at the same time grant that plaintiff leave to amend the complaint, pursuant to FRCP Rule 15(a)(2).[2]

---

[2] *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *Waste Control Specialists v. Envirocare of Texas, Inc.*, 199 F.3d 781, 786 (5th Cir. 2000) ("the usual course of action upon granting a defendant's Rule 12(b)(6) motion to dismiss is to allow a

- 18 -

This practice obtains, in the usual case, for at least three major reasons: (1) the Federal Rules evidence a policy of deciding cases on the basis of the substantive rights involved,[3] (2) the Federal Rules expressly provide that leave to amend a complaint should be "freely" given "when justice so requires,"[4] and (3) very real practical problems exist when dealing with complaints filed before any meaningful discovery has taken place, as those complaints are (by definition) drafted with less than perfect knowledge. All three of these reasons support Relator's conditional request for leave to amend.

Although these points may be academic, as Relator Adomitis does not believe this Court can or should grant any portion of the Motion to Dismiss, out of respect for the Federal Rules of Civil Procedure and an abundance of caution, Adomitis respectfully requests leave to amend his First Amended Complaint, should this Court find any portion of it to be wanting.

## V.   CONCLUSION

Based on the foregoing, relator respectfully requests that the Court deny Defendant's motion to dismiss this action.

DATED: January 2, 2018

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON

By: _____

Esperanza Cervantes Anderson, Esq.
Attorney for Plaintiff/relator
FRANK ADOMITIS

---

plaintiff to amend his or his complaint.").
[3] *See, e.g., Tuley v. Heyd*, 482 F.2d 590, 595 (5th Cir. 1973); see also *Foman*, 371 U.S. at 182 ("if the underlying facts relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits").
[4] *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2), like all of the Federal Rules, is to be "construed and administered" to secure, *inter alia*, the "just" determination of "every action and proceeding." Given that premise, and Rule 15(a)(2)'s own concern with what "justice" "requires," this Court should grant leave to amend.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Opposition to Motion To Dismiss