NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section
KENT A. KAWAKAMI
Assistant United States Attorney
California State Bar No. 149803
    Room 7516, Federal Building
    300 N. Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-4858
    Fax: (213) 894-7819
    Email: kent.kawakami@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS,<br><br>Plaintiff,<br><br>v.<br><br>SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT,<br><br>Defendant. | No. EDCV 17-00002 JGB(KKx)<br><br>UNITED STATES' STATEMENT OF INTEREST REGARDING ISSUES RAISED IN DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>Date:  January 29, 2018<br>Time:  9:00 a.m.<br>Court:  Hon. Jesus G. Bernal |

## I. INTRODUCTION

On November 27, 2017, defendant San Bernardino Mountains Community Hospital District ("Mountains") submitted a "Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's First Amended Complaint" ("Mountains' Memo") (Docket No. 19-1). The United States of America ("United States" or "government") respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address issues that Mountains' Memo raises concerning:

(1) whether implied false certification liability requires specific representations;

(2) whether an alleged false certification can be material if the government <u>should have known</u> about the alleged false certification;

(3) whether a False Claims Act action is appropriate when another regulatory scheme exists; and

(4) whether the Court may draw an adverse inference regarding the merits of a relator's allegations from the United States' decision to decline to intervene.

The United States respectfully submits that:

(1) in the Ninth Circuit, implied false certification liability does not require a defendant to submit a claim with specific representations about services provided;

(2) the Supreme Court's decision in <u>Universal Health Services, Inc. v. U.S. ex rel. Escobar</u>, 136 S.Ct. 1989, 1993-94 (2016) ("<u>Escobar</u>") set an "actual" government knowledge standard, and not a "should have known" standard, in regards to materiality;

(3) an FCA case may be brought even when another regulatory scheme exists; and

(4) the Court may not draw an adverse inference regarding the merits of a relator's allegations from the United States' decision to decline to intervene.

---

[1] 28 U.S.C. § 517 authorizes the Attorney General of the United States to attend to the interests of the United States in any action in federal or state court.

- 2 -

The United States is responsible for enforcement of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, the primary tool in the United States' ongoing effort to combat fraud affecting the public fisc. See, e.g., United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 745 (9th Cir. 1993). While the United States has declined to intervene in this case (Docket No. 6), it remains the real party in interest, entitled to the majority of any damages and penalties that may be recovered on its behalf. 31 U.S.C. § 3730(d); see also United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1217 n.8 (9th Cir. 1996). The United States also has a substantial interest in the legal contentions advanced in defendant Mountains' motion because the Court's rulings with respect to such contentions may affect the development of FCA law. The United States is not supporting the position of either the Relator or the defendant on the pending Motion to Dismiss. Nor is the United States taking a position on any arguments or issues raised in connection with that Motion other than those addressed in this Statement of Interest.

## II. ARGUMENT

### A. Implied False Certification Liability Does Not Require Specific Representations

The Ninth Circuit has held that claims for payment, without more, impliedly certify that the claimant has complied with all material conditions of payment. In Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993 (9th Cir. 2010), the Ninth Circuit stated,

> Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is <u>implicated by submitting a claim</u> for payment even though a certification of compliance is not required in the process of submitting the claim.

Id. at 998 (emphasis added).

In its brief, defendant Mountains argues that "the U.S. Supreme Court has determined that implied false certification liability attaches when a defendant submits claims with <u>specific representations</u> about services provided, 'but fails to disclose

- 3 -

noncompliance with material, statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services.'" See Mountains' Memo, at 21:18-22, citing Universal Health Services, Inc. v. U.S. ex rel. Escobar, 136 S.Ct. 1989, 1993-94 (2016) ("Escobar") (emphasis added).

However, the Supreme Court in Escobar reserved the issue decided in Ebeid. The Supreme Court expressly stated in Escobar that it was not deciding whether a claim for payment, without more, impliedly represents that the claimant has satisfied all conditions of payment, and is therefore actionable. Escobar, 136 S.Ct. at 2000 ("We need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment."). This was the issue that Ebeid decided in the affirmative, and which remains unchanged by Escobar. Thus, claims for payment, without any specific representations, impliedly certify that the claimant has complied with all material conditions of payment.

### B. The Supreme Court Established An Actual Knowledge Standard For Materiality, And Not A "Should Have Known" Standard

In discussing the materialty of a misrepresentation to the government's payment decision, the Escobar court explained that, when the government actually knows that a claim violates certain requirements but pays the claim regardless, then that would be evidence that the false claim lacked materiality. According to Escobar, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." Escobar, 136 S.Ct. at 2003-4 (emphasis added).

