CLINTON MIKEL (SBN 251319)
E-mail: cmikel@thehlp.com
THE HEALTH LAW PARTNERS, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
Phone (248) 996-8510
Fax (248) 996-8525

Attorneys for Defendant
San Bernardino Mountains Community Hospital District

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, FRANK ADOMITIS,<br>            Plaintiff,<br><br>vs.<br><br>SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT; DOES 1 through 20, inclusive,<br><br>            Defendants. | Case No.: 5:17-cv-00002-JGB-KK (Hon. Jesus G. Bernal)<br><br>**DEFENDANT SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT'S MEMORANDUM IN REPLY TO RELATOR'S OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT UNDER FED.R.CIV.P. 9(b), 12(b)(1), and 12(b)(6)**<br><br>**DATE: JANUARY 29, 2018; TIME: 9:00 AM; COURTROOM: 1** |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION .................................................................................................... 1

ARGUMENT .............................................................................................................. 3

    A.    Relator Has Failed to Plead Allegations Not Already Promulgated by Public Disclosure and Relator is Not an Original Source. ....... 3

        1.    Relator's Allegations Are Exactly the Same (or Substantially the Same) as the 2013 OIG Report and News Media Articles. ................................................................................ 4

        2.    Relator Does Not Qualify as an Original Source. ............. 12

    B.    Relator Did Not Plead His Claims with Sufficient Particularity .. 17

    C.    Relator's FCA Claims are Inappropriate When Other Regulatory Enforcement Schemes Govern Compliance Certification. ......... 18

    D.    Relator's FCA Claims Still Lack Materiality, Knowledge, and Intent. ....................................................................................... 20

    E.    Relator's Claims are Barred by the FCA Statute of Limitations. . 23

    F.    Relator's Reverse FCA Claims Against Mountains are Limited... 24

CONCLUSION ......................................................................................................... 25

i

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Decker v. GlenFed. Inc. (In re GlenFed. Inc. Sec. Litig.),*
　　42 F.3d 1541 (9th Cir. 1994) .................................................. 17

*Ebeid, M.D., ex rel., United States v. Lungwitz,*
　　616 F.3d 993 (9th Cir. 2010) .............................................. 17, 20

*Estate of Cunningham,* 713 F.3d 673 ...................................... 4

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
　　559 U.S. 280; 130 S.Ct. 1396; 176 L.Ed.2d 225 (2010) .......................... 12

*Hagood v. Sonoma Cnty. Water Agency,* 929 F.2d 1416 (9th Cir. 1991)................. 5

*Holmberg v. Armbrecht,* 327 U.S. 392; 66 S.Ct. 582 (1946) ..................... 23

*Labojewski v. Gonzales,* 407 F.3d 814 (7th Cir. 2005) ..................... 25

*Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994) ........................... 25

*Prather v. AT&T, Inc.,* 996 F.Supp.2d 861 (N.D.Cal.2013) ..................... 4

*Rockwell Int'l Corp. v. United States,* 549 U.S. 457 (2007)........................... 16

*Safe Air for Everyone v. Meyer,* 373 F.3d 1035 (9th Cir. 2004) ................. 13

*San Bernardino Mountains Community Hosp. Dist. v. Secretary of Health &
　　Human Servs.,* 63 F.3d 882 (9th Cir. 1995) ...................................... 8

*United States v. Alcan Elec. & Eng'g, Inc.,*
　　197 F.3d 1014 (9th Cir. 1999) ................................... 4, 10, 11, 13, 14

*United States ex rel. Bly-Magee v. Premo,* 470 F.3d 914 (9th Cir. 2006) ................... 14

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended
Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

*United States ex rel. D'Agostino v. EV3, Inc.*, 153 F.Supp.3d 519
    (D.Mass.2015) ................................................................................. 19

*United States ex rel. Durcholz v. FKW, Inc.*,
    189 F.3d 542 (7th Cir. 1999) ..................................................... 23

*United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740 (9th Cir. 1995)........ 13

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2016 WL 8919455
    (C.D. Cal. Nov. 16, 2016) ..................................................... 5, 6

*United States ex rel. Hendow v. University of Phoenix*,
    461 F.3d 1166 (9th Cir.2006) ................................................ 20

*United States ex rel. Hooper v. Lockheed Martin Corp.*,
    688 F.3d 1037, 1050-51 (9th Cir. 2012) .......................... 22, 23

*United States ex rel. Hyatt v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. 1996) ............................................ 23, 24

*United States ex rel. Kelly v. Serco, Inc.*, --F.3d--, No. 14-56769, 2017 WL 117154
    (9th Cir. Jan. 12, 2017) ....................................................... 21

*United States ex rel v Medtronic, Inc.*,
    2017 WL 4023092, at *7 (C.D. Cal. September 11, 2017) ...........18, 19, 20

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ................................................ 19

*United States v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016) ........................ 23

*United States v. Univ. of Phoenix*, 2014 WL 3689764 (E.D. Cal. July 24, 2014)
    reconsideration denied, *424, 2014 WL 6473794 (E.D. Cal.
    Nov. 18, 2014) .............................................................4, 13, 17

*Universal Health Services, Inc v United States ex rel Escobar*,
    136 S.Ct. 1989; 195 L.Ed.2d 348 (2016) ..........................20, 21, 22

*U.S. ex rel. Devlin v. State of California*, 84 F.3d 358 (9th Cir. 1996) ...................... 14

iii

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended
Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

*U.S. ex rel. Mateski v. Ratheon Co.*, 816 F.3d 565
    (9th Cir. 2016) ........................................................5, 6, 7, 10, 11, 18, 21

*U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013) .............11, 16

*U.S. ex rel. Smith v. Yale Univ.*, 415 F.Supp.2d 58 (D.Conn.2006).......................17

*U.S. ex rel. Stone v. Omnicare, Inc.*, 2011 WL 2669659
    (N.D. Ill. Case No. 09-cv-4319, July 7, 2011) ..........................................25

*U.S. ex rel. Wall v. Circle C. Construction*, 697 F.3d 345 (6th Cir.2012) .................18

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...............................17

*Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992) ...................................................5

## Federal Statutes

21 U.S.C. § 332 ...........................................................................................19

21 U.S.C. § 333(a) ......................................................................................19

21 U.S.C. § 334(a)(2)(D) ............................................................................19

31 U.S.C. §§ 3729 .......................................................................................17

31 U.S.C. § 3729(a)(1)(G) ..................................................................3, 24, 25

31 U.S.C. § 3729(b)(1)(A) .........................................................................22

31 U.S.C. § 3729(b)(3) ........................................................................24, 25

31 U.S.C. § 3730(e)(4)(A) ......................................................................3, 4

31 U.S.C. § 3730(e)(4)(A)(ii) ...................................................................10

31 U.S.C. § 3730(e)(4)(A)(iii) ..................................................................10

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

31 U.S.C. § 3730(e)(4)(B) ................................................................ 12, 13

31 U.S.C. § 3731(b) ................................................................ 23

31 U.S.C. § 3731(b)(1) ................................................................ 3, 24

31 U.S.C. § 3731(b)(2) ................................................................ 3, 23, 24

31 U.S.C. §§ 3801-3812 ................................................................ 18

42 U.S.C. § 1320a-7k(d)(2) ................................................................ 25

**Rules**

Fed.R.Civ.P. 9(b) ................................................................ 17, 25

