UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-02 JGB (KKx)** | Date | January 29, 2018 |
| Title | *United States of America, et al. v. San Bernardino Mountains Community Hospital District, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Esperanza Cervantes Anderson | Clinton Royce Mikel |

**Proceedings:**   Order (1) GRANTING Defendant's Motion to Dismiss

   Before the Court is Defendant San Bernardino Mountains Community Hospital District's Motion to dismiss Relator Frank Adomitis's First Amended Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. ("Motion," Dkt. No. 19.) The Court held a hearing on the Motion on January 29, 2018. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

## I.  BACKGROUND

### A.  Procedural Background

   On January 3, 2017, Relator Frank Adomitis filed a complaint, on behalf of the United States of America, against Defendant San Bernardino Mountains Community Hospital District ("Mountains," (Dkt. No. 1.) The United States filed its notice, declining to intervene on May 10, 2017. (Dkt. No. 6.) After Defendant moved to dismiss, Relator filed his First Amended Complaint on November 13, 2017. ("FAC," Dkt. No. 17.) Relator's FAC raises three causes of action: (1) presentation of false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A); (2) using false statements or records to receive false payments under the FCA, 31 U.S.C. §3729(a)(1)(B); and (3) failing to refund overpayments owed to the government in violation of 31 U.S.C. § 3729(a)(1)(G). (See FAC.)

Mountains moved to dismiss the FAC on November 27, 2017.[1]  (Dkt. No. 19.)  Relator opposed the Motion on January 8, 2018.  ("Opposition," Dkt. No. 20.)  Also on January 8, the United States filed a statement of interest regarding specific issues raised in the Motion.  ("U.S. Statement," Dkt. No. 21.)  Mountains filed its reply on January 16, 2018.  ("Reply," Dkt. No. 22.)[2]

**B.  Overview of Medicare Reimbursement Program**

The United States Department of Health and Human Services, through its Centers for Medicare and Medicaid Services (CMS), administers the Medicare program.  (FAC ¶ 13.)  CMS pays Medicare claims received from hospitals, such as Mountains, and all such claims are paid with federal funds.  (Id.)

In 1997, the Balanced Budget Act ("BBA") created the Critical Access Hospital (CAH) certification.  (Id. ¶14.)  CAHs are reimbursed differently by Medicare than other acute care hospitals.  (Id. ¶ 15.)  CAHs receive 101% of Medicare's share of their reasonable and allowable costs for outpatient, inpatient, laboratory, "swing bed," and ambulance services.  (Id. citing 42

---

[1] Along with its Motion, Defendant filed a Request for Judicial Notice.  (Mot. at 8-9.)  Defendant asks the Court take judicial notice of (1) the Centers for Medicaid and Medicare Services' (CMS) April 2013 guidance on Critical Access Mountains Criteria, (2) an August 2013 Office of Inspector General report on Critical Access Hospitals, (3) the CMS February 2018 recertification checklist for CAHs, and (4) listings of news media and legal journals covering CAH distance requirements and certification.  (Id.)  A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The Court finds that Exhibits 1-3 are proper subjects of judicial notice, as these are government agency documents in the public record and their accuracy "cannot reasonably be questioned."  See, e.g., Paralyzed Veterans of America v. McPherson, 2008 WL 4183981, at *6 (N.D. Cal. Sep. 9, 2008) (taking judicial notice of documents on the California Secretary of State's website); United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citation omitted) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet.").  However, the news articles may be reasonably disputed and may state facts whose accuracy can reasonably be questioned.  See Alabama Aircraft Indus., Inc.-Birmingham v. United States, 82 Fed. Cl. 757, 765 (2008) (denying judicial notice of a report in the New York Times because it was not necessarily indisputable).  Accordingly, the Court GRANTS the Request for Exhibits 1-3, and DENIES the Request for Exhibit 4.

