Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| United States of America, *ex rel.*, Frank Adomitis, <br><br> Plaintiff, <br><br> vs. <br><br> San Bernardino Mountains Community Hospital District; <br> Does 1 through 20, inclusive; <br><br> Defendants. | Case No.: 5:17-cv-00002-JGB-KK <br> (Hon. Jesus G. Bernal) <br><br> **Notice of Motion and Motion of Defendant Mountains' Motion to Dismiss the Second Amended Complaint** <br><br> *Date*: April 30, 2018 <br> *Time*: 9:00 AM <br> *Courtroom*: 1 |

TO PLAINTIFF, UNITED STATES OF AMERICA, ex rel., FRANK ADOMITIS, AND TO HIS ATTORNEY OF RECORD, ESPERANZA CERVANTES ANDERSON:

PLEASE TAKE NOTICE that on April 30, 2018, at 9:00 a.m., in Courtroom 1 before the Honorable Jesus G. Bernal, Judge Presiding, at 3470 Twelfth Street Riverside, CA 92501-3801, Defendant, SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT, will

move the Court under Fed R. Civ. P. 9(b), 12(b)(1), and 12(b)(6) to dismiss the Second Amended Complaint for Violation of the Federal False Claims Act on file with the Court.

This motion is made following the conference of counsel required under Local Rule 7-3 which took place on February 7, 2018. The motion is based on the accompanying Memorandum of Points and Authorities and accompanying exhibits, and on the other pleadings and papers on file with the Court and this Notice of Motion and Motion.

**Respectfully submitted,**

Dated: March 13, 2018

**THE HEALTH LAW PARTNERS, P.C.**
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community Hospital
District

Defendant Mountains' Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

**PROOF OF SERVICE**

**STATE OF MICHIGAN, COUNTY OF OAKLAND**

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On March 13, 2018, I served true copies of the foregoing document(s) described as **Notice of Motion and Motion of Defendant Mountains' Motion to Dismiss the Second Amended Complaint** on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Defendant Mountains' Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

Executed on March 13, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre

Marianna M. McIntyre

Defendant Mountains' Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| United States of America, *ex rel.*, Frank Adomitis, <br><br> Plaintiff, <br><br> vs. <br><br> San Bernardino Mountains Community Hospital District; Does 1 through 20, inclusive; <br><br> Defendants. | Case No.: 5:17-cv-00002-JGB-KK <br> (Hon. Jesus G. Bernal) <br><br> **Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint** <br><br> *Date*: April 30, 2018 <br> *Time*: 9:00 AM <br> *Courtroom*: 1 |

## TABLE OF CONTENTS

Introduction...........................................................................................................1

Statement of Facts.................................................................................................1

Legal Standard......................................................................................................5

**Request for Judicial Notice** ............................................................................................6

**Argument** ...........................................................................................................................7

1.    Relator's FCA Claims Lack Materiality (And Knowledge of Materiality) ........................7

    a.    No New Materiality Pleadings; No Evidence of Materiality ........................................7

    b.    Relator's FCA Claims are Not Material, and Are Inappropriate When Other Regulatory Schemes Govern. ...................................................................................... 10

    c.    The FCA Is Not an All Purposed Fraud Statute, and Relator's Use of Sub-Regulatory Guidance is Inappropriate .................................................................................13

2.    Relator Does Not Allege with Particularity the Scheme to Defraud and Set Forth What is False or Misleading, and Why it is False, As Necessary to Comply with Rule 9(b) and 12(b)(6) for a Civil FCA Case. ...................................................................................................14

    a.    The Factual Allegations About Mountains do not Comport with Rule 9(b) or the Federal Pleading Requirement. ..................................................................................15

    b.    Relator's Fraud Allegations do not Demonstrate a Reliable Indicia that False Claims were Actually Submitted. ............................................................................ 20

3.    Public Disclosure .................................................................................... 21

4.    Relator's Claims are Barred by the FCA Statute of Limitations. .................................... 22

    a.    Relator Previously Conceded that his Claims were Limited by the Statute of Limitations 23

    b.    The Law Supports Dismissal of Relator's Claims. .................................................. 24

5.    Relator Again Pleads Known Overpayments Despite Court Order .............................. 25

6.    Relator Should Be Denied the Opportunity to Amend ............................................... 25

**Conclusion** ...................................................................................................... 25

### TABLE OF AUTHORITIES

### CASES

*Abbott v. BP Expl. & Prod., Inc.*,
   851 F.3d 384 (5th Cir. 2017) ............................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................. 6, 8

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ............................... 11, 12

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ............................................................................... 6

*Christensen v. Harris Cty.*,
   529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ...................................14

*Cmty. Hosp. of Monterey Peninsula v. Thompson*,
   323 F.3d 782 (9th Cir. 2003) ...............................................................................14

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) ........................................................................... 5, 6

*Ebeid ex rel. U.S. v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ...............................................................15, passim

*Farm Credit Serv. v. Am. State Bank*,
   339 F.3d 764 (8th Cir. 2003) ................................................................................. 6

*Foman v. Davis*,
   371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) .......................................... 25

*Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*,
   616 F.3d 983 (9th Cir. 2010) ...............................................................................17

*I.N.S. v. Cardoza-Fonseca*,
   480 U.S. 421, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987) .....................................14

*Johnson v. Buckley*,
   356 F.3d 1067 (9th Cir. 2004) ............................................................................ 25

**PAGE III**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

THE HEALTH LAW PARTNERS, P.C.

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ................................................................. 25

*Parks School of Business, Inc. v. Symington*,
   (9th Cir. 1995) 51 F.3d 1480 .................................................................. 6

*Phillips Petroleum Co. v. Lujan*,
   4 F.3d 858 (10th Cir. 1993) ................................................................... 24

*Reno v. Koray*,
   515 U.S. 50, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995) ..................................... 14

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................. 5

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
   563 U.S. 401, 131 S. Ct. 1885, 179 L. Ed. 2d 825 (2011) ................................... 21

*Shalala v. Guernsey Mem'l Hosp.*,
   514 U.S. 87, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995) ..................................... 14

*Stock West, Inc.*,
   873 F.2d ..................................................................................... 5

*Thompson*,
   323 F.3d 792 ................................................................................. 14

*U.S. ex rel. Cox v. Iowa Health Sys.*,
   29 F. Supp. 2d 1022 (S.D. Iowa 1998) .................................................. 19, 21

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ........................................................... 13, 15

*U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*,
   929 F.2d 1416 (9th Cir. 1991) ................................................................. 16

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ............................................................. 8, 9

*U.S. ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) ............................................................. 12, 19

**PAGE IV**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

THE HEALTH LAW PARTNERS, P.C.

*U.S. ex rel. Hyatt v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. 1996) ............................................................... 24

*U.S. ex rel. Koch v. Koch Indus., Inc.*,
    188 F.R.D. 617 (N.D. Okla. 1999) ....................................................... 24

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*,
    596 F.3d 1300 (11th Cir. 2010) ............................................................ 15

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ............................................................... 12

*U.S. ex rel. Vigil v. Nelnet, Inc.*,
    639 F.3d 791 (8th Cir. 2011) ............................................................... 12

*U.S. ex rel. Zissler v. Regents of the Univ. of Minnesota*,
    992 F. Supp. 1097 (D. Minn. 1998) ..................................................... 24

*United States ex rel v. Medtronic, Inc.*,
    No. LACV1501212JAKASX, 2017 WL 4023092 (C.D. Cal. Sept. 11, 2017) ........... 11, 12

*United States ex rel. D'Agostino v. EV3, Inc.*,
    153 F. Supp. 3d 519 (D. Mass. 2015) ................................................... 12

*United States ex rel. Gear v. Emergency Med. Assocs., Inc.*,
    436 F.3d 726 (7th Cir. 2006) ............................................................... 22

*United States ex rel. Harman v. Trinity Indus. Inc.*,
    872 F.3d 645 (5th Cir. 2017) ............................................................... 11

*United States ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) .......................................................... 11, 16

*United States ex rel. Mateski v. Raytheon Co.*,
    No. 206CV03614ODWKSX, 2017 WL 1954942 (C.D. Cal. Feb. 10, 2017) ........... 15, 16

*United States ex rel. Petratos v. Genentech Inc.*,
    855 F.3d 481 (3d Cir. 2017) ............................................................... 11

*United States v. Alcan Elec. & Eng'g, Inc.*,
    197 F.3d 1014 (9th Cir. 1999) ............................................................. 22

