NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section
KENT A. KAWAKAMI
Assistant United States Attorney
California State Bar No. 149803
     Room 7516, Federal Building
     300 N. Los Angeles Street
     Los Angeles, California 90012
     Tel: (213) 894-4858
     Fax: (213) 894-7819
     Email: kent.kawakami@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FRANK ADOMITIS,<br><br>     Plaintiff,<br><br>     v.<br><br>SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT,<br><br>     Defendant. | No. EDCV 17-00002 JGB(KKx)<br><br>UNITED STATES' STATEMENT OF INTEREST REGARDING ISSUES RAISED IN DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>Date:  April 30, 2018<br>Time:  9:00 a.m.<br>Court: Hon. Jesus G. Bernal |

## I.    INTRODUCTION

On March 13, 2018, defendant San Bernardino Mountains Community Hospital District ("Mountains") submitted a "Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint" ("Mountains' Memo") (Docket No. 27). The United States of America ("United States" or "government") respectfully submits this Statement of Interest

pursuant to 28 U.S.C. § 517[1] to address issues that Mountains' Memo raises.  The United States respectfully submits that:

> (1) in the Ninth Circuit, implied false certification liability does not require a defendant to submit a claim with specific representations about services provided;
>
> (2) an FCA case may be brought even when another regulatory scheme exists; and
>
> (3) the Court may not draw an adverse inference regarding the merits of a relator's allegations from the United States' decision to decline to intervene.

The United States is responsible for enforcement of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, the primary tool in the United States' ongoing effort to combat fraud affecting the public fisc.  *See, e.g., United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993).  While the United States has declined to intervene in this case (Docket No. 6), it remains the real party in interest, entitled to the majority of any damages and penalties that may be recovered on its behalf.  31 U.S.C. § 3730(d); *see also United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217 n.8 (9th Cir. 1996).  The United States also has a substantial interest in the legal contentions advanced in defendant Mountains' motion because the Court's rulings with respect to such contentions may affect the development of FCA law.  The United States is not supporting the position of either the Relator or the defendant on the pending Motion to Dismiss.  Nor is the United States taking a position on any arguments or issues raised in connection with that Motion other than those addressed in this Statement of Interest.

---

[1] 28 U.S.C. § 517 authorizes the Attorney General of the United States to attend to the interests of the United States in any action in federal or state court.

## II.    ARGUMENT

### A.    Implied False Certification Liability Does Not Require Specific Representations

The Ninth Circuit has held that claims for payment, without more, impliedly certify that the claimant has complied with all material conditions of payment.  In *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010), the Ninth Circuit stated,

> Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is *implicated by submitting a claim* for payment even though a certification of compliance is not required in the process of submitting the claim.

*Id.* at 998 (emphasis added).

In its brief, Mountains argues that "an FCA claim under an implied false certification theory requires that claims contain a specific representation to be actionable in light of *Escobar.  Motion,* at 16:24-28, *citing U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017), and *U.S. ex rel. Mateski v. Raytheon Co.*, CV 06-03614, 2017 U.S. Dist. Lexis 93901, at *15 (C.D. Cal. Feb. 10, 2017) ("First *Mateski* Order").

In the First *Mateski* Order and *U.S. ex rel. Mateski v. Raytheon Co.*, 2017 U.S. Dist. Lexis 122685 ("Second *Mateski* Order") (collectively, the "*Mateski* Orders"), Judge Wright concluded that *Kelly* implicitly overruled *Ebeid*.  This conclusion was mistaken for the following reasons:

(1)  *Kelly* did not mention *Ebeid* at all, much less claim to overrule *Ebeid*;

(2)  Recognizing that *Kelly* did not impliedly overrule *Ebeid* avoids the stare decisis problem that a Ninth Circuit panel cannot overrule a prior Ninth Circuit decision, absent clearly irreconcilable intervening higher authority, which is not present here; and

1    (3)  *Kelly* should not be interpreted as having overruled *Ebeid*, which

2    continues to stand for the proposition that claims for payment, without more,

3    impliedly certify that the claimant has complied with all material conditions of

4    payment.

