1  Esperanza Cervantes Anderson | SBN 197953
   LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
2  1037 North Allen Avenue
   Pasadena, California 91104
3  Tel.:  (626) 219-6773
   Fax:   (626) 389-8911
4
   Attorney for Plaintiff Relator
5  FRANK ADOMITIS

6

7

8          UNITED STATES DISTRICT COURT

9      FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA | Case No. Case No.: 5:17-cv-00002-
   | ex rel. FRANK ADOMITIS, an | JGB-KK
12 | individual, | (Hon. Jesus G. Bernal)

13 |          Relator, | **PLAINTIFF/RELATOR'S**
   | | **MEMORANDUM OF POINTS**
14 |      v. | **AND AUTHORITIES IN**
   | | **OPPOSITION TO**
15 | SAN BERNARDINO | **DEFENDANT'S MOTION TO**
   | MOUNTAINS COMMUNITY | **DISMISS SECOND AMENDED**
16 | HOSPITAL DISTRICT; DOES 1 | **COMPLAINT**
   | through 20, inclusive, |
17 | | **Date:          April 30, 2018**
   |          Defendants. | **Time:          9:00 a.m.**
18 | | **Courtroom:    1**

19

20

21        Plaintiff/Relator Frank Adomitis ("Relator") hereby opposes Defendant San

22 Bernardino Mountains Community Hospital District's ("Mountains") Motion to

23 Dismiss, as follows:

24

25

26

27

28

- 0 -

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

TABLE OF CONTENTS

I.    INTRODUCTION                                                                  1

II.   LEGAL ANALYSIS                                                                2

      A.    Mountains' Motion Should Be Denied Because Mountains          2
            Misrepresented Its Compliance With Local Rule 7-3.

      B.    Mountains' Motion Should Be Denied Because The Brief          3
            Fails To Comply With The Local Rules.

      C.    Mountains' Motion Is Deficient Because It Improperly          4
            Asks The Court To Consider Unsupported Factual
            Allegations And Argument That Is Not Made In The SAC.

      D.    Mountains' Motion To Dismiss The SAC For Failure To           5
            Comply With Federal Rule 9(b) Is Without Merit.  The
            SAC Adequately Pleads Fraud With The Requisite
            Specificity.

      E.    The SAC Adequately Pleads The Materiality Element.            9

            1.    CAH's Program's Distance Requirement Is And            9
                  Always Has Been Material To The Government's
                  Decision    To    Pay    The    Enhanced    CAH
                  Reimbursement Rate.

            2.    Contrary To What Mountains Alleges, The Distance       13
                  Requirement Is Not New Or Changed.

            3.    CMS's Regulations Defining Mountains Terrain           14
                  and Primary Roads Are Entitled To Deference.

            4.    Mountains' Argument That CAH Qualification Is A        15
                  "Condition Of Participation" Not Payment Is Both
                  Wrong, And Irrelevant To The Materiality Analysis.

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

5.      Mountains' Claim That CMS Has Continued To Pay          17
Mountains CAH Rates Despite Actual Knowledge
That Mountains Does Not Meet The Distance
Requirement Is Factually Unsupported, And Not
Properly Before This Court.  Even If True, It Is Not
Dispositive To The Issue Of Materiality.

F.      The Existence Of A Regulatory Scheme Is Not Relevant          19
To The FCA Claims At Bar, And Does Not Mandate
Dismissal.

G.      Mountains' Rule 60 Motion For Reconsideration Of The          23
Court's Ruling On The Public Disclosure Bar Is
Procedurally And Substantively Defective, And Should Be
Denied.

H.      The SAC Does Not Contain An Obvious Bar To Granting          24
Relief.

III.    RELATOR'S CONDITIONAL MOTION TO AMEND          25

IV.     CONCLUSION          25

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

# TABLE OF AUTHORITIES

*CASES*

*Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*, CV 09-2140PSGJCX, 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ....... 3

*Baylor County Hospital District v. Burwell*, 163 F.Supp.3d 372 (N.D. Tex. 2016) ....... 7, 10, 11, 12, 14, 16, 17

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....... 4

*Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ....... 6, 8

*Ghazali v. Moran*, 46 F.3d 52 (9th Cir.), cert. denied, 516 U.S. 838, 116 S. Ct. 119, 133 L. Ed. 2d 69 (1995) ....... 3, 23

*Junius Constr. Co. v. Cohen*, 257 N.Y. 393 (1931) ....... 9

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....... 25

*Padilla v. Yoo*, 633 F.Supp. 2d 1005 (N.D. Cal. 2009) ....... 4

*Singer v. Live Nation Worldwide, Inc.*, SACV 11-0427 DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ....... 2

*Skidmore v. Swift* & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1994) ....... 15

*Superbalife, Int'l v. Powerpay*, CV 08-5099, 2008 WL 4559752 (C.D. Cal. Oct. 7, 2008) ....... 3

*Sweeney v. Manorcare Health Services, Inc.*, C03-5320, 2005 WL 4030950 (W.D. Wash. March 4, 2005) ....... 16

*Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973) ....... 25

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ....... 6, 24

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)

*U.S. ex rel. Hendow v. University of Phoenix,* 461 F.3d 1166 (9th Cir. 2006) ....... 6, 15

*U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996) ....... 24

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

-iii-

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) .......................................................................... 4

*United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017) .......................................................... 5, 6, 22

*United States ex rel. Harman v. Trinity Industries, Inc.*, 872 F.3d 645 (5th Cir. 2017) ................................................... 18, 23

*United States ex rel. Huey v. Summit Healthcare Assoc., Inc.*, CV-10-8003, 2011 WL 814898 (D.Ariz. March 3, 2011) ........ 16

*United States ex rel. v. Kelly*, 846 F.3d 325 (9th Cir. 2017) ....... 8

*United States ex rel. v. Medtronic, Inc.*, LA CV 15-01212, 2017 WL 4023092 (C.D. Cal. Sept. 11, 2017) ......................... 20, 21, 22

*Universal Health Services, Inc. v. United States*, ___ U.S. ___, 135 S.Ct. 1989, 195 L.Ed.2d 348 (2016) ........................... 5, 9, 15

