UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-02 JGB (KKx)** | Date | June 14, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. San Bernardino Mountains Community Hospital District, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order GRANTING Defendant's Motion to Dismiss (Dkt. No. 27) (IN CHAMBERS)**

Before the Court is Defendant San Bernardino Mountains Community Hospital District's Motion to dismiss Relator Frank Adomitis's Second Amended Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. ("Motion," Dkt. No. 27.) The Court held a hearing on May 21, 2018 and took the Motion under submission. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

### A. Procedural Background

On January 3, 2017, Relator Frank Adomitis filed a complaint, on behalf of the United States of America, against Defendant San Bernardino Mountains Community Hospital District ("Mountains," (Dkt. No. 1.) The United States filed its notice, declining to intervene on May 10, 2017. (Dkt. No. 6.) Relator filed his First Amended Complaint on November 13, 2017. ("FAC," Dkt. No. 17.) On January 29, 2018, the Court granted Defendant's motion to dismiss the FAC. ("Order," Dkt. No. 23.)

Relator filed a second amended complaint on February 20, 2018. ("SAC," Dkt. No. 26.) Relator's SAC raises three causes of action: (1) presentation of false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A); (2) using false statements or records to receive

false payments under the FCA, 31 U.S.C. § 3729(a)(1)(B); and (3) failing to refund overpayments owed to the government in violation of 31 U.S.C. § 3729(a)(1)(G).  (See SAC.)

Mountains moved to dismiss the SAC on March 13, 2018. [1,2]  (Dkt. No. 27.)  On April 6, 2018, United States filed a statement of interest regarding specific issues raised in the Motion.

---

[1] Relator argues Defendant's failure to comply with Local Rule 7-3's requirement that counsel to meet and confer prior to filing a motion is grounds for striking the Motion.  (Opp'n at 2-3.)  The parties corresponded in early February 2018 regarding a briefing schedule for Defendant's motion to dismiss, prior to Relator filing the SAC.  (Mikel Decl. ¶ 12, Dkt. No. 31-1.)  Both parties agreed to an April 30, 2018 hearing date.  (Ex. 7 at 1, Mikel Decl.)  Though Defendant argues its Motion is based on the same substantive issues as its prior motion to dismiss, there does not seem to be evidence of a specific conversation between counsel regarding the substance of this Motion.  However, given the similarities between Defendant's Motion and its previous motions, and the additional three weeks Relator had to oppose the Motion, the Court will not strike the Motion.

[2] Along with its Motion, Defendant filed a Request for Judicial Notice.  (Mot. at 6-7.)  Relator opposed the Request.  (Dkt. No. 30.)  Defendant replied to Relator's opposition.  (Dkt. No. 32.)  Defendant asks the Court take judicial notice of (1) the Centers for Medicaid and Medicare Services' ("CMS") April 2013 guidance on Critical Access Mountains Criteria, (2) an August 2013 Office of Inspector General report on Critical Access Hospitals ("CAHs") ("OIG Report"), (3) the CMS February 2018 recertification checklist for CAHs, and (4) current CMS Provider Information, (5) an excerpt from the CMS State Operations Manual, (6) a memo from the U.S. Associate Attorney General, and (7) other lawsuits filed by Relator.  (Id.)  Relator objects to all exhibits on grounds of authentication, and exhibits 4 and 6 on grounds of relevance, hearsay, and/or not generally known facts.  (See Dkt. No. 30.)

A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The Court finds that Exhibits 1-5 are proper subjects of judicial notice, as these are government agency documents in the public record and their accuracy "cannot reasonably be questioned."  See, e.g., Paralyzed Veterans of America v. McPherson, 2008 WL 4183981, at *6 (N.D. Cal. Sep. 9, 2008) (taking judicial notice of documents on the California Secretary of State's website); United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citation omitted) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet.").  However, exhibit 6, general guidance on civil enforcement cases, is irrelevant to the case at hand.  In addition, the other lawsuits filed by Relator in exhibit 7 have no relation to this action, and are therefore not proper subjects of judicial notice.  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (stating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  Accordingly,

---

("U.S. Statement," Dkt. No. 28.)  Relator opposed the Motion on April 9, 2018. ("Opposition," Dkt. No. 29.)  Mountains filed its reply on April 16, 2018.  ("Reply," Dkt. No. 31.)

