Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| United States of America, *ex rel.*, Frank Adomitis,<br><br>Plaintiff,<br><br>vs.<br><br>San Bernardino Mountains Community Hospital District;<br>Does 1 through 20, inclusive;<br><br>Defendants. | Case No.: 5:17-cv-00002-JGB-KK<br>(Hon. Jesus G. Bernal)<br><br>**Notice of Motion and Motion to Dismiss the Third Amended Complaint**<br><br>*Date*: September 24, 2018<br>*Time*: 9:00 AM<br>*Courtroom*: 1 |

TO PLAINTIFF, UNITED STATES OF AMERICA, ex rel., FRANK ADOMITIS, AND TO HIS ATTORNEY OF RECORD, ESPERANZA CERVANTES ANDERSON:

PLEASE TAKE NOTICE that on September 24, 2018, at 9:00 a.m., in Courtroom 1 before the Honorable Jesus G. Bernal, Judge Presiding, at 3470 Twelfth Street Riverside,

CA 92501-3801, Defendant, SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT, will move the Court under Fed R. Civ. P. 8(a), 9(b), and 12(b)(6) to dismiss the Third Amended Complaint for Violation of the Federal False Claims Act on file with the Court.

This motion is made following the conference of counsel required under Local Rule 7-3 which took place on June 26, 2018. The motion is based on the accompanying Memorandum of Points and Authorities and accompanying exhibits, and on the other pleadings and papers on file with the Court and this Notice of Motion and Motion.

**Respectfully submitted,**

Dated: July 6, 2018

**THE HEALTH LAW PARTNERS, P.C.**

By:/s/ Clinton Mikel

Clinton Mikel, Attorney for Defendant San Bernardino Mountains Community Hospital District

HLP THE HEALTH LAW PARTNERS, P.C.

**PROOF OF SERVICE**

**STATE OF MICHIGAN, COUNTY OF OAKLAND**

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On July 6, 2018, I served true copies of the foregoing document(s) described as **Notice of Motion and Motion of Defendant Mountains' Motion to Dismiss the Third Amended Complaint** on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 6, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre
Marianna M. McIntyre

HLP The Health Law Partners, P.C.

Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| United States of America, *ex rel.*, Frank Adomitis,<br><br>Plaintiff,<br><br>vs.<br><br>San Bernardino Mountains Community Hospital District;<br>Does 1 through 20, inclusive;<br><br>Defendants. | Case No.: 5:17-cv-00002-JGB-KK<br>(Hon. Jesus G. Bernal)<br><br>**Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third Amended Complaint**<br><br>*Date*: September 24, 2018<br>*Time*: 9:00 AM<br>*Courtroom*: 1 |

## TABLE OF CONTENTS

PAGE

**TABLE OF AUTHORITIES** .......... I
**INTRODUCTION** .......... 1

PAGE I
Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

PROCEDURAL FACTS ....................................................1
LEGAL STANDARD ....................................................2
REQUEST FOR JUDICIAL NOTICE ....................................................3
ARGUMENT ....................................................4

A. No New Materiality Pleadings: No Evidence of Materiality ....................................................6

B. Relator Fails to Link Conditions of Participation with Requirements for Payment of Claims to the Government ....................................................7

C. Relator Fails to Show Materiality Concerning the Decertification of Other Established CAHs ....................................................9

D. Relator's Attempt to Allege an Express False Certification of Claims is Irrelevant ....................................................12

E. Relator Cannot Show Materiality When the Route in Question has been Measured and Classified by CalTrans ....................................................14

F. Relator Cannot Predicate FCA Claims on Ambiguous Regulatory Guidance ....................................................17

G. Relator's FCA Claims are not Material, and are Inappropriate When Other Regulatory Schemes Govern ....................................................20

H. The FCA is not an All-Purposed Fraud Statute, and Relator's Use of Sub-Regulatory Guidance is Inappropriate ....................................................22

I. Relator Should be Denied the Opportunity to Amend ....................................................23

CONCLUSION ....................................................24

HLP The Health Law Partners, P.C.

# TABLE OF AUTHORITIES

## Cases

*Abbott v. BP Expl. & Prod., Inc.*,
851 F.3d 384 (5th Cir. 2017) ........ 21

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ........ 2, 3

*Baylor County Hospital District v. Burwell*,
163 F.Supp.3d 372 (N.D. Tex. 2016) ........ 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Christensen v. Harris Cty.*,
529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ........ 23

*Cmty. Hosp. of Monterey Peninsula v. Thompson*,
323 F.3d 782 (9th Cir. 2003) ........ 22, 23

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ........ 2

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir.2010) ........ 12

*Foman v. Davis*,
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ........ 24

*Hagood v. Sonoma County Water Agency*,
81 F. 3d 1465 (9th Cir 1996) ........ 19

*Hansen Beverage Co. v. Innovation Ventures, LLC,*
No. 08–CV–1166–IEG, 2009 WL 6597891 (S. D. Cal. Dec. 23, 2009) ........ 3

*Horosny v. Burlington Coat Factory, Inc.*,
2015 WL 12532178 (C.D. Cal. Oct. 26, 2015) ........ 2

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987) ........ 22

*Jackson v. City of Columbus*,
194 F.3d 737 (6th Cir.1999) .......... 3

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) .......... 23

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) .......... 24

*Maetski v. Raytheon Corp.*,
No. CV 06–3614–ODW (KSx), 2017 WL 3326452 (C.D. Cal. Aug. 3, 2017) .......... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 2

*Parks School of Business, Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) .......... 2

*Reno v. Koray*,
515 U.S. 50, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995) .......... 23

*Rose v. Stephens Inst.*,
2016 WL 5076214 (N.D. Cal. Sept. 20, 2016) .......... 13, 14, 15

*Shalala v. Guernsey Mem'l Hosp.*,
514 U.S. 87, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995) .......... 23

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) .......... 2

*Sweeney v. ManorCare Health Servs., Inc.*,
No. C03-5320RJB, 2005 U.S. Dist. LEXIS 45216 (W.D. Wash. Mar. 4, 2005) .......... 8

*United States ex rel. Burlbaw v. Orenduff*,
400 F. Supp. 2d 1267 (D. N. M. 2005) .......... 19

*U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc.*,
543 F.3d 1211 (10th Cir. 2008) .......... 7

*U.S. ex rel. Estate of Donegan v. Anesthesia Assocs. of Kansas City, PC*,
No. 4:12-CV-0876-DGK, 2015 WL 3616640 (W.D. Mo. June 9, 2015) .......... 19

The Health Law Partners, P.C.