In its Memo, defendant Mountains argues that Relator cannot meet the materiality standard set out in Escobar "because the government either knew or should have known about any alleged false certification made by Mountains, but paid the claims anyway." See Mountains' Memo at 22:23-25 (emphasis added). Defendant Mountains misstates Escobar because Escobar does not extend its holding to when the government "should

- 4 -

have known" about a false claim. Instead, Escobar refers only to the possible lack of materiality of a false claim when the government has <u>actual</u> knowledge of the violation and pays the claim anyway.

### C. FCA Claims Are Appropriate Even When A Regulatory Enforcement Scheme Exists

In its brief, Mountains argues that "FCA claims are not appropriate in cases that already have a mandated enforcement process." See Mountains' Memo at 20:11-12, 21-22, citing U.S. ex rel. The Dan Abrams Co. v. Medtronic, Inc., 2017 WL 4023092, at *7 (C.D. Cal. Sep. 11, 2017). Mountains overstates the Medtronic holding. The mere existence of an "enforcement process" alone does not determine whether an FCA action may be brought. The Department of Justice can and does bring FCA cases despite the existence of various regulatory enforcement schemes.[2]

For example, the Program Fraud Civil Remedies Act (31 U.S.C. §§ 3801–3812) ("PFCRA") provides federal agencies with an administrative remedy to impose civil penalties and assessments against persons who make, submit, or present, or cause to be made, submitted or presented, false, fictitious, or fraudulent claims or written statements to the agencies. See, e.g., 45 C.F.R. §§ 681.1-681.46 (National Science Foundation (NSF) PFCRA Regulations). Despite the existence of the NSF PFCRA Regulations, an NSF investigating official may refer allegations of misconduct directly to the Department of Justice for prosecution under the FCA. 45 C.F.R. § 681.46(a)(1). As another example, when a contracting officer finds that a government contractor violated the Davis-Bacon Act, which mandates that government contractors must pay prevailing wages to employees working on government projects, federal regulations provide for the

---

[2] In Medtronic, the court based its holding on policy concerns unique to the FDA's approval process for medical devices. See Medtronic, at *7 (quoting D'Agostino v. EV3, Inc., 845 F.3d 1, 8 (1st Cir. 2016) ("The collateral effects of allowing juries in qui tam actions to find causation by determining the judgment of the FDA when the FDA itself has not spoken are akin to those practical effects that counsel in favor of not allowing state-law fraud-on-the-FDA claims.")). These policy concerns are not at issue here. Accordingly, Medtronic should be limited to its facts.

withholding of payments due the contractor. See 48 C.F.R. § 22.406–9. Yet the same Davis-Bacon Act violations can also be the basis for an FCA action, despite the existence of a regulatory enforcement scheme. See, e.g., U.S. ex rel. Wall v. Circle C Construction, 697 F.3d 345, 357 (6th Cir. 2012). Therefore, the existence of a regulatory enforcement scheme by itself does not prevent the prosecution of an FCA action.

### D. No Adverse Inference Regarding the Merits of Relator's Allegations May Be Drawn From the United States' Declination Decision

Mountains appears to suggest that the Court may draw an adverse inference regarding the merits of Relator's allegations from the United States' decision to decline to intervene. See Mountains' Memo at 7:7-8. However, such an inference is inappropriate as a matter of law. "In any given case, the government may have a host of reasons for not pursuing a claim." United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). Non-intervention signals that the United States is not intervening—no more, no less. Id. ("[T]he government's absence from the fray [does not] mean[] that the relator's cause is meritless"); see also United States ex rel. Chandler v. Cook County, 277 F.3d 969, 974 n.5 (7th Cir. 2002) ("There is no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits."); Anderson v. McTish, Kunkle & Associates, No. 4:CV-04-754, 2006 WL 1985762, at *1 n.1 (M.D. Pa. July 13, 2006) (stating that the court is "not permitted to draw any inference from the decision of the United States not to intervene in this case").

## III. CONCLUSION

The United States respectfully requests that the Court find that (1) implied false certification liability does not require specific representations; (2) the Relator's claims do not fail solely because the government should have known of the alleged falsity and paid the claims anyway; (3) FCA claims are appropriate despite the existence of other regulatory enforcement schemes; and (4) no adverse inference regarding the merits of

- 6 -

Relator's allegations may be drawn from the United States' decision to decline to intervene.

Dated: January 5, 2018          Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section


   /s/ Kent Kawakami
KENT A. KAWAKAMI
Assistant United States Attorney
Attorneys for the United States of America