Fed.R.Civ.P. 12(b)(1) ................................................................ 4, 25

Fed.R.Civ.P. 12(b)(6) ................................................................ 25

**Regulations**

42 C.F.R. § 485.610(c) ................................................................ 7, 8, 9, 11

**Miscellaneous**

CMS Guidance, Clarification of the Critical Access Mountains
    (CAH) Criteria for Rural Location and Mountainous
    Terrain Distance Standard (April 19, 2013) ........................................ *passim*

CMS Policy, Critical Access Hospital (CAH) Recertification
    Checklist for Evaluation of Compliance with the Location
    and Distance Requirements (February 12, 2016) .............................. 11, 15

Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21 ...................... 24

Davis-Bacon Act .................................................................................. 18

Patient Protection and Affordable Care Act of 2010,
          Pub. L. 111-148 .............................................................................. 25

## INTRODUCTION

Defendant San Bernardino Mountains Community Hospital District ("**Mountains**") filed a Motion to Dismiss the First Amended Complaint on November 27, 2017. Relator, in his opposition brief, does his best to muddy clear waters. The OIG investigated/published Relator's *near exact* complaint in 2013[1] -- the OIG surveyed *all* critical access hospitals in the country (Mountains included)[2] as to whether they meet certain regulatory distance/location requirements. The OIG publicized that investigation, and it received heavy news media coverage. CMS thereafter undertook to re-double its independent survey efforts to assess CAHs location/distance, changing its process for doing so, as recommended by the OIG.

Relator did not assist with or trigger that OIG investigation. Relator, 9-10 years after being employed, brings a FCA suit cutting-and-pasting from the OIG's publicly disclosed report (but failing to disclose the Relator's source), and purporting to use some of the methodology used by the OIG in its survey. Relator was called out for copying and pasting from the report, and failing to disclose the same. Relator amends his complaint to cite his copy-and-paste source, and adds non-substantive (and non-subtantiated) information/ allegations, namely that Relator "drove the roads" (at some undetermined time), that Mountains didn't have a policy/process (that it wasn't required to have, and doesn't need to have, under the regulatory scheme in place) during his employment in 2007-2008, and that Mountains was party to a lawsuit about a different (non-similar) regulation in the mid-1990s. Relator would have the Court believe that the OIG report, which surveyed every CAH in the country, did not identify Mountains (a CAH in the country) in a "fairly identifiable way", and that his allegations, which are a mirror-image of the 2013 OIG report, are not "substantially

---

[1] Relator seems to concede in his FAC that the OIG found that Mountains met the CAH COP requirements (they did). Yet, paradoxically, this case continues.
[2] Relator's opposition brief states that the OIG's report "did not involve Mountains at all". This is a false statement by Relator.

similar" to that report. Relator provides no support for these conclusions. Relator also claims that the foregoing information is "independent of and materially adds to the publicly disclosed allegations and transactions" such that Relator is the "original source" in the alternative. Mountains respectfully submits that this Court was in possession of the exact same information as Relator – Google maps, PACER, a car, the OIG Report, Google News, and the knowledge that organizations don't adopt policies that they aren't required to/don't need to. Further, the Court will note that Relator didn't even undertake the full level of effort that the OIG did -- he merely did the "watered down" version of the OIG's exercise.

Relator's suit then attempts to substitute his judgment for that of CMS, its ROs, and the OIG, all of whom independently assessed Mountain's compliance with the distance/location requirements,[3] and whom have continued to certify/pay Mountains.

In his Opposition to Defendants' Motion to Dismiss, Relator has failed to provide this Court with a valid justification for his *qui tam* action remaining viable against Mountains. Instead, Relator attempts to depict Mountains in a sensational alleged fraudulent scheme devoid of any critical facts that meet mandated federal pleading requirement and various other statutory requirements.

Essentially, Relator's First Amended Complaint ("**FAC**") alleges that Mountains does not meet a 15-mile regulatory distance requirement as a condition of participation as a Critical Access Hospital ("**CAH**"). However, Relator still fails to plead any sufficient facts to evidence that his case should survive the public disclosure rule or show that he is an original source. Relator's deficient pleadings are the source of his own undoing in that he simply cannot plead any fraudulent, misleading, or incomplete information submitted by Mountains to a government agency for payment in accordance with applicable federal pleading

---

[3] As previously briefed, these requirements have changed dramatically over the years. A change in the definitions triggered the OIG's report in 2013. Relator does not attempt to parse whether Mountains met the distance/location requirements in their myriad changing forms over the years, rather blanket relying on the newer standards assessed by the OIG in 2013. Likewise, Relator does not plead whether the roads have remained the same over the years. Examining this is not necessary for dismissal at this stage, however.

2

standards. Instead, Relator relies upon an alleged false claim scheme that is dependent upon the allegation that Mountains does not meet a regulatory distance requirement. Without specific allegations as to the substance of what false claim or omission was made to the government, Relator is left with mere speculation and conjecture which is wholly inadequate. Moreover, Relator has failed to adequately address the application of CMS's regulatory enforcement schemes that already govern compliance with Mountains CAH certification process and the application of materiality and scienter requirements in the face of the intimate regulatory relationship between CMS and Mountains.

Next, Relator concludes that his employment with Mountains from 2007 to 2008 should not be considered as imputing knowledge for tolling the statute of limitations period – this could not be further from established law. Relator's case is barred by time.

Relator then further fails to address numerous compelling arguments in the Motion to Dismiss – the unaddressed arguments are therefore implicitly conceded and not addressed further here.

Lastly, Relator fails to show any compelling argument that his claims should not be dismissed pursuant to 31 U.S.C. §§ 3731(b)(1) and (2) and the limitations of his FCA claim(s) under 31 U.S.C. § 3729(a)(1)(G).

## **ARGUMENT**

### A.    Relator Has Failed to Plead Allegations Not Already Promulgated by Public Disclosure and Relator is Not an Original Source

Relator concedes in his brief that 31 U.S.C. § 3730(e)(4)(A) bars a *qui tam* Plaintiff from bringing a False Claims Act ("**FCA**") cause of action where:

"substantially the same allegations or transaction or transactions as alleged in the action or claim were publicly disclosed in… "(ii) a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, … unless… the person bringing the action is an original source of the information."

3

(Relator Br. at p. 3.)