[2] Pursuant to the Court's standing order, replies should not exceed 12 pages, without prior application to the Court.  Defendant's Reply was 25 pages long.  Although the Court considers the entire Reply, Defendant is advised that next time it fails to comply with the Court's standing order, the Court will not be as lenient.

C.F.R. §§ 413.70, 413.114.)  Conversely, traditional hospital facilities are paid under Prospective Payment Systems, which feature fixed and capped Medicare reimbursement.  (Id.)  CAH payments are based on each CAH's reasonable and allowable costs and the share of those costs allocated to Medicare patients.  (Id.)  Medicare reimbursement rates for CAHs are computed for inpatient services at an average cost per day, based on historical data, multiplied by 101%, and paid on an interim basis.  (Id. ¶ 16.)  For outpatient services, the billed charge of each claim is multiplied by the CAH's cost-to-charge ratio and then adding 1% to that amount.  (Id.)

Hospitals must meet specific requirements to qualify for CAH certification and receive the CAH Medicare reimbursement rates.  (Id. ¶ 17.)  Two of the requirements CAHs must meet are location-related.  (Id. ¶ 18.)  CAHs must be located a minimum distance from other hospitals, and be in a rural area.  (Id.)  For the minimum distance requirement, hospitals can be either (1) more than a 35-mile drive from another hospital or CAH, or (2) more than a 15-mile drive from another hospital or CAH in a mountainous area or area with only secondary roads available.  (Id. ¶ 19 citing 42 C.F.R. § 485.610(c).)  Prior to January 1, 2006, states could designate hospitals that did not meet this distance requirements as necessary provider ("NP") CAHs.  (Id. ¶ 22.)  These NP CAHs are permanently exempt from meeting the distance requirement, unless they relocate, but they still must meet all other CAH requirements.  (Id. ¶ 23.)  CAHs must also either be located in rural areas or areas that are treated as rural.  (Id. ¶ 20 citing 42 C.F.R. § 485.610(b).)

### C. Allegations Regarding Mountains

Mountains, started in 1947, is a 37-bed facility located in Lake Arrowhead, California.  (Id. ¶ 8.)  Mountains is operated under the San Bernardino Mountains Community Healthcare District.  (Id.)  In July 2002, Mountains was certified as a CAH.  (Id. ¶ 29.)  Mountains was not designated as an NP CAH.  (Id.)  From July 1, 2007 through November 24, 2008, Adomitis worked as the Chief Financial Officer for Defendant Mountains.  (FAC ¶ 7.)

In August 2013, the Department of Health and Human Services Office of Inspector General issued a report titled, "Most Critical Access Hospitals (CAH) Would Not Meet The Location Requirements if Required to Re-Enroll in Medicare" ("OIG Report").  (Id. ¶ 24.)  The report found that nearly two-thirds of CAHs would not meet the location requirements, yet CMS could not decertify most of these CAHs as they were NP CAHs.  (Id. ¶ 25 citing OIG Report, Dkt. No. 19, Ex. 2.)  The OIG report never identifies Mountains by name or location, and the report's list of 846 CAHs that do not meet the location requirements does not include Mountains.  (Id.)

Relator alleges Mountains does not meet the location requirements for CAH certification.  (Id. ¶ 30.)  First, Relator claims the most direct route between Mountains and the nearest hospital, is 23.9 miles, according to Google Maps.  (Id. ¶ 31.)  Along those 23.9 miles, there is 12.4 miles of secondary roads, about 10.4 miles of which are in mountainous terrain.  (Id.)  However, since 2002, Mountains has filed for reimbursements from Medicare for healthcare services provided to Medicare beneficiaries using CMC Form 2552, at rates authorized for

CAHs. (Id. ¶ 32.) Between 2010 and 2015, Mountains has allegedly fraudulently charged CMS over $29.7 million.[3] (Id. ¶ 43.)

Form 2252 contains certification statements that the information provided is truthful and in compliance with the laws and regulations. (Id. ¶¶ 32-34.) In addition, Mountains was required to submit form CMS-855A acknowledging it understood Medicare laws, regulations, and conditions. (Id. ¶ 35.)