*United States v. Corinthian Colleges*,

    655 F.3d 984 (9th Cir. 2011) .................................................................16

*United States v. Kass*,

    740 F.2d 1493 (11th Cir. 1984) ............................................................ 24

*Unites States e rel. Longstaffe v. Litton Indus., Inc.*,

    295 F. Supp. 2d 1187 (C.D. Cal. 2003) ............................................... 22

*Universal Health Servs., Inc. v. United States*,

    136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) ........................................... 1

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ...........................................................6, 15

*Wang v. FMC Corp.*,

    975 F.2d 1412 (9th Cir. 1992) ..............................................................16

*Zucco Partners, LLC v. Digimarc Corp.*,

    552 F.3d 981 (9th Cir. 2009) ............................................................... 25

*Sweeney v. ManorCare Health Servs., Inc., No. C03-5320RJB*,
2005 U.S. Dist. LEXIS 45216 at *4, *11–14 (W.D. Wash. Mar. 4, 2005) ......................... 12

*United States ex rel. Huey v. Summit Healthcare Ass'n, Inc., No. CV-10-8003*,
2011 U.S. Dist. LEXIS 26740 at *17 (D. Ariz. Mar. 2, 2011) ............................................ 12

### Statutes

31 U.S.C. § 3730(a) ............................................................................... 10

31 U.S.C. § 3731(b) ........................................................................ 22, 23, 2

31 U.S.C. § 3731(b)(1) .......................................................................... 23, 24

31 U.S.C.A. § 3729 (West) ................................................................. 1, 15, 2

31 U.S.C.A. § 3729(a)(1)(B) .......................................................................... 1

31 U.S.C.A. § 3729(a)(1)(G) (West) ............................................................. 1

31 U.S.C.A. § 3729(b)(4) (West) ................................................................... 8

31 U.S.C.A. § 3730(b)(2) (West) .............................................................. 9, 10

31 U.S.C.A. § 3731(b)(2) ......................................................................... 23, 24

**RULES**

Fed R. Civ. P. 9(b), 12(b)(1), and 12(b)(6) ................................................ passim

Fed. R. Civ. P. 15(a)(2) ............................................................................. 25

Fed. R. Civ. P. 8 and 9(b) .......................................................................... 8

Fed. R. Evid. 201(b) ................................................................................ 6, 7

**REGULATIONS**

42 C.F.R. § 485.610 .................................................................................. 4

42 C.F.R. § 485.610(c) ............................................................................. passim

42 C.F.R. § 485.610(c)'s ........................................................................... 13

62 FR 46036 ........................................................................................... 4

65 FR 47052 ........................................................................................... 4

66 FR 39932 ........................................................................................... 4

69 FR 49271 ........................................................................................... 4

69 FR 60252 ........................................................................................... 4

69 FR 78530 ........................................................................................... 4

70 FR 47490 ........................................................................................... 4

71 FR 48143 ........................................................................................... 4

72 FR 66934 ........................................................................................... 4

73 FR 9862 ............................................................................................. 4

74 FR 44001 ........................................................................................... 4

75 FR 50419 ........................................................................................... 4

79 FR 50359 ........................................................................................... 4

The Health Law Partners, P.C.

# INTRODUCTION

Relator's Second Amended Complaint ("**SAC**"), at its core, alleges that San Bernardino Mountains Community Hospital District ("**Mountains**") does not meet certain 15-mile "mountainous terrain or areas where only secondary roads are available" *Condition of Participation* regulatory requirements for Medicare Critical Access Hospitals ("**CAH**"). Relator's allegations and claims against Mountains are inappropriate and fail because his allegations:

- Fail to adequately, credibly, plausibly, or with particularity allege "scienter" or "materiality" in the "demanding"/"rigorous" manner prescribed by the Supreme Court in *Escobar*.[1]
- Fail to satisfy federal pleading standards and the specificity requirements of Fed. R. Civ. P. 9(b).
- Fail to meet the statute of limitations requirements under 31 U.S.C.A. § 3729 (West) in relation to his causes of action against Mountains.

# STATEMENT OF FACTS

On January 3, 2017, Relator filed a Complaint alleging violations of the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. (the "**FCA**"), as amended. (Dkt. 5, ¶1). Mountains filed a Motion to Dismiss. In response, Relator amended the complaint on November 13, 2017. (Dkt. 17). Mountains filed a second Motion to Dismiss on November 27, 2017. (Dkt. 19).[2] On January 29, 2018, this Court dismissed Relator's SAC, with leave to amend certain claims. (Dkt. 23). On February 20, 2018, Relator filed his third-iteration, the Second Amended Complaint ("**SAC**," Dkt. 26.).

The parties are Mountains, a CAH, and Relator, an individual. (Dkt. 26 ¶¶7-8). Relator alleges he worked as the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008. (Id. ¶7).[3] Relator alleges that, from 2002 to the present, Mountains engaged in a fraudulent scheme in violation of 31 U.S.C.A. § 3729(a)(1)(B), 31 U.S.C. § 3729(a)(1)(B), and 31 U.S.C.A. § 3729(a)(1)(G) (West) of the FCA. (Id. ¶¶52, 57, and 62). The foregoing require certain knowledge, intent/scienter, and

---

[1] *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1994 & 2002, 195 L. Ed. 2d 348 (2016).

[2] Mountains incorporates the arguments made in its Motion to Dismiss (Dkt. No. 19.), and its reply on January 16, 2018. (Dkt. No.22.), by reference.

[3] Relator's SAC, however, provides no other foundational support to support the basis for the allegations in his SAC. It is unclear what knowledge or information Relator would have on the submission of alleged false claims from any time period outside of July 1, 2007, to November 24, 2008.

1   materiality standards to trigger liability. To support these theories, Relator describes the operations of

2   CAHs and how CAHs receive reimbursement through Medicare. (Id. ¶15).

3        Relator next alleges that Mountains must meet certain Centers for Medicare & Medicaid

4   Services ("**CMS**") Condition of Participation regulatory distance requirements to qualify as a CAH (Id.

5   ¶19). Relator alleges that the pertinent distance requirement is that Mountains must be located more

6   than a 15-mile travel route from St. Bernardine Medical Center ("**SBMC**") in which the areas of travel

7   contain either mountainous terrain or areas where only secondary roads are available. (Id. ¶¶19 and 35).

8   See also 42 C.F.R. § 485.610(c). Relator alleges that, based on his interpretation of sub-regulatory

9   guidance, there are both 12.4 miles of secondary roads, and an additional 10.4 miles of mountainous

10   terrain, between SBMC and Mountains. (Id. ¶36(a)). Relator relies upon "sub-regulatory" guidance

11   (CMS's State Operations Manual) from 2013 to support his erroneous interpretations. He does not rely

12   upon the actual text of 42 C.F.R. § 485.610(c), nor does he allege that Mountains violates the same.

13        Relator explains in his SAC that, before 2013, CMS defined "mountainous terrain", in sub-

14   regulatory guidance, as areas identified as such on any official maps or other documents published by the

15   State agency responsible for highways in the State (typically a Department of Transportation or

16   Highways) or by [United States Geological Survey] ("**USGS**")." (Id. ¶19.) However, Relator provides

17   no allegations that Mountains did not meet the Condition of Participation requirements (C.F.R. or sub-

18   regulatory interpretation) prior to 2013. On April 19, 2013, CMS published new sub-regulatory guidance

19   for classifying mountainous terrain. **EXHIBIT 1**. (See p. 7). Relator has alleged this as CMS's sub-

20   regulatory guidance for determining mountainous terrain roads for CAHs. (Dkt. 26 ¶31). In addition,

21   Relator has alleged sub-regulatory guidance from CMS about what constitutes primary and secondary

22   roads (Id. ¶¶19 and 36).

23        Relator further alleges that Mountains was certified as a CAH in July 2002, but that Mountains

24   does not, according to Relator, meet the required 15-mile distance requirement as described in sub-

25   regulatory CMS guidance. (Id. ¶¶33 and 34-36). Neither CMS nor any other applicable governmental

26   agency has challenged or revoked Mountains's CAH status during the certification surveys conducted

27   by CMS or its ROs from 2002 through date, and the U.S. Government has declined to intervene. In

28   August 2013, the OIG publicly released an official report regarding a survey it did of all CAHs in the

THE HEALTH LAW PARTNERS, P.C.

United States – the OIG 2013 CAH Distance Audit/Investigation. **EXHIBIT 2**. Relator's SAC duplicates publicly disclosed facts (the Relator is not an original source, and his direct allegations were publicly disclosed and investigated by the Federal OIG and CMS in 2013).[4] Relator concedes that the OIG found that Mountains met the distance/location requirements in 2013. See (Id. ¶¶ 25-26).