5                    **1.    The *Mateski* Orders**

6         In the *Mateski* Orders, Judge Wright analyzed the requirements for stating

7    an implied false certification claim under the FCA.  Judge Wright first observed

8    that, in *Ebeid*, the Ninth Circuit held that when a claimant submits a claim for

9    payment, the claimant impliedly certifies that it has complied with all material

10   conditions required to obtain payment:

11        Although *Ebeid* did not expressly hold that a mere claim for payment

12        can impliedly certify compliance with all material conditions of

13        payment, its reasoning necessarily implies this . . . . Consequently,

14        under *Ebeid*, a claim for payment need not make any specific

15        representations about the goods or services to be actionable.

16   First *Mateski* Order at 7.

17        Judge Wright next reviewed the U.S. Supreme Court's opinion in *Universal

18   Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016), in which the

19   Court upheld implied false certification as a viable theory of FCA liability.

20   *Escobar* explicitly reserved the question of "whether all claims for payment

21   implicitly represent that the billing party is legally entitled to payment," *id*. at

22   2000; and thus, as Judge Wright concluded, *Escobar* "appeared to keep intact the

23   Ninth Circuit's holding in *Ebeid* that claims for payment can themselves impliedly

24   certify compliance with material payment conditions." First *Mateski* Order at 9.

25        Then Judge Wright turned to *Kelly*, which was decided in January 2017.  He

26   stated that the Ninth Circuit appeared to have affirmed summary judgment against

27   defendant "on three seemingly independent grounds," First *Mateski* Order at 9, one

28   of which, he believed, was that the *qui tam* plaintiff had provided no evidence that

1   defendant's claims for payment had made any specific representations about

2   performance.  *Id*. at 10.

3        Judge Wright recognized how unusual it would be to hold that *Kelly* had

4   impliedly overruled *Ebeid*, because (a) *Kelly* "did not address *Escobar*'s express

5   caveat that it was not deciding whether claims for payment must always contain

6   specific representations about the underlying services the defendant provided," and

7   (b) "[n]or did *Kelly* address *Ebeid*, which held that mere claims for payment could

8   indeed form the basis for an FCA claim." *Id*.

9        Nevertheless, despite *Kelly* not mentioning *Ebeid*, Judge Wright concluded

10  that: "The most reasonable reading of *Kelly* is that mere claims for payment no

11  longer suffice under an implied certification theory; instead, the claims must

12  contain 'specific representations about [the defendant's] performance.'" *Id*.  In his

13  Second *Mateski* Order, Judge Wright reaffirmed his conclusion and that "unless

14  and until the Ninth Circuit clarifies its jurisprudence in this area—which might

15  come sooner rather than later, *see Rose v. Stephens Institute*, No. 17-15111 (9th

16  Cir. 2017)—the Court sees no reasonable alternative interpretation of *Ebeid*,

17  *Escobar*, and *Kelly*." *Id.* at \*12.  We disagree.

18          **2.**    ***Kelly* Did Not Mention *Ebeid*, Much Less Claim to Overrule**

19                    ***Ebeid***

20        *Kelly* did not mention *Ebeid* at all, and therefore did not purport to overrule

21  *Ebeid*.  Nor did *Kelly* address the Supreme Court's express statement in *Escobar*

22  that it was not deciding whether a claim for payment, without more, impliedly

23  represents that the claimant has satisfied all conditions of payment, and is therefore

24  actionable.  *Escobar*, 136 S. Ct. at 2000 ("We need not resolve whether all claims

25  for payment implicitly represent that the billing party is legally entitled to

26  payment.").  The parties in *Kelly* never raised this issue, and thus *Kelly* never

27  considered or addressed *Escobar's* reservation language.  This was the issue that

28  *Ebeid* decided in the affirmative, and which remains unchanged by *Escobar*.

1    Thus, given that (1) *Kelly* did not mention *Ebeid*; (2) the Supreme Court in

2    *Escobar* reserved the issue decided in *Ebeid*; and (3) the parties in *Kelly* did not

3    brief whether *Ebeid* remained good law after *Escobar*, *Kelly* should not be

4    interpreted to have overruled *Ebeid*.

5              **3.    *Kelly* Can and Should Be Read as Impliedly Following *Ebeid***

6    Indeed, *Kelly* can and should be read as impliedly following *Ebeid*, which

7    remains binding Ninth Circuit precedent.  In *Kelly*, the court concluded that

8    defendant Serco did not make any specific representations about the services

9    provided in its vouchers; hence, the vouchers merely requested payment.  *Kelly*,

10   846 F.3d at 332.  Having reached this conclusion, the court was presented with the

11   same situation as in *Ebeid*, and that the Supreme Court in *Escobar* reserved for

12   later decision: namely, whether the implied false certification theory can be a basis

13   for FCA liability where the claim merely requests payment.  Had *Kelly* intended to

14   answer that question in the negative, it either would have said so or at least stopped

15   its analysis at that point.  It did neither because, it should be assumed, *Kelly* was

16   impliedly following *Ebeid*, as required.