### ***STATUTES***

31 U.S.C. § 3729(a)(1)(A) ........................................................... 5

31 U.S.C. §3731(b) .................................................................... 24

42 U.S.C. § 1395i-4(c)(2)(B)(i)(I) ............................................. 14

42 C.F.R. §485.610(c) ................................................................. 9

Federal Rule of Civil Procedure 11(a)(3) .................................... 2

Federal Rule of Civil Procedure 12(b)(6) ................................. 1, 2

Federal Rule of Civil Procedure 41(b) ...................................... 3, 23

Federal Rule of Civil Procedure Rule 60 .................................. 2, 23

Notes of Advisory Committee on Rules—1993 Amendment to Federal Rule of Civil Procedure 11 ........................................... 2

Central District of California Local Rule 7-3 ............................ 1, 2

-iv-

Central District of California Local Rule 7-10                                    4

Central District of California Local Rules11-3.1.1                          3

Central District of California 11-3.2                                             3

Central District of California Local Rule 11-9                              3

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

# I.  INTRODUCTION

Mountains' Motion to Dismiss is misguided effort to evade liability for serious Medicare fraud spanning many years. The allegations of fraud are plain. Mountains requested and received the premium reimbursement rate available *only* to hospitals properly qualified as Critical Access Hospitals ("CAH"). Relator's complaint identifies a regular practice of material misrepresentations which were intended to affect, and did affect the Government's decision to pay Mountains the premium CAH rate. Mountains also failed to return overpayments, constituting what is referred to as "reverse" false claims.

Procedurally, the motion flouts the rules; the Central District Local Rule 7-3 pre-filing meet and confer conference requirement was ignored by Mountains altogether. When this violation was raised by the undersigned, Mountains insisted that yes, that conference *did* happen, but then Mountains' counsel took the awkward and contradictory position that a Local Rule 7-3 conference would have been futile anyway. Of a lesser concern, but still noteworthy, Mountain's brief employs painfully compressed fonts in an apparent effort to evade page limits. First-timers may be given a break in the Court's discretion, but in response to earlier violations, the Court has already admonished Mountain's out-of-state counsel in open court to be more observant.

Substance fares no better. Mountains' challenge is based on a confusing and distorted presentation of the both the alleged facts and applicable law. Mountains throws into the hodgepodge its own new unsupported factual allegations, seeks judicial notice of irrelevant or incoherent facts outside the pleadings, and selectively cherry-picks the Second Amended Complaint ("SAC").

Mountains' Motion to Dismiss the SAC should be denied in its entirety.

///

///

///

Law Office of Esperanza Cervantes Anderson
Pasadena, California

-1-

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

## II.    LEGAL ANALYSIS

**A.    Mountains' Motion Should Be Denied Because Mountains Misrepresented Its Compliance With Local Rule 7-3.**

Mountains violated FRCP Rule 11(a)(3) and Local Rule 7-3 requirement a meet and confer conference of counsel 7 days prior to file their motion.[1]   Although Mountains misrepresents to this Court that the conference required by Local Rule 7-3 took place "took place on February 7, 2018," no meet and confer conference actually occurred. [Doc. 27 at p. 2; see also Declaration of Esperanza Cervantes Anderson ("Anderson Decl."), ¶¶ 3, 4 and 5.]  The parties did confer via email over an extension of time on a *possible* motion should Relator file a SAC by the February 13 deadline, but never discussed the merits of any 12(b)(6) motion or any FRCP Rule 60 Motion for Reconsideration. [Anderson Decl., ¶ 5.]   Indeed, such a conversation would have been premature given the fact that no SAC had been filed as of February 7, and Relator still did not know which revisions he planned on making. [Id., ¶ 4.]

Mountain's tortured response and continued representations to this Court of compliance with the Local Rules violates a duty of candor.[2] This Court has the discretion to deny Mountains' motion for failure to comply with Local Rule 7-3. *See Singer v. Live Nation Worldwide, Inc.*, SACV 11-0427 DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) (denying motion for summary judgment where "[t]he

---

[1] Local Rule 7-3 provides in relevant part: "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the *substance of the contemplated motion and any potential resolution*. The conference shall take place at least seven (7) days prior to the filing of the motion."

[2] Notes of Advisory Committee on Rules—1993 Amendment to Rule 11: "*It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.*"

attempted in-writing 'conference' of counsel [three days before a motion was filed] is insufficient under these circumstances."); *Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*, CV 09-2140PSGJCX, 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ("The meet and confer requirements of Local Rule 7-3 are in place for a reason, and counsel is warned that nothing short of strict compliance with the local rules will be expected in this Court. Thus, the motion is also denied for failure to comply with Local Rule 7-3."); *Superbalife, Int'l v. Powerpay*, CV 08-5099, 2008 WL 4559752 (C.D. Cal. Oct. 7, 2008) (brief phone call requesting extension and confirming email were insufficient to constitute compliance, motion denied).

## B.   Mountains' Motion Should Be Denied Because The Brief Fails To Comply With The Local Rules.

Mountains' Motion should also be denied for failure to follow Local Rules regarding formatting. The deficiencies begin on the title page of the Motion but metastasize through the entirety of the brief. The painfully compressed typeface used does not comply with the requirements specified by the Local Rules nor do the document's margins. See Local Rules 11-3.1.1, & 11-3.2.  It is well-established that a district court has the authority to dismiss a litigant's action for failure to comply with the local rules, see Fed. R. Civ. P. 41(b); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir.), cert. denied, 516 U.S. 838, 116 S. Ct. 119, 133 L. Ed. 2d 69 (1995) ("Failure to follow a district court's local rules is a proper ground for dismissal"), and the authority to impose sanctions. See Local Rule 11-9.

Mountains' continued disregard for the court's Local Rules beleaguer the diligent efforts of those litigants endeavoring towards a more efficient judicial process.  This is not the first time that Mountains has violated the rules of this Court. In November of 2017, Mountains' counsel filed a motion allowing Mountains to exceed the page limit set in the Local Rules under Relator's counsel's caption which Mountains' counsel *never showed* to Relator's counsel. This document despite the caption, was *not* "jointly" filed. [Docket No. 14.]  This "joint motion" which was

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  more properly captioned as a stipulation or unopposed motion failed to comply with

2  the Local Rules for a Stipulation and Order.  Relator protested the filing. The Court

3  rightly denied the motion before Mountain's counsel withdrew the motion. [Docket

4  No.,15.]

5       Despite this Court's Standing Order placing a 12 page limit on reply briefs,

6  Mountains' counsel filed a reply brief in support of its Motion to Dismiss Relator's

7  First Amended Complaint that exceeded 25 pages. [Docket No. 22.] While

8  Mountains' counsel might plead confusion between the Local Rules and the Court's

9  Standing Order, Local Rule 7-10 imposes a 14-page limit on reply briefs.  Thus,

10 there was no excuse for Mountains to file a 25 page reply brief.