**B.  Overview of Medicare Reimbursement Program**

In its previous Order, the Court gave a detailed explanation of how the United States Department of Health and Human Services, through CMS administers the Medicare program and the CAH certification.  (See Order at 2-3.)  Summarily, CAHs are reimbursed at different rates from other acute care hospitals, and as pertinent here, they must meet specific location-related requirements.  (SAC ¶ 18.)  For the minimum distance requirement, hospitals can be either (1) more than a 35-mile drive from another hospital or CAH, or (2) more than a 15-mile drive from another hospital or CAH in a mountainous area or area with only secondary roads available.  (Id. ¶ 19 (citing 42 C.F.R. § 485.610(c)).)  Prior to January 1, 2006, states could designate hospitals that did not meet this distance requirements as necessary provider ("NP") CAHs.  (Id. ¶ 22.)  These NP CAHs are permanently exempt from meeting the distance requirement, unless they relocate, but they still must meet all other CAH requirements.  (Id. ¶ 23.)

**C.  Allegations Regarding Mountains**

Mountains, started in 1947, is a 37-bed facility located in Lake Arrowhead, California.  (SAC ¶ 8.)  Mountains is operated under the San Bernardino Mountains Community Healthcare District.  (Id.)  Around April 17, 2002 Mountains received an analysis showing it would have earned an additional $173,369 in Medicare reimbursement for the year analyzed if Mountains had been a CAH.  (Id. ¶ 29.)  One month later, on May 16, 2002, Mountains applied for CAH status, with Mountains' CEO James Hoss affirming they met the distance requirement.  (Id. ¶ 30.)  In July 2002, Mountains was certified as a CAH.  (Id. ¶ 32.)

Relator alleges Mountains does not meet the location requirements for CAH certification.  (Id. ¶ 34.)  First, Relator claims the most direct route between Mountains and the nearest hospital, is 23.9 miles, according to Google Maps.  (Id. ¶ 35.)  Along those 23.9 miles, there is 12.4 miles of secondary roads, about 10.4 miles of which are in mountainous terrain.  (Id. ¶ 36.)  However, since 2002, Mountains has filed for reimbursements from Medicare for healthcare services provided to Medicare beneficiaries using CMC Form 2552, at rates authorized for CAHs.  (Id. ¶ 37.)  Form 2252 contains certification statements that the information provided is truthful and in compliance with the laws and regulations.  (Id. ¶¶ 37-38.)  Between 2002 and 2015, Mountains has allegedly fraudulently charged CMS over $66 million.[3]  (Id. ¶ 43.)

the Court GRANTS the Request for Exhibits 1-3 and 5, and DENIES the Request for Exhibits 4, 6, and 7.

[3] Relator cites the specific sums Mountains charged CMS in the fiscal years 2002 – 2009, and then in the calendar years 2010-2015.  The Court notes there may be some overlap between FY 2009 and the calendar year 2010 charges, but has aggregated all the alleged totals.  (FAC ¶ 49.)

From July 1, 2007 through November 24, 2008, Adomitis worked as the Chief Financial Officer for Defendant Mountains.  (SAC ¶ 47.)  During his employ, Relator was required by Hoss to submit claims to CMS representing Mountains as a CAH.  (<u>Id.</u>)  Hoss told Relator that Mountains was a CAH because it met the distance requirements.  (<u>Id.</u>)

Relator also alleges that while he worked at Mountains, Defendant purposefully did not conduct a survey or audit to recertify or verify it met the CAH criteria, and Defendant was or should have been aware it did not meet the distance requirements.  (<u>Id.</u> ¶ 48.)[4]  In particular, Relator claims Hoss as well as other board members lived in Lake Arrowhead, California or areas of San Bernardino that would have required routine travel on Highway 18 sufficient to put them on notice Mountains did not meet the distance requirement.  (<u>Id.</u> ¶ 47.)