Page iv

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006)........................................ 7, 9

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
48 F. Supp. 3d 1362 (C.D. Cal. 2014)........................................ 3

*United States ex rel. Campie v. Gilead Sciences, Inc.*,
862 F.3d 890 (9th Cir. 2017)........................................ 13

*United States* ex rel. *Forcier v. Comput. Sciences Corp.*, 12 Civ. 1750 (DAB),
2017 WL 3616665 (S.D.N.Y. Aug. 10, 2017) ........................................ 12

*United States ex rel. Harman v. Trinity Indus. Inc.*,
872 F.3d 645 (5th Cir. 2017) ........................................ 21

*United States ex rel. Hixson v. Health Mgmt. Sys., Inc.,*
613 F.3d 1186 (8th Cir.2010)........................................ 19

*United States ex rel. Hopper v. Anton,*
91 F.3d 1261 (9th Cir.1996) ........................................ 12

*United States ex rel. Huey v. Summit Healthcare Ass'n, Inc.*,
No. CV-10-8003, 2011 U.S. Dist. LEXIS 26740 (D. Ariz. Mar. 2, 2011) ........................ 8

*United States ex rel. Kelly*,
846 F.3d 325........................................ 13, 21

*United States ex rel. Mateski*,
2017 WL 1954942........................................ 13

*United States ex rel. Petratos v. Genentech Inc.*,
855 F.3d 481 (3d Cir. 2017) ........................................ 21

*United States ex rel. Swafford v. Borgess Med. Ctr.*,
98 F. Supp. 2d 822 (W. D. Mich. 200)........................................ 19

*United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*,
820 F.3d 1162 (10th Cir. 2016)........................................ 12

*United States v. Ctr. for Emp't Training*,
2016 WL 4210052 (E.D. Cal. Aug. 9, 2016)........................................ 13

Page v

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP The Health Law Partners, P.C.

*United States v. Fulton Cnty., Ga.*, 2016 WL 4158392 (N.D. Ga. Aug. 5, 2016) .......... 12

*United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) .......... 22

*United States v. Strock*, No. 15-CV-0887-FPG, 2018 WL 647471 (W.D.N.Y. Jan. 31, 2018) .......... 12

*Universal Health Servs., Inc. v. United States ex rel Escobar*, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) .......... passim

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 3

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 24

**Statutes**

31 U.S.C. §§ 3729, et seq. .......... 1

31 U.S.C. § 3729(a)(1)(B) .......... 6

31 U.S.C. § 3730(a) .......... 20

31 U.S.C. § 3730(b)(2) .......... 20

31 U.S.C. § 3729(b)(4) .......... 6

**Rules**

Fed. R. Civ. P. 8 .......... 7

Fed. R. Civ. P. 9(b) .......... 1, 3, 7

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 15(a)(2) .......... 23

Fed. R. Evid. 201(b) .......... 3, 4

**Regulations**

42 C.F.R §412.103 .......... 11

42 C.F.R. § 485.601 ........ 9
42 C.F.R. § 485.610(b) ........ 10
42 C.F.R. § 485.610(c) ........ passim

**Other Authorities**

L.R. 7-15 ........ 25

HLP THE HEALTH LAW PARTNERS, P.C.

## INTRODUCTION

Relator's Third Amended Complaint ("**TAC**"), at its core, alleges that San Bernardino Mountains Community Hospital District ("**Mountains**") does not meet certain 15-mile "mountainous terrain or areas where only secondary roads are available" *Condition of Participation* regulatory requirements for Medicare Critical Access Hospitals ("**CAH**"). Relator's allegations and claims against Mountains are inappropriate and fail because his allegations:

- Fail to meet the rigorous and demanding materiality standards;[1]
- Fail to plead a claim for relief within the standards set forth in Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8(a), and Fed. R. Civ. P. 9(b), because the distance requirements Relator relies upon cannot be shown to have been in violation of applicable law; and
- Fail to state a claim for relief due to ambiguous regulatory guidance that has been inconsistently interpreted through the years.

## PROCEDURAL FACTS

On January 3, 2017, Relator filed a Complaint alleging violations of the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. (the "**FCA**"), as amended. (Dkt. 5, ¶ 1). Mountains filed a Motion to Dismiss. In response, Relator amended the complaint on November 13, 2017. (Dkt. 17). Mountains filed a second Motion to Dismiss on November 27, 2017. (Dkt. 19). On January 29, 2018, this Court dismissed Relator's first amended complaint, with leave to amend certain claims. (Dkt. 23). On February 20, 2018, Relator filed his third-iteration, the Second Amended Complaint ("**SAC**," Dkt. 26.).[2] On June 14, 2018, this Court again dismissed Relator's SAC, with leave to amend certain claims, warning that "[t]he Court advises Relator that a third request for leave to amend is

---

[1] *Universal Health Servs., Inc. v. United States ex rel Escobar*, 136 S. Ct. 1989, 1994 & 2002, 195 L. Ed. 2d 348 (2016).

[2] Mountains incorporates the arguments made in its Motion to Dismiss (Dkt. 19.), its reply on January 16, 2018 (Dkt. 22), its Motion to Dismiss the Second Amended Complaint (Dkt. 27), its reply on April 16, 2018, (Dkt. 31), and its Requests for Judicial Notice (Dkt. 32) by reference.

HLP THE HEALTH LAW PARTNERS, P.C.

unlikely to be granted." (Dkt. 39). On June 22, 2018, Relator filed his fourth-iteration complaint, the **TAC**. (Dkt. 40).[3]

## LEGAL STANDARD

A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims. See *Parks School of Business, Inc. v. Symington* 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true in a light favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer* 568 F.3d 1063, 1067 (9th Cir. 2009). A complaint under a Rule 12(b)(6) motion to dismiss must provide a basis for relief that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Bare assertions alone will not be assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009). Relator's allegations must be enough to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Furthermore, Rule 12(b)(6), read in conjunction with Fed. R. Civ. P. 8(a), requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.*; *see Horosny v. Burlington Coat Factory, Inc.*, 2015 WL 12532178 at *3 (C.D. Cal. Oct. 26, 2015). When determining a Rule 12(b)(6) motion to dismiss, a court accepts Relator's factual allegations in the complaint, and construes the pleadings in the light most favorable to the nonmoving party. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a

[3] For purposes of its Motion to Dismiss only, and within the confines of the legal standard for a motion to dismiss, Mountains recounts but does not admit that they are accurate or concede to Relator's allegations.

HLP THE HEALTH LAW PARTNERS, P.C.

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. When considering a Rule 12(b)(6) motion, a court may, pursuant to Rule 201, take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," including websites operated by governmental agencies. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (citing) *Hansen Beverage Co. v. Innovation Ventures, LLC,* No. 08–CV–1166–IEG, 2009 WL 6597891, *1 (S. D. Cal. Dec. 23, 2009) (citing *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999)).

When alleging fraud or mistake, a relator is held to a heightened pleading standard, and is required to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). When an entire complaint is pled or grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), a district court may dismiss the complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## REQUEST FOR JUDICIAL NOTICE

Under Fed. R. Evid. 201(b), Mountains respectfully requests this Court take judicial notice of the following Exhibits: **EXHIBIT 1**: February 12, 2016, CMS Policy, Critical Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements;[4] **EXHIBIT 2**: Current CMS Provider Information Forms for 4 California Hospitals;[5] **EXHIBIT 3**: CMS Publication "Critical Access Hospitals Located in Counties That Will Lose Rural Status and Become Urban

[4] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-16-08.pdf.

[5] https://npiregistry.cms.hhs.gov/registry/provider-view/1922415538; https://npiregistry.cms.hhs.gov/registry/provider-view/1356339543; https://npiregistry.cms.hhs.gov/registry/provider-view/1194824573; and https://npiregistry.cms.hhs.gov/registry/provider-view/1043292303.