However, Relator erroneously states that the burden of proof to be established for any jurisdictional challenge to Relators' complaint resides with Mountains. Furthermore, Plaintiff wrongly concludes that the *Prather* case forms the conclusion that the public disclosure bar as discussed above is only an affirmative defense with the burden shifting to Mountains. *See* Relator Br. at 5:14-21 and *Prather v. AT&T, Inc.*, 996 F.Supp.2d 861, 866 (N.D. Cal. 2013), *aff'd* 847 F.3d 1097, 1102 (9th Cir. 2017). Nothing in the *Prather* case suggested a ruling for a burden shift or the limitation of 31 U.S.C. § 3730(e)(4)(A) as an affirmative defense that could not be used in a motion to dismiss. Rather, the *Prather* Court determined that the application of the 2010 Amendments to the False Claims Act would not be retroactively implemented. *Prather*, 847 F.3d at 1102-1103. Further, the 9th Circuit has expressly held that it will continue to treat the public disclosure bar as a jurisdictional bar under Rule 12(b)(1), despite the existence of the 2010 Amendments to the FCA. *See United States v. Univ. of Phoenix*, No. 2:10-CV-02478-MCE-KJ, 2014 WL 3689764 (E.D. Cal. July 24, 2014), reconsideration denied, *424 No. 2:10–CV–02478–MCE, 2014 WL 6473794 (E.D.Cal. Nov. 18, 2014).[4][5] Plaintiff-relators bear the burden of proving that they are original sources. See, e.g., *Estate of Cunningham*, 713 F.3d at 673.

The *Alcan* case clearly establishes that Relator has the burden of proof for his false claim allegations. *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir.1999). Nevertheless, Relator has pled violations stemming from 2002 to the present.

## 1.  Relator's Allegations Are Exactly the Same (or Substantially the Same) as the 2013 OIG Report and News Media Articles.

---

[4] The Court in *Phoenix* dismissed a qui tam relator's complaint that spanned both the pre-2010 and post-2010 versions of the FCA because the allegations had been publicly disclosed and the relator was not the original source of the same (under either standard). It is an instructive case for the Court to review.

[5] In event this Court determines that the more appropriate rule for dismissing this action resides in Rule 12(b)(6) for all allegations occurring after the 2010 Amendments (contra to Phoenix), then Mountains moves this Court to decide this case under the 12(b)(6) standard as opposed to Rule 12(b)(1).

4

Relator erroneously argues that the 2013 OIG Report is not substantially the same as the allegations or transaction in Relator's FAC. The crux of Relator's erroneous argument puts his faith in the *Mateski* decision as a basis for denying Mountains' Motion to Dismiss. *See U.S. ex rel. Mateski v. Ratheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). Relator argues that *Mateski* stands for the proposition that "if fraud is disclosed previously at the highest level of generality, it cannot wipe out a later-filed qui tam action." It does not. The *Mateski* case evaluates "substantial similarity", *i.e.*, whether the fraud alleged in the complaint:

> [I]s different in kind and in degree from the previously disclosed information about VIIRS. See *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1475 (9th Cir.1996) (examining whether, "fairly characterized," the allegations in a relator's complaint "repeat[ ] what the public already knows") (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir.1992), overruled on other grounds by *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir.2015) (en banc)).

*Id.* at 578 (9th Cir. 2016)

As described in *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV081885GHKAGRX, 2016 WL 8919455, at *7 (C.D. Cal. Nov. 16, 2016), *Mateski* "clarified how to apply the "substantially similar" test where a complaint is neither "virtually identical to" nor "completely different from" the prior public disclosures. Here, the FAC is "virtually identical" to the Report, demanding dismissal under the FCA. The 2013 OIG report previously briefed by Mountains clearly shows that Relator used (and tried to hide the use of) extensive amounts of information previously disclosed.[6] Relator's allegations, "fairly characterized," "repeat[ ] what the public already knows." Even if this Court were to find that Relator's FAC is not "virtually identical", as will be demonstrated, it more than meets the "substantially similar" test set forth in *Mateski*. The Central District of California Court

---

[6] As evidenced by Mountains's demonstrative Exhibit 5 to its Memorandum in Support of its Motion to Dismiss.

reached the same finding (though it wasn't necessary) in *Kinetic Concepts*, when asked by a relator to revisit that Court's prior ruling in light of the *Mateski* case.

The *Mateski* case involved an FCA suit in which the Relator had **specific** allegations of fraud that made particularized identifications of the type of fraud allegedly perpetuated by the defendant. *Mateski*, 816 F.3d at 578. Distinct from this case, the Relator in *Mateski* was able to provide a type of fraud that was "different in kind and in degree from the previously [publicly] disclosed information." *Id.* at 578. The public reports that were previously disclosed in the *Mateski* case only described generalized problems with the defendant's work on a Visible Infrared Imaging Radiometer Suite. The most specific statement that public reports provided was that "VIIRS sensor development issues were attributed, in part, to the subcontractor's inadequate project management. Specifically, after a series of technical problems, internal review teams sent by the prime contractor and the program office found that the VIIRS subcontractor had deviated from a number of contract, management, and policy directives set out by the main office and that both management and process engineering were inadequate." *Id.* at 572. Contra this generalized statement, the relator in *Mateski* was able to cite "specific allegations, including: **creation of false waivers; improper (and forged) signoffs certifying work performed**; failure to rectify issues relating to electrostatic discharge; cross contamination of flight and non-flight quality materials; and use of prohibited materials such as tin plating." **Emphasis added**. The Court in *Mateski* ruled that these specific allegations of fraud went far beyond the type of generalized problems that were set forth in the prior public disclosures because they went beyond discussing generalized problems with the Visible Infrared Imaging Radiometer Suite's management and processes.

The facts of *Mateski* are inapposite to those of this case. Relator has no specific allegations that are different in kind and in degree from the previously publicly disclosed allegations/transactions. Rather, Relator alleges that: (1) 10 years ago Mountains did not have a policy it was *not* required to have; (2) that he found an unrelated publicly disclosed

case where Mountains was a party; (3) that he used a small subset of the survey tools/efforts used by the OIG; and (4) that he alleges more damages than the OIG did.[7] He believes this rises to the level of *Mateski* where a relator, among additional specifics, brought forth indicia of forgery and creating false waivers – it does not. Further contra *Mateski*, the August 2013 OIG Report publicly released an official report that, fairly characterized, is no different from the allegations of fraud alleged by Relator. The Report was the culmination of an investigation into **all** CAHs in the United States, Mountains included. In the Report's analysis it detailed an in-depth investigation of road data, addresses, information from state agencies, surveys of necessary provider status, and various other informational databases to conclude that many CAHs would not meet the location requirements identified in 42 C.F.R. § 485.610(c). (*See* 2013 OIG Report, pgs. 8-9, 12, and 26-27). In addition, the OIG performed an extensive investigation of CAHs in the country utilizing the CMS CASPER database, road data, Google Maps, and state highway data. (*Id.* at p. 12). This OIG investigation consisted of reviewing, measuring, and analyzing CAHs that either met or did not meet the 15-mile or more requirement through either mountainous terrain or on secondary roads. (*Id*). The OIG specifically found that nearly two-thirds of CAHs may not meet the location/distance requirements. (*Id.* at p. 15). In addition, numerous news articles are cited by Mountains in its Memorandum in Support of its Motion to Dismiss at page 11 that show plenty of discussion about distance requirements during the CAH certification process. In *Mateski*, generalized allegations of mismanagement were alleged, and Relator