Relator also alleges that while he worked at Mountains, Defendant purposefully did not conduct a survey or audit to recertify or verify it met the CAH criteria, and Defendant was or should have been aware it did not meet the distance requirements. (Id. ¶42.)[4]

## II. LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) motions challenge the court's subject matter jurisdiction. Without subject matter jurisdiction, a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. Chandler v. State Farm. Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010.)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178 at *3 (C.D. Cal. Oct. 26, 2015). In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint, and construes the pleadings in the light most favorable to the nonmoving party. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the

---

[3] Relator claims Mountains charged CMS $3,218,833 in 2010, $4,230,312 in 2011, $3,967,861 in 2012, $5,160,031 in 2013, $5,784,459 in 2014, and $7,411,047 in 2015. (FAC ¶ 43.)

[4] Relator also alleges Mountains was on notice due to its earlier litigation in 1995, dismissing Mountains action to be classified as a "sole community hospital." (Opp'n at 7; FAC ¶¶ 27-28. However, that case took place long before 2002, when Mountains was certified as a CAH, and does not involve CAH certifications. Therefore, it is of questionable relevance to the alleged fraud at issue here.

reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

Claims brought under the FCA must be pleaded pursuant to Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pleaded with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) applies also where the claim is "grounded in fraud" or "sound[s] in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483 at *5 (C.D. Cal. Oct. 24, 2016) (quoting Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

### III.  DISCUSSION

Defendant moves to dismiss Relator's claims asserting his claims are subject to the public disclosure bar, he fails to plead with the requisite particularity, and his claims are barred by the statute of limitations. (See Mot.) The Court considers each argument in turn.

**A.  Public Disclosure Bar**

The FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval; [or] knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim" to the federal government." 31 U.S.C. § 3729(a)(1)(A), (B). The FCA permits private individuals, referred to as "relators," to bring suit on the Government's behalf against entities that have violated the Act's prohibitions. 31 U.S.C. § 3730 (b)(1). However, the FCA's public disclosure bar deprives federal courts of subject matter jurisdiction when a relator alleges fraud that has already been publicly disclosed, unless the relator qualifies as an "original source." United States ex rel. Mateski v. Raytheon Co., 816 F.3d 565, 569 (9th Cir. 2016) (citing United States ex rel. Hartpence v. Kinetic Concepts, 792 F.3d 1121, 1123 (9th Cir. 2015) (en banc)); see also 31 U.S.C. § 3730(e)(4)(A).

The public disclosure bar is triggered if: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was "public"; and (3) the relator's action is "based upon" the allegations or transactions publicly disclosed. Mateski, 816 F.3d at 570 (quoting Malhotra v. Steinberg, 770 F.3d 853, 858 (9th Cir. 2014)). The parties do not dispute the first two elements. The OIG's report, on which Defendant relies to invoke the bar, is a channel specified in the statute and was publicly disclosed. Thus, whether Relator's action was based upon the information already disclosed is the key element in dispute.

For a relator's allegations to be "based upon" a prior public disclosure, the "publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." Mateski, 816 F.3d at 573. In deciding whether allegations have been publicly

disclosed, the Ninth Circuit warns against reading qui tam complaints at the highest level of generality. See id. at 578.

Relator alleges Mountains does not qualify as a CAH, and from 2002 to present it has filed for reimbursement from Medicare at rates authorized for CAHs. (FAC ¶¶ 29, 32.) Relator also identifies specific amounts he alleges Mountains has fraudulently charged Medicare from 2010-2015. (Id. ¶ 43.) Defendant argues Relator's allegations were publicly disclosed prior to the present lawsuit in the 2013 OIG Report.