Relator alleges that Mountains filed false or fraudulent cost reports with Medicare because it allegedly did not meet the CAH distance requirement. (Id. ¶ 37). However, this contradicts Relator's pleadings. Relator states that the OIG found, in its OIG 2013 CAH Distance Audit/Investigation, that in 2013 Mountains met the location/distance requirements! (Id. ¶ 26).[5] Relator fails to allege why Mountains didn't meet the distance requirements prior-to-2013, or what has changed after the 2013 OIG audit. Relator's SAC is devoid of any specific knowledge or allegations regarding Mountains' periodic CAH certification/re-certification process. In fact, his SAC is devoid of allegations as to what was specifically submitted to CM or any other governmental entity for CAH certification related to the payment of claims. Moreover, there is no regulatory guidance or other applicable law showing that CMS relied upon any alleged statement of CAH certification by Mountains as a condition of payment. Relator alleges that in February 2015, he "verified the distance by driving the route" while reciting his own conclusory interpretation of CAH location/distance requirements. (Id. ¶ 35). Relator also alleges, without support, that during his short employment with Mountains in 2007-2008, that Mountains failed to self-audit its CAH Conditions of Participation and failed to implement a policy regarding the same (¶ 48). Relator pleads no particulars, or any requirement or need for Mountains to adopt this "self-audit the

---

[4] In August 2013, the Office of Inspector General, U.S. Department of Health and Human Services ("**OIG**") publicly released an official investigation/audit report regarding a survey it did of all critical access hospitals in the United States (Mountains included) – the official report is entitled "Most Critical Access Hospitals Would Not Meet the Location Requirements If Required to Re-Enroll in Medicare" (the "**OIG 2013 CAH Distance Audit/Investigation**"). Relator's SAC regarding Mountains purportedly not meeting the CAH distance requirements is the exact allegation/investigation previously conducted and publicly reported in the OIG 2013 CAH Distance Audit/Investigation.

[5] FOIA requests have confirmed this. Through FOIA requests, the OIG has confirmed the obvious, that Mountains was surveyed as part of the 2013 Report and that Mountains met the distance requirements at that time. This extrinsic evidence is not necessary here, however, since Defendant is seeking relief via a Motion to Dismiss and not a Motion for Summary Judgment.

THE HEALTH LAW PARTNERS, P.C.

surveyor's findings" process. Relator also alleges no occurrence after 2008, or whether Mountains has implemented a process/policy of the sort that Relator imagines would be helpful, post-2008.

Throughout Relator's SAC, there are no specific allegations about any particular falsehoods, false statements, false records, false reports, false claims, or specific factual allegations about the concealment of the same to any governmental entity. Although Relator alleges that on May 16, 2002, Mountains made an affirmative representation that it was "more than a 35 mile drive from any other general acute hospital (in mountainous terrain or in areas with only secondary roads available, the mileage criterion is 15 miles)", nothing in the SAC indicates that this statement was false (or known to be material) at the time it was allegedly made by Mountains' previous CEO. (Id. ¶¶ 30-31). In Counts I-III of Relator's SAC, Relator repeatedly alleges that Mountains made fraudulent or false representations, records, statements, reports, and certifications, but Relator cannot articulate what particular fraudulent or false representations, records, statements, reports, or certifications were made by Mountains. (Id. ¶¶ 53, 54, 58, 59, 60, 62, and 63). Relator merely concludes these alleged falsehoods must have been made because, in Relator's opinion, certain distance requirements were not met by Mountains. (Id. ¶ 35).

The CAH Conditions of Participation at 42 C.F.R. § 485.610, inclusive of the distance/location requirements, have a lengthy and evolving regulatory history.[6] CMS has issued sub-regulatory guidance to interpret the same in notices and in RO survey procedures manuals.[7] Relator is silent about at which point in the foregoing evolution Mountains did not allegedly meet the oft-changing CAH distance/location requirements. Instead, Relator attempts to take sub-regulatory definitions of "secondary roads" and "mountainous terrain" (changed in April 2013), and apply them prospectively and retrospectively to all years that Mountains has been a CAH. (Id. ¶ 19).

The Department of Health & Human Services ("**HHS**") and CMS have established a policy regarding the CAH certification and recertification process. **EXHIBIT 3**. CMS has set standards *for*

---

[6] 62 FR 46036, Aug. 29, 1997; 65 FR 47052, Aug. 1, 2000; 66 FR 39932, 39938, Aug. 1, 2001; 69 FR 49271, Aug. 11, 2004; 69 FR 60252, Oct. 7, 2004; 69 FR 78530, Dec. 30, 2004; 70 FR 47490, Aug. 12, 2005; 71 FR 48143, Aug. 18, 2006; 72 FR 66934, Nov. 27, 2007; 73 FR 9862, Feb. 22, 2008; 74 FR 44001, Aug. 27, 2009; 75 FR 50419, Aug. 16, 2010; 79 FR 50359, Aug. 22, 2014.

[7] November 14, 2005, S&C-06-04; September 7, 2007, S&C-07-35; April 19, 2014, S&C: 13-26-CAH, June 26, 2015, S&C: 15-45-CAH, and February 12, 2016, S&C: 16-08-CAH.

THE HEALTH LAW PARTNERS, P.C.

*certifying and recertifying* the distance requirements for CAHs. (Id. at p. 1). Under these standards, Regional CMS Offices ("**ROs**") (not Mountains) must complete a CAH Recertification Checklist for evaluating, determining, and documenting compliance with the CAH's location-related conditions of participation. (Id.). **The ROs**, in both their initial surveys and in re-certification efforts, **make their own independent determination regarding whether the CAH meets the location/distance requirements based on the CAH's address**, regardless of any other input from CAHs. Other sub-regulatory guidance from CMS confirms this – see, CMS State Operations Manual, at Ch. 2256A, "The RO…has primary responsibility to verify compliance with 42 C.F.R. § 485.610(c)." **EXHIBIT 5**.

The CAH Recertification Checklist also states specific procedures for a CAH that does not meet distance requirements. If a CAH does not meet the distance requirements of 42 C.F.R. § 485.610(c), as determined by the RO based upon its independent review, then the RO sends the CAH a letter indicating its CAH status will be terminated and informing the CAH of appeal rights, and allows it time to remedy any deficiencies in its CAH status or have its Medicare participation terminated or convert to a standard hospital participation agreement. (**EXHIBIT 5** at pgs. 3 and 6). CMS has its own enforcement and decertification methods to deal with CAHs not meeting certification standards, and CMS's ROs make their own independent determination regarding distance requirements (not relying upon Mountains' certification).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) is appropriate when the complaint or extrinsic evidence fails to establish the court's subject matter jurisdiction over the cause of action. *Stock West, Inc.*, 873 F.2d at 1225. Plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes a lack of jurisdiction until Relator proves differently. *Stock W. Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) motion may challenge a complaint's allegations on their face or by pointing to evidence outside of the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Once the moving party has presented evidence to show a lack of subject matter jurisdiction, the burden shifts to the plaintiff to present evidence to satisfy its burden of establishing subject matter jurisdiction. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

**Page 5**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

THE HEALTH LAW PARTNERS, P.C.

A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims. See *Parks School of Business, Inc. v. Symington* (9th Cir. 1995) 51 F.3d 1480, 1484. In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true in a light favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer* (9th Cir. 2009) 568 F.3d 1063, 1067. In considering a *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp.*, 550 U.S. 544. A complaint under a Rule 12(b)(6) motion to dismiss must provide a basis for relief that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. Bare assertions alone will not be assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) at 1951. A court may ignore "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). "[A] complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Fed. R. Civ. P. 9(b) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

When alleging fraud or mistake, a relator is held to a heightened pleading standard, and is required to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). When an entire complaint is pled or grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), a district court may dismiss the complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## REQUEST FOR JUDICIAL NOTICE

Under Fed. R. Evid. 201(b), Mountains respectfully requests this Court take judicial notice of **EXHIBITS 1, 2, 3, 4, 5, 6, and 7**. These exhibits consist of: **EXHIBIT 1**: April 19, 2013, CMS Guidance, Clarification of the Critical Access Mountains (CAH) Criteria for Rural Location and

THE HEALTH LAW PARTNERS, P.C.