17   Consistent with *Ebeid*'s holding that a claim that merely requests payment is

18   actionable under the implied false certification theory, *Kelly* proceeded, at length,

19   to consider whether Serco's implicit representation in each voucher that it was

20   legally entitled to payment was false because of its failure to disclose

21   noncompliance with a material statutory, regulatory, or contractual requirement.

22   *Id*. at 333-335.  Having completed this materiality analysis – which was logically

23   necessary only if *Kelly* was following *Ebeid* – the court then concluded Part III of

24   its opinion as follows:

25              Kelly has failed to establish a genuine issue of material fact regarding

26              the materiality of Serco's obligations to comply with ANSI-748 or

27              provide valid EVM reports.  Given the demanding standard required

28              for materiality under the FCA, the government's acceptance of Serco's

reports despite their noncompliance with ANSI-748, and the
government's payment of Serco's public vouchers for its work . . ., we
conclude that no reasonable jury could return a verdict for Kelly on his
implied false certification claim.  [Citation] [¶] Accordingly, we affirm
the district court's grant of summary judgment on Kelly's FCA claim
for submitting false or fraudulent claims for payment under an implied
false certification theory of liability.

*Kelly*, 846 F.3d. at 334-335.

Thus, contrary to Judge Wright's interpretation, *Kelly* should not be read as
affirming on the "independent ground[]" that Serco's claims for payment did not
make any specific representations about the services provided.  Rather, *Kelly*
should be read as affirming on the sole ground that Serco's omissions were
immaterial as a matter of law.  Indeed, *Kelly* itself counsels in favor of this
interpretation.  In the concluding paragraph of its opinion, the court reiterated the
sole basis for its affirmance on the implied false certification issue as follows:

For Kelly to prevail on his implied false certification theory, the
gravamen of his claim here, Kelly must satisfy the "rigorous" and
"demanding" standard for materiality set forth in *Escobar*.  He has
failed to do so.

*Kelly*, 846 F.3d at 337 (emphasis added).

### 4.    To Conclude that *Kelly* Impliedly Overruled *Ebeid* Would Raise a Significant Stare Decisis Issue

Moreover, recognizing that *Kelly* did not impliedly overrule *Ebeid* avoids a
stare decisis problem that would otherwise arise: a Ninth Circuit panel cannot
overrule a prior Ninth Circuit decision absent intervening higher authority that is
clearly irreconcilable (i.e., either an intervening en banc Ninth Circuit decision or a
Supreme Court decision).  *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir.
2003) (en banc); *see also Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015)

1   ("*Gammie* explained that three-judge panels are normally bound by the decisions

2   of prior three-judge panels [except] 'where the reasoning or theory of our prior

3   circuit authority is clearly irreconcilable with the reasoning or theory of

4   intervening higher authority.'") (quoting *Gammie*, at 893).

5          Here, *Kelly* did not purport to overrule *Ebeid*, and, in fact, did not even

6   mention *Ebeid*.  Nor is *Ebeid*'s holding "clearly irreconcilable" with intervening

7   higher authority.  To the contrary, there has been no intervening Ninth Circuit *en*

8   *banc* decision that is inconsistent with *Ebeid*; and the Supreme Court in *Escobar*

9   expressly reserved the issue decided in *Ebeid*, of whether claims for payment,

10  without more, impliedly certify compliance with all material conditions of

11  payment.  Judge Wright even acknowledged, "*Escobar* did not abrogate or

12  undermine *Ebeid*."  Second *Mateski* Order at 4.

13         In fact, on January 18, 2017, the Ninth Circuit issued an order granting

14  permission for an interlocutory appeal, from a case pending in the Northern

15  District of California, of the specific issue: "Must the 'two conditions' identified

16  by the Supreme Court in *Escobar* always be satisfied for implied false certification

17  liability under the FCA, or does *Ebeid*'s test for implied false certification remain

18  good law?"  *Rose v. Stephens Institute*, 2016 WL 6393513 at 4 (N.D. Cal. Oct. 28,

19  2016) (Order granting in part motion to certify order for interlocutory appeal);

20  permission to appeal granted *Rose v. Stephens Institute,* No. 16-80167 (9th Cir.