**C.**    **Mountains' Motion Is Deficient Because It Improperly Asks The Court To Consider Unsupported Factual Allegations And Argument That Is Not Made In The SAC.**

14      To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint need

15 not provide detailed factual allegations. *Padilla v. Yoo*, 633 F.Supp. 2d 1005, 1018

16 (N.D. Cal. 2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). Plaintiff's

17 burden in opposing a motion to dismiss is limited: "A plaintiff need only plead

18 enough facts to raise a reasonable expectation that discovery will reveal evidence'"

19 and that "the issue is not whether a plaintiff will ultimately prevail but whether the

20 claimant is entitled to offer evidence to support the claims." *Id.*, at 1019.  In a *qui*

21 *tam* action, these same principles apply: "[T]he court must construe a complaint in

22 the light most favorable to the plaintiff, **accept all factual allegations as true**, and

23 determine whether the complaint contains enough facts to state a claim to relief that

24 is plausible on its face." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496,

25 502 (6th Cir. 2008) (emphasis added).  Mountains' references to new allegations not

26 included in the SAC or in any document of which the Court may take judicial notice

27 should be disregarded.

28      ///

-4-

**D.** **Mountains' Motion To Dismiss The SAC For Failure To Comply With Federal Rule 9(b) Is Without Merit. The SAC Adequately Pleads Fraud With The Requisite Specificity.**

The essential elements of False Claims Act liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) ("*Campie*") *citing Universal Health Services, Inc. v. United States*, ___ U.S. ___, 135 S.Ct. 1989, 2000-02 195 L.Ed.2d 348 (2016) ("*Escobar*").

There are several types of theories of false claim liability: (1) factually false certification; (2) implied false certification; and/or (3) promissory fraud. *Campie*, 862 F.3d at 900-902. The court in Campie analyzed the differences between the three theories. Under the false certification theory, "the claimant [directly] misrepresents what goods or services that it provided to the Government...." *Campie*, 862 F.3d at 900.

Under the implied false certification theory, which the United States Supreme Court recognized as a viable theory in *Escobar*, the defendant has provided the product/service the Government requested. Thus, the claim is not directly factually false. However, under this theory, "'when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment.[3] But if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement ... the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)." *Escobar*, 135 S.Ct. at 1995.

///

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

---

[3] As discussed more fully in Section E 4 herein, Mountains makes much of the term "conditions of payment." However, as the United States Supreme Court in *Escobar* made clear, the term "conditions of payment" does not mean specifically a document or provision entitled "condition of payment." Instead, the term references the *sine qua non* of the Government's decision to pay the claim.

The Court in *Campie* also described another approach to finding liability under the False Claims Act as the 'promissory fraud' or 'fraud-in-the-inducement' theory. *Campie*, 862 F.3d at 902 *citing U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) ("*Hendow*"). This approach is also relevant to Relator's claims in the case at bar. "Under this theory, 'liability will attach to each claim submitted to the government under a contract, when the contract or extension of the government benefit was originally obtained through false statements or fraudulent conduct.' (citation) 'In other words, subsequent claims are false because of an original fraud (whether a certification or otherwise.)' *Campie*, 862 F.3d at 902 *citing Hendow, supra*, 461 F.3d at 1173.

Regardless of the theory, the Ninth Circuit has held that relators are required only to allege "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted'" in order to meet Rule 9(b)'s particularity requirement. *Ebeid v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Pleading representative claims is not required, but it is one way that a Relator can meet this standard. *Id.*

Here, Relator's claims fall into *all three* categories. Relator's claims are simple and straightforward. Medicare has special, enhanced reimbursement rates for hospitals that are designated as CAHs. A non-CAH hospital is reimbursed a specific rate for a procedure, for example, regardless of how much the procedure actually cost the hospital. If a hip replacement procedure cost a hospital $20,000 to perform (after paying for the device, the nurses, drugs, etc.), and Medicare's reimbursement rate for this procedure is $10,000, then the hospital incurs a $10,000 loss for that procedure. If, on the other hand, the hospital is a CAH, the hospital would get reimbursed at 101% of that cost, or in this example, $20,020.

As Mountains is aware, all hospitals regardless of CAH status electronically file CMS Form 837 immediately after a procedure to obtain the standard Medicare

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

reimbursement rate.  CAHs identify themselves by using an "8" in the three-digit hospital identification number.  At the end of the fiscal year, CAHs file CMS Form 2552-10 wherein CAHs, like Mountains, seek the enhanced reimbursement rates available only to CAHs.  Mountains' admitted failure to report to CMS that it does not meet the distance requirements necessary for CAH qualification is actionable fraud under the false certification, implied certification and promissory fraud theories.  The fraudulent scheme has been adequately alleged in the SAC no matter how hard Mountains strains to convolute it.

The SAC's allegations state how Mountains secured entry into the CAH program by certifying compliance with the distance requirement – when it did not. [SAC, ¶ 31.]  While Mountains argues strenuously that distance requirement was different in 2002, **there is no evidence to suggest that it was**. The law was the same. Further, Highway 18, which is main route between Mountains and the nearest hospital has never been designated by California as mountainous terrain. The road is the same. Relator alleges this in the SAC. [SAC, ¶36(b)(i).]  Additionally, as alleged in the SAC, Highway 18 which has four lanes, with two lanes going in each direction, for most of the way. [SAC, ¶36(a).]  As such, Highway 18 does not qualify as a secondary road for a minimum of 15 miles as required by the statute. See 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I). See also, *Baylor County Hospital District v. Burwell*, 163 F.Supp.3d 372, 375 (N.D. Tex. 2016) ("*Baylor*").