## II. LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) motions challenge the court's subject matter jurisdiction, without which, a federal district court cannot adjudicate the case before it.  <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375 (1994).  The party asserting federal subject matter jurisdiction bears the burden of proving its existence.  <u>Chandler v. State Farm. Mut. Auto. Ins. Co.</u>, 598 F.3d 1115, 1122 (9th Cir. 2010.)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).  Factual allegations must be enough to "raise a right to relief above a speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  <u>Id.</u>; <u>see</u> <u>Horosny v. Burlington Coat Factory, Inc.</u>, 2015 WL 12532178 at *3 (C.D. Cal. Oct. 26, 2015).  In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint, and construes the pleadings in the light most favorable to the nonmoving party.  <u>See</u> <u>Shwarz v. United States</u>, 234 F.3d 428, 435 (9th Cir. 2000).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the

---

[4] Relator also alleges Mountains was on notice due to its earlier litigation in 1995, dismissing Mountains' action to be classified as a "sole community hospital."  (SAC ¶¶ 27-28).  However, that case took place long before 2002, when Mountains was certified as a CAH, and does not involve CAH certifications.  Therefore, as the Court noted before, it is of questionable relevance to the alleged fraud at issue here.

reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Claims brought under the FCA must be pleaded pursuant to Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pleaded with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) applies also where the claim is "grounded in fraud" or "sound[s] in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483 at *5 (C.D. Cal. Oct. 24, 2016) (quoting Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

## III.   DISCUSSION

Defendant moves to dismiss Relator's claims asserting his claims lack materiality, he fails to plead with the requisite particularity, and his claims are barred by the statute of limitations.[5] (See Mot.) The Court considers each argument in turn.

### A.  FCA Claims

A false certification claim requires (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit money due. United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011). The implied certification theory can be a basis for liability at least where two conditions are satisfied. First, the claim does not merely request payment, but also makes specific representations about the goods or services provided. United States ex rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890, 902 (9th Cir. 2017) (citing Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2000 (2016)). Second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. Id. (citing Escobar, 136 S. Ct. at 2001). District courts in this Circuit have split on whether Escobar established a two-part test for implied false certification claims. See, e.g., Rose v. Stephens Inst., 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016) (finding Escobar did not establish a two-part test for every implied certification case), appeal pending, No. 17-15111 (9th Cir. Jan 20, 2017); but see United States v. Ctr. for Emp't Training, 2016 WL 4210052, at *5 (E.D. Cal. Aug. 9, 2019) (requiring a plaintiff satisfy Escobar's two-part test when asserting an implied false certification theory).

---

[5] Defendant also asks the Court to reconsider its prior ruling that Relator's claims were not barred by the public disclosure bar pursuant to Federal Rule of Civil Procedure 60. (Mot. at 21.) Yet, Defendant has made no attempt to argue for reconsideration based on any of the legal grounds identified in Rule 60. Both parties had an opportunity to brief the public disclosure bar issue, which the Court duly considered, for the first motion to dismiss and Order. The Court finds no reason to rehash old arguments to reconsider its prior ruling and declines to do so.