HLP THE HEALTH LAW PARTNERS, P.C.

Effective October 1, 2014."[6] **EXHIBIT 4**: Hospitals Located in Counties That Were Expected to Lose CMS Rural Status but Remain Critical Access Hospitals; **EXHIBIT 5**: Transportation Concept Report, State Route 18, District 8;[7] **EXHIBIT 7**: Transportation Concept Report, State Route 173, District 8;[8] **EXHIBIT 8**: Transportation Concept Report, State Route 189, District 8;[9] **EXHIBIT 9**: April 19, 2013, CMS Guidance, Clarification of the Critical Access Mountains (CAH) Criteria for Rural Location and Mountainous Terrain Distance Standard;[10] and **EXHIBIT 10**: September 7, 2007, CMS Guidance, Critical Access Hospitals (CAHs): Distance from Other Providers and Relocation of CAHs with a Necessary Provider Designation.[11]

The above-mentioned documents are official publications made publicly available by either CMS, the California Department of Transportation ("**Caltrans**"), or other governmental sources under Rule 902(5). These documents provide facts capable of accurate and ready determination by referring to sources whose accuracy cannot reasonably be questioned. Therefore, they meet the requirements of Fed.R.Evid. 201(b).

## ARGUMENT

The United States Supreme Court in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 2003 (2016) has identified several factors a relator must show to establish materiality – these showings must be "demanding" and "rigorous". ***First***, "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Escobar*, 136 S.Ct. 1989 at 2003. Here, 15-miles of distance via mountainous terrain is a condition of participation, not payment.

---

[6] https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/FY2015-CAH-Rural-to-Urban.pdf

[7] http://www.dot.ca.gov/hq/tpp/corridor-mobility/D8_docs/SR18.pdf

[8] http://www.dot.ca.gov/hq/tpp/corridor-mobility/D8_docs/TCRs/SR173.pdf

[9] http://www.dot.ca.gov/hq/tpp/corridor-mobility/D8_docs/TCRs/SR-189_TCR_Approved_2016-5-24.pdf

[10] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-13-26.pdf.

[11] https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/downloads/SCLetter07-35.pdf

HLP THE HEALTH LAW PARTNERS, P.C.

***Second***, "evidence that the defendant knows that the Government consistently ***refuses to pay*** claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" supports a finding that the requirement is material. *Id*. Here, there is no such refusal – in fact, after the 2013 OIG Report, there was no "mine run" of distance non-compliant CAHs being de-certified or denied payment over failures to meet distance requirements. CMS commented/collaborated on the 2013 OIG Report. Likewise, in his TAC, Relator cites a 2014 regulatory notice from CMS about CAHs that might lose rural status – there, every single CAH remains a CAH to this day. ***Relator has demonstrated the opposite of materiality***. Relator then cites the *Baylor* administrative law case, yet, there, no payment was denied but rather enrollment was not procured (since distance requirements are conditions of participation). ***Third***, and "[c]onversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id*. Here, since the 2013 OIG Report, there has been a massive demonstration of lack of *Escobar* materiality – numerous specific CAHs were identified as non-compliant for the issues that Relator alleges Mountains to be non-compliant. Relator does not cite a post-2013 wave of de-certifications, FCA actions, or refusals to pay, because he can't. No materiality. ***Fourth***, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id*. at 2003–04. The government's conduct after the 2013 OIG Report, with respect to Mountains and all other existing CAHs, mandates a finding that the distance requirements are not material to existing CAHs. Further, aware of Mountains' purported non-compliance since January 2017, the government continues to pay Mountains.

Relator has failed to establish materiality under any of these above-mentioned factors. As previously noted by this Court in its Order, the mere submission of form certifications for reimbursement from Medicare are insufficient to support a finding of materiality,

5

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

irrespective of whether they require CAH qualification. (Doc. 23, pg. 8). "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S.Ct. at 2003.

Relator brings forth nothing new in the TAC and cannot meet the "rigorous" and "demanding" materiality standards laid out by *Escobar*.

### A. No New Materiality Pleadings: No Evidence of Materiality

Relator is now on his TAC and still fails to plead allegations sufficient to show this Court how Mountains' compliance with 42 C.F.R. § 485.610(c) is material to the government's obligation to pay claims to an existing CAH. This Court has previously dismissed Relator's claims, twice, because, among other reasons, Relator did not establish "materiality" in his pleadings. (Dkt. 23, p. 8) and (Dkt. 39, pgs. 9-10).

It is well established that a false claim or statement (whether express or implied) is actionable only if it is "material" to the false or fraudulent claim for payment. 31 U.S.C. § 3729(a)(1)(B). A misrepresentation or omission is "material" for the FCA if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C.A. § 3729(b)(4). The FCA's materiality requirement is "rigorous" and "demanding." and can only be satisfied with allegations that include particularized facts. *Escobar*, 136 S.Ct. at 1996, 2003, 2004 n.6. The key question is whether the government is likely to attach significance to the requirement in deciding whether to tender payment. *Id.* at 2002–03. "[P]roof of materiality can include, but is not necessarily limited to, evidence that ... the Government consistently refuses to pay claims **in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement**." *Id.* at 2003, **emphasis added**. But, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003–04. **Relators must plead**

6

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

**facts to support the foregoing.**[12] *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

Relator has amended his complaint (again), **but his TAC alleges nothing new regarding materiality.** Nor could it do so, given the rigid/demanding materiality standard proscribed by *Escobar*. Of particular note, the Court previously stated that Relator failed to find materiality despite his use of Form 2552 because he cannot show a link between conditions of participation and payment requirements. (Dkt. 39, p. 8). The Court reasoned that Form 2552 requires the submitter to certify information in compliance with a whole host of Medicare laws, regulations, and payment instructions. (*Id*.). However, nowhere on the Form 2552 cost report does it say payment of claims to Mountains is conditioned upon the distance requirements in 42 C.F.R. § 485.610(c). Furthermore, the Court held that Relator failed to plead and cite any authority for the proposition that noncompliance with the distance requirements has led the government to " 'consistently refuse[] to pay claims,' reimburse the claims at a lower rate, or seek to retroactively recover payments. (*Id*. at 9) (citing) *Escobar*, 136 S. Ct. at 2003.

### B. Relator Fails to Link Conditions of Participation with Requirements for Payment of Claims to the Government

In Relator's TAC, he has still failed to plead, provide evidence, or cite any authority that shows Mountains' alleged distance requirement deficiency is material to the government's decision to pay claims. In this regard, a fatal flaw to Realtor's TAC is that the claims for payment to CMS are wholly separate from the Form 2552-10 cost report. Relator cannot confuse CAH eligibility requirements with whether the government will refuse to pay a claim once a hospital has achieved CAH status. (See **Exhibit 1**, p. 3). *See also U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008) (Court determined that Medicare's regulations providing for a compliance survey and period for a provider to address any deficiencies before revoking billing privileges

[12] "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Fed. R. Civ. P. 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."