---

[7] Briefly, the OIG Report looked at damages in the context of the difference in what it would have paid hospitals if they were enrolled as standard hospitals paid on a PPS system, versus CAHs paid on a cost-plus system. In other words, the OIG looked at the delta/difference between payment rates if a CAH were not to meet location/distance requirements. Relator tries to make a difference out of nothing here, and reveals the desperation of his position. Were Relator to have an actual case (he doesn't), it is well established that damages would be based on the difference between what was paid (CAH rates)/what was allegedly actually owed (standard hospital rates).

Likewise, Relator seems to argue that because the OIG examined location/distance at a singular point in time, that there was not a public disclosure/Relator is an original source. This borders on farcical.

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

brought forth specifics that were genuinely new and material and different in kind from what had been publicly disclosed (*i.e.*, forgeries and false documents). In the case at hand, the OIG found that many CAHs will not meet CAH distance requirements – the Relator alleges that Mountains will not meet CAH distance requirements, and that he parrotted (in an abbreviated fashion with less effort) the OIG's methodology and found the same.

It is illuminating to consider the foregoing in light of the specificity needed to at least adequately identify an alleged fraudulent scheme. Relator's allegations do not come close. First, Relator argues that he allegedly uncovered an actual undefined scheme in which Mountains failed to implement a policy or procedure to ensure necessary compliance with Medicare requirements and made an alleged undefined "erroneous representation" (FAC ¶¶ 28, 35, and 42). *See also* Relator Br. at 7:15-21. In no way does Relator describe what the alleged "erroneous representation" is or how Mountains would run afoul of applicable law. In fact, Relator's FAC is devoid of any specific knowledge or allegations on his part regarding Mountains's CAH certification process, which is one of the central fatalities of his FCA claims. Equally fatal is Relator's inability to allege what specific policy or procedure should have been implemented in the face of a specific area of government scrutiny.

In addition, Relator improperly relies upon previous (publicly disclosed) litigation by Mountains in the Central District of California. *See San Bernardino Mountains Community Hosp. Dist. v. Secretary of Health & Human Servs.*, 63 F.3d 882, 886 (9th Cir. 1995). This case was a regulatory case that involved the determination of whether Mountains met regulatory qualifications for sole community hospital status (which has nothing to do with whether Mountains meets the distance requirements of 42 C.F.R. § 485.610(c) to be a CAH). Further, Relator fails to allege what non-required policy or procedure should have been in place because he is unable to adequately articulate the exact nature of the alleged false scheme or false claims. Indeed, the reader of Relator's FAC is at a loss as to what specific misrepresentations or omissions were made during Mountains's CAH certification or recertification process. Accordingly, Relator's argument that "the Inspector General Report

8

would prevent any relator from ever bringing a qui tam case against any CAH alleging a fraud related to the location requirements" rings hollow. (Relator Br. at 8:21-24).

Second, Relator falsely argues that Mountains was not involved in the OIG report. (Relator Br. p. 7:22-24). Mountains was surveyed in this report, and Relator knows it.[8] As stated previously, Mountains, an established CAH since 2001, was clearly part of the OIG's national review of the 1,329 CAHs in the country in which the report determined that two-thirds of CAHs did not meet the location/distance requirements of 42 C.F.R. § 485.610(c). *See* 2013 OIG Report, at pgs. 12 and 15. Relator mistakenly concludes that just because Mountains was not specifically identified as one of the CAHs surveyed or found to be in noncompliance he has established that he is providing profound insight as to regulatory distance requirements not known to the government. To the contrary, Relator has not alleged anything novel or specific but, in fact, has done nothing more than mirror provisions of the 2013 OIG report. In addition, the allegation that he knows of continuing violations of the fraudulent scheme when he only worked at Mountains from 2007 to 2008 is wholly inadequate to allege over 16 years of alleged fraud violations.

Third, Relator claims that the 2013 OIG Report only speaks of specific generalities in terms of savings to the government, but that Relator has the ability to determine Mountains's alleged monetary fraud. Again, Relator offers no foundation for this assertion other than pure speculation because he only worked for Mountains for roughly a year from July 1, 2007, through November 24, 2008. Moreover, merely stating an estimate of damages based upon speculative claim submissions does not equate to allegations of fraud. In addition, this information is readily and routinely made available to the public through

---

[8] See, Relator's FAC, where Relator concedes that the OIG, in 2013, found that Mountains met the distance/location requirements. (¶¶ 25-26).

Through FOIA requests, the OIG has confirmed the obvious to counsel for Mountains, that Mountains was surveyed as part of the 2013 Report and that Mountains met the distance requirements at that time. This extrinsic evidence is not necessary here, however, since Defendant is seeking relief via a Motion to Dismiss and not a Motion for Summary Judgment.

financial disclosures with the State of California's Office of Statewide Health Planning & Development System for integrated Electronic Reporting and Auditing.[9] Accordingly, Relator is not adding anything novel or not already known to the government.

For all of the reasons mentioned above Relator's claims and allegations are subject to the public disclosure bar. As stated in *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999), which was affirmed in the *Mateski* case cited by Relator, the jurisdictional bar against a relator's claims is engaged where the prior public disclosures contained enough information to enable the government to pursue an investigation. The 9th Circuit has determined that the public disclosure bars of 31 U.S.C. § 3730(e)(4)(A)(ii)-(iii) are triggered where (1) public allegations of fraud substantially similar to the one described in the FCA complaint are disclosed, and (2) enough information is publicly disclosed regarding fraudulent transactions so the government is on notice to either investigate further or to decide whether to proceed with its own claim. *Alcan*, 197 F.3d 1014 at 1018-1020. It is not a requirement that the public disclosure even name the defendant, "provide explanatory details, or to have alleged overcharging, false-invoicing, false certification, or any other specific fraud." *Id.* at 1019.[10] No specific allegations of fraud from the public disclosure need be made to qualify under the statute. *Id.* The public disclosure only needs to provide the government with enough information to pursue an investigation should it choose to do so. *Id.*

Moreover, Relator places far too much emphasis on his (purported) scant allegations of fraud in his own complaint. Relator adds nothing new to a highly regulated area of CMS oversight. The Department of Health & Human Services ("**HHS**") and CMS have established a rigorous policy for CAH certification and recertification. *See* 2016 CMS Critical

---

[9] *See* https://siera.oshpd.ca.gov/FinancialDisclosure.aspx. Relator, incidentally, has inaccurately tallied his cited totals in his FAC.