In Mateski, the Ninth Circuit reversed the district court's conclusion the relator's complaint was substantially similar to the prior public reports about problems with an infrared sensor. 816 F.3d at 580. The court held the relator's complaint was "vastly more precise" than the public reports about the general problems with the sensor involving mismanagement, technical difficulties, and noncompliance with contract and policy directives. Id. at 579. In contrast, the relator alleged false waivers, false signoffs, false statements with respect to materials used in the sensor, and problems with electrostatic discharge. Id. at 578-79. Thus, although the public reports provided the government with information to pursue an investigation into "some fraud," and even though the government did undertake some investigation of the sensor, the "prior reports could not have alerted the [g]overnment to the specific areas of fraud alleged by [relator]." Id. at 579.

The Court finds Relator's allegations are not substantially similar to those publicly disclosed in the OIG Report. The OIG Report does not specifically identify Mountains, though its scope included all CAHs in the country, a group to which Mountains belongs. The OIG Report discusses generally how almost two-thirds of CAHs do not meet the location requirements and estimates potential savings to Medicare if some of the non-conforming CAHs were decertified. Although the OIG arguably investigated the precise issues upon which Relator's FAC rests – a CAH that does not meet the location requirements – the report does not contain allegations of fraudulent overcharging to Medicare nor does it specifically indicate that Mountains was engaged in fraudulent conduct. If anything, the OIG Report implies Mountains is not engaged in any fraudulent conduct by Mountains' absence on the list of CAHs that do not meet the location requirements. Consequently, this implicit finding that Mountains meets the location requirements does not trigger the jurisdictional bar against allegations of fraud.

The instant case is unlike those where industry-wide allegations of fraud are sufficient to invoke the public disclosure bar. See, e.g., United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 685-88 (D.C. Cir. 1997) (finding that the publicly available information that did not include the defendant's identity was sufficient to allow the government to bring a suit and thus the relator's claim was publicly disclosed); United States ex rel. Fine v. Sandia Corp., 70 F.3d 568, 571-72 (10th Cir. 1995) (finding that prior disclosures barred FCA action despite not naming the potential defendants because they limited the number of potential defendants and they were "easily identifiable.") Here, the OIG Report does not even make any industry-wide allegations of fraud. Rather, the report states that if subject to recertification, many CAHs would not meet the location requirements. In addition, Mountains is one of over

1,300 CAHs, substantially more than the nine laboratories at issue in Sandia, and the OIG report did not place the government on notice to further investigate Mountains for fraud.

However, the action may still be barred if the public disclosures revealed the transactions underlying the fraud. United States ex rel. Found. Aiding The Elderly v. Horizon West, 265 F.3d 1011, 1016 (9th Cir. 2001). Where the material elements of the allegedly fraudulent transaction are disclosed in the public domain, the transaction has been publicly disclosed. Id. at 1015. The essential elements are "a misrepresented state of facts and a true state of facts" from which the inference that fraud has been committed can be made. Id.

Here, the alleged fraudulent scheme is (1) Mountains is certified as a CAH, (2) Mountains received reimbursements from Medicare as a CAH, (3) Mountains did/does not meet the requirements to be a CAH, and (4) Mountains failed to refund the overpayments owed to the federal government. The (1), (2), and (4) elements represent the "true state of facts," and the third element corresponds to the "misrepresented state of facts."

The OIG Report implicitly discloses, at most, that Mountains is a CAH. The other necessary elements to complete the inference of fraud, that Mountains claimed reimbursements as a CAH, that it does not meet the requirements to be a CAH, and that it failed to refund the overpayments owed to the federal government, are not disclosed. No identified source makes a public allegation of fraud against Mountains, and no source contains the misrepresented state of facts, that Mountains does not meet the CAH location requirements. Thus, Relator's allegations are not barred by the public disclosure bar. As the Court finds the allegations and transactions are not substantially similar to the publicly disclosed report, the Court need not determine whether Relator is an original source. United States ex rel. Hagood v. Sonoma Cty. Water Agency, 929 F.2d 1416, 1420 (9th Cir. 1991).