Mountainous Terrain Distance Standard;[8] **EXHIBIT 2**: August 2013, OIG Report, Most Critical Access Hospitals Would Not Meet the Location Requirements If Required to Re-Enroll in Medicare;[9] **EXHIBIT 3**: February 12, 2016, CMS Policy, Critical Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements;[10] **EXHIBIT 4**: Current CMS Provider Information Forms for 4 California Hospitals;[11] **EXHIBIT 5**: Excerpt from CMS State Operations Manual Chapter 2 - The Certification Process;[12] **EXHIBIT 6**: January 25, 2018, US Associate Attorney General memo, titled "Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases";[13] and **EXHIBIT 7**: Other Known Clone Lawsuits filed by Relator; all are available at CMS's or the DOJ's websites or on PACER/Westlaw.

The above-mentioned documents are official publications made publicly available by either CMS or the DOJ or the Court System under Rule 902(5). These documents provide facts capable of accurate and ready determination by referring to sources whose accuracy cannot reasonably be questioned. Therefore, they meet the requirements of Fed.R.Evid. 201(b).

## ARGUMENT

### 1. RELATOR'S FCA CLAIMS LACK MATERIALITY (AND KNOWLEDGE OF MATERIALITY)
#### a. NO NEW MATERIALITY PLEADINGS; NO EVIDENCE OF MATERIALITY

This Court dismissed Relator's claims because, among other reasons, Relator did not establish "materiality" in his pleadings. (Dkt. 23, p. 8). Relator has amended his complaint, **but his SAC alleges nothing new regarding materiality.** Nor could it do so, given the rigid/demanding materiality standard proscribed by *Escobar*.

---

[8] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-13-26.pdf.
[9] https://oig.hhs.gov/oei/reports/oei-05-12-00080.pdf.
[10] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-16-08.pdf.
[11] https://npiregistry.cms.hhs.gov/registry/provider-view/1922415538; https://npiregistry.cms.hhs.gov/registry/provider-view/1356339543; https://npiregistry.cms.hhs.gov/registry/provider-view/1194824573; and https://npiregistry.cms.hhs.gov/registry/provider-view/1043292303.
[12] https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107c02.pdf.
[13] https://www.justice.gov/file/1028756/download.

THE HEALTH LAW PARTNERS, P.C.

A misrepresentation or omission is "material" for the FCA if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C.A. § 3729(b)(4) (West). The FCA's materiality requirement is "rigorous" and "demanding." *Id.* at 2003–04. The key question is whether the government is likely to attach significance to the requirement in deciding whether to tender payment. *Id.* at 2002–03. "[P]roof of materiality can include, but is not necessarily limited to, evidence that ... the Government consistently refuses to pay claims **in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement**." *Id.* at 2003, **emphasis added**. But, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003–04. **Relators must plead facts to support the foregoing**.[14] *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

Here, despite having his FAC dismissed for lack of materiality, Relator again fails to plead facts to support materiality (*e.g.*, evidence that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement) in his SAC.

Instead, Relator pleads that:

> The failure to meet the distance requirement is material to government's payment of claims submitted by the Hospital as a CAH. If Hospital is not a CAH, then Hospital's reimbursement rate would be significantly smaller than the reimbursement rate the Hospital enjoys as a CAH. Thus, not meeting the distance requirement is material. The government would not have reimbursed those claims at 101% reimbursement rate had it known that the Hospital was not properly a CAH.

> (Dkt. 26 ¶ 45)

**Relator merely reiterates what he has already plead (and this Court dismissed).** Simply, Relator previously plead allegations that Mountains did not meet the Conditions of Participation, and told the Court previously that Mountains would not have been paid at the CAH rate if it didn't meet the

---

[14] "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Fed. R. Civ. P. 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."

THE HEALTH LAW PARTNERS, P.C.

Conditions of Participation. Adding that "meeting the distance requirement is material" and that "the government would not have reimbursed" at the CAH rate is wholly inadequate under *Escobar*'s standards (or this Court's prior ruling).

Simply, there are no statutes or regulations that connects the CAH Conditions of Participation to payment of claims. See *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (explaining that the false claim must be "integral to a causal chain leading to payment"). Relator does not, likewise, show a "mine run" of cases where CMS is denying claims to CAHs based on the distance requirements. For instance, Relator could have tried to plead facts showing that the four (4) California CAH hospitals that Relator states were found by the OIG to not meet the distance requirements have been denied CAH payments since the issuance of the report. Yet, Relator does not/cannot plead this, because all 4 identified California hospitals continue to be Medicare CAHs, and paid as the same, to this day.[15] See **EXHIBIT 4**. Likewise, specific to Mountains, Relator informed the government of alleged non-compliance on January 3, 2017 – yet, to this day 15 months later, Mountains continues to be paid as a CAH with no signal in change from CMS. As in *Escobar*, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." 31 U.S.C.A. § 3730(b)(2) (West). Relator does not bear this burden of pleading, because he cannot.

Notably, pre-*Escobar* case law in the 9th Circuit confirms this outcome. Here, Relator pleads that a Condition of Participation, as opposed to a Condition of Payment, was violated. Though *Escobar* rejected that a *Condition of Payment* (not alleged by Relator in this case) was an adequate proxy for materiality, it left intact the analytical framework utilized by Courts in the 9th Circuit whereby they routinely have found that **Conditions of Participation (as alleged by Relator in this case) are not material in the Medicare context.**[16]

---

[15] Including Frank R. Howard Memorial Hospital, and Colorado River Medical Center, who are not necessary providers. Redwood Memorial and Healdsburg District Hospital are necessary providers.

[16] See, *United States ex rel. Huey v. Summit Healthcare Ass'n, Inc.*, No. CV-10-8003, 2011 U.S. Dist. LEXIS 26740 at *17 (D. Ariz. Mar. 2, 2011) (rejecting the relator's allegation that defendant hospital breached FCA because of its nurse supervision practices because in "the Medicare context,…conditions of participation, unlike conditions of payment, are insufficiently related to the government's payment decision to form the basis of an

THE HEALTH LAW PARTNERS, P.C.

### b. Relator's FCA Claims are Not Material, and Are Inappropriate When Other Regulatory Schemes Govern.

The Court should note the interplay of the CMS Certification and Re-Certification process and the lack of materiality.[17] Here, as plead by the Relator, he has disclosed the allegations underlying his lawsuit to the government even before filing his first complaint (Dkt. 26, ¶11). At a minimum, statutorily, relators must disclose the material evidence underlying their lawsuit at the time in which the lawsuit is filed,[18] and the government must investigate.[19] Here the government has learned, and has had the opportunity to fully investigate, the Relator's allegations. Yet, Mountains remains a critical access hospital, and is paid as the same with no signaled change from CMS, 15-months later.

Here, the government itself either believes there is no violation of law, or agency experts would prefer, to better administer the programs they are charged with overseeing, that the violation be addressed through administrative sanctions. The politically accountable, expert government official's policy preferences regarding how the law should be enforced, not the nonpolitically accountable, financially self-interested, nonexpert private relator's, should govern. To prevent qui tam relators from second-guessing expert government administrators, or short-circuiting the remedial process the government has established to address noncompliance with regulations, appellate and circuit courts, post-*Escobar*, have ruled that relators cannot establish the FCA's materiality element when evidence shows that, notwithstanding the relator's allegations, regulators did not act to impose readily available

---

FCA claim"); *Sweeney v. ManorCare Health Servs., Inc.*, No. C03-5320RJB, 2005 U.S. Dist. LEXIS 45216 at *4, *11–14 (W.D. Wash. Mar. 4, 2005) (dismissing the relator's Medicare FCA complaint because the relator did not show that regulatory violations were conditions of payment, but were only "conditions of participation in the Medicare and Medicaid programs. Moreover, there are administrative and other remedies for regulatory violations.").

[17] See, e.g., "The Salcido Report: False Claims Act Public Disclosure Alert," available at https://www.akingump.com/images/content/6/0/v2/60954/The-Salcido-Report-False-Claims-Act-Public-Disclosure-Alert.pdf.

[18] Relators must serve the government their statement of material evidence in support of their claims at the time that they file their action. 31 U.S.C. §3730(b)(2).