21  Jan. 18, 2017) (Dkt. No. 8).  Since *Kelly* was issued six days prior, on January 12,

22  2017, it is reasonable to conclude that the Ninth Circuit does not believe that *Kelly*

23  resolved this issue.  Thus, for this additional reason, it would be inappropriate to

24  interpret *Kelly* as having impliedly overruled *Ebeid*.

25         **B. FCA Claims Are Appropriate Even When A Regulatory**

26             **Enforcement Scheme Exists**

27         In its brief, Mountains argues that "Relator's FCA claims … are

28  inappropriate when other regulatory schemes govern."  <u>See</u> Mountains' Memo at

10:1-2.  Mountains further argues that the "remedy for the discovery of a CAH distance deficiency … in CMS's certification process is possible revocation of CAH status and further administrative relief afforded by law, not an FCA claim."  <u>See</u> Mountains' Memo at 13:4-6.  The mere existence of "other regulatory enforcement schemes" alone does not determine whether an FCA action may be brought.  The Department of Justice can and does bring FCA cases despite the existence of various regulatory enforcement schemes.[2]

For example, the Program Fraud Civil Remedies Act (31 U.S.C. §§ 3801–3812) ("PFCRA") provides federal agencies with an administrative remedy to impose civil penalties and assessments against persons who make, submit, or present, or cause to be made, submitted or presented, false, fictitious, or fraudulent claims or written statements to the agencies.  <u>See</u>, <u>e.g.</u>, 45 C.F.R. §§ 681.1-681.46 (National Science Foundation (NSF) PFCRA Regulations).  Despite the existence of the NSF PFCRA Regulations, an NSF investigating official may refer allegations of misconduct directly to the Department of Justice for prosecution under the FCA.  45 C.F.R. § 681.46(a)(1).  Therefore, the existence of a regulatory enforcement scheme by itself does not prevent the prosecution of an FCA action.

**C. No Adverse Inference Regarding the Merits of Relator's Allegations May Be Drawn From the United States' Declination Decision**

Mountains appears to suggest that the Court may draw an adverse inference regarding the merits of Relator's allegations from the United States' decision to decline to intervene.  <u>See</u> Mountains' Memo at 2:27.  However, such an inference

---

[2] <u>Mountains cites</u> *U.S. ex rel. The Dan Abrams Co. v. Medtronic, Inc.*, 2017 WL 4023092, at *7 (C.D. Cal. Sep. 11, 2017).  Mountains overstates the <u>Medtronic</u> holding.  In <u>Medtronic, the</u> court based its holding on policy concerns unique to the FDA's approval process for medical devices.  *See Medtronic*, at *7 (quoting *D'Agostino v. EV3, Inc.*, 845 F.3d 1, 8 (1st Cir. 2016) ("The collateral effects of allowing juries in qui tam actions to find causation by determining the judgment of the FDA when the FDA itself has not spoken are akin to those practical effects that counsel in favor of not allowing state-law fraud-on-the-FDA claims.")).  These policy concerns are not at issue here.  Accordingly, *Medtronic* <u>should be limited to its facts.</u>

is inappropriate as a matter of law.  "In any given case, the government may have a host of reasons for not pursuing a claim."  United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006).  Non-intervention signals that the United States is not intervening—no more, no less.  Id.  ("[T]he government's absence from the fray [does not] mean[] that the relator's cause is meritless"); see also United States ex rel. Chandler v. Cook County, 277 F.3d 969, 974 n.5 (7th Cir. 2002) ("There is no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits."); Anderson v. McTish, Kunkle & Associates, No. 4:CV-04-754, 2006 WL 1985762, at *1 n.l (M.D. Pa. July 13, 2006) (stating that the court is "not permitted to draw any inference from the decision of the United States not to intervene in this case").

## III.   CONCLUSION

The United States respectfully requests that the Court find that (1) implied false certification liability does not require specific representations; (2) FCA claims are appropriate despite the existence of other regulatory enforcement schemes; and (3) no adverse inference regarding the merits of Relator's allegations may be drawn from the United States' decision to decline to intervene.

Dated: April 6, 2018                  Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section


    /s/ Kent Kawakami
KENT A. KAWAKAMI
Assistant United States Attorney
Attorneys for the United States of America