Relator alleged that each of Mountain's claims submitted following the false entry into the CAH program were made for the enhanced reimbursement rate available *only* to CAH hospitals – even though Mountains knew it was not legitimately a CAH. [SAC, ¶¶ 31 and 34.]  While Mountains argues that Relator has failed to plead that Mountains submitted false claims, Mountains itself concedes in its Opposition that it has continued to submit claims for reimbursement as a CAH since it was granted CAH status in 2002. [Mtn, 9:12-14.]  Relator references CMS Form 2552-10 in the SAC and alleges that *each* Form 2552-10 is itself a false claim.

-7-

Notably, each CMS Form 2552-10 specifically asks the Hospital to state: No. 105 "Does this hospital qualify as a Critical Access Hospital (CAH)?" As such, each Form 2552-10 requires Mountains to certify that it qualifies as a CAH, as alleged in the SAC, ¶39. Upon information and belief, Mountains specifically verified that it qualified as a CAH each time it submitted Form 2552-10 even though it did not. [SAC, ¶¶39.] Indeed, this is the only reasonable conclusion given Mountains' admission that it is receiving the CAH rate. Every time it did so, Mountains submitted a false claim for payment because Mountains did not qualify as a CAH. Mountains' argument that Relator has failed to adequately allege fraud, therefore, fails.

The Motion to Dismiss does not illuminate the issue, but adds a murky argument by misclassifying the nature of the fraud claim as one of for implied false certification *only*, and arguing that a change in the law requires Relator to plead a false statement in each claim for payment. Mountains' interpretation would effectively argue that this Court should do away with the implied false certification theory of liability, a result that would be contrary to *Escobar*. As the Government explains in its Statement of Interest (Dckt No. 28), the Ninth Circuit left the holding in *Ebeid v. Lungwitz, supra*, 616 F.3d 993 untouched in *United States ex rel. v. Kelly*, 846 F.3d 325 (9th Cir. 2017). A review of that opinion shows the Ninth Circuit was not trying to change the law, but was instead reaching a conclusion that made sense given the specific facts before it. *Kelly* presented a rare example because it involved a claim where the Relator admitted there was no fraud in the delivery of actual services provided. Instead, Kelly's fraud claim involved violations with regulations regarding the formatting used by the defendants in preparing the annual costs reports submitted after payments had been made. Because the Government got what it paid for, and because the Government paid before getting the deficient cost reports, there was no possible claim that the deficiencies were relied upon by the Government to issue payment to which the defendants were not entitled.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

---

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

The law remains that implied false certification or promissory fraud theories specifically include claims for payment which may appear accurate on their face (because the services or goods were actually provided) but are nonetheless false because the defendant has failed to disclose the defendant's noncompliance with statutory, regulatory, or contractual requirements that are material to the Government's decision to pay makes those **representations misleading half-truths**. *Escobar*, 136 S.Ct. at 1999 ("Because common-law fraud has long encompassed certain misrepresentations by omission, 'false or fraudulent claims' include more than just claims containing express falsehoods. The parties and the Government agree that misrepresentations by omission can give rise to liability.")

Mountains' attempt to avoid liability by misstating the law must be rejected. As explained above, each Form 2552-10 contains a false statement for payment because each form asks for reimbursement at the enhanced rate and each Form 2552-10 contains a representation that Mountains qualifies as a CAH. Mountains' argument that CMS form 2552-10 does not specifically mandate that Mountains must adhere to 42 C.F.R. §485.610(c) (the distance requirement) to receive reimbursement under Medicare (Mtn, 19:22-24) is nonsensical. Indeed, it is Mountains' failure to disclose that it did not comply with the distance requirement that rendered every certification that Mountains did qualify as a CAH a false statement.

**E.     The SAC Adequately Pleads The Materiality Element.**

**1.     CAH's Program's Distance Requirement Is And Always Has Been Material To The Government's Decision To Pay The Enhanced CAH Reimbursement Rate.**

The Supreme Court identified several factors bearing on the materiality inquiry, including whether the violation goes to the "essence of the bargain," *Escobar*, 135 S. Ct. at 2003 n.5 (*quoting Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)). Here, Mountains' failure to disclose that it did not meet the distance

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

requirement is material to whether Mountains qualifies as a CAH and, as such, the Government's decision to pay the enhanced reimbursement rate. Here is why. "The CAH designation was created [in 1997] to ensure that Medicare beneficiaries are able to access hospital services in rural areas by providing for greater Medicare payments to CAH-designated hospitals." *Baylor*, 163 F.Supp.3d at 375.   CAH eligibility *is the central requirement*, i.e., the *sine qua non*, for a hospital to obtain the enhanced CAH payment.  The SAC pled facts that on or about April 17, 2002, Mountains received an analysis showing the financial benefits for coversion to a CAH hospital.  The analysis stated that Mountains would have earned an additional $173,369 in Medicare reimbursement for the exact same patient services in the year analyzed if Mountains had been a CAH hospital. [SAC, ¶ 29.] There can be little doubt that Mountains' violation of the CAH program goes to the "essence of the bargain" that providers strike with federal health care programs. Nor can Mountains' CAH violations in this case be considered "minor or insubstantial." Here, Mountains misrepresented itself in a scheme that spanned several years and generated additional millions of dollars in revenue for the provision of medical care – it would certainly fall within this *Escobar* factor.

The SAC also adequately pled facts showing that failure to comply with the distance requirement for CAH eligibility is not immaterial. The application to become a CAH specifically requires an applicant hospital to state whether it meets the distance requirement. [SAC, ¶30.] As the Court in *Baylor County Hospital District v. Burwell, supra*, 163 F.Supp.3d 372 acknowledged, the distance requirement is core, because the CAH program is purposefully limited:

> The Secretary argues that "**the imposition of the mileage requirements itself illustrates that this purpose was not intended to benefit every hospital located in a predominantly rural environment.** Instead, **funding was to be narrowly targeted to a subset of rural hospitals** that were less accessible

10

and more isolated from other sources of hospital care than other such hospitals." [citation] **The Act limits this extra funding to hospitals meeting certain criteria**, depending on how the road is classified, and the Secretary asserts that "[a]dministrative efficiency justifie[s] developing a bright-line rule that would balance the goals without individual inquiry into each case." Def.'s Br. Supp. Mot. 9, ECF No. 20.

*Baylor*, 163 F.Supp.3d at 381-382 (emphasis added).