Ninth Circuit decisions post <u>Escobar</u> do not clarify whether false certification claims must satisfy <u>Escobar</u>'s two conditions.  In <u>Campie</u>, the Ninth Circuit noted the two <u>Escobar</u> conditions "must" be satisfied.  862 F.3d at 901.  The Government urges the Court not to read <u>Campie</u> and <u>United States ex rel. Kelly v. Serco, Inc.</u>, 846 F.3d 325 (9th Cir. 2017) as requiring the two conditions.  (U.S. Statement at 3-6.)  To do otherwise would implicitly overrule <u>Ebeid ex rel. United States v. Lungwitz</u>, 616 F.3d 993, 998-99 (9th Cir. 2010), which indirectly held that claims for payment, without more, can serve as a basis for implied certification liability.  (<u>Id.</u> at 4.)  At least one district court has held that <u>Kelly</u> requires the two <u>Escobar</u> conditions be met for an implied false certification claim.  <u>See</u> <u>United States ex rel. Mateski v. Raytheon</u>, 2017 WL 1954942, at *5 (C.D. Cal. Feb. 10, 2017).  <u>Rose</u>, which was decided before <u>Campie</u> and found the two conditions were not mandatory, is currently pending interlocutory appeal, including the certified question of whether <u>Escobar</u>'s two conditions must always be satisfied for implied false certification liability under the FCA.  <u>Rose v. Institute</u>, 2016 WL 6383513, at *4 (N.D. Cal. Oct. 28, 2016).  The Ninth Circuit's decision in <u>Rose</u> may clarify the requirements for an implied false certification case within this Circuit.  Nevertheless, at oral argument, neither party advocated a stay to await the <u>Rose</u> decision.  Thus, the Court assumes without deciding that a plaintiff need not make specific representations about the goods or services provided to state an implied false certification claim in considering this Motion.

Relator also asserts a reverse false claim for Mountains' failure to refund overpayments owed to the federal government from 2002 to the present.  (SAC at 20.)  Section 3729(a)(1)(G) imposes FCA liability on a person or entity who, as pertinent here, ". . . knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G).

## 1.  Rule 9(b)

A complaint alleging implied false certification must plead with particularity allegations that "provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation."  <u>Ebeid</u>, 616 F.3d 993, 998 (9th Cir. 2010).  In the Ninth Circuit, it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  <u>Id.</u> at 999 (quoting <u>United States ex rel. Grubbs v. Ravikumar Kanneganti</u>, 565 F.3d 180, 190 (5th Cir. 2009)).  However, "[m]ere conclusory allegations of fraud are insufficient."  <u>United States v. United Healthcare Ins. Co.</u>, 848 F.3d 1161, 1180 (9th Cir. 2016).

Previously, the Court found Relator's FAC had "describe[d] some details of a generalized scheme, [but] they [we]re not pleaded with sufficient particularity or 'reliable indicia.'"  (Order at 9.)  Relator has added allegations concerning the financial motivation behind Mountains' initial application for CAH certification, and statements Hoss made to Relator, during his employment

at Mountains, that Mountains met the distance requirements (SAC ¶ 29-30; 47.)  Relator also alleges he submitted claims representing Mountains as a CAH to CMS.  (Id. ¶ 47.)

The core of Relator's FCA claim is that the falsity of the submitted claims resides not in the claims themselves, but in the external fact that Mountains is or is not properly a CAH.  Therefore, if Mountains does not meet the location requirements, each reimbursement claim may give rise to a false certification claim, as Relator argues.  (Opp'n at 9.)  Consequently, Relator has alleged that Mountains officials (who) submitted CMS Form 2552 between 2002 to present (when) for reimbursement at the enhanced CAH rate, when they knew Mountains did not meet the location requirements (what) to receive additional compensation (why).  Further, Relator alleges Mountains' initial application to be designated a CAH contained false statements.  (SAC ¶ 31.)  These allegations suffice to establish claims were actually submitted.  The parties dispute the labelling of parts of the route as mountainous terrain or whether the secondary roads and mountainous terrain overlap, but such issues of fact and proof are not properly before the Court on a motion to dismiss.  The Court must take as true Relator's factual assertions of the distance between Mountains and the nearest hospital, and the conclusion that parts of the route are or are not mountainous terrain or secondary roads as designated by CMS.  Accordingly, the Court finds Relator adequately pleads his FCA claims in accordance with Rule 9(b).

### 2. Materiality

Materiality is defined as having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  31 U.S.C. § 3729(b)(4).  To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant."  United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1173 (9th Cir. 2006).  The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment."  United States v. Celgene Corp., 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing Escobar, 136 S. Ct. at 2002-03 (2016)).  As the Court noted in its Order, the Supreme Court has stated, "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."  Escobar, 136 S. Ct. at 2003).  Thus, a "condition of payment" is not automatically dispositive of materiality, but is relevant.  Escobar, 136 S. Ct. at 2001.  Nor is it sufficient to allege that the government "would have the option to decline to pay if it knew of the defendant's noncompliance."  Id. at 2003.