7

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP The Health Law Partners, P.C.

meant the government did not require perfect compliance with the regulations as a condition of payment for services rendered). In addition, the 9th Circuit has routinely held that Conditions of Participation in a particular Medicare program (as alleged by Relator in this case) are not material in the Medicare context.[13] Lastly, this Court has already determined that the absence of any authority to support an implied false claim where the claim for payment is not inextricably intertwined with the goods and services rendered dooms Relator's claims. (Dkt. 39, p. 9).

In addition, no case law or precedent stands for the proposition that compliance with 42 C.F.R. § 485.610(c) is material to the government's obligation to pay claims to an existing CAH. Relator vainly attempts to use *Baylor County Hospital District v. Burwell*, 163 F.Supp.3d 372, 375 (N.D. Tex. 2016) affirmed *Baylor County Hospital District v. Price*, 850 F.3d 257 (5th Cir. 2017) as persuasive evidence for materiality. (Dkt. 50, ¶ 51). **However, the *Baylor* case was already extensively briefed to this Court and found to be unavailing.** Nothing about the case involved: 1) the submission of claims to a federally funded governmental entity; 2) FCA liability; or 3) whether 42 C.F.R. § 485.610(c) or its interpretive sub-regulatory guidance is material to the government's decision to pay a claim submitted by an existing CAH. Moreover, *Baylor* never addressed sub-regulatory guidance defining "mountainous terrain" (which proves particularly troublesome to Relator in this instant case).

Despite Relator having his amended complaints dismissed for lack of materiality--twice--Relator again fails to plead facts to support materiality (*e.g.*, evidence that the Government consistently refuses to pay claims in the mine run of cases based on

---

[13] See, *United States ex rel. Huey v. Summit Healthcare Ass'n, Inc.*, No. CV-10-8003, 2011 U.S. Dist. LEXIS 26740 at *17 (D. Ariz. Mar. 2, 2011) (rejecting the relator's allegation that defendant hospital breached FCA because of its nurse supervision practices because in "the Medicare context,…conditions of participation, unlike conditions of payment, are insufficiently related to the government's payment decision to form the basis of an FCA claim"); *Sweeney v. ManorCare Health Servs., Inc.*, No. C03-5320RJB, 2005 U.S. Dist. LEXIS 45216 at *4, *11–14 (W.D. Wash. Mar. 4, 2005) (dismissing the relator's Medicare FCA complaint because the relator did not show that regulatory violations were conditions of payment, but were only "conditions of participation in the Medicare and Medicaid programs. Moreover, there are administrative and other remedies for regulatory violations.").

HLP THE HEALTH LAW PARTNERS, P.C.

noncompliance with the particular statutory, regulatory, or contractual requirement) in his TAC. Instead, Relator merely attempts to re-allege that Mountains submitted claims to CMS for reimbursement at the CAH rate. (Dkt. 40, ¶¶ 38, 39, and 57). In an attempt to bolster his position concerning materiality, Relator alleges that a cost report, CMS Form 2552-10, and a Medicare enrollment application, CMS-855A, contain averments to show evidence of the government's decision to make payments pertaining to distance requirements. **However, Relator has already plead/briefed these matters extensively to this Court, and the Court has considered them/found them to be non-meritorious.** A closer look at these forms reveals nothing to link Mountains' distance requirements with the government's obligation to pay claims at the reimbursed CAH rate. Although CMS Form 2552-10 requests certification that Mountains is qualified as a CAH, it makes no other mention of specific compliance with the myriad regulatory regime requirements for CAH qualifications located at 42 C.F.R. § 485.601 *et seq*. As a result, Realtor's allegations fail to state claims upon which relief can be granted and do not meet federal pleading requirements.

### *C. Relator Fails to Show Materiality Concerning the Decertification of Other Established CAHs*

Simply, there are no statutes or regulations that connect the CAH Conditions of Participation to payment of claims. *See Univ. of Phoenix*, 461 F.3d at 1174 (explaining that the false claim must be "integral to a causal chain leading to payment"). Relator does not, likewise, show a "mine run" of cases where CMS is denying claims to CAHs based on the distance requirements. For instance, Relator ***could have*** tried to plead facts showing that the four (4) California CAH hospitals that Relator alleges were found by the OIG to not meet the distance requirements[14] have been denied CAH payments since the issuance of the report. (Dkt. 40, ¶ 26). Yet, Relator does not/cannot plead this, **because all four identified California hospitals continue to be Medicare CAHs, and paid as the same,**

[14] As has already been conceded by Relator in open Court, the OIG found that Mountains met the distance requirements, as have CMS and its ROs.

HLP The Health Law Partners, P.C.

**to this day**.[15] (See **EXHIBIT 2)**. *See also* this Court's latest ruling (Dkt 39, p. 10) ("Relator fails to allege that after 2013 and the OIG Report -- which establishes the government knew certain hospitals did not meet the CAH participation requirements—the government denied any claims for payment based on failure to meet CAH participation requirements… Frank Howard Memorial Hospital and Colorado River Medical Center, two non-NP CAHs that were identified by the OIG as not meeting the distance requirements, continue to retain their designation as CAHs, suggesting the location-related requirements are not material"). Likewise, Relator, using publicly available information, could have undertaken this exercise with CAHs outside of California.[16] He does not/cannot.

Up to this point, the Court will see that Relator has plead ***nothing*** new in his TAC. Everything covered above has already been plead/briefed/decided by this Court. What, if anything, new did the Relator bring to the Court on materiality? His sole new pleading is an attempt to show that various CAH's ***might be*** subject to decertification because of a loss in "rural designation" status pursuant to 42 C.F.R. § 485.610(b). (Dkt. 40, ¶ 53). Relator alleges that the August 22, 2014, Federal Register shows that 72 counties and parishes in more than 30 states or Puerto Rico will either lose their rural status or become urban "pages 49953 through 49955 of the August 22, 2014 Federal Register (79 FR 49953 through 49955)." (*Id.*). First, the "rural status" designation is not an issue in this case, is unrelated to defining mountainous terrain or secondary roads, and has no bearing on the materiality of the distance requirement in relation to the government's payment of claims to existing CAHs. Second, this Court has already noted the interplay in this case wherein CMS's own procedure is to have Regional Offices ("ROs") assess compliance and provide an opportunity to address or to ultimately recertify to standard hospital status in cases of noncompliance (Dkt. 39, p. 9, "This added attenuation, between the location

[15] Including Frank R. Howard Memorial Hospital, and Colorado River Medical Center, who are not necessary providers. Redwood Memorial and Healdsburg District Hospital are necessary providers.

[16] No discovery is needed – this is publicly available information.

HLP THE HEALTH LAW PARTNERS, P.C.

requirements and claim payment decision, and existing regulatory regime, gives the Court pause."). Putting these issues aside though, Relator's own allegations damn his claim. In reviewing CMS' "***Critical Access Hospitals Located in Counties That Will Lose Rural Status and Become Urban Effective October 1, 2014,***"[17] CMS listed out CAHs that would need to ***seek re-classification*** based on the Rural Notice.[18] In both the Rural Notice and in CMS's follow-up, CMS affirmatively encourages the identified hospitals to seek re-classification. Finally, Relator's desperate hope is that this will convince the Court that the at-issue CAHs were de-certified or denied payment as CAHs based on their rural status, and thus establish an implication of materiality on the mountainous terrain/secondary roads at issue in this case. This Court is already aware that the California CAHs identified as failing to meet the location requirements in the 2013 OIG Report are still CAHs. **Like there, *every single CAH provider* listed in CMS's "Critical Access Hospitals Located in Counties That Will Lose Rural Status and Become Urban Effective October 1, 2014" list *is still currently classified as a CAH* and receiving the 101% reimbursement rate**. See **EXHIBIT 4.** Relator's own pleadings, again, rather than showing an *Escobar* "mine run" of cases where payment is denied, instead establish exactly the opposite.