[10] See also *United States ex rel. Gear v. Emergency Med. Assoc. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006) ("Industry-wide public disclosures bar qui tam actions against any defendant who is directly identifiable from the public disclosures.").

Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements. Accordingly, CMS has set standards for certifying and recertifying the distance requirements as required by 42 C.F.R. § 485.610(c), *Id.* at p. 1 and 5. Under these standards, Regional CMS Offices ("**ROs**") (not Mountains) complete a CAH Recertification Checklist for evaluating, determining, and documenting compliance with the CAH's location-related conditions of participation including all of the distance requirements as mandated by 42 C.F.R. § 485.610(c). *Id.* Unlike *Mateski*, this case does not present genuinely new and material information, and thus there is no threat of generality that would inappropriately wipe out *qui tam* suits that rest on the same. *Mateski*, 816 at 577. Moreover, the *Alcan* court held that where the government is the regulator and owner, it presumably would have ready access to documents identifying issues of false claims or fraud thus giving rise to a public disclosure. *Alcan*, 197 F.3d at 1019. The Government, in this case went through a rigorous investigation process as evidenced in the 2013 OIG Report that far exceeded Relator's mirrored allegations (*i.e.*, utilizing the CMS CASPER database, road data, Google Maps, state highway data, information from state agencies). (2013 OIG Report, pgs. 8-9, 12, and 26-27). Relator, on the other hand, merely purports to have driven a route and relied upon Google Maps to formulate his own alleged speculative conclusion that Mountains did not meet the distance requirements. (FAC ¶ 31).

Finally, Relator makes much of the 2010 FCA Amendments changing the language from "based upon" to "substantially similar". Yet, Relator does not examine his pre-2010 claims under the pre-2010 standard beyond stating that his complaint, which copied and pasted from the 2013 OIG Report without attribution, was not "even 'based upon' that Report". This fails. As in *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013), unexplained similarities between Relator's Complaint and a public disclosure OIG report "serve as 'significant proof' that the substantive allegations were actually derived from the Audit Report [OIG 2013 Report]". It is not necessary for this Court or Mountains to delve into the fact that Relator's claims period spans two purportedly different FCA standards. His

claims clearly fail under the current public-disclosure bar, which, according to Relator, is more stringent than the pre-2010 bar.

The purpose of the public-disclosure bar is to encourage suits by whistleblowers with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own to contribute. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294–95; 130 S.Ct. 1396; 176 L.Ed.2d 225 (2010). As a result, Relator's claims fail to provide information that is either genuinely new or material in light of previous public disclosures. Accordingly, Relator's claims should be dismissed pursuant to the public disclosure bar.

### 2.  Relator Does Not Qualify as an Original Source.

Relator concedes that according to 31 U.S.C. § 3730(e)(4)(B), an original source is identified as an individual who either:

> "(i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) **who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, _and_ who has voluntarily provided the information to the Government before filing an action under this section.**"

31 U.S.C. § 3730(e)(4)(B) (2010). *Emphasis added.*

It should be noted that for all allegations alleged before the 2010 Amendments to the FCA, the standard was that an original source was an individual who:

> (1) has direct and independent knowledge of the information on which the allegations in his court-filed complaint are based *and*
>
> (2) has voluntarily provided the information to the Government before filing his civil action.

31 U.S.C. § 3730(e)(4)(B) (2009). *Emphasis added.*

It is not necessary at this time for this Court or Mountains to delve into the fact that Relator's claims-period spans two purportedly different FCA standards of who is an "original source". His claims clearly fail under the current standard, which, according to Relator, is more stringent than the pre-2010 standard.

***No Voluntary Provision.*** Notably, Relator does not plead anything to back up his claims that he "has voluntarily provided the information to the Government before filing his civil action" as required to be an original source both pre- and post-2010. Relator has failed to allege -- prior to public disclosure -- whether he voluntarily disclosed to the Government the information on which the allegations in his claims are based, or whether he voluntarily provided the information to the Government before filing his FCA action. *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 741 (9th Cir. 1995). Accordingly, his argument that he is an original source fails at its inception since Relator bears this burden of proof in establishing jurisdiction. See *United States v. Univ. of Phoenix*.

***No Material/Independent Knowledge.*** Relator argues that he is an original source because he allegedly has independent knowledge that materially adds to the publicly disclosed 2013 OIG Report. However, to be an original source, Relator must meet the requirements of 31 U.S.C. § 3730(e)(4)(B) in that he must have firsthand knowledge that is [1] independent of and [2] materially adds to the publicly disclosed allegations or transactions. In addition, a relator has independent knowledge when he knows about the allegations before that information is publicly disclosed. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1202 (9th Cir. 2004). Relator's copy-and-paste use of extensive amounts of information previously publicly disclosed in the 2013 OIG Report shows that he fails here.

As discussed in *United States v. Univ. of Phoenix*, No. 2:10-CV-02478-MCE-KJ, 2014 WL 3689764, at *9 (E.D. Cal. July 24, 2014), the test for establishing independent knowledge is an exacting one. To demonstrate such knowledge, a relator must "show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his own labor unmediated by anything else." *Alcan Elec. & Eng'g*, 197 F.3d at 1020. If the relator

13

"never participated in the negotiation, drafting or implementation" of the allegedly fraudulent program (here Mountains' certification process), he lacks such knowledge. *Id.* at 1021; see also *U.S. ex rel. Devlin v. State of California*, 84 F.3d 358, 361 & n. 4 (9th Cir.1996) (relators were not original sources because they did not see the fraud with their own eyes or obtain their knowledge of it through their own labor, but derived it secondhand).

The only foundational background about the basis for Relator's information is: 1) that he was the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008; 2) that Mountains allegedly didn't have a (non-required) policy in 2007/08 regarding re-doing the RO's survey/certification efforts; and 3) that he "verified" his flawed interpretation of the distance/location requirements by purportedly driving the route and using Google Maps. (FAC ¶¶ 7, 42, and 31)).

A FCA relator must state with sufficient specificity the basis for his or her insider knowledge supporting allegations of false claims within the complaint. *United States ex rel. Bly–Magee v. Premo*, 470 F.3d 914, 917 (9th Cir. 2006). Relators do not have direct independent knowledge when they do not see fraud with their own eyes or obtain knowledge of the fraud through their own work without intervention by anything else. *United States ex rel. Devlin v. California*, 84 F.3d 358, 361 (9th Cir. 1996). A relator does not have direct knowledge when he learned of the alleged fraud merely because of his or her position within a company. *Alcan*, 197 F.3d at 1020-21. Even after amending his claim, Relator gives no independent or additional material information within his FAC to illustrate how he would be in a position to know what Mountains allegedly omitted or represented during approximately 16 years of its CAH certification and recertification. In addition, merely citing the alleged submission of standardized forms available to the general public (*e.g.*, CMS Form 2552 and 855A) is an insufficient basis for independent knowledge that materially adds to the already publicly-disclosed information. (FAC ¶¶ 32, 33, 34, 35, 38, and 40).