**B. FCA Claims**

Defendant argues Relator fails to adequately plead his FCA claims. (Mot. at 21.) A false certification claim requires (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011). The implied certification theory can be a basis for liability at least where two conditions are satisfied. First, the claim does not merely request payment, but also makes specific representations about the goods or services provided. United States ex rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890, 902 (9th Cir. 2017) (citing Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S.Ct. 1989, 2000 (2016)). Second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. Id. (citing Escobar, 136 S.Ct. at 2001).

Relator also asserts a reverse false claim for Mountains' failure to refund overpayments owed to the federal government from 2002 to the present. (FAC at 17-18.) Section 3729(a)(1)(G) imposes FCA liability on a person or entity who, as pertinent here, ". . . knowingly conceals or

knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

1. Materiality

Materiality is defined as having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4). To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant." United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1173 (9th Cir. 2006). The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." United States v. Celgene Corp., 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing Escobar, 136 S.Ct. at 2002-03 (2016)). Relator fails to argue how Mountains claims were material. The FAC alleges the Form 2252 certifications that Mountains' submitted were material to Medicare's decision to reimburse Mountains at CAH rates. (FAC ¶ 52.) However, this is insufficient by itself to support a finding of materiality. See Escobar, 136 S.Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."). Without more, Relator has not sufficiently pled the materiality element.

2. Scienter

To satisfy the FCA's scienter requirement, a relator must show that the defendant acted "knowingly." 31 U.S.C. § 3729(a)(1)(A). Knowingly means the entity "has actual knowledge of the information" or "acts in deliberate ignorance" or "in reckless disregard" of the truth or falsity of that information." 31 U.S.C. § 3729(b)(1)(A). Knowledge does not require "proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Relator alleges Mountains was aware or should have been aware it did not meet the requirements to be a CAH, yet still, Mountains submitted reimbursement claims to Medicare at the CAH authorized rates. According to Relator, Mountains provided false claims and statements to the federal government with the requisite mental state of the falsity   Thus, Relator has adequately pled the scienter requirement.

3. Rule 9(b)

Defendant also asserts Relator fails to plead with sufficient particularity under Federal Rule of Civil Procedure 9(b), as required for claims under the FCA. (Mot. at 13.) A complaint alleging implied false certification must plead with particularity allegations that "provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). In the Ninth Circuit, it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. at 999 (quoting United States ex rel. Grubbs v. Ravikumar Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)). However, "[m]ere

conclusory allegations of fraud are insufficient." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016).

The FAC alleges Mountains "knew or should have been aware" they did not meet the location requirements to be a CAH, and therefore each CMS Form 2552 it filed as a CAH constituted a false statement. (FAC ¶ 32, 41.) As a result, the federal government overpaid for such services. (Id. at 40.) Relator then alleges sums of Mountains' fraudulent charges from 2010- 2015. (Id. ¶ 43.) Relator's FAC fails to satisfy Rule 9(b). The FAC makes broad allegations that Mountains is not a CAH, has submitted CMS Form 2252 since 2002, received reimbursement as a CAH, and has fraudulently charged the government almost $30 million. While these allegations describe some details of a generalized scheme, they are not pleaded with sufficient particularity or "reliable indicia." Relator worked for Mountains from July 1, 2007 to November 24, 2008, yet his claimed sums of fraudulent charges are for the years 2010-2015. The Court finds it curious Relator has not provided any allegations of fraudulent charges during the years of his employment at Mountains. Moreover, Relator also has not provided enough factual support for the Court to infer the scheme he alleges was actually used to submit claims, thereby triggering the obligation to refund the government for overpayment. Relator is "not required to allege 'all facts supporting each and every instance' of billing submitted," but Rule 9(b) still requires more specificity than the general scheme Relator alleges. Ebeid, 616 F.3d at 999; see also Grubbs, 565 F.3d at 192 (finding relator satisfied Rule 9(b) for his claim against individual doctors by describing "the date, place, and participants, the dinner meeting at which two doctors . . . attempted to bring him into the fold . . . [and] his first-hand experience of the scheme). Relator has failed to adequately plead his FCA claims in accordance with Rule 9(b). Accordingly, the Court GRANTS Defendant's Motion for all Relator's claims.