[19] Under the FCA, the "Attorney General diligently shall investigate a violation." 31 U.S.C. §3730(a).

administrative sanctions on the defendant, continued to pay for the defendant's product, or investigated the relator's allegations and found no violation.[20]

In *United States ex rel. United States ex rel v. Medtronic, Inc.*, No. LACV1501212JAKASX, 2017 WL 4023092, at *7 (C.D. Cal. Sept. 11, 2017), the court ruled that permitting the relator to proceed would undermine the agency's regulatory process when the agency knew of the relator's allegations but imposed no administrative sanction, and the agency's inaction demonstrated that the relator's allegation was not material to the government's determination to pay. Likewise, this Court, and several others, have determined that claims for fraud "are disfavored if made by third parties who seek to second guess a decision by the [Food and Drug Administration ("FDA")] to certify a device." See *United States ex rel v Medtronic, Inc.*, No. LACV1501212JAKASX, 2017 WL 4023092, at *7 (C.D. Cal. September 11, 2017). Though this case involves CAH certification, versus certification of a medical device, the analytic principles remain the same. Here the regulatory scheme is based upon independent certification and recertification (much like the FDA's process) which is not the typical garden variety FCA action. The district court in *Medtronic* held that the FDA had a process along with resources to investigate and approve, and enforcement jurisdiction to regulate Food, Drug, and Cosmetic Act ("**FDCA**") violations. *(Id.)*. See also *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348–350, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001).

In *Medtronic* the relator questioned a medical device's FDA certification, and pled that medical devices without proper FDA certification through a § 510(k) clearance cannot support a request for reimbursement under Medicaid. The court in *Medtronic* held that claims of fraud are disfavored if made

---

[20] See, e.g., *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 670 (5th Cir. 2017) ("When the government, at appropriate levels, repeatedly concludes that it has not been defrauded, it is not forgiving a found fraud—rather it is concluding that there was no fraud at all."); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017)(The court dismissed relator's case because relator could not show that CMS "consistently refuses to pay" claims like those alleged and reimbursed claims with full knowledge of the alleged noncompliance. "Nor has he cited to a single successful claim under § 1395y involving drugs prescribed for their on-label uses or a court decision upholding such a theory."); *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384 (5th Cir. 2017) (Evidence of government investigation and lack of agency adverse action indicate "strong evidence" that the requirements in those regulations are not material); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017) ("if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").

THE HEALTH LAW PARTNERS, P.C.

by third parties second guessing a decision by the FDA to certify a device. *Id*. Relator's claims in this case are a challenge of the independent decision of CMS/its ROs to grant CAH certification/ recertification, just as the relator's pleadings in *Medtronic* were a challenge to the FDA's decision to grant clearance for a medical device. *Id*. In support of its reasoning, the *Medtronic* court stated that the FDA has adequate "enforcement jurisdiction and processes to police FDCA violations, including fraudulent submissions made in connection with an approval or clearance." *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 799 (8th Cir. 2011) See, e.g., *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 799 (8th Cir. 2011) (the appellate court held that "if the regulatory violations were only conditions of . . . participation, they 'are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program'"). In conclusion, the court in *Medtronic* stated that allegations of fraud stating that a defendant misled the FDA during the §510(k) certification process is not proper for a FCA action. *Id*.[21]

Here, a CMS RO, then CMS, then the OIG in its 2013 OIG Report, independently evaluated Mountains' distance and certified it as a CAH. CMS and its ROs have been given similar resources, enforcement jurisdiction, and regulatory authority to monitor and regulate any CAH that does not meet proper approval through the certification process. CMS has its own enforcement and decertification methods to deal with CAHs that do not meet CAH certification standards. CMS already has set standards for annually certifying and recertifying the rural, distance, and necessary provider verification of CAHs. (**EXHIBIT 3**, at pgs. 1-2). Other sub-regulatory guidance from CMS confirms this – see, CMS State Operations Manual, at Ch. 2256A, "The RO…has primary responsibility to verify compliance with 42 C.F.R. §485.610(c)." **EXHIBIT 5**. Relator wants to substitute his judgment for that of CMS and its ROs (and the OIG). Even if this Court were to take Relator's facts and allegations as true,

---

[21] Citing *United States ex rel. D'Agostino v. EV3, Inc.*, 153 F. Supp. 3d 519, 539 (D. Mass. 2015), *aff'd sub nom. D'Agostino v. ev3, Inc.*, 845 F.3d 1 (1st Cir. 2016) ("[A]n FCA action is not the appropriate vehicle for this court to exercise its judgment in second-guessing decisions taken by the FDA in approving the use of medical devices simply because the government happens to pay for some of them."); see also *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997) ("[C]laims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA."); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266–67 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA.").

The Health Law Partners, P.C.

1  if a CAH is non-compliant with the distance requirements of 42 C.F.R. § 485.610(c), then the RO from

2  CMS would have had to notify Mountains of its options and allow it time to resolve any deficiencies in its

3  CAH status or have its Medicare participation terminated or switch to standard hospital based status. (*Id.*

4  at 3). The remedy for the discovery of a CAH distance deficiency (of the type alleged by the OIG in its

5  2013 report) in CMS's certification process is possible revocation of CAH status and further

6  administrative relief afforded by law, not an FCA claim. Relator's claims against Mountains are

7  inappropriate.

### c.  The FCA Is Not an All Purposed Fraud Statute, and Relator's Use of Sub-Regulatory Guidance is Inappropriate

9        The FCA is a punitive law focused on fraud on the U.S. Treasury. The Supreme Court in *Escobar*

10  has recognized that the FCA's rigorous/demanding materiality standard is necessary to set definite limits

11  to prevent the FCA from being "an all-purpose antifraud statute." *Escobar* at 1989. So, *Escobar* notes that:

12            "concerns about fair notice and open-ended liability "can be effectively addressed through

13            strict enforcement of the Act's materiality and scienter requirements."…Those

14            requirements are rigorous."

15  *Escobar* at 2002. *Emphasis added*.

16        The Court should note, in this context, the Relator's use of ever-evolving sub-regulatory guidance

17  to attempt to establish liability under the FCA. The U.S. Department of Justice ("**DOJ**") itself

18  recognizes that use of sub-regulatory guidance is inappropriate in FCA cases. In a recent memo, the DOJ

19  provided that "effective immediately …the Department may not use its enforcement authority to

20  effectively convert agency guidance documents into binding rules," and "[d]epartment litigators may

21  not use noncompliance with guidance documents as a basis for proving violations of applicable law in

22  affirmative civil enforcement cases." **EXHIBIT 6.**[22] Instead of pleading 42 C.F.R. § 485.610(c)'s

23  requirements, Relator pleads regarding Mountains' compliance with "sub-regulatory guidance"

24  (CMS's State Operations Manual interpretation of 42 C.F.R. § 485.610(c)'s requirements),[23] and

---

[22] As an "ad hoc deputy" of the DOJ, Relator's counsel should be bound by this guidance. *U.S. ex rel. Grubbs v. Kannegami*, 565 F.3d 180, 184 (5th Cir. 2009).

[23] Note that Mountains is not necessarily for these purposes briefing deference/Chevron/Skidmore issues, or questioning the propriety/validity of CMS's use of this particular sub-regulatory guidance (though it

attempts to: (i) apply this sub-regulatory guidance retroactively; and (ii) apply/interpret it based on Relator's flawed interpretation of the same. This has no business being the basis of a FCA case.

Relator himself concedes that his alleged claims are based on the definitions in CMS's 2013 sub-regulatory guidance State Operations Manual for "mountainous terrain" and "secondary roads" (SAC, ¶19). And, Relator admits that the definitions of the terms in 42 C.F.R. § 485.610(c) set forth in the April 2013 CMS State Operations Manual contradict earlier pronouncements by CMS (see SAC ¶19, n. 4) ("'"Prior to 2013, CMS defined mountainous terrain' as …"). Relator does not allege how Mountains failed to meet the prior-to-2013 sub-regulatory definition, nor does he attempt to allege how Mountains fails to meet the actual regulatory requirements at 42 C.F.R. § 485.610(c).

Relator's claims must fail under *Escobar*, which requires that not only must the issue be material, but that the defendant know of that materiality and that courts enforce this rigorous scienter requirement.

**2. RELATOR DOES NOT ALLEGE WITH PARTICULARITY THE SCHEME TO DEFRAUD AND SET FORTH WHAT IS FALSE OR MISLEADING, AND WHY IT IS FALSE, AS NECESSARY TO COMPLY WITH RULE 9(B) AND 12(B)(6) FOR A CIVIL FCA CASE.**

---

can do so if necessary). Instead, Mountains notes that there is a clear difference between prospective agency uses of sub-regulatory guidance, and FCA cases/retroactive punitive enforcement of a Relator's interpretation of sub-regulatory guidance.