*Baylor County Hospital District v. Burwell, supra*, 163 F.Supp.3d 372 is on point. In *Baylor*, the County sued the Secretary of the Department of Health and Human Services ("Secretary") – which oversees CMS – for wrongfully denying a hospital located in its county (Seymour Hospital) CAH status.  In that case, CMS denied CAH designation because Seymour Hospital **did not meet the distance requirement** codified in Section 1395i-4(c)(2)(B)(i)(I).  Seymour Hospital was 31.8 miles from another hospital, and at least 28.4 miles of the road between both hospitals (US Highway 183/283) was designated as a primary road pursuant to the State Operations Manual published by CMS in 2007.  The district court granted summary judgment.

While Mountains implies throughout the brief that CMS may simply waive the distance requirement, in fact, it cannot. The Necessary Provider loophole that previously existed was closed effective January 1, 2006.

Before January 1, 2006, states could apply for a waiver of the minimum distance eligibility requirement by certifying that a prospective CAH was a "necessary provider" in an area otherwise failing to meet the bright-line distance requirements, much like the ultimate relief Baylor ultimately seeks. [citation] However, as of January 1, 2006, Congress grandfathered in "necessary providers" that were already certified via waiver, but eliminated

11

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

this option for future applicants. Id. (citing Medicare, Prescription Drug, Improvement, & Modernization Act of 2003, Pub. L. No. 108–173, 117 Stat. 2269, § 405(h); 72 Fed. Reg. at 42, 806 (discussing statutory change)); see also § 1395i-4 ("A State may designate a critical access hospital if the facility ...[i]s certified before January 1, 2006, by the State as being a necessary provider of health care services to residents in the area.").

*Baylor*, 163 F.Supp.3d at 382.

Similarly, the Department of Health and Human Services Office of Inspector General August 2013 report, Most Critical Access Hospitals (CAH) Would Not Meet The Location Requirements if Required to Re-Enroll in Medicare points out that hospitals that were not designated as Necessary Providers prior to 2006 would lose their CAH status and as such, lose their enhanced reimbursement (assuming such hospitals had their Medicare participation status switched to standard hospital based status). The OIG Report recommended removing the pre-2006 loophole. Thus, where, as here, Mountains is not a Necessary Provider, compliance with the distance requirements is absolutely vital, and therefore synonymous with "material" as tht term is used in *Escobar*.

Mountains indirectly concedes the Government deems the distance requirement material. Mountains describes a regulatory scheme for CMS to certify and re-certify the rural, **distance** and necessary provider idenifications methods. [Mtn, 12:13-13:7.] Mountains says that remedy where CMS verifies failure to meet the distance requirement is the *revocation* of CAH status. [Mtn, 13:4-5.][4] Indeed, the fact that CMS has instituted a process to check compliance with CAH rules and regulations, including the distance requirement, weighs in favor a finding of

---

[4] Mountains actually says that revocation is a possible remedy but since distance cannot be remedied and Congress closed the Necessary Provider exception to the distance requirement, revocation of CAH eligibility is really the only option.

materiality to the Government's decision to pay the enhanced rate.

**2. Contrary To What Mountains Alleges, The Distance Requirement Is Not New Or Changed.**

Mountains' attempts to avoid the fraud claims by explaining that the distance requirement is constantly "evolving" as a matter of law is also flat out wrong. Mountains has offered nothing to support its claim that the distance requirement was ever ***substantively*** different, or that Mountains met the definition before 2013 but not after. As the 2002 application shows, the statute always required a 35 mile drive between Mountains and any other general acute hospital (in mountainous terrain or in areas with only secondary roads available, the mileage criterion is 15 miles).

While Relator acknowledged in the SAC that prior to April 2013, "CMS defined "mountainous terrain" as areas identified as such on any official maps or other documents published by the State agency responsible for highways in the State (typically a Department of Transportation or Highways) or by USGS, this does not mean that the definition of mountainous terrain was different than it is following CMS's publication of a uniform definition of mountainous terrain. As Relator alleges, Relator confirmed with Caltrans that Highway 18 has never been designated as "mountainous terrain." [SAC, ¶ 36(b)(1).][5]

Mountains also tries to dispute the finding that it knowingly misrepresented its compliance with the distance requirement in 2002 (and after) by speculating that there might have been "changes in road conditions, construction, and other relevant factors over the years that may have led Mountains's CAH certification/re-certification." [Mtn, 19: 11-16.] There is no evidence of changes in the road before this Court.

*Arguendo*, even if the definition of "mountainous terrain" had evolved or

[5] Relator made this allegation upon information and belief. Relator can amend his Complaint to state definitively that he did verify with an official at Caltrans that Caltrans has never designated any portion of Hwy 18 as mountainous terrain.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

changes in the roads had changed to render Mountains non-compliant, such speculative changes or evolutions do not does not excuse Mountains' admitted non-compliance with the Act since 2013.  As noted above, Mountains continues to verify that it qualifies as a CAH every time it submits a Form 2552-10 for reimbursement at the enhanced rate available only to CAHs.  Thus, if after discovery Mountains could prove up its CAH status before April 2013, this would only reduce the amount recoverable through Relator's FCA claim.  It would not defeat it.

### 3.  CMS's Regulations Defining Mountains Terrain and Primary Roads Are Entitled To Deference.

Throughout its brief, Mountains argues again and again that CMS's regulations defining "mountainous terrain" should be disregarded.  Although it does not specifically express it, Mountains no doubt expects the Court will disregard CMS's regulations defining "primary roads" and by extension "secondary roads."

Contrary to what Mountains alleges, the distance requirement is codified in the statute itself, not merely in "sub-regulatory" guidance:  "To qualify for CAH status, § 1395i-4 requires that a hospital be "located more than a 35-mile drive (or in the case of mountainous terrain or in areas with only secondary roads available, a 15-mile drive) from a hospital...." *Baylor*, 163 F.Supp.3d at 375 *quoting* 42 USC § 1395i-4(c)(2)(B)(i)(I).[6] CMS's definitions of the terms in the statute are entitled to deference. *Baylor County Hospital District v. Burwell, supra*, 163 F.Supp.3d 372 (holding that CMS' State Operations Manual ("SOM")[7] was entitled to deference

---

[6] Mountains' argument on pages 18 and 19 of their brief that the requirement is met if the 12.4 miles of secondary roads is added to the 10.4 miles of mountainous terrain between St. Bernadine and Mountains will satisfy the requirement for 15 miles of mountainous or secondary roads between the two hospitals is wrong.  Relator does not allege that there are both 10.4 miles and 12.4 miles.  The miles that could be considered mountainous terrain overlap with the miles that are considered "secondary roads."  This should be clear from the SAC. [SAC, ¶36.] If it is not, Relator can amend the Complaint to make this more clear.