Relator, relying on Hendow, argues Mountains' compliance with the CAH distance requirements was material because its designation as a CAH was the "sine qua non" of receiving the enhanced reimbursement rates.  (Opp'n at 10.)  Conversely, Defendant argues the distance requirement is a condition of participation, not a condition of payment, and therefore not material.  (Mot. at 9.)

In Hendow, the court analyzed an FCA implied false certification claim alleging a university falsely certified its compliance with the incentive compensation ban in order to receive Title IV

**CIVIL MINUTES—GENERAL**

funds each year while knowingly and intentionally violating that requirement.  461 F.3d at 1169.
In determining the materiality element, the court found the receipt of the Title IV funds was
"explicitly conditioned" on compliance with the incentive compensation ban in three different
forms- a federal statute, a federal regulation, and the program participation agreement itself.  Id.
at 1175-176.  In holding the materiality element was met, the court found these three clauses
made compliance a "prerequisite" of funding and the "sine qua non" because "if the
[u]niversity had not agreed to comply with them, it would not have gotten paid."  Id. at 1176.
Thus, there was no difference between a condition of payment and a condition of participation.
Id.

　　　Decided after Hendow, Escobar rejected the distinction between conditions of payment and
conditions of participation for FCA liability, and established the court must determine whether
compliance with the condition would have been material to the payment.  136 S. Ct. at 2002.
Therefore, regardless of whether a condition is one of "payment" or "participation," the
analysis focuses on its materiality to the payment decision.  Pertinent here, 42 C.F.R. § 485.601
states a hospital must meet the conditions set forth in the subpart of the Code of Federal
Regulations to be designated as a CAH.  42 C.F.R. § 485.601(b).  Among numerous other
"conditions of participation" provisions is § 485.610 "Status and location," which establishes
the location and distance requirements for CAHs.  42 C.F.R. § 485.610.  However, Relator fails
to link these "conditions of participation" to payment requirements, besides the general
certification in Form 2252 that the submitter certify the information is in compliance with the
relevant laws and regulations, and the general Medicare Enrollment form that a payment of a
claim is conditioned on compliance with Medicare laws, regulations, and program instructions.
(SAC ¶¶ 38-40.)  There are numerous laws and regulations a hospital must comply with to
receive and maintain CAH designation, and Relator does not point to a specific regulation,
statute, or agreement "explicitly condition[ing]" the payment of claims on the location
requirements, unlike in Hendow.  Moreover, the Hendow court distinguished between
educational funds and the Medicare context, where regulatory compliance was "ensured by peer
review and extensive monitoring."  461 F.3d at 1177.  In addition, prior to 2013, CMS did not
even periodically reassess whether CAHs continued to meet the location requirements.  (OIG
Report at 5, Dkt. No. 27-3.)

　　　Nevertheless, the primacy of CAH location and distance requirements are reflected in CMS'
own documents.  The OIG Report, released in August 2013, discusses generally how almost two-
thirds of CAHs do not meet the location requirements and estimates potential savings to
Medicare if some of the non-conforming CAHs were decertified.  (See Ex. 1, Dkt. No. 27-3.)
Since 2013, CMS has engaged in reassessing non-NP CAH's compliance with the location
requirements.  (OIG Report at 5.)  According to its Recertification Checklist, a CMS Regional
Office is to first determine whether the CAH is in compliance with the rural and distance
requirements and, if so, then conduct a recertification or reaccreditation survey.  (Dkt. No. 27-4
at 2.)  A CAH that does not meet the location and distance requirements is to be sent a letter
indicating its CAH status will be terminated.  (Id. at 7.)  CMS' change in position in 2013 makes
clear that CMS expects non-NP CAHs to comply with the location requirements.