As a result, Relator fails to plead that the distance requirement is material to payment of existing CAH claims and has, in fact, provided direct evidence that a change in CAH's rural location status has no ultimate effect on whether a hospital remains a CAH or would result in a reduction of reimbursement rates. **EXHIBIT 4** clearly shows that rural location-related requirements are not material, thus confirming no connection between payment and noncompliance with CAH initial certification requirements.

---

[17] https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/FY2015-CAH-Rural-to-Urban.pdf.

[18] Page 2 -- "If a CAH is located in one of these counties, it must reclassify as rural using the regulations at 42 CFR §412.103 by September 30, 2016 in order to be considered rural after September 30, 2016."

11

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

### d. Relator's Attempt to Allege an Express False Certification of Claims is Irrelevant

**This Court has already determined that this case is about implied false certifications.** Relator now attempts to plead differently. But, regardless of whether Relator argues an implied or express false certification theory, the materiality requirement of the False Claims Act is the same. Both express and implied certification claims are required to meet the rigorous and demanding materiality requirements. Materiality can only be satisfied where compliance is "a *sine qua non* (essential to) of receipt of state funding." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010) (quoting) *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1267 (9th Cir.1996) (Relator's claims were not viable where the forms on which his claims were submitted did "not contain any certification concerning regulatory compliance" and the statute at issue between the parties did "not require funding recipients to certify their compliance with federal law and regulations."); *see also United States v. Strock*, No. 15-CV-0887-FPG, 2018 WL 647471, at *12 (W.D.N.Y. Jan. 31, 2018) ("*Escobar's* materiality standard applies to all of Plaintiff's claims.."); *United States* ex rel. *Forcier v. Comput. Sciences Corp.*, 12 Civ. 1750 (DAB), 2017 WL 3616665, at *7 (S.D.N.Y. Aug. 10, 2017) (holding that "[w]hether asserted on a theory of factual falsity or legal falsity, a false claim must have influenced the government's decision to pay" or "[p]ut differently, the misrepresentation must have been material"); *United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1174 (10th Cir. 2016) ("Although express and implied claims differ, both nonetheless share some common elements, including a materiality requirement"); *United States v. Fulton Cnty., Ga.*, 2016 WL 4158392, at *5 (N.D. Ga. Aug. 5, 2016) ("The misrepresentation, whether express or implied, must be material to the other party's course of action") *United States ex rel. Maetski v. Raytheon Corp.*, No. CV 06–3614–ODW (KSx), 2017 WL 3326452, at *7 (C.D. Cal. Aug. 3, 2017) (Allegations that the government would not have paid Raytheon's requests for payment if it knew that Raytheon had not complied with

HLP The Health Law Partners, P.C.

contractual specifications was "insufficient" because "it does not show *how* Raytheon's misrepresentations were material").

Express certification simply means that the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted, or makes a representation that a certain good or service was delivered when it was actually not. In this case, Relator alleges non-compliance with 42 C.F.R. § 485.610(c). No claims for payment submitted by Mountains, cost reports, or other documents related to the government's obligation to pay claims to Mountains expressly mandate compliance with 42 C.F.R. § 485.610(c). Relator's claims of alleged express certification have an insufficient pleading basis and are irrelevant when considering whether the alleged claims for payment were ***material***.

Yet, again though, this Court has already determined that this is an implied false certification case, hence requiring a two-part test. First, the claim does not merely request payment, but also makes specific representations about the goods or services provided.[19] Second, the defendant's failure to disclose noncompliance with ***material*** statutory, regulatory, or contractual requirements makes those representations misleading half-truths. So, *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017), and *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000 (2016)), and *United States v. Ctr. for Emp't Training*, 2016 WL 4210052, at *5 (E.D. Cal. Aug. 9, 2016), *United States ex rel. Mateski v. Raytheon*, 2017 WL 1954942, at *5 (C.D. Cal. Feb. 10, 2017), are controlling in this case. The government's various statements of interests concede as much, but ask this Court to ignore directly applicable 9th Circuit precedent in

---

[19] The Ninth Circuit has stated in *United States ex rel. United States ex rel. Kelly*, 846 F.3d 325 its opinion that an FCA claim under an implied false certification theory requires that claims contain specific representations to be actionable in light of *Escobar*. This interpretation has been adopted by this Court as well. See *United States ex rel. Mateski*, 2017 WL 1954942, at *3. Most notably, the Central District has held that "mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain "specific representations about [the defendant's] performance." *Mateski*, at *5 (citing Kelly at *6).

HLP THE HEALTH LAW PARTNERS, P.C.

the hopes that *Rose v. Stephens Inst.*, 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016), in its pending appeal, No. 17-15111 (9th Cir. Jan 20, 2017), changes existing binding precedent. Nevertheless, given Relator's repeated failures to establish materiality, it is unnecessary for the Court to await the *Rose* decision if it, again, dismisses on the materiality standard.

### E. RELATOR CANNOT SHOW MATERIALITY WHEN THE ROUTE IN QUESTION HAS BEEN MEASURED AND CLASSIFIED BY CALTRANS

The primary contention between the parties in this case is regarding minimum distance requirements under 42 C.F.R. § 485.610(c). Pursuant to this regulation, Mountains, unless designated as a necessary provider, must be either (1) more than a 35-mile drive from another hospital or CAH, or (2) more than a 15-mile drive from another hospital or CAH in a mountainous area or area with only secondary roads available. 42 C.F.R. § 485.610(c) provides no other definition as to what qualifies as mountainous terrain or secondary roads. Accordingly, Centers for Medicare & Medicaid Services ("**CMS**") has attempted to apply sub-regulatory guidance meaning to mountainous terrain and secondary roads definitions. Relator has alleged that secondary roads have been defined through CMS sub-regulatory guidance as roads that are not primary roads. Primary roads include Federal highways (including interstate highways), *state highways with two or more lanes in one direction*, and roads that—in accordance with U.S. Geological Survey (USGS) standards—are shown on maps as primary highways. Secondary roads typically are one-lane State highways and all other local roads. (Dkt. 40, ¶ 19, note 5) *(emphasis added)*.

In addition, Relator alleges "Prior to 2013, CMS defined 'mountainous terrain" as areas identified as such on any official maps or other documents published by the State agency responsible for highways in the State (typically a *Department of Transportation or Highways*) or by USGS." (*Id.* at note4) (*emphasis added*).[20] Lastly, Relator alleges that in

[20] There is no regulatory guidance from CMS or any other governmental agency concerning the definition of "mountainous terrain" in 2002.

HLP THE HEALTH LAW PARTNERS, P.C.