Furthermore, Relator has not provided any information that was unknown by the OIG when it publicly disclosed his allegations in its OIG 2013 CAH Distance

14

Audit/Investigation. Although Relator conclusorily argues, without specificity, that he was exposed to Mountains's alleged misconduct "first-hand through his access to relevant documents…day-to-day work, and employment as the CFO for Mountains," he provides no information about his involvement in Mountains certification process/compliance with distance requirements, which is the critical point of his case. (Relator Br. at 11:25-27).

In fact, Relator either misinterprets or seems to not understand that CMS RO regulations show that the CMS RO *independently* certifies, investigates, and evaluates Mountains's CAH distance and location requirements. (2016 CMS Critical Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements). As a result, his allegations that certain non-required policies and procedures should have been implemented to account for undefined violations of law do not make sense – he cannot establish exactly how and in what way Mountains made fraudulent omissions or representations that would give rise for the need of a particularized compliance program. Although Relator cites to several cases citing the possibility that the failure to incorporate policies and procedures may lead to possible FCA violations, none of those cases account for a situation in which Mountains allegedly should have a process/policy to ensure geographical distance requirements that have been previously independently examined and certified/recertified by the government. (Relator Br. at 13:4-19).

Despite Relator's contentions to the contrary, he simply was not in a position to have "insider information" that would put him in a position to allege whether Mountains: 1) made false omissions or representations concerning its CAH status; and 2) implemented a policy or procedure for compliance. Relator was only employed by Mountains from July 1, 2007, through November 24, 2008, as the CFO, and was not in a role privy to CAH compliance. Accordingly, he would not be in a position to know what claims were submitted, what policies were implemented, or what representations or omissions were made concerning Mountains's CAH certification and recertification process over an approximate 15-year period.

15

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475 (2007) provides specific guidance to this point. In *Rockwell*, the relator was no longer employed by the company during the time period of his allegations and did not actually witness any fraud during his employment. *Rockwell*, 549 U.S. at 460-461. As a result, he did not know sufficient particulars about whether the defendant made false statements to the government. *Id.* at 475. Similarly, not only does Relator insufficiently allege any false statements or omissions, he was also not in a position of knowledge within his employment at Mountains to add material facts underlying an alleged actual fraudulent scheme. Nowhere in Relator's complaint does he allege that he was the compliance officer or that he was intimately involved in Mountains's CAH certification or recertification process. Accordingly, Respondent cannot use conjecture, prediction, or speculation as to what statements or procedures should have been implemented by Mountains. *Id.*

Finally, Relator attempts to mislead the Court with cases regarding FCA scienter standards, which add nothing to the issue at hand when discussing was Relator an "original source" – did Relator have knowledge that was (a) independent of, and (b) materially adds to, the government's knowledge of the publicly-disclosed allegations or transactions? He does not.[11] Relator's complaint copied and pasted from the 2013 OIG Report without attribution. As in *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013), unexplained similarities between Relator's Complaint and a public disclosure OIG report "serve as 'significant proof' that the substantive allegations were actually derived from the Audit Report [OIG 2013 Report]". Relator's FAC is hardly "independent of" the OIG 2013 Report – it copied and pasted the report and parroted its analysis without attribution to the same. "As a matter of law, Relator[s] cannot claim to be an original source of information

---

[11] Relator makes much of the 2010 FCA Amendments purportedly lowering the "original source" standard. Yet, Relator does not examine his pre-2010 claims under the pre-2010 standard beyond the barest of assertions.

derived from third parties." *See U.S. ex rel. Smith v. Yale Univ.*, 415 F.Supp.2d 58, 77 (D.Conn.2006).

Relator also argues that allegations in his FAC "materially" adds information that was not otherwise known by the government before the filing of his FAC in 2017. (Relator Br. at 12:10-13). As stated in *United States v. Univ. of Phoenix*, No. 2:10-CV-02478-MCE-KJ, 2014 WL 3689764, at *9 (E.D. Cal. July 24, 2014), even "independent" knowledge of allegedly fraudulent activity (which Relator does not have) does not "materially add" to publicly disclosed allegations unless it is "qualitatively different" from information already discovered and not "merely the product and outgrowth of publicly disclosed information.". *Citations omitted*. Here, as discussed at length above, Relator does not offer information that is qualitatively different from the OIG's 2013 Report. As further discussed at length above, Relator brings nothing new or material to the table in his FAC. He simply stumbles upon the OIG's 2013 report, copies-and-pastes its exact text without attribution, then frantically tries to spin a non-existent tale to avoid the consequences of filing a baseless action. This Court should not allow Relator to waste the Court's time, or Mountains' resources.

**B.   Relator Did Not Plead His Claims with Sufficient Particularity.**

A complaint brought under the Civil FCA, 31 U.S.C. § 3729, must comply with Rule 9(b). *See Ebeid, M.D., ex rel., United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010).

In dismissing the plaintiff's complaint for failure to comply with Rule 9(b), the Court in *Ebeid*, set forth the requirements of Rule 9(b):

> . . . "[I]n alleging fraud or mistake," Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). In addition, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed. Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

17

616 F.3d at 998. *See also United States ex rel. Mateski v Raytheon Co*, No. 206CV03614ODWKSX, 2017 WL 1954942, at *3 (CD Cal February 10, 2017) (a claim under an implied false certification theory requires specific representations to be actionable)

Relator still fails to properly identify an alleged fraudulent scheme. He simply cannot explain how and why Mountains's alleged claims to a federally-funded program were false or fraudulent. Furthermore, he cannot articulate any material false representations or omissions made by Mountains to CMS that would give rise to a fraudulent scheme. As a result, Relator's deficient pleadings merit dismissal rather than an amendment. In further support, Mountains relies on its arguments in its Memorandum in Support of its Motion to Dismiss.

## C.     Relator's FCA Claims are Inappropriate When Other Regulatory Enforcement Schemes Govern Compliance Certification.

This Court, and several others, have determined that claims for fraud "are disfavored if made by third parties who seek to second guess a decision by the [Food and Drug Administration ("FDA")] to certify a device." *See United States ex rel v Medtronic, Inc.*, No. LACV1501212JAKASX, 2017 WL 4023092, at *7 (C.D. Cal. September 11, 2017). In the Government's statement of interest, it is stated that FCA claims are appropriate even when a regulatory enforcement scheme exists. Mountains agrees with this general proposition, however; in this case the regulatory scheme is based upon independent certification and recertification (much like the FDA's process) which is not the typical garden variety FCA action. In support of its statement, the Government cites to the Program Fraud Civil Remedies Act (31 U.S.C §§ 3801-3812), the Davis-Bacon Act, and *U.S. ex rel. Wall v. Circle C Construction*, 697 F.3d 345, 357 (6th Cir. 2012). None of these statutes or programs involve the certification or recertification of CAH status or 510(k) approval of a medical device. Relator has chosen to remain silent on this argument.