**C. Statute of Limitations**

Lastly, Defendant argues Relator's FCA claims are barred by the statute of limitations, and alternatively, Relator's claim under § 3729(a)(1)(G) is limited. (Mot. at 23-25.) Dismissal under Rule 12(b)(6) on the basis of an affirmative defense, such as statute of limitations, is proper "only if the defendant shows some obvious bar to securing relief on the face of the complaint." ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014). The FCA's statute of limitations provides a civil action may not be brought:

> (1) more than 6 years after the date on which the violation of [the FCA] is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). The Ninth Circuit has held an FCA action brought by a qui tam plaintiff, as here, "must be commenced no more than (1) six years after the date on which the FCA violation is committed, or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last. United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1217-218 (9th Cir. 1996).

Relator filed his original complaint in this action on January 3, 2017. Relator concedes he cannot rely on any claims for payment that Mountains filed prior to January 3, 2007 as grounds for his FCA claims, but claims the issue of when Relator knew or reasonably should have known of the material facts for his claims after January 3, 2007 are not before the Court. (Opp'n at 17.) The FAC does not clarify when Relator became aware of the alleged fraud, but asserts only that he worked for Mountains until November 24, 2008. At oral argument, Relator claimed he learned of the material facts for his claims after his employment at Mountains ended. Therefore, the question of when the statute of limitations began to run remains open. Relator claims fraudulent conduct through the present, and alleges sums of fraudulent charges from 2010-2015, all which occurred after his employment. Accordingly, the Court finds there is no "obvious bar" to relief on the face of the complaint.

Defendant also argues Relator's claim under § 3729(a)(1)(G) is limited to conduct after May 22, 2010. (Mot. at 25.) In United States ex rel. Stone v. OmniCare, Inc., 2011 WL 2669659 (N.D. Ill. July 7, 2011) the court analyzed the permissibility of retroactive application of § 3729(a)(1)(G). Section 3729 was amended on May 20, 2009 by the Fraud Enforcement and Recovery Act ("FERA") of 2009. However, the 60-day deadline for reporting and returning overpayments went into effect on March 23, 2010 under the Patient Protection and Affordable Care Act of 2009 ("PPACA"). The Stone court found that relying on the post-May 2009 version of the FCA for claims based on alleged misconduct that occurred in 2000-2005 and in 2008 would create an "impermissible retroactive effect." Stone, 2011 WL 2669659, at *4. Relying on Stone, a court in the District of Arizona similarly held a relator could not rely on § 3729(a)(1)(G) for alleged misconduct occurring in 2007 and 2008. United States ex rel. Peretz v. Humana, Inc., 2011 WL 13247550, at *7 (D. Ariz. Oct. 7, 2011). Although retention liability was enacted in May 2009 in § 3729(a)(1)(G), the PPACA set the deadline for reporting and returning an overpayment within 60 days of its identification. Stone, 2011 WL 2669659, at *4; 42 U.S.C. § 1320a-7k(d)(2). Therefore, the Court agrees with Defendant that Relator may not rely on alleged misconduct prior to May 22, 2010 as grounds for his reverse false claim. Accordingly, the Court GRANTS Defendant's Motion WITHOUT LEAVE TO AMEND to the extent Relator's § 3729(a)(1)(G) cause of action relies on Mountains' alleged failure to refund overpayments prior to May 22, 2010.

### D. Leave to Amend

Plaintiff requests the Court grant him leave to amend for any claims dismissed. (Opp'n at 18.) The Court agrees amendment is appropriate here, excluding where noted. See Kendall v. Visa USA, Inc., 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").

## IV. CONCLUSION

The Court GRANTS Defendant's Motion. Relator shall file a second amended complaint, if any, **no later than February 13, 2018.**

**IT IS SO ORDERED.**