This is especially distinct when, in this case, agency interpretation is evolving. "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Thompson*, 323 F.3d 792 (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987)). And, "Pronouncements in manuals like [CMS's State Operations Manual], which do not have the force of law, are entitled to less deference than an interpretation arrived at after a formal adjudication or notice-and-comment rulemaking." *Cmty. Hosp. of Monterey Peninsula v. Thompson*, 323 F.3d 782, 791 (9th Cir. 2003) (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000)). "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant Chevron-style deference." *Id.* (citing *Reno v. Koray*, 515 U.S. 50, 61, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995)) (internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," entitled only to "some deference" (internal quotation marks omitted)). Instead, as the Supreme Court noted, "[i]nterpretive rules [found in the CMS Manual] do not have the force and effect of law and are not accorded that [Chevron ] weight in the adjudicatory process." *Id.* (citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995)).

THE HEALTH LAW PARTNERS, P.C.

A complaint brought under the Civil FCA, 31 U.S.C.A. § 3729, must comply with Rule 9(b). See *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010).

In dismissing the plaintiff's complaint for failure to comply with Rule 9(b), the Court in *Ebeid*, set forth the requirements of Rule 9(b):

> … "[I]n alleging fraud or mistake," Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). In addition, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" Id. (*quoting Decker v. GlenFed. Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

*Ebeid ex rel. U.S.*, 616 F.3d at 998. See also *United States ex rel. Mateski v. Raytheon Co.*, No. 206CV03614ODWKSX, 2017 WL 1954942, at *3 (C.D. Cal. Feb. 10, 2017) (a claim under an implied false certification theory requires specific representations to be actionable).

Relator still fails to allege that Mountains made fraudulent or false representations, records, statements, reports, and certifications as it pertains to claims submitted to CMS. Despite his attempt to cite an instance back in 2002 in which an alleged representation was made to CMS,[24] Relator still cannot articulate what fraudulent or false representations, records, statements, reports, or certifications were made by Mountains for either claims submitted to the government for reimbursement, or representations made by Mountains for CAH certification past 2002. (Dkt. 26, ¶¶ 53, 54, 58, 59, and 63). Courts have determined that this type of pleading without alleging an actual false claim, statement, report, or certification, is wholly insufficient. See *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 n.4 (11th Cir. 2010) (rejecting relator's vague allegations that she had "found" unspecified documents, and "discovered" or "learned" that defendants submitted false claims); *U.S. ex rel. Grubbs*, 565 F.3d at 191 (FCA claims require a strong inference that false claims were actually submitted "such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into."). Relator's deficient pleading fails to state a claim upon which relief can be granted under 12(b)(6).

### a. THE FACTUAL ALLEGATIONS ABOUT MOUNTAINS DO NOT COMPORT WITH RULE 9(B) OR THE FEDERAL PLEADING REQUIREMENT.

---

[24] Relator does not explain how the alleged representation was false.

**PAGE 15**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

For Relator to bring a false certification claim his complaint must have: (1) a false statement or fraudulent course of conduct; (2) made with requisite scienter; (3) that was material; causing (4) the government to pay out money or forfeit moneys due. *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011). The first element to a FCA claim is stating a false statement or fraudulent course of conduct with sufficient specificity. *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992), *overruled by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015). "One violates the [FCA] if one has 'actual knowledge' that one is submitting a false or fraudulent claim for payment or approval, acts in deliberate ignorance of the truth or falsity of one's false claim, or acts in reckless disregard of the truth or falsity of one's false claim." *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992); *U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991). Since Relator is not alleging any specific representations about actual services rendered, he is attempting to allege misrepresentations made by Mountains to show noncompliance with material statutory, regulatory, or contractual requirements. *Escobar*, 2001.[25] Materiality is addressed in this Motion above.

Relator concedes that Mountains is a recognized CAH authorized by CMS since 2002. (Dkt. 26 ¶ 32). However, he bases his entire theory of liability on a single alleged representation in Mountains' CAH application in 2002 – that in 2002 Mountains' previous-CEO made an affirmative representation that Mountains met the distance requirement as required by 42 C.F.R. § 485.610(c) – Condition of Participation. (Id. ¶ 30). Relator essentially alleges that Mountains claimed it was located more than a 15-mile drive from any other general acute hospital in which there was either mountainous terrain or secondary roads. (Id.). However, Realtor fails to explain how this representation or opinion was false when it was made, the applicable regulatory C.F.R. text at the time, that the government relied upon the alleged representation, or how it materially relates to conditions of payment through any claims

---

[25] The Ninth Circuit has stated in *United States ex rel. United States ex rel. Kelly*, 846 F.3d 325 its opinion that an FCA claim under an implied false certification theory requires that claims contain specific representations to be actionable in light of *Escobar*. This interpretation has been adopted by this Court as well. See *United States ex rel. Mateski*, 2017 WL 1954942, at *3. Most notably, the Central District has held that "mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain "specific representations about [the defendant's] performance." *Mateski*, No. 206CV03614ODWKSX, 2017 WL at *5 (citing Kelly at *6). (emphasis added)

THE HEALTH LAW PARTNERS, P.C.

submitted by Mountains to a federally funded governmental entity. Throughout Relator's Amended Complaint, he cites various requirements for CAH certification. His entire theory of liability against Mountains rests with whether Mountains meets certain distance requirements as required by 42 C.F.R. § 485.610(c). (Dkt. 26, ¶ 45). However, Relator merely provides conclusory statements indicating there is allegedly no way Mountains could meet the requirements of 42 C.F.R. § 485.610(c), therefore Mountains must have made false claims or false representations. Conclusory allegations alone are not enough to pass muster under Rule 9(b). *Ebeid ex rel. U.S.*, 616 F.3d at 1000.

Relator provides a lengthy factual explanation that 42 C.F.R. § 485.610(c) has been subjected to evolving agency interpretation over the years. (Dkt. 26, ¶¶ 19 and 36). Before 2013, Relator alleges CMS had a differing definition of "mountainous terrain." (Id. ¶ 19). However, Relator provides no factual basis on why Mountains' roads would not qualify as mountainous terrain under the pre-2013 CMS agency interpretation. Then, in an attempt to allege a factually sufficient claim against Mountains, Relator alleges post-2013 CMS interpretive guidance. (Id. ¶ 36) Relator merely concludes, through his own opinion, that Mountains does not meet these characteristics post-2013, which is factually insufficient under the heightened fraudulent pleading standards of Rule 9(b). Relator further fails to realize that the above-mentioned criteria is subject to agency interpretation, and provides no definitive rule on what will be considered in conformity with CMS regulations and, ultimately, satisfy the distance requirements stated in 42 C.F.R. § 485.610(c).

More important, Relator provides no evidence of false statements, schemes, claims, or otherwise made by Mountains to any federal regulatory agency, a necessary pleading requirement. *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 616 F.3d 983, 990 (9th Cir. 2010). Although he states that an alleged agent from Mountains told him that Mountains met the distance requirement some time during his employment during 2007, he fails to materially connect this statement with any claim for payment submitted by Mountains for reimbursement under a federal healthcare program, a fatal implication to his complaint. (Dkt. 26, ¶ 47). *Phoenix* at 1174.

For a Relator to present a viable implied false certification theory, he must plead with particularity allegations that "provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were

1  submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Ebeid*

2  *ex rel. U.S.*, 616 F.3d at 998.

3      Relator, in his SAC, still makes no allegations implicating a fraudulent scheme used to submit

4  claims for reimbursement by Mountains. The SAC alleges Mountains knew it did not meet distance

5  requirements, therefore each CMS Form 2552 it filed as a CAH constituted a false statement. (Dkt. 26, ¶

6  44). The federal government allegedly overpaid for services provided to Medicare beneficiaries. (Id.).

7  Relator then alleges sums of Mountains' fraudulent charges from 2002- 2015. (Id. ¶¶ 49-50.)[26] No

8  allegations show claims allegedly submitted by Mountains that were either (1) false/fraudulent; (2) not in

9  conformity with applicable regulations; or (3) relied upon by the government in determining any claims

10  for payment.

11      Mountains' alleged statement during its 2002 application for CAH status has not been pled with

12  adequate specificity to show it was false. Most notably, Relator fails to cite to any authority indicating that

13  Mountains was not located more than 15 miles from an acute care facility with either mountainous terrain

14  or secondary roads in between the two facilities. Instead, he attempts to jump into the shoes of a regulator

15  and use 2013 sub-regulatory guidance for determining the falsehood of the statement in 2002. (Dkt. 26, ¶

16  36). However, even if this Court were to accept this sub-regulatory standard that led to Relator's

17  unsupported conclusory determination of falsehood against Mountains, Relator has failed to use the

18  proper sub-regulatory guidance applicable during 2002. According to Relator's own pleadings:

19          "Prior to 2013, CMS defined "mountainous terrain" as areas identified as such on any

20          official maps or other documents published by the State agency responsible for highways in

21          the Sate (typically a Department of Transportation or Highways) or by USGS." (Dkt. 26 ¶

        19, note 4).