[7] The SOM at issue in *Baylor* was enacted in 2007 and interpreted "primary road" to be: '(1) a numbered federal highway; (2) a numbered state highway with two or more lanes in each direction; or (3) a road that is shown as a primary highway divided by

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

under *Skidmore v. Swift* & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1994)).  Thus, Mountains' attempt to avoid the impact of those definitions should be rejected.

> **4.      Mountains' Argument That CAH Qualification Is A "Condition Of Participation" Not Payment Is Both Wrong, And Irrelevant To The Materiality Analysis.**

Recognizing that the distance requirement is vital to participation in the CAH program, Mountains attempts to downplay the importance of the distance requirement to the materiality element by arguing that the distance requirements are merely conditions of participation, not conditions of payment. [Mtn, 9:4.][8] This argument has been specifically rejected by the Supreme Court in *Escobar.*

> We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment.  Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment. … What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.

*Id.*, 136 S.Ct. at 1996.

As the Ninth Circuit previsouly held, "conditions [that] are also 'prerequisites,' and 'the *sine qua non*' of federal funding," if the defendant would not have gotten paid if it did not agree to comply with them. *U.S. ex rel. Hendow v. University of Phoenix, supra*, 461 F.3d at 1176 ("The University argues that the ban

---

a median strip on a map prepared in accord with the U.S. Geological Survey standards." *Baylor*, 163 F.Supp.3d at pg. 375-376.

[8] "Simply, there are no statutes or regulations that connects (sic) the CAH Conditions of Participation to payment of claims." (Motion, pg. 9, line 4)

15

Law Office of Esperanza Cervantes Anderson
Pasadena, California

1    is merely a condition of participation, not a condition of payment. But in this case,

2    that is a distinction without a difference.  In the context of the Title IV and the Higher

3    Education Act, if we held that conditions of participation were not conditions of

4    payment, there would be no conditions of payment at all – and thus, an educational

5    institution could flout the law at will.") (emphasis in the original.)

6        The same analysis applies here.  If Mountains had disclosed in it's original

7    application that it did not meet the distance requirement, it's application would have

8    been rejected.  *See Baylor County Hospital District v. Burwell, supra*, 163 F.Supp.3d

9    372 (rejecting Seymour Hospital's application for CAH status because it did not

10   meet the distance requirement).  Likewise, it stands to reason that if Mountains had

11   disclosed to CMS that it did not meet the distance requirement at any time since

12   then, its participation in the CAH program would end, and it would not be eligible

13   for the enhanced reimbursement rate.  Removing the distance requirement – as

14   Mountains asks the Court to do – effectively means that any hospital in the country

15   can receive the enhanced reimbursement rate regardless of where it is located.  Such

16   a result would demean the legislature effort to provide for rural healthcare and

17   bankrupt Medicare.

18       To the point, citing to *United States ex rel. Huey v. Summit Healthcare Assoc.,*

19   *Inc.*, CV-10-8003, 2011 WL 814898 (D.Ariz. March 3, 2011) and *Sweeney v.*

20   *Manorcare Health Services, Inc.*, C03-5320, 2005 WL 4030950 (W.D. Wash. March

21   4, 2005), Mountains argues that the 9th Circuit has routinely found that Conditions

22   of Participation are not material in the Medicare context.  This statement ignores the

23   difference between standard participation in Medicare, which almost every medical

24   provider can take part in, and the CAH program which is *specifically limited* by

25   legislative design to some hospitals based on their eligibility for the program.

26   *Baylor*, 163 F.Supp.3d 381-382. Accordingly, the conclusion Mountains is hoping

27   the Court will reach is not supported and should be rejected.

28       ///

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

16

**5.     Mountains' Claim That CMS Has Continued To Pay Mountains CAH Rates Despite Actual Knowledge That Mountains Does Not Meet The Distance Requirement Is Factually Unsupported, And Not Properly Before This Court.  Even If True, It Is Not Dispositive To The Issue Of Materiality.**

Mountains argues that Relator cannot show materiality because CMS has continued to pay the CAH rate notwithstanding the filing of this lawsuit. Specifically, Mountains claims that the "4 identified California hospitals" that do not meet the distance requirements "continue to be Medicare CAHs, and paid as the same, to this day."  Mountains further claims that "specific to Mountains, Relator informed the government of alleged non-compliance on January 3, 2017 – yet, to this day 15 months later, Mountains continues to be paid as a CAH with no signal in change from CMS."[9]

Notably, Mountains provided no evidence to support these allegations.  As Mountains concedes, it may not provide evidence at this stage. [Mtn, 3 fn 5.]  No doubt, Mountains is attempting to have this case dismissed at the pleading stage so that Relator will be unable from gathering or presenting evidence to refute Mountains' unsupported allegations.

By mentioning these unsupported allegations repeatedly as well as CMS's scheme to certify and recertify CAH eligibility, which Mountains argues without support, is performed without any input from the CAH being reviewed, Mountains seeks to trick the Court into concluding that CMS has specifically reviewed Relator's allegations with regard to Mountains, performed the exact same analysis as Relator but has come to a different conclusion.  Mountains hopes to convince the Court either

---

[9] Mountains claim that there has not been "a 'mine-run' of cases where CMS is denying claims to CAHs based on the distance requirements" is negated by *Baylor County Hospital District v. Burwell, supra*, 163 F.Supp.3d 372.  Discovery will likely uncover many other cases where CAH status was denied because the hospital did not meet the distance requirement.

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

that CMS has concluded that Mountains meets the distance requirement or that the distance requirement is not material to CMS' decision pay the enhanced CAH rate to Mountains.