Defendant mainly argues that Relator cannot show the government has stopped paying claims from CAHs that were identified as noncompliant in the OIG report or that Mountains has been decertified despite Relator informing the government of Mountains' alleged noncompliance with the location requirements.  (Reply at 9.)  At this stage, the Court has no evidence of CMS' knowledge regarding Mountains actual noncompliance, as opposed to awareness of allegations concerning noncompliance.  Thus, the Court need not consider whether CMS' actual knowledge supports a finding of non-materiality.  See United States ex rel. Escobar v. Universal Health Servs., Inc., 842 F.3d 103, 112 (1st Cir. 2016) ("Escobar II") (finding the court need not decide whether the Medicaid claim-paying entity's actual knowledge of the allegations of noncompliance would be sufficiently strong evidence that the alleged violations were not material on a motion to dismiss).

The question of materiality is a close one, but the Court concludes Relator has failed to meet the "demanding" standard.  Escobar, 136 S. Ct. at 2003.  CMS' 2013 decision to reassess compliance with the location requirements after a hospital's initial CAH certification provides evidence that the requirements are important to CAH status.  Still, Relator has not pleaded the requisite connection that noncompliance with the location requirements is material to the government's payment decision itself.  See id., at 2002– 2004.  Relator has not pleaded that noncompliance leads the government to "consistently refuse[] to pay claims," reimburse the claims at a lower rate, or seek to retroactively recover payments.  Escobar, 136 S. Ct. at 2003.

Instead, it is the termination of CAH status, after an RO assesses the hospital's compliance with the location requirements, (Dkt. No. 27-4 at 6), that precludes a hospital from receiving claims at the enhanced CAH rate.  This added attenuation, between the location requirements and claim payment decision, and existing regulatory regime, gives the Court pause.  See U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc., 543 F.3d 1211, 1221 (10th Cir. 2008) (concluding Medicare's regulations providing for a compliance survey and period for a provider to address any deficiencies before revoking billing privileges meant the government did not require perfect compliance with the regulations as a condition of payment for services rendered).

The Court was unable to find, and Relator fails to provide, a case wherein the court deemed material a defendant's failure to meet requirements not pertaining directly to the claim(s) at issue.  Rather, where courts have allowed implied false certification claims to proceed, the materiality of the claims for payment were inextricably intertwined with the goods or services rendered.  See Campie, 862 F.3d at 906-907 (denying motion to dismiss where relator alleged defendant submitted reimbursement claims for adulterated and misbranded drugs where payment for drugs under the various government programs was contingent upon FDA approval); Celgene, 226 F. Supp. 3d at 1049-1050 (denying summary judgment on materiality where defendant submitted reimbursement claims for off-label prescription uses, because Medicare Part D regulations permitted reimbursement for covered drugs used for a "medically accepted indication"); United States ex rel. Poehling v. UnitedHealth Grp., Inc., 2018 WL 1363487, at *11-*12 (C.D. Cal. Feb. 12, 2018) (finding FCA claim sufficiently pleaded where the government alleged the defendants failed to delete invalid diagnosis codes on reimbursement claims to Medicare); United States v. IASIS Healthcare, LLC, 2016 WL 6610675, at *13-*14 (D. Ariz.

Nov. 9, 2016) (finding FCA claim sufficiently pleaded where relators alleged defendant submitted claims without ensuring the provided care was medically necessary and cost effective as required by various contractual and regulator provisions).

This is not a case such as <u>Escobar</u>, where the facility submitted reimbursement claims to Medicaid for treatment by healthcare providers that did not meet the qualifications required by the numerical codes used. <u>Escobar II</u>, 842 F.3d at 107-108. The <u>Escobar II</u> court found the materiality standard was met because the facility's misrepresentation of its providers' credentials when submitting bills for their services rendered were "at the core" of the program. 842 F.3d at 111. In <u>Escobar II</u>, alike the cases cited above, the submitted reimbursement claims directly concerned the allegedly fraudulent services provided.