April 2013, CMS published a complicated and ambiguous list of criteria as to what qualifies as mountainous terrain. (Dkt. 40, ¶ 36(b)(i)). Despite this complicated and ambiguous list of mountainous terrain qualifications, Relator alleges "*Alternatively*, the route can be considered mountainous terrain by the State Transportation or Highway agency,…" (*Id.*)

Relator has wrongly alleged that Mountains does not meet the above-mentioned distance requirements and is subject to liability under the FCA. (Dkt. 40, ¶¶ 36 and 50). More precisely, Relator has alleged that if one were to use either the 18/173 Route or the 18/189/173 Route, then there is only 12.4 miles of secondary roads and not the necessary 15 miles to qualify for the exception.[21] In addition, Relator states that the above-mentioned Routes do not qualify as mountainous terrain for a total distance of 15 miles.

On December 22, 2017, Caltrans released a Transportation Concept Report, State Route 18, District 8 ("**Report**") (dated June 27, 2017) (**EXHIBIT 5**).[22] The Report clearly refutes Relator's position, demonstrating that: (a) Caltrans does use "Mountainous Terrain" as a defined road designation; and (b) a 15.12 mile stretch of State Route 18 located in Caltrans District 8 has been designated as "Mountainous Terrain" by Caltrans.

According to the Report, Segments 3 through 5 of State Route 18 are completely contained within the most direct route between the two hospitals as mapped by Google Maps (see Report, SR-18 Segment Map, p. 8 and compare to demonstrative **EXHIBIT**

[21] The Court should note that Relator has, in his 4th iteration of pleadings, alleged a second route. This should give the Court ***extreme pause,*** both in whether a non-expert Relator can accurately measure terrain and geography (contravening CalTrans, the OIG's, and CMS's RO's findings), and, importantly, as to the appropriateness of a False Claims Action sounding in fraud where there is uncertainty as to even which route is to be evaluated. As will be demonstrated at a later time, if appropriate, the new pleading of a second route will also be shown to be evidence of the frivolous, vexatious, and harassing nature of this case being pursued by Relator and his counsel.

[22] http://www.dot.ca.gov/hq/tpp/corridor-mobility/D8_docs/SR18.pdf (last accessed on June 6, 2018). While the Caltrans Report is dated June 27, 2017, it was only made available December 22, 2017. See https://web.archive.org/web/*/http://www.dot.ca.gov/hq/tpp/corridor-mobility/D8_docs/SR18.pdf.

15

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

**6**[23]),[24] and that these Segments consist of a total distance of 15.12 miles (see p. 6 of the Report, indicating that Segment 3 starts at PM 8.26 and Segment 5 ends at PM 23.38). The Report contains a chart titled "Route Designations and Characteristics" in which Segments 3-5 are designated as "Mountainous Terrain." (*Id*. p. 12). Shortly thereafter, the route turns into secondary roads. Moreover Routes 173 and 189 do not help Relator because they are comprised of two (2) lane conventional highways (not two (2) lanes going in the same direction). True and accurate California Department of Transportation State Route 173 (Section 5 being 6.6 miles alone) and 189 (11.2 applicable miles) Transportation Concept Reports show these routes unequivocally qualify as secondary roads for greater than 15 miles. (See Route 173 Transportation Concept Report **EXHIBIT 7**, pgs. 2, 3, and 6) (See Route 189 Transportation Concept Report **EXHIBIT 8**, pgs. 2, 3, and 7).

Thus, it should be an undisputed fact in this case that Caltrans, a "State Transportation Agency," has designated over 15 miles of either State Route 18/173 or State Route 18/189/173 as either mountainous terrain or secondary roads. Relator may attempt to argue that Caltrans did not calculate its road designations of either mountainous terrain or secondary roads in accordance with CMS' arbitrary standards for mountainous terrain as defined in its 2013 guidance (thus meaning that no California hospital could ever be a CAH based on these standards). (Dkt. 40, ¶ 36(a)). He may also argue that no letter from the California Department of Transportation supports such a contention (as the RO may request when they consider the requirements to be at issue). Regardless, Mountains clearly meets the distance requirements as defined by Caltrans/CMS and is certainly permitted to rely upon governmental admissions relevant

[23] Also available at https://www.google.com/maps/dir/St.+Bernardine+Medical+Center,+North+Waterman+Avenue,+San+Bernardino,+CA/29101+Hospital+Rd,+Lake+Arrowhead,+CA+92352/@34.1970035,-117.3106038,12.5z/am=t/data=!4m14!4m13!1m5!1m1!1s0x80c353797df9a0cf:0x6d9abb4d9dc2533e!2m2!1d-117.276782!2d34.134958!1m5!1m1!1s0x80c4a8216fcb717d:0x602a59e34665126f!2m2!1d-117.168661!2d34.2653942!3e0

[24] Mountains does not necessarily concede that these are the correct routes, but nonetheless these are the routes alleged by the Relator in the latest round of amended pleadings.

16

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

to the distance requirements. Although Caltrans does not specifically cite compliance with CMS guidance standards in its Transportation Concept Reports, **EXHIBITS 5, 7,** and **8** show strong evidence of materiality in that the government does not consider Mountains to be in violation of any distance requirements, let alone obligated to reimburse or pay back any monies. (*See* Dkt., 40, ¶ 26) (stating that Mountains is not identified in the list of 846 hospitals that do not meet the location requirement). Accordingly, Relator cannot show that Mountains violated the distance requirements in connection with the government's obligation to pay claims (or that the same are material for an existing CAH).

### F. RELATOR CANNOT PREDICATE FCA CLAIMS ON AMBIGUOUS REGULATORY GUIDANCE

All of Relator's claims are based upon CMS' 2013 "mountainous terrain" sub-regulatory guidance as described in its State Operations Manual. The language used to define what qualifies as "mountainous terrain" is extremely subjective and subject to multiple interpretations. It states as follows:

> *For the purposes of determining a CAH's eligibility for the 15-mile drive standard based on mountainous terrain, the roads on the travel route(s) to hospitals or other CAHs must meet the following criteria:*
>
> • *Over 15 miles of the roads on the travel route(s) from the CAH to any hospital or another CAH must be located in a mountain range, identified as such on any official maps or other documents prepared for and issued to the public;*
>
> ***and***
>
> • *Since being located within a mountain range in and of itself does not mean that the drive to any other hospital or CAH includes travel through "mountainous terrain," the roads on the travel route(s) from the CAH to any other hospital or CAH must have either of the following characteristics:*
>
> • *Extensive sections of roads with steep grades (i.e., greater than 5 percent), continuous abrupt and frequent changes in elevation or direction, or any combination of horizontal and vertical alignment that causes heavy vehicles*

17

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

> *to operate at crawl speeds for significant distances or at frequent intervals. (Horizontal alignment refers to the "straightness" of the roadway, vertical alignment refers to the roadway's "flatness," and crawl speed is the speed at which a truck has no power to accelerate on long, steep grades. Thus, roads in mountainous terrain are commonly described as winding and steep); or*
>
> • *Be considered mountainous terrain by the State Transportation or Highway agency, based on significantly more complicated than usual construction techniques that were originally required to achieve compatibility between the road alignment and surrounding rugged terrain. For example, because the changes in elevation and direction are abrupt in mountainous terrain, roadbeds may require frequent benching, side hill excavations, and embankment fills.*

**(EXHIBIT 9**, pgs. 7-8)

This sort of regulatory guidance is completely subjective and highly questionable in its use. For instance, what qualifies as "*continuous abrupt and frequent changes in elevation or direction?*" Which route do you use?[25] Shortest route in distance or in time? What happens when Google maps changes its mapping algorithm and pops-up a different route? Furthermore, what qualifies as "*significantly more complicated than usual construction techniques that were originally required to achieve compatibility between the road alignment and surrounding rugged terrain?*" What is crawl speed? What is a significant distance or frequent interval? No other terms identify or give any greater clarity toward the application of this confusing, ambiguous, and incomprehensible sub-regulatory guidance.