In *Medtronic* the relator brought an FCA complaint alleging that the medical device at issue between the parties to the case was not eligible for purchase by Medicare, Medicaid or any other health insurance program funded by the United States. *Id*. at *7. The relator in this

18

case alleged that the Food and Drug Administration ("**FDA**") did not authorize the medical device at issue for thoracocolumbar (back) uses because the device was designed for cervical (neck) use and, as such, the authorization was improper. In short, relator pled that Medical devices without FDA certification through a § 510(k) clearance cannot form the basis for a request for reimbursement under Medicaid. If such a request were submitted to the government for reimbursement for the cost of the use of an uncleared or approved device then it would constitute a false claim under the FCA.

The court in *Medtronic* held that claims of fraud are disfavored if made by third parties second guessing a decision by the FDA to certify a device. *Id.* Relator's claims in this case are, in effect, a challenge of the independent decision of CMS/its ROs to grant CAH certification/ recertification just as the relator's pleadings in *Medtronic* were a challenge to the FDA's decision to grant clearance for a medical device. *Id.* In support of its reasoning, the court in *Medtronic* stated that the FDA has adequate "enforcement jurisdiction and processes to police FDCA violations, including fraudulent submissions made in connection with an approval or clearance." *Id.* "The remedies available to the FDA include enjoining violations (*see* 21 U.S.C. § 332), seizing unauthorized or misbranded devices (*id.* § 334(a)(2)(D)), or pursuing a criminal prosecution. *Id.* § 333(a)." In conclusion, the court in *Medtronic* stated that allegations of fraud stating that a defendant misled the FDA during the § 510(k) certification process is not proper for a FCA action. *Id.* (*citing United States ex rel. D'Agostino v. EV3, Inc.*, 153 F.Supp.3d 519, 539 (D. Mass. 2015) ("[A]n FCA action is not the appropriate vehicle for this court to exercise its judgment in second-guessing decisions taken by the FDA in approving the use of medical devices simply because the government happens to pay for some of them."); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997) ("[C]laims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA."); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."))

Here, CMS and its ROs have been given similar resources, enforcement jurisdiction, and regulatory authority to monitor and regulate any CAH that does not meet distance and location requirements. CMS places this determination burden on the RO, and does not rely on the CAH's representations. CMS has its own enforcement and decertification methods to deal with CAHs that do not meet CAH certification standards. CMS already has set standards for annually certifying and recertifying the rural, distance, and necessary provider verification of CAHs. Even if this Court were to take Relator's facts and allegations as true, the remedy for the discovery of a CAH distance deficiency (of the type alleged by the OIG in its 2013 report) in CMS's certification process is possible revocation of CAH status and further administrative relief afforded by law, not an FCA claim. Relator should not be permitted to second guess the CMS RO's independent determination of CAH status (see, *Medtronic*) to harass his former employer with a baseless FCA suit. As a result, Relator's claims against Mountains are inappropriate and must be dismissed.

## D.   Relator's FCA Claims Still Lack Materiality, Knowledge, and Intent.

Relator alleges an implied false certification theory. This theory fails because Relator cannot articulate what implied false certification was made by Mountains (even in the generic, non-Mountains specific forms he cites). The 9th Circuit in *Ebeid* determined that false certification claims have four elements: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Ebeid, M.D., ex rel.*, 616 F.3d at 997 (*citing United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

The Government in this case has also filed a Statement of Interest correctly indicating that the U.S. Supreme Court in *Escobar* determined that implied false certification liability attaches when a defendant submits claims for payment about services provided, "but fails to disclose noncompliance with *material* statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services." *Universal*

20

*Health Services, Inc. v United States ex rel Escobar*, 136 S.Ct. 1989, 1993–94; 195 L.Ed.2d 348 (2016) (emphasis added). In addition, the Government correctly concludes that actual knowledge by the government that certain requirements were violated combined with regular payment of a particular claim in full, with no signal of a change in position, is strong evidence that those requirements are not material. (Government Statement of Interest at 4:19-22).

However, contra the United States' Statement of Interest, the Ninth Circuit has stated in *United States ex rel. Kelly v. Serco, Inc.*, --F.3d--, No. 14-56769, 2017 WL 117154 (9th Cir. Jan. 12, 2017) its opinion that an FCA claim under an implied false certification theory requires that claims contain specific representations to be actionable in light of *Escobar*. This interpretation has been adopted by this Court as well. *See United States ex rel. Mateski v Raytheon Co*, No. 206CV03614ODWKSX, 2017 WL 1954942, at *3 (CD Cal February 10, 2017). Most notably, the Central District has held that "mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain "***specific representations*** about [the defendant's] performance." *Mateski*, No. 206CV03614ODWKSX, 2017 WL at *5 (citing *Kelly* at *6). (emphasis added)

Relator has failed to make any showing as to what specific representations were made so as to provide a viable implied false certification theory. Once again, he alleges no facts that establish Mountains making any specific false representations during its CAH certification or recertification process because he was never a part of that process. Instead, Relator attempts to make conclusory statements of a fraudulent scheme that are unsupported by factual allegations. Accordingly, Relator has fails to sufficiently plead any false representation or fraudulent scheme made by Mountains (much less a failure to disclose purported noncompliance). As a result, his FAC must be dismissed.

Relator next contends that scienter is not required to be specifically pled but may be generally alleged. (Relator Br. at 15:10-11). However, he misses the point of Mountains's briefing. The issue is whether Relator has sufficiently pled sufficient facts establishing that

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

Mountains knowingly violated a requirement, or provided false information, it knew to be material to the government's decision to pay the claim. *United States ex rel Escobar*, 136 S.Ct. at 1994. The scienter requirement in any FCA claim requires a showing that the person or entity actually knew of the information at issue and either acted in deliberate ignorance of the truth or falsity of the information or acted with reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A).

The U.S. Supreme Court in *Escobar* has stated that the FCA's materiality standard is demanding. *Id.* A misrepresentation is not material merely because the Government specifies "compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 2003. Moreover, if the government pays a claim in full despite actually knowing that certain requirements were potentially violated (*e.g.*, after the OIG 2013 CAH Distance Audit/Investigation, or Mountains' repeated certification surveys by an RO), that is "very strong evidence that those requirements are not material."

According to Relator's FAC, since 2002, Mountains has been certified as a CAH and has submitted medical claims for payments to Medicare. (FAC ¶ 29). This, in turn, necessitated Mountains to have applied for CAH certification and recertification to CMS. Accordingly, any alleged false claim or claims made by Mountains due to an omission or false statement in its CAH certification process (such as Mountains giving a false address, or giving false mileage,[12] none of which are alleged by Relator), has already been allegedly paid by CMS to Mountains. CMS continues to make payments despite being on notice with the 2013 OIG Report and the filing of Relator's January 3, 2017, Complaint. Accordingly, the government was already apprised of any alleged FCA violations.