22      Nothing in Relator's pleadings suggests that Mountains did not comply with this sub-regulatory

23  guidance at the time of its alleged 2002 statement.

24      Even if this Court takes Relator's allegations as true for this Motion, nothing suggests that

25  Mountains was not in conformity with 2013 agency sub-regulations. Relator alleges that 15 or more miles

26  of the route between SBMC and Mountains must be either mountainous terrain or secondary roads as a

27  condition of participation for Mountains'-s CAH status. (*Id.* at ¶36). Relator also alleges there are both

28

---

[26] All of these sums are publicly available at https://siera.oshpd.ca.gov/FinancialDisclosure.aspx.

1    12.4 miles of secondary roads, and 10.4 miles of mountainous terrain, between SBMC and Mountains

2    (under Relator's interpretation of CMS sub-regulatory guidance). (*Id.* at ¶ 36). By simply adding these

3    distances together, Mountains has 22.8 miles between itself and SBMC in which there are either

4    mountainous or secondary roads between the two hospitals, well over the "more than 15-mile"

5    requirement. Nothing in 42 C.F.R. § 485.610(c) states that mountainous terrain and secondary roads

6    must be kept separate. The plain unambiguous meaning of the rule states ". . .in the case of mountainous

7    terrain or in areas with only secondary roads available, a 15-mile drive from a hospital or another CAH[.]"

8    42 C.F.R. § 485.610(c). See also 42 C.F.R. § 485.610(c). Relator concedes that the OIG, in 2013, found

9    that Mountains met the distance/location requirements. (Id. at ¶¶ 25-26). Relator cannot adequately

10   plead under 9(b) when his own pleadings state that Mountains complied.

11        Relator also fails to consider changes in road conditions, construction, and other relevant factors

12   over the years that may have led to Mountains's CAH certification/re-certification. Relator merely takes

13   a one-size-fits-all approach and boldly alleges that for 16 years there were no changes in routes or

14   distances between SBMC and Mountains. These speculative, unsupported conclusions do not give the

15   indicia of reliability required under federal pleading standards, and they do not comport with the findings

16   of CMS or its ROs or the OIG.

17        In addition, Relator fails to plead facts sufficient indicating the government relied upon Mountains'

18   compliance with 42 C.F.R § 485.610(c) as a condition of payment material to its CAH status. See *Escobar*,

19   at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates

20   compliance with a particular statutory, regulatory, or contractual requirement as a condition of

21   payment."); *U.S. ex rel. Hopper*, 91 F.3d at 1266–67 ("Violations of laws, rules, or regulations alone do not

22   create a cause of action under the FCA."). Nowhere in the allegations cited by Relator does it allege that

23   CMS form 2552 or CMS form 855A mandate that Mountains must adhere to 42 C.F.R. § 485.610(c) (as

24   interpreted by CMS through sub-regulatory guidance) to receive reimbursement under Medicare. (See

25   *U.S. ex rel. Cox v. Iowa Health Sys.*, 29 F. Supp. 2d 1022, 1026 (S.D. Iowa 1998) (Relator could not state a

26   cause of action under the FCA because he failed to "identify any law, regulation, or other source

27   suggesting federal medical programs expected air ambulance mileage claims to be in nautical miles rather

28   than statute miles."). Notable also is a derelict of pleading citing any agency rule or law that connects

THE HEALTH LAW PARTNERS, P.C.

compliance with 42 C.F.R. § 485.610(c) to the payment of claims under a federally funded healthcare program. Instead, Plaintiff's complaint alleges that compliance with 42 C.F.R. § 485.610(c) is a requirement for participation as a CAH. (Dkt. 26, ¶ 36). Relator's SAC, much like its FAC, still fails to satisfy Rule 9(b).

### b. Relator's Fraud Allegations do not Demonstrate a Reliable Indicia that False Claims were Actually Submitted.

Under *Ebeid*, Relator must submit "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 999. Here, Relator's SAC is rife with unreliable allegations, and provides little, if any, foundational support as an original or credible source of information. Relator still lacks information to support what was falsely submitted to any federal regulator/agency. Finally, Relator does not possess information either unavailable to the general public or materially specific to Mountains' credentialing process as a CAH.

According to Relator's pleadings, he was the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008, and Mountains purportedly failed to create in 2008 a non-required "survey or audit the surveyor's findings" policy. (Dkt. 26, ¶¶ 7 and 47). Despite his short duration of employment at Mountains, he makes allegations from 2002-2015. However, Relator's SAC is absent of any foundational support to show he specifically knows of alleged false claims submitted to the government. He admits that he was not a compliance officer. (Id. at 47). The SAC also fails to allege what information Relator was privy to at Mountains about CAH compliance. Relator merely alleges generic forms purportedly used by Mountains (*e.g.*, CMS Form 2552 and 855A), and the unspecified contents of those forms, but makes no allegations on specific claims or Mountains' CAH certification process past-2002 in his SAC. (Dkt. 26, ¶¶ 37-40, 42, and 44). These forms are standardized forms available to the general public that offer no insight or clarity on Mountains' operations or specific alleged representations or claims made to the federal government. Undaunted, Relator, without support or even pointing to a specific provision of the generic forms (much less the actual forms completed by Mountains), concludes that false or fraudulent claims were submitted by Mountains from 2002 to the present. (Dkt. 26, ¶¶ 52, 57, and 62). Aside from one alleged representation in 2002, Relator's SAC is derelict of any allegations showing he had any independent or material knowledge of Mountains' CAH certification process, the

**Page 20**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

1  entire basis of his causes of action in his SAC. Relator has not provided reliable indicia that false claims

2  were knowingly and actually submitted in compliance with the pleading standards in *Ebeid*.

3       Despite Relator's recent efforts in his SAC, he has still failed to sufficiently plead in compliance

4  with Rule 9(b). See (Dkt. 23, pgs. 8-9). Similar to *Ebeid*, Relator has not shown that he was privy to the

5  details of Mountains' CAH certification process and its connection with patient billing or billing to

6  Medicare. *Id.* at 999. The absence of allegations stating with particularity the circumstances establishing

7  fraud or mistake dooms Relator's claims just as it doomed *Ebeid*'s claims. *Id.* Relator's reliance upon

8  common public knowledge (standardized CMS forms submitted for payment to Medicare), generalized

9  information, and the speculative characterization of travel routes in the San Bernardino area are wholly

10  insufficient, and must be dismissed under Rule 9(b) and federal pleading requirements.

### 3. Public Disclosure

12       Mountains references the arguments it made in Dkt. 19 and 22. Mountains respectfully requests

13  this Court to reconsider under Rule 60 its previous arguments that Relator is merely a parasitic plaintiff

14  using publicly disclosed information and is not an original source. See (Dkt. 19-1, pgs. 17-23). Mountains

15  has no intension of rehashing old arguments but wishes to convey that Plaintiff's past and current

16  conduct exude that which the U.S. Supreme Court has sought to preclude. The Supreme Court

17  cautioned against "opportunistic litigation that the public disclosure bar is designed to discourage" in

18  that "[a]nyone could identify a few regulatory filing and certification requirements, submit FOIA

19  requests until he discovers a federal contractor who is out of compliance, and potentially reap a windfall in

20  a qui tam action under the FCA." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 402, 131 S. Ct.

21  1885, 1888, 179 L. Ed. 2d 825 (2011).

22       After lengthy exhortations about how his insider information formed the basis of this suit, this

23  Court found that Relator was not subject to the public disclosure bar. (Dkt. 23, pg. 7). However, Relator

24  has at least two other lawsuits on this exact same issue with other hospitals that he has no relation to, see

25  *U.S. ex rel. Frank Adomitis v. Ojai Valley Community Hospital*, Case No. cv-17-06972, (C.D. Cal.

26  September 21, 2017), and *U.S. ex rel. Frank Adomitis v. Tahoe Forest Hospital District,* Case No. cv-17-

27  00934 (E.D. Cal. September 10, 2017) attached as **EXHIBIT 7**. In both, Relator has pled essentially the

28  same allegations (presumably without the "insider information"). The SAC demonstrates that Relator is

**Page 21**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

THE HEALTH LAW PARTNERS, P.C.