While Mountains wants the Court to conclude that CMS had knowledge of the violations as early as January 3, 2017, when Relator filed the instant lawsuit, questions of fact exist as to exactly what CMS knows and when CMS discovered (any) information.  Now, there is no actual evidence before the Court of such actual knowledge on CMS's behalf. As the Secretary's statements memorialized in the opinion in *Baylor* show, the conclusions Mountains wants the Court to reach are unlikely:

> The parties do not dispute that CMS lacks specific agency expertise when it comes to evaluating road conditions. [Citations] The Secretary argues that while Defendants "do [ ] not have the resources to conduct case-by-case analysis of road conditions for all CAH applications," their secondary road determinations "rely heavily on maps produced by state and federal transportation authorities," …Def.'s Resp. Pl.'s Cross-Mot. 13, ECF No. 26; see also DAB Final Decision 4, ECF No. 18 ("CMS lack[s] the resources and capacity for making case-by-case judgments about the driving characteristics of every stretch of highway in the United States" but bases its judgments on "objective criteria".) (internal citations omitted).

*Baylor*, 163 F.Supp.3d  at 382-383.

Courts which have considered evidence that a government agency continued to pay following discovery of the fraud required evidence of actual knowledge by the department in the federal agency responsible for payment.  Even then, evidence of payment is not dispositive of the materiality element. *United States ex rel. Harman v. Trinity Industries, Inc*., 872 F.3d 645, 663-665 (5th Cir. 2017) (holding

18

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

that while a decision to pay in full despite actual knowledge that requirements were violated is very strong evidence against materiality of those requirements, no single element is dispositive. "[W]e agree with our sister circuits that no single factor is outcome determinative…" Instead, evidence of continued payment by the government after it learns of the fraud substantially increases the burden on the relator in establishing materiality.)

Mountains also misrepresents the OIG Report's failure to discover that Mountains did not meet the distance requirement as a specific finding by the OIG "independently evaluated Mountains' distance and certified it as a CAH." [Mtn, 12:13-14.]   As Relator pointed out in his Opposition to Mountains' Motion to Dismiss the First Amended Complaint and the hearing on that motion, Google Maps did not provide the detail necessary to discover the violation.   Because the OIG was checking out more than 1320 CAHs throughout the United States, it stands to reason that the OIG missed Mountains' non-compliance as opposed to specifically sanctioning it.   Mountains concession that CMS and its ROs likely used "similar resources" (i.e., access to Google Maps), further shows why the Court should not accept Mountains' unsupported claim that CMS has specifically reviewed Mountains' compliance with the distance requirement since the filing of this lawsuit. Indeed, CMS' limited resources is exactly why the Government requires Relators like Mr. Adomitis to do the leg work necessary to uncover fraud.

Mountains' argument that Relator has failed to plead materiality is without merit and should be rejected.

**F.   The Existence Of A Regulatory Scheme Is Not Relevant To The FCA Claims At Bar, And Does Not Mandate Dismissal**.

Mountains' argument that the existence of a regulatory scheme which allows CMS to certify and recertify CAHs requires dismissal of Relator's FCA claim is also wrong.

///

19

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Mountains relies primarily on *United States ex rel. v. Medtronic, Inc*., LA CV 15-01212, 2017 WL 4023092 (C.D. Cal. Sept. 11, 2017) ("*Medtronic*") to support this claim. However, Mountains misrepresents the factual background of the *Medtronic* case as well as the holding. *Medtronic* dealt with off label uses for certain medical devices for which Medtronic obtained FDA approval through a streamlined approval process. The relator in that case argued that Medtronic should not have been allowed to use the streamlined process and was only able to do so because it had purposefully failed to disclose the devices' intended off label uses. Because these medical devices are implanted in patients receiving Medicare benefits, Relator argued that submission of claims relating to procedures involving these medical devices constituted false claims.

The Court disagreed and made a distinction between a claim that is "fraud on the FDA" where the claim is that the drug or device should not have been granted approval, and a claim for reimbursement for a treatment or device that is not medically necessary (regardless of FDA approval) is submitted for payment. In the "fraud on the FDA" scenario, the Court held that an FCA action was not the proper mechanism because the FDA had its own procedure to examine the propriety of FDA approval. However, where claims for reimbursement for treatments that are not medically necessary are submitted, then those would be false claims and an FCA action would be the proper mechanism for such claims.

The court ruled that if the Relator could amend his complaint to allege that the off label use he complained of was <u>always</u> medically unnecessary (which would be necessary to have a claim as to all submissions of claims for payment based on the devices at issue), then Relator's FCA claim would survive. The Court granted relator leave to amend his complaint to make such allegations. Thus, the *Medtronic* decision does not stand for the proposition that FCA claims are inappropriate where other regulatory schemes govern. Indeed, the grant of leave to amend would have been futile if Mountains' interpretation of the *Medtronic* case were accurate.

20

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Notably – and relevant to the case at bar – the court in *Medtronic* held that where a drug or treatment statutorily ineligible for reimbursement under Medicare, then submission of a such a claim is false:

> … **courts are in broad agreement that a claim for reimbursement from Medicare or Medicaid is 'false' when it is statutorily ineligible for such reimbursement**." *Brown*., No. CV 10–3165–GHK SSX, 2014 WL 3605896, at *4 (citing, inter alia, *Ebeid*, 616 F.3d at 1001 (**because certification of compliance with Medicare regulations may be inferred from the submission of a Medicare claim, regulations that set forth conditions of payment may serve as the basis for an implied false certification**); *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975) (claims for services that were not covered by Medicare were false under the FCA); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 530 (N.D. Tex. 2012) ("Medicare claims for expenses that are not covered and are ineligible for payment are false claims."); *Strom*, 676 F. Supp. 2d at 891 ("Because [Medicare] permits reimbursement only for 'reasonable and necessary' treatments, a prescription of [a drug] in a context where it is not 'reasonable' or 'necessary' would be statutorily ineligible for reimbursement. This satisfies the FCA's requirement of a 'false' statement.").  If a defendant unlawfully promotes a product for uses that are not reimbursable, and makes such promotions to individuals and entities that will foreseeably make claims for reimbursement to the government, it is foreseeable that these actions will result in the submission of false claims. *See Brown*, No. CV 10–3165–GHK SSX, 2014 WL 3605896, at *3 ("[E]ven though Celgene did not itself falsely

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  certify compliance with any legal condition of payment, it is still

2  susceptible to liability because it allegedly caused claimants to

3  implicitly make such false certifications and thereby caused the

4  submission of false claims.").