By contrast, Mountains' claims only certified their compliance with a litany of Medicare rules and regulations, including CAH status. There are no factual allegations that noncompliance would have a direct impact on CMS' payment of claims, without prior termination of a hospital's CAH status. Moreover, Frank Howard Memorial Hospital and Colorado River Medical Center, two non-NP CAHs that were identified by the OIG as not meeting the distance requirements, continue to retain their designation as CAHs, suggesting the location-related requirements are not material. (<u>See</u> Ex. 4, Dkt. No. 27-3.) It is not enough to simply allege that the government would not have reimbursed the claim at the CAH rate. (FAC ¶ 45.)

Relator's SAC alleges, at most, that the location requirements are necessary to receive and maintain CAH status, but fails to establish their materiality to the payment of claims. Particularly for the period before 2013, when CMS only required compliance at the initial certification, Relator does not establish a connection between payment and noncompliance. Relator fails to allege that after 2013 and the OIG Report -- which establishes the government knew certain hospitals did not meet the CAH participation requirements—the government denied any claims for payment based on failure to meet CAH participation requirements. The Court finds Relator fails to establish the location requirements are material to the government's payment of the claims. The Court GRANTS Defendant's Motion for all Relator's claims.

## B.  Statute of Limitations

Lastly, Defendant argues Relator's FCA claims are barred by the statute of limitations, and alternatively, Relator's claim under § 3729(a)(1)(G) is limited. (Mot. at 23-25.) Dismissal under Rule 12(b)(6) on the basis of an affirmative defense, such as statute of limitations, is proper "only if the defendant shows some obvious bar to securing relief on the face of the complaint." <u>ASARCO, LLC v. Union Pac. R. Co.</u>, 765 F.3d 999, 1004 (9th Cir. 2014). The FCA's statute of limitations provides a civil action may not be brought:

> (1) more than 6 years after the date on which the violation of [the FCA] is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).  The Ninth Circuit has held an FCA action brought by a qui tam plaintiff, as here, "must be commenced no more than (1) six years after the date on which the FCA violation is committed, or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last.  United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1217-218 (9th Cir. 1996).

Relator filed his original complaint in this action on January 3, 2017.  Relator alleges first learned that Mountains did not meet the distance requirement in 2015.  (SAC ¶ 47.)  Defendant argues as CFO, Relator should have known or discovered his claims during his employment at Mountains that ended in November 2008.  (Mot at 24.)  When Relator should have known of this claim is a factual issue not before the Court on this Motion, and the Court again finds no "obvious bar" to relief on the face of the SAC.  Relator concedes he cannot rely on any claims for payment that Mountains filed prior to January 3, 2007 as grounds for his FCA claims.  (Opp'n at 24.)

Defendant also argues Relator improperly re-pleads his claim under § 3729(a)(1)(G) to include overpayments retained prior to May 22, 2010.  (Mot. at 25.)  Relator does not respond to this argument.  (See Opp'n.)  In its previous Order, the Court dismissed without leave to amend Relator's § 3729(a)(1)(G) claim to the extent it relied upon alleged misconduct prior to May 22, 2010.  (Order at 10.)  Accordingly, the Court GRANTS Defendant's Motion WITHOUT LEAVE TO AMEND to the extent Relator's § 3729(a)(1)(G) cause of action relies on Mountains' alleged failure to refund overpayments prior to May 22, 2010.  In addition, the Court warns Relator that failure to amend his complaint in accordance with the Court's orders may result in sanctions.

## C.  Leave to Amend

Relator requests the Court grant him leave to amend for any claims dismissed because he can supplement the allegations regarding the fraudulent scheme.  (Opp'n at 25.)  The Court finds amendment is appropriate here, excluding where noted.  See Kendall v. Visa USA, Inc., 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").  The Court advises Relator that a third request for leave to amend is unlikely to be granted.

## IV.   CONCLUSION

The Court GRANTS Defendant's Motion.  Relator shall file a third amended complaint, if any, **no later than June 22, 2018.**


**IT IS SO ORDERED.**