Unsurprisingly then given this ambiguity, CMS has been inconsistent over the years in its application of regulatory guidance concerning mountainous terrain. As stated by Relator, before 2013, CMS determined that eligibility for the lesser 15-mile distance

---

[25] This Court will again note that Relator pleads, on his 4th iteration of complaint, an alternate route to measure. He did so after it having been demonstrated to him that his original route failed factually.

HLP THE HEALTH LAW PARTNERS, P.C.

requirement due to mountainous terrain under §485.610(c) was much simpler. Prior to 2013, CMS classified mountainous terrain as areas "identified as such on any official maps or other documents prepared for and issued to the public by the State agency responsible for highways in the State (typically a Department of Transportation or Highways), or by the U.S. Geological Survey (USGS)." (See **EXHIBIT 10**, p. 6). So, clearly prior to 2013 Mountains met this standard based on the CalTrans Report.

Courts have determined that this sort of inconsistent, vague, and ambiguous regulatory confusion is not a proper subject of the FCA. *See United States ex rel. Burlbaw v. Orenduff*, 400 F. Supp. 2d 1267, 1288 (D. N. M. 2005) ("Where disputed legal issues arise from vague provisions or regulations, a contractor's decision to take advantage of a position cannot result in his filing a knowingly false claim.")(internal quotation and citations omitted); *Hagood v. Sonoma County Water Agency*, 81 F. 3d 1465, 1477 (9th Cir 1996)(evidence that shows only a disputed legal issue cannot support a false claim under the FCA); *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-32 (W. D. Mich. 200) (undefined and ambiguous terms that devolve into a dispute over the meaning of the terms is insufficient to establish FCA liability); *U.S. ex rel. Estate of Donegan v. Anesthesia Assocs. of Kansas City, PC*, No. 4:12-CV-0876-DGK, 2015 WL 3616640, at *1 (W.D. Mo. June 9, 2015), aff'd sub nom. *United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874 (8th Cir. 2016) (Where a regulation is unclear, a defendant's reasonable interpretation of any ambiguity inherent in the regulations belies the scienter necessary to establish a claim of fraud under the FCA)*;* *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.,* 613 F.3d 1186, 1191 (8th Cir.2010) *(*A relator "must show that there is no reasonable interpretation of the law that would make the allegedly false statement true.").

Undoubtedly, the confusion over the interpretation of this statute/regulation has given the government pause in its enforcement on existing CAHs. More importantly, Relator has failed to cite one instance in which an established CAH was either terminated, required to reimburse claims, or denied claims for payment because of a purported

HLP THE HEALTH LAW PARTNERS, P.C.

distance requirement deficiency. This is because no such information exists. Relator does not bear this burden of pleading, because he cannot.

### g. Relator's FCA Claims are Not Material, and Are Inappropriate When Other Regulatory Schemes Govern.

The Court should note the interplay of the CMS Certification and Re-Certification process and the lack of materiality.[26] Here, as plead by the Relator, he has disclosed the allegations underlying his lawsuit to the government even before filing his first complaint (Dkt. 40, ¶ 11). At a minimum, statutorily, relators must disclose the material evidence underlying their lawsuit at the time in which the lawsuit is filed,[27] and the government must investigate.[28] Here the government has learned, and has had the opportunity to fully investigate, the Relator's allegations. Yet, Mountains remains a critical access hospital, and is paid as the same with no signaled change from CMS, 15-months later.

Here, the government itself either believes there is no violation of law, or agency experts would prefer, to better administer the programs they are charged with overseeing, that the violation be addressed through administrative sanctions. The politically accountable, expert government official's policy preferences regarding how the law should be enforced, not the nonpolitically accountable, financially self-interested, nonexpert private relator's, should govern. To prevent qui tam relators from second-guessing expert government administrators, or short-circuiting the remedial process the government has established to address noncompliance with regulations, appellate and circuit courts, post-*Escobar*, have ruled that relators cannot establish the FCA's materiality element when evidence shows that, notwithstanding the relator's allegations, regulators did not act to

---

[26] See, e.g., "The Salcido Report: False Claims Act Public Disclosure Alert," available at https://www.akingump.com/images/content/6/0/v2/60954/The-Salcido-Report-False-Claims-Act-Public-Disclosure-Alert.pdf.

[27] Relators must serve the government their statement of material evidence in support of their claims at the time that they file their action. 31 U.S.C. § 3730(b)(2).

[28] Under the FCA, the "Attorney General diligently shall investigate a violation." 31 U.S.C. § 3730(a).

HLP The Health Law Partners, P.C.

impose readily available administrative sanctions on the defendant, continued to pay for the defendant's product, or investigated the relator's allegations and found no violation.[29]

Relator's claims in this case are a challenge of the independent decision of CMS/its ROs to grant CAH certification/recertification, just as the relator's pleadings in *Medtronic* were a challenge to the FDA's decision to grant clearance for a medical device. *Id.* Here, a CMS RO, CMS, then the OIG in its 2013 OIG Report, independently evaluated Mountains' distance and certified it as a CAH. CMS and its ROs have been given similar resources, enforcement jurisdiction, and regulatory authority to monitor and regulate any CAH that does not meet proper approval through the certification process. CMS has its own enforcement and decertification methods to deal with CAHs that do not meet CAH certification standards. CMS already has set standards for annually certifying and recertifying the rural, distance, and necessary provider verification of CAHs. (**EXHIBIT 1**, at pgs. 1-2). Other sub-regulatory guidance from CMS confirms this -- see, CMS State Operations Manual, at Ch. 2256A, "The RO… has primary responsibility to verify compliance with 42 C.F.R. 485.610(c)."[30] Relator wants to substitute his judgment for that of CMS and its ROs (and the OIG and CalTrans). Even if this Court were to take Relator's facts and allegations as true, if a CAH is non-compliant with the distance requirements of 42 C.F.R. § 485.610(c), then the RO from CMS would have had to notify

[29] See, e.g., *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 670 (5th Cir. 2017) ("When the government, at appropriate levels, repeatedly concludes that it has not been defrauded, it is not forgiving a found fraud—rather it is concluding that there was no fraud at all."); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017)(The court dismissed relator's case because relator could not show that CMS "consistently refuses to pay" claims like those alleged and reimbursed claims with full knowledge of the alleged noncompliance. "Nor has he cited to a single successful claim under § 1395y involving drugs prescribed for their on-label uses or a court decision upholding such a theory."); *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384 (5th Cir. 2017) (Evidence of government investigation and lack of agency adverse action indicate "strong evidence" that the requirements in those regulations are not material); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017) ("if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").

[30] https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107c02.pdf (see page 251).

HLP THE HEALTH LAW PARTNERS, P.C.

Mountains of its options and allow it time to resolve any deficiencies in its CAH status or have its Medicare participation terminated or switch to standard hospital based status. (**EXHIBIT 1** at 3). The remedy for the discovery of a CAH distance deficiency (of the type alleged by the OIG in its 2013 report) in CMS's certification process is possible revocation of CAH status and further administrative relief afforded by law, not an FCA claim. Relator's claims against Mountains are inappropriate.

### H. *The FCA Is Not an All-Purposed Fraud Statute, and Relator's Use of Sub-Regulatory Guidance is Inappropriate*

The FCA is a punitive law focused on fraud on the U.S. Treasury. The Supreme Court in *Escobar* has recognized that the FCA's rigorous/demanding materiality standard is necessary to set definite limits to prevent the FCA from being "an all-purpose antifraud statute." *Escobar* at 1989. So, *Escobar* notes that:

> "concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter requirement.'" Those requirements are rigorous." *Escobar* at 2002. (*citing United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)).

Instead of pleading 42 C.F.R. § 485.610(c)'s requirements, Relator pleads regarding Mountains' compliance with "sub-regulatory guidance" (CMS's State Operations Manual interpretation of 42 C.F.R. § 485.610(c)'s requirements),[31] and attempts to: (i)

---

[31] Note that Mountains is not necessarily for these purposes briefing deference/Chevron/Skidmore issues, or questioning the propriety/validity of CMS's use of this particular sub-regulatory guidance (though it can do so if necessary). Instead, Mountains notes that there is a clear difference between prospective agency uses of sub-regulatory guidance, and FCA cases/retroactive punitive enforcement of a Relator's interpretation of sub-regulatory guidance.

This is especially distinct when, in this case, agency interpretation is evolving. "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Cmty. Hosp. of Monterey Peninsula v. Thompson*, 323 F.3d 782, 792 (9th Cir. 2003) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987)). And, "Pronouncements in manuals like [CMS's State Operations Manual], which do not have the force of law, are entitled to less deference than an

HLP The Health Law Partners, P.C.

apply this sub-regulatory guidance retroactively; and (ii) apply/interpret it based on Relator's flawed interpretation of the same. This has no business being the basis of a FCA case.

Relator himself concedes that his alleged claims are based on the definitions in CMS's 2013 sub-regulatory guidance State Operations Manual for "mountainous terrain" and "secondary roads" (Dkt. 40, ¶ 19). And, Relator admits that the definitions of the terms in 42 C.F.R. § 485.610(c) set forth in the April 2013 CMS State Operations Manual contradict earlier pronouncements by CMS (*See* Dkt 40, ¶ 19, n. 4) (" "Prior to 2013, CMS defined mountainous terrain' as ... "). Relator does not allege how Mountains failed to meet the prior-to-2013 sub-regulatory definition, nor does he attempt to allege how Mountains fails to meet the actual regulatory requirements at 42 C.F.R. § 485.610(c).

Relator's claims must fail under *Escobar*, which requires that not only must the issue be material, but that the defendant know of that materiality and that courts enforce this rigorous scienter requirement.

### I. *Relator Should Be Denied the Opportunity to Amend*

Courts generally consider these five factors in assessing the viability of leave to amend: bad faith; undue delay; prejudice to the opposing party; futility of amendment; and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Under Fed. R. Civ. P. 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." A district court, however, has the discretion to deny leave to amend "due to 'undue delay, bad faith or

---

interpretation arrived at after a formal adjudication or notice-and-comment rulemaking." *Thompson*, 323 F.3d at 791 (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000)). "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant Chevron-style deference." *Id.* (citing *Reno v. Koray*, 515 U.S. 50, 61, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995)) (internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," entitled only to "some deference" (internal quotation marks omitted)). Instead, as the Supreme Court noted, "[i]nterpretive rules [found in the CMS Manual] do not have the force and effect of law and are not accorded that [Chevron] weight in the adjudicatory process." *Id.* (citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995)).

23

Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

HLP THE HEALTH LAW PARTNERS, P.C.

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' " *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). District courts have denied qui tam relators a third bite at the apple for failing to plead within the confines of the Federal Rules of Civil Procedure. See *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009) (permitting the dismissal with prejudice of a second amended complaint under Rule 12(b)(6)) in a FCA case because of a subsequent failure to plead with adequate particularity). Relator has already amended 3 times (4 complaints), any further attempt to amend would be futile. *Zucco Partners, LLC*, 552 F.3d at 1007. This Court itself has already determined that another leave to amend is unlikely to be granted. Given that the only new material that Relator has brought forth on materiality is actually favorable for Defendant, this Court should deny leave to amend.

## CONCLUSION

It is instructive to step-back on this case and consider the situation. Mountains is a local government agency, funded by San Bernardino taxpayers. Mountains has been a CAH since 2002 serving an underserved, hard-to-access, mountain area. Relator worked at Mountains in 2007-2008. Relator brings this case in 2017. CMS has a process where its ROs determine that CAHs meet the distance requirements. The OIG found that Mountains met the distance requirements in 2013 (publicly disclosing a report that Relator plagiarized without attribution to initiate this case). CalTrans reports indicate that Mountains meets the distance requirements. CMS and its ROs, through the initial certification process, and in re-certifications thereafter, have found that Mountains met the distance requirements.

Relator doesn't argue, nor could he, that Mountains lied about its address to CMS and its ROs (or the OIG or CalTrans). He instead, argues with CMS/ROs/OIG/CalTrans' (not Mountains') findings, based on Relator's interpretation

HLP THE HEALTH LAW PARTNERS, P.C.

of vague and ambiguous 2013 sub-regulatory guidance. This is not a False Claims Action which sounds in fraud, and Relator's action fails legally (and, ultimately, factually).

Plaintiff's TAC should be dismissed for failure to comply with federal pleading requirements and Rule 12(b)(6). As previously briefed, there is a reason that there has not been a flood of FCA litigation regarding CAH distance/location claims. Allowing this suit to proceed would open the door for a flood of parasitic FCA claims (including at least two that are already known to have been filed by Relator). Pursuant to L.R. 7-15, Mountains respectfully requests that oral argument be forgone and that this Court rule on the matters submitted.

**Respectfully submitted,**
July 6, 2018

**THE HEALTH LAW PARTNERS, P.C.**
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community Hospital District

HLP THE HEALTH LAW PARTNERS, P.C.

25
Defendant Mountains' Memorandum of Points and Authorities in Support of Its Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

**PROOF OF SERVICE**
**STATE OF MICHIGAN, COUNTY OF OAKLAND**

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On July 6, 2018, I served true copies of the foregoing document(s) described as **Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third Amended Complaint** on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 6, 2018, at Farmington Hills, Michigan.

HLP THE HEALTH LAW PARTNERS, P.C.

/s/Marianna M. McIntyre

Marianna M. McIntyre

HLP THE HEALTH LAW PARTNERS, P.C.