The 9th Circuit has found the requisite scienter requirement to be lacking in situations where the government has made payments despite its knowledge about alleged false certifications during the claim submission process. *See United States ex rel. Hooper v. Lockheed*

---

[12] ROs determine mileage, not the CAH.

*Martin Corp.*, 688 F.3d 1037, 1050-51 (9th Cir. 2012) (no fraud where the Air Force knew of testing methods used, even though they did not comply with contract); *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999) (government knowledge of an improper claim negates falsity and intent). Moreover, if the government pays a claim in full despite actually knowing that certain requirements were potentially violated (*e.g.*, after the OIG 2013 CAH Distance Audit/Investigation, or Mountains' repeated certification surveys by an RO), that is "very strong evidence that those requirements are not material." *See also United States v. Sanford-Brown, Ltd.* 840 F.3d 445, 447 (7th Cir. 2016) (emphasizing that the government already examined the defendant's conduct "and concluded that neither administrative penalties nor termination was warranted."). Accordingly, Relator and the government have waived claims against Mountains for the causes of action alleged in the FAC.

### E.  Relator's Claims are Barred by the FCA Statute of Limitations

Relator concedes that he cannot rely on any claims for payment that Mountains filed before January 3, 2007. (Relator Br. 17:15-16). 31 U.S.C. § 3731(b) provides for a 6-year statute of limitations for FCA claims. 31 U.S.C. § 3731(b)(2) provides for an additional tolling-period if certain conditions are met. Relator does not meet the tolling requirements, and his complaint is thus time barred. In *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1214 (9th Cir. 1996), the United States Court of Appeals for the 9th Circuit unequivocally determined that FCA actions "must be commenced no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last." Relator should have filed in 2013 (or 2014, at best).

*Hyatt*, 91 F.3d at 1217, quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396; 66 S.Ct. 582, 584 (1946), makes it clear that the benefit of the 31 U.S.C. § 3731(b)(2) tolling provisions runs once the Relator knew or should have known the facts material to his right of action. *Id.*

at 1217-1218. Relator has alleged that he worked as the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008. (FAC ¶ 7), and that he was allegedly "exposed to Mountain's Hospital's misconduct first-hand, through his access to relevant documents, and through his day-to-day work, and employment as the CFO for Mountains Hospital…" (Relator Br. 11:25-27 and FAC ¶¶ 26, 29-31, 40-43). Accordingly, Relator either knew or should have known about Mountains's alleged fraudulent CAH status during his employment with Mountains from July 1, 2007, through November 24, 2008. However, instead of filing his case within the six-year statute of limitations period (regardless of which date), Relator filed his claim nearly four years after the statute of limitations had lapsed. This practice runs afoul of the *Hyatt* court's ruling which expressly forbade this practice because it would frustrate the purpose of the statute of limitations period and the FCA. *Id.* at 1218. *Qui tam* relators cannot be allowed to sit on their laurels, wait nearly ten years to sue, and allow alleged fraud losses to mount. *Id.* at 1218. Accordingly, Relator is subject to the 6-year statute of limitations beginning during his employment with Mountains, thus barring his FCA claims. As is apparent from the face of his complaint, Relator has pled no facts (nor could he) supporting why he should escape the 6-year statute of limitations of 31 U.S.C. § 3731(b)(1) or be allowed to toll under 31 U.S.C. § 3731(b)(2). Relator cannot rely on his brief employment by Mountains to attempt to overcome that his suit was barred by public disclosure, then attempt to escape the fact that his reliance is time-barred based on his employment. As in Hyatt, Relator "cannot have it both ways". *Id.* at 1218.

## F.   Relator's Reverse FCA Claims Against Mountains are Limited

Under 31 U.S.C. § 3729(a)(1)(G), Relator has claimed that Mountains knowingly failed to return wrongfully-obtained money to Medicare. (¶ 55). As amended on May 20, 2009, by FERA, the FCA defines an "obligation" as "an established duty, whether or not fixed, arising … from the retention of an overpayment." 31 U.S.C. § 3729(b)(3). However, before May 20, 2009, there was no provision under the FCA imposing liability for knowingly failing

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the First Amended Complaint for Violation of the Federal False Claims Act Under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6)
Case No.: 5:17-cv-00002-JGB-KK

to return an overpayment to a federal program. The statute did not address its retroactive effect. PPACA became effective on March 23, 2010. 42 U.S.C. § 1320a–7k(d)(2).

Due to the possible retroactive application of both 31 U.S.C. § 3729(b)(3) and 42 U.S.C. § 1320a–7k(d)(2), Relator's claims under 31 U.S.C. § 3729(a)(1)(G) are limited to all claims after May 22, 2010, sixty days after the passage of PPACA. See *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); see also *Labojewski v. Gonzales*, 407 F.3d 814, 819 (7th Cir. 2005). Like other arguments advanced by Mountains, Relator has failed to adequately address this issue in his brief. Since neither FERA nor PPACA have clear statements about retroactivity, Relator's claims under 31 U.S.C. § 3729(a)(1)(G) should be limited as they pertain to allegations before May 22, 2010. *See U.S. ex rel. Stone v. Omnicare, Inc.*, 2011 WL 2669659 (N.D. Ill. Case No. 09-cv-4319, July 7, 2011). However, this issue should be moot, since Relator is precluded from bringing a claim, as demonstrated above.

## **CONCLUSION**

As previously briefed, there is a reason that there has not been a flood of FCA litigation regarding CAH distance/location claims. Any individual could take the OIG's 2013 report, purportedly drive the route, consult Google maps, claim that any random CAH does not have a non-required policy, and attempt to extract a settlement. Allowing this suit to proceed would open the door for a flood of parasitic FCA claims. Plaintiff brings nothing forward. Plaintiff's Amended Complaint should be dismissed for failure to comply with Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6). Mountains respectfully requests sanctions, fees, costs, expenses, and attorneys' fees against both Relator and Relator's counsel.

Dated: January 16, 2018

Respectfully submitted,
THE HEALTH LAW PARTNERS, P.C.
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
SAN BERNARDINO MOUNTAINS
COMMUNITY HOSPITAL DISTRICT

## PROOF OF SERVICE

**STATE OF MICHIGAN, COUNTY OF OAKLAND**

    At the time of service, I was over 18 and **not a party to this action**. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

    On January 16, 2018, I served true copies of the foregoing document(s) described as **DEFENDANT SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT UNDER FED.R.CIV.P. 9(b), 12(b)(1), AND 12(b)(6)** on the interested parties as follows:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on January 16, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre
Marianna M. McIntyre

4849-1896-6618, v. 6

2