1  simply using publicly disclosed information to improperly bring lawsuits with little or no merit against
2  CAH's in the California area. Relator did not even have any relation with either hospital, he merely
3  looked to Google maps and made his own speculative/conclusory determinations using sub-regulatory
4  guidance.

5  As previously briefed, Relator plagiarized the 2013 OIG Report and attempted to hide the same
6  from this Court. The 2013 OIG Report laid the path for Relator to go on his crusade against Mountains
7  and other similarly situated CAHs. The 2013 OIG Report contained the exact allegations/transactions
8  and essential facts that put the government on notice as to any potential fraud allegation against
9  Mountains. Public disclosures need not cite specific allegations of fraud. *United States v. Alcan Elec. &*
10 *Eng'g, Inc.*, 197 F.3d 1014, 1018–1020 (9th Cir. 1999). What is required is that the public disclosure
11 provides the government with enough information to pursue an investigation. *Alcan Elec. and*
12 *Engineering, Inc.*, 197 F.3d at 1019; see also *Unites States e rel. Longstaffe v. Litton Indus., Inc.*, 295 F. Supp.
13 2d 1187, 1195 (C.D. Cal. 2003) ("All that is required is a finding that the publicly disclosed allegations
14 were sufficient to put the government on notice of the alleged FCA violations"). Like in *United States ex*
15 *rel. Gear v. Emergency Med. Assocs., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006), a public disclosure implicating
16 the entire industry was found when the HHS OIG audited 125 medical schools, even though the
17 defendant was not named by or alleged to have committed the acts investigated by the OIG. Like *Gear*
18 the government was put on notice to a very specific issue by the 2013 OIG Report. Mountains
19 respectfully requests this Court reconsider this argument.

20 **4.  Relator's Claims are Barred by the FCA Statute of Limitations.**

21 31 U.S.C. § 3731(b) provides a statute of limitations for FCA claims. It states:

22 A civil action under section 3730 may not be brought—
23 (1) more than 6 years after the date on which the violation of section 3729 is
   committed, or
24 (2) more than 3 years after the date when facts material to the right of action are
25 ***known or reasonably should have been known*** by the official of the United States
   charged with responsibility to act in the circumstances, but in no event more than
26 10 years after the date on which the violation is committed,
27 whichever occurs last. 31 U.S.C. § 3731(b). ***Emphasis added.***

28

**Page 22**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

The Health Law Partners, P.C.

Under 31 U.S.C.A. § 3731(b), Relator is either subject to a six-year statute of limitations, or a 10-year tolling statute with a 3-years "reasonably should have been known" limiter. Determining which part of the statute applies as a bar to Relator's claims requires a factual analysis that is apparent from the face of his SAC.

Relator has alleged three causes of action in his SAC under the FCA, that allegedly occurred "from 2002 through the present." (Dkt. 26, ¶¶ 52, 57, and 62). To support these causes of action, he has alleged that he worked as the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008, and knew that Mountains was not a necessary provider. (Dkt. 26, ¶¶ 7 and 33). To allege that he was somehow fooled into believing that Mountains met the distance requirements, he alleges that he was told that Mountains met the distance requirements. (Dkt. 26, ¶ 47). In addition, he alleges that he was not a compliance officer and relied upon this purported representation when submitting Mountains' claims. In further support, he states he had never driven the distance between Mountains and St. Bernardine using Hwy 18 prior to 2015 because he did not have to do so. (Dkt. 26, ¶ 47). On January 3, 2017, Relator filed his original complaint. (Dkt. 5).

### a.  Relator Previously Conceded that his Claims were Limited by the Statute of Limitations

Albeit reluctantly, Relator has conceded in his previous briefing that his claims are limited to alleged violations from January 3, 2007, thus Relator has chosen 31 U.S.C.A. § 3731(b)(2) in order to toll the statute of limitations for his claims. Otherwise, Relator would be subject to 31 U.S.C. § 3731(b)(1) which would foreclose any cause of action under the FCA because he did not file his complaint within the six-year statute of limitations period from when the alleged violations occurred in his complaint (2002).

Relator's allegations, however, are not in tune with the fact that he ***should have*** discovered information essential to his complaint during his employment with Mountains. Being the Chief Financial Officer for Mountains, he could have and should have reviewed the distance requirements during his employment with Mountains as he was allegedly responsible for Mountains' claim submissions. He was also, according to his pleadings, on notice as to the distance requirements required for CAH certification since July 1, 2007. Relator could have easily made inquiry to publicly available information on the distance between Mountains and SBMC. Relator had access to maps, geographical and topographical material

**Page 23**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP
The Health Law Partners, P.C.

found on the internet, such as Google Maps, and other publicly available information well before his unexplained February 2015 revelation. (Dkt. 26, ¶ 35). One cannot "bury (one's) head in the sand" and remain blissfully ignorant to Mountains' (and the government's) purported detriment. Inexplicably, Realtor subsequently filed his original complaint on January 3, 2017, nearly 10+ years after he started work at Mountains, and nearly 16 years after he purports the violation was committed (Dkt. 5). Qui tam relators cannot be allowed to sit on their laurels, wait nearly 15+ years to sue, and allow alleged fraud losses to mount. *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996).

### b. THE LAW SUPPORTS DISMISSAL OF RELATOR'S CLAIMS

Relator does not meet the tolling requirements of 31 U.S.C.A. § 3731(b)(2), and his complaint is time barred. In 31 U.S.C.A. § 3731(b)(1) (9th Cir. 1996), the United States Court of Appeals for the 9th Circuit unequivocally determined that FCA actions "must be commenced…three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff." Relator should have: (1) filed in 2013, six years after the start of his employment with Mountains on July 3, 2007, to be under § 3731(b)(1); or (2) filed in 2010, three years after he discovered *or should have* discovered alleged FCA violations under 31 U.S.C.A. § 3731(b)(2).

The court in *U.S. ex rel. Koch v. Koch Indus., Inc.*, 188 F.R.D. 617, 639 (N.D. Okla. 1999), briefed this issue extensively and found that in triggering 31 U.S.C.A. § 3731(b)(2)'s three-year limitations period, a Plaintiff need know only the facts making up the "very essence of the right of action."[27] Here, it is clear from Relator's SAC that he either ***knew or should have known*** through reasonable inquiry that Mountains allegedly did not meet the distance requirements. However, instead of filing his case within the applicable statute of limitations period, Relator filed his claim nearly ten years after the statute of limitations had lapsed. Relator must have known or reasonably should have known the facts giving rise to his case during his employment in July 2007. His claims should be time barred and dismissed by this Court.

---

[27] Citing *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir. 1984), cited with approval by, *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 862 (10th Cir. 1993); *U.S. ex rel. Zissler v. Regents of the Univ. of Minnesota*, 992 F. Supp. 1097, 1107 (D. Minn. 1998).

THE HEALTH LAW PARTNERS, P.C.

### 5. Relator Again Pleads Known Overpayments Despite Court Order

This Court ordered that Relator may not amend to allege overpayments retention prior to May 22, 2010 (Dkt. 23 pg. 10). Relator still alleges the same in his amended SAC (Dkt. 26 ¶ 62).

### 6. Relator Should Be Denied the Opportunity to Amend

Courts generally consider these five factors in assessing the viability of leave to amend: bad faith; undue delay; prejudice to the opposing party; futility of amendment; and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Under Fed. R. Civ. P. 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." A district court, however, has the discretion to deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). District courts have denied qui tam relators a third bite at the apple for failing to plead within the confines of the Federal Rules of Civil Procedure. See *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009) (permitting the dismissal with prejudice of a second amended complaint under Rule 12(b)(6)) in a FCA case because of a subsequent failure to plead with adequate particularity). Relator has already been given two opportunities to amend, any further attempt to amend would be futile. *Zucco Partners, LLC*, 552 F.3d at 1007.

## CONCLUSION

Plaintiff's SAC should be dismissed for failure to comply with Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6). As previously briefed, there is a reason that there has not been a flood of FCA litigation regarding CAH distance/location claims. Allowing this suit to proceed would open the door for a flood of parasitic FCA claims (including at least two that are already known to have been filed by Relator).

**Respectfully submitted,** March 13, 2018   **THE HEALTH LAW PARTNERS, P.C.**
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community Hospital District

## PROOF OF SERVICE
## STATE OF MICHIGAN, COUNTY OF OAKLAND

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On March 13, 2018, I served true copies of the foregoing document(s) described as **Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Second Amended Complaint** on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on March 13, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre

1   Marianna M. McIntyre
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28