5  *Id*. at *10 (emphasis added).

6  This portion of the *Medtronic* decision is relevant here because Mountains'

7  false claim that it meets the distance requirements makes it ineligible to participate

8  in the CAH program and makes all of its claims for reimbursement at the enhanced

9  rate, false claims that overcharge the Government for the services provided.

10  The Government pointed out in its Statement of Interest filed on April 6, 2018

11  that "[t]he mere existence of an 'enforcement process' alone does not determine

12  whether an FCA action may be brought.  The Department of Justice can and does

13  bring FCA cases despite the existence of various regulatory enforcement schemes."

14  [Docket No. 28.]  The Ninth Circuit in *United States ex rel. Campie v. Gilead*

15  *Sciences, Inc*., *supra*, 862 F.3d 890 agreed with the Government's caution that the

16  existence of a regulatory scheme was not dispositive - as Mountains would like the

17  Court to believe.

18  We note that other courts have cautioned against allowing claims

19  under the False Claims Act to wade into the FDA's regulatory

20  regime. *See Omnicare*, 745 F.3d at 702–03; *D'Agostino v. ev3,*

21  *Inc.*, 845 F.3d 1, 9 (1st Cir. 2016); *Petratos*, 855 F.3d at 490.

22  However, just as it is not the purpose of the False Claims Act to

23  ensure regulatory compliance, it is not the FDA's purpose to

24  prevent fraud on the government's fisc. Mere FDA approval

25  cannot preclude False Claims Act liability, especially where, as

26  here, the alleged false claims procured certain approvals in the

27  first instance.

28  *Id.* at 905 (emphasis added).

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

22

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

**G.    Mountains' Rule 60 Motion For Reconsideration Of The Court's Ruling On The Public Disclosure Bar Is Procedurally And Substantively Defective, And Should Be Denied.**

Mountains' Motion for Reconsideration under Rule 60 is procedurally defective and should be rejected. As noted above, Mountains never met and conferred regarding the possibility of filing a Rule 60 motion for reconsideration. [Anderson Decl., ¶ 5.]  No matter how Mountains tries to characterize the emails counsel exchanged on February 7 for the purpose to setting a new briefing schedule should Mountains file a motion to dismiss after Relator filed a SAC, nothing in those communications could have led Relator to conclude that Mountains intended to rehash the briefing regarding public disclosure.  Mountains' Rule 60 motion should be denied for this reason alone. See Fed. R. Civ. P. 41(b); *Ghazali v. Moran*, supra, 46 F.3d at 53.

Even if Mountains had properly met and conferred, Mountains' Rule 60 motion is substantively defective because Mountains presents no grounds why the Court's ruling as to Relator's complaint against Mountains was erroneous. Allegations regarding other lawsuits filed by Relator have no bearing on the fact that Relator worked for Mountains, has inside knowledge about Mountains' scheme to defraud the Government which was not previously disclosed.

The fact that Relator has filed other lawsuits ***after filing this case*** against other hospitals that are also defrauding the Government does not save Mountains, but is being raised solely to denigrate Relator.  As the Court in *Harman* found, Relator's motives for filing the lawsuit or even the fact that Relator has filed multiple other False Claims Act cases are not relevant to the inquiry of liability.  In *Harman*, the Court noted that the fact that Relator had filed nine additional qui tam lawsuits was irrelevant. *Harman, supra*, 872 F.3d at 665.  The Court also did not find dispositive the facts that Relator had a history of adversarial litigation with the defendant or that was a competitor of the defendant and stood to profit should defendant be precluded

23

from continuing to work with the government. *Id*. at 669.  The Court noted that while these issues may raise an eyebrow, its ruling was based on the merits of the case and not Relator's history with the defendant. *Id.*  This is true because no matter what the relator's motive, the entity that stands to gain the most is the Government's treasury. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009) (relators "intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side.")  Mountains should not be allowed to benefit from its fraud because Relator Adomitis is also seeking to protect the Government from two other hospitals in California.  The sufficiency of Relator's claims against those hospitals will be for the other courts to decide.

**H.     The SAC Does Not Contain An Obvious Bar To Granting Relief.**

Relator was employed from 2007-2008, but because he drove to and from work using a different route, Relator did not learn that Mountains did not meet the distance requirement until 2015, when he drove Highway 18 himself. [SAC, ¶47.] Relator filed this action was filed on January 3, 2017.

In the Ninth Circuit, a *qui tam* plaintiff must initiate a civil action under the FCA "no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last." *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996); *see* 31 U.S.C. §3731(b) . "A suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred." *Id*.; see 31 U.S.C. §3731(b).  Since Relator commenced this action on January 3, 2017, Relator does not seek relief on the FCA claims on claims for payment filed by Mountains prior to January 3, 2007.  The allegations in the SAC regarding false claims made between 2002 and 2007 do not change this fact.  Instead, these claims were made to refute Mountains' argument that Relator conceded that no false claims were submitted prior to January 3, 2007.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

24

Based on the facts presented, the Court should affirm its original ruling denying Mountains' motion to dismiss Relator's claims as time barred.

### III.   RELATOR'S CONDITIONAL MOTION TO AMEND

If the Court dismisses any claim for relief, it must then consider whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and internal quotes omitted). *See, also, Tuley v. Heyd*, 482 F.2d 590, 595 (5th Cir. 1973). Accordingly, Relator requests that this Court grant leave to amend any claims in which it finds that Relator failed to adequately plead its allegations.  Should leave be granted, Relator can amend the allegations to clarify fraudulent scheme in the manner described herein.  Relator can also amend the SAC to add allegations regarding the fraudulent claims contained in CMS Form 837 which are submitted for payment after each medical procedure covered by Medicare.  CAH's affirm their CAH status on these forms by including a three-digit number beginning with an 8.  Non-CAH hospitals fill out the form using a "1."  In addition, Relator can include the other affirmative representations made on each Form 2552-10 wherein the CAH verifies that it qualifies as a CAH.

### IV.   CONCLUSION

Based on the foregoing, relator respectfully requests that the Court deny Defendant's motion to dismiss this action.

DATED: April 9, 2018

**LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**

By: ***/s/ Esperanza Cervantes Anderson***
Esperanza Cervantes Anderson, Esq.
Attorney for Plaintiff/relator
FRANK ADOMITIS

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Second Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA