1   Esperanza Cervantes Anderson | SBN 197953
    LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
2   1037 North Allen Avenue
    Pasadena, California 91104
3   Tel.:   (626) 219-6773
    Fax:    (626) 389-8911
4
    Attorney for Plaintiff Relator
5   FRANK ADOMITIS

6

7

8                UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA          Case No. Case No.: 5:17-cv-00002-
    ex rel. FRANK ADOMITIS, an        JGB-KK
12  individual,                       (Hon. Jesus G. Bernal)

13              Relator,              **PLAINTIFF'S/RELATOR'S
                                      MEMORANDUM OF POINTS
14       v.                           AND AUTHORITIES IN
                                      OPPOSITION TO
15  SAN BERNARDINO                    DEFENDANT'S MOTION TO
    MOUNTAINS COMMUNITY               DISMISS THIRD AMENDED
16  HOSPITAL DISTRICT; DOES 1         COMPLAINT**
    through 20, inclusive,
17                                    **Date:         September 24 2018**
              Defendants.            **Time:         9:00 a.m.**
18                                    **Courtroom:    1**

19

20

21       Plaintiff/Relator Frank Adomitis ("Relator") opposes Defendant San

22  Bernardino Mountains Community Hospital District's ("Mountains") Motion to

23  Dismiss the Third Amended Complaint ("TAC"), as follows:

24

25

26

27

28

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

- 0 -

# TABLE OF CONTENTS

I.     INTRODUCTION                                                                    1

II.    LEGAL ANALYSIS                                                                  2

       A.    The Ninth Circuit's Recent Decision In *Rose* Is Directly           2
             On Point And Mandates Denial Of Mountains' Motion
             To Dismiss.

             1.    Background Of Rose Lawsuit.                                    2

             2.    District Court Rulings In *Rose*.                             3

             3.    Ninth Circuit Opinion In *Rose*.                             6

       B.    The Distance Requirement Is Material To Government               9
             Payment.

             1.    Alleged Continued Payment To Mountains Is                  10
                   Irrelevant Especially Since Mountains Continues
                   To Misrepresent Compliance.

             2.    Relator Is Not Required To Come Forward With               13
                   Evidence That The Government Has Decertified,
                   Or Cut Funding To, All Non-Compliant CAHs To
                   Prove Materiality.

             3.    The Government Has Shown "A Signal Chance In               14
                   Position" In Response To Noncompliance With
                   The Distance Requirement.

             4.    The Distance Requirement's Designation As A                16
                   Condition Of Participation, As Opposed To
                   Condition Of Payment, Is Irrelevant.

             5.    Non-CAH Medicare Cases Are Not Relevant                    19
                   Here Because The Conditions In Those Cases
                   Was Not Central To A Hospital's Continued
                   Eligibiity In The Medicare Program.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

- i -

C.    Mountains' Noncompliance With The Distance    20
      Requirement Is Not Excused.

      1.    The Distance Requirement Is Not Sub-Regulatory    20
            Guidance

      2.    The Distance Requirement Has Not Been    21
            Inconsistent

      3.    The Distance Requirement Is Not Too    22
            Ambiguous To Be Followed.

D.    The Existence Of A Regulatory Scheme Is Irrelevant.    23

III.  RELATOR'S CONDITIONAL MOTION TO AMEND    24

IV.   CONCLUSION    25

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Third Amended Complaint

**TABLE OF AUTHORITIES**

*Cases*

*Baylor County Hospital Dist. v. Price*,

    850 F.3d 257 (5th Cir. 2017)      18, 21

*Baylor County Hospital District v. Burwell*

    163 F.Supp.3d 372 (N.D. Tex. 2016)      18

*Commissioner v. Clark*, 489 U.S. 726 (1989)      12

*Conner v. Salina Regional Health Ctr., Inc.*,

    543 F.3d 1211 (10th Cir. 2008)      19

*Foman v. Davis*, 371 U.S. 178 (1962)      25

*Hagood v. Sonoma County Water Agency*,

    81 F.3d 1465 (9th Cir. 1996)      23

*Hawaiian Airlines, Inc. v. Norris*, 114 S.Ct. 2239 (1994)      12

*Karczewski v. DCH Mission Valley LLC*,

    862 F.3d 1006 (9th Cir. 2017)      11, 24

*Rose v. Stephens Institute*, Case No. 09-cv-5966-PJH,

    2016 WL 2344225 (N.D. Cal. May 4, 2016)      3

*Rose v. Stephens Institute*, Case No. 09-cv-05966-PJH,

    2016 WL 3919489 (N.D. Cal. June 24, 2016)      3

*Rose v. Stephens Institute*, Case No. 09-cv-5966-PJH,

    2016 WL 5076214 (N.D. Cal. Sept. 20, 2016)      Passim

*Sweeney v. Manorcare Health Services, Inc.*, C03-5320,

    2005 WL 4030950 (W.D. Wash. March 4, 2005)      19

*Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973)      25

*U.S. ex rel. Estate of Donegan v. Anesthesia Assocs. Of Kansas City,*

    *PC*, No. 4:12-cv-0876-DGK, 2015 WL 3616640 (W.D.Mo. June

    9, 2015)      23

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

*U.S. ex rel. Hendow v. Univ. of Phoenix,*

    461 F.3d 1166 (9th Cir. 2006)      4, 17

*U.S. ex rel. Rose v. Stephens Institute,*

    2018 WL 4038194 [___ F.3d ___ ] (9th Cir. 2018)      Passim

*United States ex rel. Burlbaw v. Orenduff,*

    400 F.Supp.2d 1267 (D.N.M. 2005)      22

*United States ex rel. Hixson v. Health Mgmt. Sys., Inc.,*

    613 F.3d 1186 (8th Cir. 2010)      23

*United States ex rel. Huey v. Summit Healthcare Assoc., Inc.,* CV-10-

    8003, 2011 WL 814898 (D.Ariz. March 3, 2011)      19

*United States ex rel. Kelly v. Serco, Inc.,*

    846 F.3d 325 (9th Cir. 2017)      6, 17

*United States ex rel. Swafford v. Borgess Med. Ctr.,*

    98 F.Supp.2d 822 (W.D. Mich. 2000)      22

*Universal Health Services, Inc. v. U.S. ex rel. Escobar,*

    136 S.Ct. 1989 (2016)      Passim


**Statutes**

20 U.S.C. § 1094      3

20 U.S.C. § 1094(a)(20)      2

42 U.S.C. § 1320a-7k      23

42 U.S.C. § 1395i-4(c)(2)(B)      8

42 U.S.C. § 1395i-4(c)(2)(B)(i)(I)      4, 18, 19, 21

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

**Regulations**

34 C.F.R. § 668.14                                                                                    3

34 C.F.R. § 668.14 (b)(22)                                                                           2

42 C.F.R. § 412.103                                                                                  13

42 C.F.R. § 485.610 (c)                                                                          18, 21

Federal Rule of Civil Procedure 15(a)                                                               25

Federal Rule of Civil Procedure 15(a)(2)                                                         24, 25

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Third Amended Complaint

# I.   INTRODUCTION

Mountains' motion to dismiss misses the mark. Mountains has misrepresented the materiality element as being more rigid than intended by the Supreme Court. The main gist of Mountains' motion is that the only way for the Relator to move forward is to show that the government refuses to pay the enhanced Critical Access Hospital ("CAH") rate to all CAHs who are not compliant with the distance requirement as soon as it discovers the noncompliance. Notably, the law does not require Relator to show the refusal of payment without first removing a CAH from the program. Rather, as the Ninth Circuit in *U.S. ex rel. Rose v. Stephens Institute*, 2018 WL 4038194 [___ F.3d ___ ] (9th Cir. 2018) ("*Rose*") has clarified, evidence showing that CMS has taken some action in response to actual knowledge about misrepresentations, including allowing an institution to bring itself back into compliance, is enough to prove the materiality element ***at the pleading stage***. Relator's TAC meets this burden, as Mountains' own pleadings show.

Additionally, Mountains' claim it complies with the distance requirement is not only wrong, it undercuts its assertion that CMS actually knows of Mountains' misrepresentions regarding its compliance with the distance requirement. Mountains' misuse of the Concept Reports, attached as Exhibits 5, 7 and 8 to Mountains' Request for Judicial Notice ("RJN"), to falsely claim it meets the distance requirement explains why CMS does not have ***actual knowledge*** of Mountains' misrepresentations regarding the distance requirement.

Finally, Mountains' arguments that the distance requirement is sub-regulatory guidance, ambiguous, or that CMS's regulatory scheme bars this FCA lawsuit have been considered, ***and found unavailing***, by this Court. Mountains has offered no reasons for revisiting these issues. The Court should decline to do so.

Mountains' motion to dismiss should be denied. To the extent the Court is inclined to grant the motion, Relator respectfully requests leave to amend. The Ninth Circuit's recent decision provides good cause to grant this leave.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

## II.   LEGAL ANALYSIS

**A.   The Ninth Circuit's Recent Decision In *Rose* Is Directly On Point And Mandates Denial Of Mountains' Motion To Dismiss.**

This is Mountains' third substantive motion to dismiss.[1] With each motion, Mountains' legal challenges to the complaint have fallen by the wayside. At this stage, the main question for the Court's consideration is whether Mountains' non-compliance with the distance requirement (which is a condition of participation) is material to the government's decision to pay. On this issue, *U.S. ex rel. Rose v. Stephens Institute* is not only instructive, it is directly on point, because in *Rose*, the Ninth Circuit provided guidance on how to analyze the materiality element in a case where the payment decision is not made on a case by case basis based on the specific service provided on that day, but instead is made based on the claimant institution's eligibility in the funding program at issue.

### 1.   Background Of Rose Lawsuit.

In *Rose*, Relators alleged that Defendant (a university) obtained millions of dollars in federal funds from the U.S. Department of Education ("DOE") in financial aid to its students through various funding programs available under Title IV of the the Higher Education Act. To qualify for that funding, Defendant had to enter into a program participation agreement with the DOE in which Defendant "pledged to follow **various requirements**, including the incentive compensation ban ("ICB"). *Rose*, 2018 WL 4038194, at *6 (emphasis added). The ICB codified at 20 U.S.C. § 1094(a)(20) and 34 C.F.R. § 668.14(b)(22) prohibits colleges and universities such as Defendant from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments

---

[1] Mountains original motion to dismiss the Complaint was rendered moot when Relator filed a First Amended Complaint to remove a cause of action. [See Docket Nos. 16 and 17.] Thus, the Court never considered the arguments a to the remaining claims for relief contained in that motion. Mountains re-filed this motion to dismiss (without the argument in connection with the dismissed cause of action) after Relator filed the First Amended Complaint ("FAC"). [Docket No. 19.]

-2-

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

or financial aid to any persons or entities engaged in any student recruiting or admissions activities." Relator alleged that Defendant violated the ICB by adjusting the compensation of admissions representatives based solely on their success in securing enrollments or financial aid. *Id.*, at \*7. Notably, **the ICB was one of at least 29 conditions of participation**. See 20 U.S.C. § 1094 and 34 C.F.R. § 668.14.

## 2.    District Court Rulings In *Rose*.

On December 20, 2015, Defendant moved for summary judgment, which was granted in part and denied in May 2016. *Rose v. Stephens Institute*, Case No. 09-cv-5966-PJH, 2016 WL 2344225, \*10 (N.D. Cal. May 4, 2016) ("Rose May 2016"). Relator's claim based on the implied certification survived. The court found that Relators had no claim based on express false certification because **Defendant's individual requests for Title IV loans contained no explicit certification of compliance with the ICB**. *Rose May 2016*, at \*11 (emphasis added). "Rather, [Defendant] expressly certified compliance only in its 2006 and 2012 program participation agreements ("PPAs")" entered into years before Relators allege Defendant violated the ICB. *Rose v. Stephens Institute*, Case No. 09-cv-5966-PJH, 2016 WL 5076214, \*2 (N.D. Cal. Sept. 20, 2016) ("*Rose Sept. 2016*"). The district court found Relators' could not allege a theory of promissory fraud. *Id.*

One month later, the Supreme Court decided *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S.Ct. 1989 (2016) ("*Escobar*") in which the Court clarified the law surrounding falsity and materiality. Because of that, Defendant moved for leave to file a motion for reconsideration, which the district court granted, so Defendant could address the materiality element, which it had not meaningfully addressed. *Rose, et al. v. Stephens Institute*, Case No. 09-cv-05966-PJH, 2016 WL 3919489, \*2 (N.D. Cal. June 24, 2016).

Defendant filed its motion for reconsideration. Notably, **Defendant made many of the same arguments that Mountains is making.** Defendant argued that Relator could not meet the two-part test for falsity established by *Escobar* because

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

the claims for payment contained no specific representations about the goods and services provided. *Rose Sept. 2016*, *supra*, 2016 WL 5076214 at *4. Defendant also argued that ICB compliance was not material to the payment decision because the DOE rarely withheld funds for ICB violations, and because the DOE continued to pay Defendant despite knowing of the allegations in the lawsuit. *Id*. As noted above, **the ICB was one of at least 29 conditions of participation in the program.**[2]

On September 20, 2016, the district court in *Rose* denied Defendant's motion for reconsideration. *Rose Sept. 2016*, at *7. The district court rejected Defendant's argument that the claims for payment did not involve false statements about the goods and services provided. Specifically, the district stated:

> As the loan form submitted by [Defendant] shows, …, [Defendant's] request for payment represents that the student-borrower is "eligible" and is enrolled "in an eligible program." If [Defendant] was not in compliance with the ICB, failure to disclosure this fact would render the loan forms misleading because [Defendant] would not have been an "eligible" institution. While [Defendant] attempts to distinguish between an "eligible program" and an "eligible institution," an eligible program can only exist if the institution is eligible, and a student can only be eligible if she is enrolled an eligible institution. See 34 C.F.R. § 668.32(a)—(a)(1)(i) ("A student is eligible [for Title IV funds] if the student ... [is] enrolled ... at an eligible institution."). *Rose Sept. 2016* at *5.

Citing *U.S. ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166 (9th Cir. 2006) ("*Hendow*"), the district court pointed out that "[C]ompliance with the incentive

---

[2] Here, the statute governing the CAH framework lists distance as the first of only five (5) requirements a hospital must meet in order to be eligible for the program. 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I)).

compensation ban is a necessary condition of continued eligibility and participation." As such, "compliance is a 'prerequisite' to funding; funding shall occur 'only if' the University complies ...." *Rose Sept. 2016*, *supra*, 2016 WL 5076214 at *5 *citing Hendow*, 461 F.3d at 1176. In submitting claims for payment under the Higher Education Act, Defendant represented its eligibility in the program, which in turn, impliedly represented compliance with the ICB ban. *Rose Sept. 2016*, *5 ("In any event, [Defendant] did make "specific representations" in the submitted student loan forms that would be "misleading half-truths" should the relators prove at trial that [Defendant] was not in compliance with the ICB.")

The district court also rejected Defendant's argument that compliance with the ICB was not material to the government's payment decision because:

> **The court finds that the DOE's decision to not take action against [Defendant] despite its awareness of the allegations in this case is not terribly relevant to materiality.** The DOE did not cite any reason for this decision, which could well have been based on difficulties of proof or resource constraints, or the fact that the truth of the allegations has yet to be proven. In such circumstances, the DOE's inaction does not provide any basis for the court to infer that the DOE had "actual knowledge" of [Defendant's] violations or chose not to act because it considered the ICB unimportant.
>
> *Rose Sept. 2016*, 2016 WL 5076214 *6 (emphasis added).
>
> ***
>
> The court also found that the DOE's history of uneven enforcement of the ICB did not "prove that the DOE considered ICB violations immaterial or unimportant to the Title IV bargain. To the contrary, the DOE took corrective actions against schools, issued fines, and entered into settlement agreements (which

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

function like a fine or partial revocation of funds) totaling tens of millions of dollars. The government's actions show that the DOE cared about the ICB, and that it did not always pay the claims "in full" despite knowledge of the ICB violations. *Escobar*, 136 S. Ct. at 2003; cf. *Hendow*, 461 F.3d at 1176 ("[T]he DOE ... quite plainly care about an institution's ongoing conduct, not only its past compliance [with the ICB.]").

*Id.*, at *6.

***

Finally, the court notes that the DOE's enforcement of the ICB has changed over time, signaling a "change in position" that is relevant under *Escobar*. 136 S. Ct. at 2004. In 2002, in informal guidance, the DOE took the position that fines, and not suspension of participation in Title IV, were the most appropriate penalty for ICB violations. [Citation] It also created the safe harbors in that year. [Citation] However, by 2008 this position had attracted criticism and Congress commissioned a study of DOE's ICB enforcement. [Citation] The DOE subsequently took steps to eliminate the safe harbors. [Citation] … Considering these recent changes, it would be a mistake to give too much weight to the DOE's record of past enforcement.

*Id.*, at *6.

Defendant appealed the Court's denial of its motion for reconsideration.

### 3.   Ninth Circuit Opinion In *Rose*.

On August 24, 2018, the Ninth Circuit issued its opinion affirming the district court's decision. *Rose*, 2018 WL 4038194, at *6. The Ninth Circuit affirmed the two-part test articulated in *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) ("*Kelly*"). The test for falsity under the implied certification theory

- 6 -

requires proof that: (1) the claim does not merely request payment, but also makes specific representations about the goods or services provided; and (2) the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. *Rose*, 2018 WL 4038194, *5. The Ninth Circuit concluded that on the record before it, Relators met the two part test for falsity under the implied certification theory:

> In the Federal Stafford Loan School Certification form, Defendant specifically represented that the student applying for federal financial aid is an "eligible borrower" and is "accepted for enrollment in an eligible program." Because Defendant failed to disclose its noncompliance with the incentive compensation ban, those representations could be considered "misleading half-truths." That is sufficient evidence to create a genuine issue of material fact and, therefore, to defeat summary judgment.

*Id.*, at *5.

The Ninth Circuit also concluded noncompliance with the ICB could be material to the government's decision to pay. In concluding this, the Ninth Circuit acknowledged *Escobar's* holding that noncompliance with a statute, regulation or contractual term is not material *per se* but that courts must look to the facts of each case. *Id.*, at *6.

The Ninth Circuit clarified that *Escobar* laid out three scenarios that "may help courts determine the likely or actual behavior of the government with regard to a given requirement." *Rose*, 2018 WL 4038194, at *5. These ***possible*** scenarios included evidence on whether the government pays a claim despite actual knowledge of the false certification. *Id.*, at *7 citing to *Escobar*, 136 S.Ct. at 2003–04. The Ninth Circuit also highlighted that *Escobar* identified evidence from the government of a "change in position" in light of evidence of noncompliance as a scenario that could support materiality. *Id*.

Notably, the Ninth Circuit emphasized *Escobar*'s holding that "proof of materiality is not necessarily limited to these scenarios. *Rose*, 2018 WL 4038194, *5. The Ninth Circuit held that **the scenarios set forth in *Escobar* do not constitute a required test.** Thus, to meet their burden in a prima facie case, relators do not **have to** come forward with **evidence** of each of the scenarios described in *Escobar*. *Id.*, at *5, fn. 3 ("Those adjectives, while they give flavor to the Court's discussion, do not establish the test that the Court requires us to use. The actual test to be applied is the one that we quote and apply in text: what is the effect of a misrepresentation on the likely or actual behavior of the government"). Rather, relators can meet the materiality requirement with evidence showing that the government does not ignore noncompliance, i.e., evidence or pleadings that the government takes some action in response to the noncompliance., i.e., that the government has signaled a change in position.[3] *Id.*, at *7 ("We look to the three scenarios bearing on materiality that the Supreme Court enunciated in Escobar, though none of them is necessarily required or dispositive.") *citing to Escobar, 136 S.Ct. at 2003–04* (laying out scenarios that can constitute proof of materiality or immateriality, but noting that such proof "is not necessarily limited to" those scenarios).

Applying this analysis to the specifics of Rose, the Court was swayed by the fact that the ICB is mandated by statute, regulation and the contractual program participation agreements even though ***the ICB only one of more than 29 requirements in the relevant statute.*** *Rose*, 2018 WL 4038194, *6.[4] The Ninth Circuit noted: "Had Defendant not certified in its program participation agreement that it complied with the incentive compensation ban, it could not have been paid,

---

[3] Notably, the Ninth Circuit recognized that to require evidence of materiality beyond the type of allegations Relator has made in this case against Mountains, would be "to require more certainty than Escobar and general principles governing summary judgment require." *Rose*, 2018 WL 4038194, at *6, fn. 5. This finding is stronger in the motion to dismiss phase which necessarily takes place before the parties are allowed any discovery.

[4] Here, the distance requirement is the first (1) of five (5) conditions for participation contained in the statute. 42 U.S.C. § 1395i-4(c)(2)(B).

because Congress required as much." *Id*., at \*6.

Based on this, the Ninth Circuit affirmed the district court's denial of summary judgment *even though* the Court agreed that relators had **no evidence** that the government consistently refuses to pay claims in the mine run of cases based on non-compliance, and *even though* the government had continued to allow Defendant to obtain funding pursuant to the program. *Rose*, 2018 WL 4038194, at \*7 (finding Relator had no evidence regarding the first two scenarios described in *Escobar*). The Ninth Circuit, like the district court, declined to conclude that the government had actual knowledge of the violation just because Relator filed a lawsuit. *Id*. The Ninth Circuit was not swayed by Defendant's continuing to receive funding even though the lawsuit had been filed *nine years earlier*.

The Court also looked to the third scenario – i.e., whether the government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, **and has signaled no change in position**. *Rose*, 2018 WL 4038194, at \*7 (the signal of a change in position being the operative factor in this scenario). To support its challenge to the lawsuit, the Defendant presented evidence that 32 schools with substantiated ICB violations remained eligible schools years later. The Ninth Circuit rejected Defendant's self-serving interpretation of this information as evidence that the DOE did not care about the ICB. *Id*. The Ninth Circuit pointed out that the DOE actually took action in each case even though the action was not necessarily to terminate the schools' participation. *Id*. The Ninth Circuit considered that the DOE ordered the majority of the schools to take corrective action to remain eligible. The Ninth Circuit also considered evidence that the DOE fined some schools and settled with others. *Id*.

## B.    The Distance Requirement Is Material To Government Payment.

The *Rose* case is identical materially to the case at bar. Like *Rose,* Relator alleges that Mountains is not complying with the distance requirement, which Relator alleges is a central, material condition of participation in the CAH program

Law Office of Esperanza Cervantes Anderson
Pasadena, California

-9-

and a material consideration for funding of CAH monies. [TAC, Docket No 40, ¶¶50 and 51.] Like *Rose*, Relator alleges that if Mountains had acknowledged its noncompliance in its 2002 application and each Form 2552 cost report filed thereafter, the government would not have paid Mountains. [Id.]

Mountains' motion to dismiss – which was filed almost six weeks before the Ninth Circuit issued its opinion in *Rose* – makes the same ill-fated arguments as the Defendant in *Rose*. As in *Rose*, these challenges should be rejected. Mountains' motion to dismiss should be denied.

### 1.    Alleged Continued Payment To Mountains Is Irrelevant Especially Since Mountains Continues To Misrepresent Compliance.

Mountains' contention that the government has continued to pay it as a CAH even though Relator filed this lawsuit negates materiality fails. The Ninth Circuit has specifically rejected the suggestion that filing a lawsuit constitutes ***actual knowledge*** of the fraud alleged. *Rose*, 2018 WL 4038194, *7 ("[t]he record [did] not establish that, during the relevant time period, the Department had ***actual knowledge*** that the Defendant was violating the incentive compensation ban."). See also *Rose Sept. 2016*, 2016 WL 5076214, *6 ("The court finds that the DOE's decision to not take action against [Defendant] despite its awareness of the allegations in this case is not terribly relevant to materiality" noting that a decision to continue paying despite a lawsuit could result from "difficulties of proof or resource constraints, or the fact that the truth of the allegations has yet to be proven").

Here, the allegations in the lawsuit cannot constitute actual knowledge of Mountains' noncompliance with the distance requirement, given Mountains' continued insistance that it is *in fact* in compliance. (See Motion, 15:6-17:8.)

Mountains' use of the Concept Reports is questionable, given the fact that Caltrans does not define its use of the terms "mountainous or rolling" terrain in the Concept Reports (or in any other official Caltrans document). The Concept Reports are not the required letter from Caltrans confirming the road characteristics as

10

required by CMS. See Exhibit 9 to Mountains' RJN, pg. 3. Relator is aware that Caltrans uses designations both for the road and also the landscape surrounding the road (i.e., a road traveling in mountains can be flat).

In any event, if the designations in the Concept Reports reference the characteristics of the road in the manner required by CMS, then **these Concept Reports doom Mountains** because the Concept Reports for Highway 18, 189 and 173 show there is a route from St. Bernardine to Mountains that does not include the 15 miles of mountainous terrain **or** 15 miles of secondary roads.[5] See Corridor Overview, Route Segmentation Chart, in Concept Reports, attached as Exhibits 5, 7 and 8 to Mountains' RJN.

Similarly, the Concept Reports show there is not at least 15 miles of secondary roads between Mountains and St. Bernadine. While 173 and 189 are secondary roads, the portions of Highway 18 in this route consist of two lanes in each direction of traffic (or 4 lanes total). Thus, Relator has not "wrongly alleged that Mountains does not meet the distance requirement. (See Motion, 15.) Such a determination on the merits of Relator's allegations is not appropriate at this stage of the pleadings. *Rose*, 2018 WL 4038194, *5; *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1011, 1017 (9th Cir. 2017) ("*Karczewski*").[6]

---

[5] A person traveling this route would travel only 2.87 miles on the portion of Highway 18 the concept report considers "mountainous terrain" before the person would turn onto Highway 189. The person would then travel 5.6 miles through sections the concept report for Highway 189 conciders "rolling terrain" before turning onto Highway 173. The entire distance traveled on Highway 173 is on roads the concept report considers "rolling terrain." Thus, Mountains cannot show at least 15 miles of "mountainous terrain" even if it is able to use the concept reports.

[6] Although not clearly stated, Mountains appears to be arguing – without support – that a hospital can mix and match miles of mountainous terrain with miles of secondary roads to meet the distance requirement. (Motion, 15:17-16:14.) However, neither the statute, regulation or State Operations Manual supports this position. The statute and regulation provide that a hospital must be *at least* 15 miles of mountainous terrain **or** in areas where there are only secondary roads, 15 miles of secondardy roads away from the nearest acute hospital in order to qualify as a CAH. The fact that the statute and regulation do not say 15 miles of mountainous terrain **and/or** secondary roads, shows that Mountains cannot mix and match in order to meet the distance requirement. See *Hawaiian Airlines, Inc. v. Norris*, 114 S.Ct. 2239, 2244-45 (1994)

L AW  O FFICE OF  E SPERANZA  C ERVANTES  A NDERSON
P ASADENA ,  C ALIFORNIA

Mountains argues that Relator's recent discovery of this alternate route – which came about because of Mountains' use of the Concept Reports – should give the Court extreme pause. (Motion, p. 15, fn 21.) The contrary is true. This late discovery shows how a government official could be misled on the distance between Mountains and St. Bernadine. Relator lives in Highland and rarely travels to Lake Arrowhead. Relator's counsel is from Pasadena and also never travels to Lake Arrowhead. Neither Relator nor his counsel considered the shorter route through Highways 18, 189 and 173, i.e. the route through the Blue Jay neighborhood of Lake Arrowhead. But, Relator knows from his time working at the hospital that many people he worked with in Mountains, including Jim Hoss the CEO that signed Mountains' application for CAH status, lived and continue to live in this neighborhood. As such, Mr. Hoss and the other people who lived in this neighborhood, routinely travel(ed) the 189 - 173 route to get to the hospital. While Relator and his counsel and a CMS representative might be confused by the routes in Lake Arrowhead in light of their lack of familiarity with this city, Mr. Hoss and the other important personnel at Mountains cannot claim such confusion.

Mountains was not listed as a non-compliant CAH in the 2013 OIG Report. [TAC, Docket No. 40, ¶26.] Since filing this lawsuit (January 3, 2017), Mountains submitted only one Form 2552-10 cost report requesting reimbursements for the additional costs only due to CAHs. (Form 2552-10 is submitted at the in or around November or December for the fiscal year ending in June.) Mountains verified in Form 2552-10 it submitted in November 2017 it qualifies as a CAH. Mountains' creativity in the route it discloses, and misuse of the Concept Reports shows how Mountains supported its misrepresentation. In sum, and in light of all these factors, CMS' alleged continued payment to Mountains if true, cannot be used to support the

---

(the term "or" in a statute means "in the alternative"). Importantly, the Supreme Court instructs courts to construe exceptions in a statute narrowly. *Commissioner v. Clark*, 489 U.S. 726, 739 (1989). Thus, the Court should not expand the distance requirement as Mountains impliedly requests.

proposition that CMS does not care about Mountains' noncompliance.

> **2.     Relator Is Not Required To Come Forward With Evidence That The Government Has Decertified, Or Cut Funding To, All Non-Compliant CAHs To Prove Materiality.**

Another main argument made by Mountains is that dismissal is mandated because Relator has not offered evidence (*at the pleading stage*) that the government consistently refuses to pay claims in the ***mine run*** of cases based on noncompliance with the condition at issue. To support its argument, Mountains points out that the OIG report did not lead to filing a countless FCA lawsuits, or to countless decertifications, and refusals to pay. (Motion, pg. 5.) Looking to the 2014 Federal Register quoted in the TAC, Mountains states that every CAH in danger of losing rural status (because areas where they are located have been redesignated as urban areas)[7] remains a CAH today. (Motion, pg. 5, pg. 11.) Mountains argues that CMS's affirmative encouragement that targeted CAHs seek re-classification to remain in the program is evidence of the lack of materiality of the locations requirements. (Motion, 11:4-17.) Mountains' argument fails, given *Rose*.

As explained above, the Court looked beyond the data Defendant presented which showed that 32 schools with known ICB violations remained eligible institutions in the funding programs. Instead of looking solely at the end result, the Court considered that the government took some action with respect to the institutions, including requiring the institutions to bring themselves into compliance, or fining the institutions where appropriate. *Rose*, 2018 WL 4038194, *7.

---

[7] The CAH framework exists to encourage hospitals to exist in rural areas that are also the requisite distance from the nearest acute care hospital. Because of urban sprawl, some CAHs found themselves outside of "rural" areas because the government has redesignated the areas as "urban." The Conditions of Participation include a process for the affected CAHs to apply to be re-classified as "rural" so that they can remain in the CAH program. This process is described in 42 C.F.R. §412.103. This process does not relieve a CAH of the requirement to be at least 35 miles (or 15 miles of mountainous terrain or secondary roads) from the nearest hospital.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Third Amended Complaint

Considering these facts, the Ninth Circuit concluded:

> **There is evidence, then, that the Department did care about violations of the incentive compensation ban and did not allow schools simply to continue violating the ban while receiving Title IV funds.** … **The Department can demonstrate that requirements, such as the incentive compensation ban, are material <u>without directly limiting, suspending, or terminating schools' access to federal student aid</u>. A full examination of the Department's past enforcement habits in similar cases, therefore, reveals that a reasonable trier of fact could find that Defendant's violations of the incentive compensation ban were material.**

*Rose*, 2018 WL 4038194, *8 (emphasis added).

While Mountains wants the Court to dismiss this lawsuit absent a showing that all noncompliant CAHs have been denied funding, there is no support for such a test. *Rose Sept. 2016*, *supra*, 2016 WL 5076214, *7 **("Nothing in *Escobar* suggests that actions short of a complete revocation of funds are irrelevant to the court's materiality analysis.")** (emphasis added).

### 3. The Government Has Shown "A Signal Chance In Position" In Response To Noncomplaince With The Distance Requirement.

The Ninth Circuit's consideration of alternate methods to ensure compliance as evidence of materiality shows that the distance requirement is material here. By Mountains' own admission, the government has not ignored data that CAHs may not comply with the distance requirement. The mere issuance of a report identifying CAHs that might lose their rural status shows the government considers the distance requirement material enough to insist that the CAHs bring themselves into

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

14

compliance where possible so they won't lose the enhanced CAH rate.[8] Thus, CMS' encouragement that CAHs to take advantage of an existing form of safe harbor to avoid decertification *and loss of enhanced CAH funding* does not negate materiality as Mountains suggests. *Rose*, 2018 WL 4038194, *7-8.

Moreover, the government's response to the OIG Report attached as Exhibit 2 to Mountains RJN in support of its motion to dismiss Relator's Second Amended Complaint (Docket No. 27-3) shows the government did not ignore potential noncompliance with the distance requirement regarding the program at issue here (*which is what it would have done if the distance requirement were not material*). CMS responded to the OIG Report by undertaking to review whether a CAH complies with the distance requirement when it conducts its recertification surveys. [See Exhibit 1 to Mountains' RJN.]

Mountains' suggestion that this change in the government's enforcement of the distance requirement shows that noncompliance was not material prior to 2013 has also been rejected by the Ninth Circuit in *Rose*. *Rose* did not limit Relator's claims based on the history of evolving government enforcement. *Rose*, 2018 WL 4038194, *7-8. See also, *Rose Sept. 2016*, 2016 WL 5076214, *6 (finding that the DOE's history of uneven enforcement of the ICB did not "prove that the DOE considered ICB violations immaterial or unimportant to the Title IV bargain"). Instead, the district court in *Rose* concluded that the DOE's evolving enforcement of the ICB signaled a "change in position" that is relevant under *Escobar*. *Rose Sept. 2016*, 2016 WL 5076214, *6 *citing Escobar*, 136 S. Ct. at 2004. The Court should, therefore, not limit it in response to the motion to dismiss.

Based on the Federal Register, Mountains argues – without support – that every single CAH from 2013 OIG Report remains a CAH today. (Motion, pg. 5.) A comparison of the CAHs in existence in 2014 with the CAHs in existence today

---

[8] The legal avenue is not relevant to Mountains because Mountains' noncompliance is a result of being too close to another hospital.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

shows that between 8 and 15 CAHs have been decertified. This is a significant number since the OIG report determined that the large majority of the CAHs that did not meet the distance requirement were properly certified because they were designated as Necessary Providers. Since the OIG did not accurately identify which CAHs did not comply with the distance requirement (e.g. the OIG Report did not name Mountains) because the purpose of the OIG Report was written to encourage the government to close the Necessary Provider loophole, identifying the CAHs that violate the distance requirement and are not Necessary Providers is not as easy as Mountains contends. Nonetheless, Relator has uncovered evidence showing the government is actively seeking to get a handle on noncompliance with the distance requirement by decertifing CAHs that do not meet the distance requirement.

Mountains notes that Tahoe, Frank R. Howard and Colorado River remain certified as CAHs and continue to get payments. (Motion, Pg. 9) Again, this statement is incomplete and designed to mislead. The government has not declined to intervene in Tahoe. Regarding Frank R. Howard and Colorado River, Relator has discovered that both continue to assert compliance with the distance requirement in the Form 2552 cost reports. Relator would have to physically drive the roads between these CAHs and the nearby acute hospitals to determine whether misrepresentations have actually been made or whether the OIG made a mistake including these hospitals on their list. The Ninth Circuit's decision in *Rose*, however, points out that a Relator need not explain the government's handling of every other similar institution to prove materiality. As the scenarios in *Rose* show, the government might have its own reasons for treating various institutions differently.

### 4. The Distance Requirement's Designation As A Condition Of Participation, As Opposed To Condition Of Payment, Is Irrelevant.

Ignoring the United States Supreme Court's express finding on this point, Mountains highlights that the distance requirement is a condition of participation, not payment. (Motion, 4:21) This point has been found to be without consequence

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Third Amended Complaint

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

by the Supreme Court in *Escobar*. *Id.*, 136 S.Ct. at 1996 (holding that designation of a condition as one of payment vs. participation is not dispositive).

Still, by characterizing the distance requirement as a condition of participation, Mountains seeks to obscure the link between Mountains' misrepresentation and the government's payment decision[9] so it can argue that (1) Relator does not meet the two-part test for falsity established by *Kelly, supra,* 846 F.3d 325 and affirmed by *Rose*, *supra*, 2018 WL 4038194, and (2) noncompliance with the distance requirement is not material to the payment decision. The fact that the distance requirement is a condition of participation (or eligibility in the program) does not support the conclusions Mountains wants to make.

In affirming that the two-part test for falsity under the implied certification theory, the Ninth Circuit specifically found that the misrepresentations present here on eligibility for a program meets the two-part test. *Rose*, 2018 WL 4038194, *5-6 (finding that submitted claims for funding under the Title IV programs imply that **the institution is eligible to receive those funds**. Defendant's failure to disclose its noncompliance could be considered "misleading half truths" if the noncompliance is proven because the Defendant could not have received the funding if Defendant were not an eligible institution); *Hendow*, *supra*, 461 F.3d at 1176 (holding that violation of the ICB was material to the funding decision because participation in the program would have been denied, and funding would not have occurred, if

---

[9] Mountains claims that this Court previously held that pleading Form 2552 was not sufficient because Relator could not show a link between conditions of participation and payment requirements. (Motion, 8:4-7 citing Dkt., 39, P.8). Mountains is mischaracterizing the Court's Order. A review of the Court's order shows the Court was discussing the allegations in the SAC. These allegations referenced only the certification not to misrepresent or falsify any information in Form 2552-10. [Docket No. 26, ¶¶37 and 38.] The SAC did not specifically mention Q. 105 of Form 2552-10 which requires Mountains to verify it qualifies as a CAH (which includes a direct representation that Mountains complies with the triple conditioned distance requirement). The TAC cured the Court's concerned by specifically alleging Form 2552-10 includes Q. 105 which requires verification that the hospital is qualified as a CAH. [See TAC, Docket No. 40, ¶¶39 and 40.] As such, Q. 105 does not certify compliance with all the Medicare laws, regulations, and payment instructions. It only certifies compliance with the CAH requirements.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1    defendant had not agreed to comply with the ICB (among other conditions of

2    participation)); *Rose Sept. 2016*, 2016 WL 5076214, \*5 (in submitting claims for

3    payment pursuant to [the Act], Defendant represented its eligibility in the program,

4    which in turn, impliedly represented compliance with the ICB ban. These

5    representations regarding eligibility would be "misleading half-truths" should the

6    relators prove at trial that [Defendant] was not in compliance with the ICB.")

7        The same result is warranted here. Every time it verified on the Form 2552-

8    10 cost report (submitted to **obtain CAH funding**) that it qualified as a CAH,

9    Mountains represented that it met the triple conditioned[10] distance requirement. As

10   the OIG Report clarified, the CAH program was specifically designed to encourage

11   the operation of hospitals in remote and hard to reach areas. [Docket No. 27-3.][11] If

12   Mountains had disclosed that it was not remote or hard to reach, Mountains would

13   not have been admitted into the program, and it would not have been paid the

14   enhanced CAH rate. *See Baylor County Hospital District v. Burwell,* 163 F.Supp.3d

15   372 (2016) (rejecting Seymour Hospital's application for CAH status because it did

16   not meet the distance requirement) *affirmed Baylor County Hospital Dist. v. Price*,

17   850 F.3d 257 (5th Cir. 2017).[12] The importance of the distance requirement to a

18   CAH's continued receipt of CAH funding is evident by the fact that **CMS requires**

19   **each CAH to verify its present qualification as a CAH when it submits its Form**

20   **2552-10 claim for payment of the enhanced CAH payment**.

---

[10] Throughout its motion, Mountains characterizes the distance requirement as being a condition found in the regulations only by citing only to the CFR and omitting the cite to the statute. Like the ICB in *Rose*, the distance requirement is a triple condition; it is found in the statute enacted by Congress (42 U.S.C. § 1395i-4(c)(2)(B)(i)(I)), the regulation promulgated by the Agency (42 C.F.R. § 485.610 (c)), and the Agency's State Operations Manual ("SOM").

[11] If the distance requirement were removed – as Mountains asks the Court to do – any hospital in the country could receive the enhanced reimbursement rate regardless of location. Such a result would demean the legislature effort to provide for rural healthcare and bankrupt Medicare.

[12] Attempts to distinguish *Baylor*, and minimize its holding, by pointing out that Baylor was a case where participation was denied, not a case where payment was withheld as a result of non-compliance. (Motion, p. 5, pg. 8). This distinction is without consequence as explained above.

18

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

**5.     Non-CAH Medicare Cases Are Not Relevant Here Because The Conditions In Those Cases Was Not Central To A Hospital's Continued Eligibiity In The Medicare Program.**

Mountains' reliance on *Conner v. Salina Regional Health Ctr., Inc.*, 543 F.3d 1211 (10th Cir. 2008); *United States ex rel. Huey v. Summit Healthcare Assoc., Inc.*, CV-10-8003, 2011 WL 814898 (D.Ariz. March 3, 2011) and *Sweeney v. Manorcare Health Services, Inc.*, C03-5320, 2005 WL 4030950 (W.D. Wash. March 4, 2005) for the proposition that conditions of participation are not material in the Medicare context is unavailing because the payment decisions at issue were based on very different criteria. *Conner, Huey* and *Sweeney* were hospitals participating in the standard Medicare program. The alleged fraud involved the provision of (or failure to provide) specific services. The violations were of conditions that were not as central to the Medicare program as the distance requirement is to the CAH program. The courts in these cases did not find that the hospitals would have been removed from the standard Medicare program because of the non-compliance.

Here, as in *Rose*, the fraud is not related to specific services. Instead the fraud allegations are directed to the participation in the CAH program as a whole. In other words, the amount of money paid changes based on whether Mountains is a CAH or not. If Mountains is not qualified as a CAH, then Mountains would have been paid significantly less for the same services provided. In other words, this case, like *Rose*, involves a program where the payment decision is not made on a case by case basis based on the specific service provided on a specific day, but instead is made based on the claimant institution's eligibility in the funding program at issue.

Since the CAH program is specifically a location based program, compliance with the location based distance requirement is paramount to the decision to pay. The distance requirement is the first or only five conditions of participation identified by Congress in the statute authorizing the CAH progam. 42 U.S.C. § 1395i-4(c)(2)(B). Thus, noncompliance with the distance requirement in the case at

19

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

bar (like noncompliance with the ICB in *Hendow* and *Rose*) would lead to removal from the CAH program and as such, a loss of government money. In sum, here, as in *Hendow* and *Rose*, the condition of participation is **central** to eligibility in the program and as such a pre-requisite to the payment decision. This difference highlights the reason *Rose* and *Hendow* reached different results than *Conner, Huey* and *Sweeney*.

The fact that the government handles noncompliance with the distance requirement by decertifying a hospital as opposed to simply withholding payment does not negate materiality as *Hendow* and *Rose* show. *Rose Sept. 2016*, *supra*, 2016 WL 5076214, *7 ("Nothing in *Escobar* suggests that actions short of a complete revocation of funds are irrelevant to the court's materiality analysis"). The Ninth Circuit in *Rose* affirmed this finding when it considered actions by the government short of revocation of funds as evidence that the government did not consider the ICB immaterial. *Rose*, 2018 WL 4038194, *7-8. This is particularly important here where the enhanced CAH rate is paid annually[13] for all medical services provided during the preceding fiscal year, and not on a case by case status. That CAH funds are paid in a different manner than payment under the standard Medicare program should not be used to shield fraud in that program.

## C.   Mountains' Noncompliance With The Distance Requirement Is Not Excused.

Acknowledging its challenges to the lawsuit have been consistently whittled down with every motion, Mountains repeats it arguments that (1) the distance requirement is based on sub-regulatory guidance; (2) the distance requirement is ambiguous; and (3) the distance requirement is evolving.

### 1.   The Distance Requirement Is Not Sub-Regulatory Guidance

The distance requirement is not merely regulatory or sub-regulatory. It is a

---

[13] Concerns regarding the distance requirement can become known and addressed before the next claim for payment is even made.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

central condition for eligibility in the CAH program created by Congress. 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I). This condition is repeated in the regulations. 42 C.F.R. § 485.610 (c). Because the phrase "mountainous terrain" was not defined in the statute or regulation, the Agency created a definition to be applied across the board. As briefed extensively in Relator's Opposition to Mountains' motion to dismiss the SAC (Docket No. 29), the Fifth Circuit held that definitions promulgated by the Agency regarding eligibility to the CAH program were entitled to *Skidmore* deference. *Baylor County Hospital Dist. v. Price, supra*, 850 F.3d at 264.[14] For all the reasons described above, that the distance requirement is triple conditioned is a factor that supports a finding that compliance with the requirement is material to the government's decision to pay. *Rose*, 2018 WL 4038194, *6 ("After *Escobar*, that triple-conditioning of Title IV funds on compliance with the incentive compensation ban may not be sufficient, without more, to prove materiality, but it is certainly probative evidence of materiality"). The Court should decline Mountains' invitation to substitute the Agency's definition for a definition adopted by Mountains to serve its own needs.

### 2.    The Distance Requirement Has Not Been Inconsistent

Contrary to what Mountains claims, the distance requirement has not changed during the relevant time period. The statute has *always* required there be at least 15 miles of "mountainous terrain" or 15 miles of "secondary roads" between Mountains and the nearest acute care hospital. The application Jim Hoss signed in 2002 specifically asked Mountains to verify that it met this requirement.

While the definition of mountainous terrain has been refined by the Agency, Mountains has met no definition of mountainous terrain because the mileage from the location where a driver transitions from Highway 18 to Highway 189 all the way to the hospital, through Highway 173 consists of relatively flat roads. And the large

---

[14] Mountains citation to case law regarding applicability of *Chevron* deference are therefore inapplicable here.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

majority of Highway 18 leading to Highway 189 consists of four lanes where large trucks could travel at regular speeds as Relator himself personally observed. The personnel at Mountains that applied for CAH status and continue to make representations that Mountains complies cannot credibly claim they failed to notice the flatness of the terrain through much of their routes. This is especially true for the residents of the Blue Jay neighborhood.

Regardless, changes in the conditions of participation or payment relieve no defendant of liability for misrepresenting compliance during the time periods when they do not comply. *Rose Sept. 2016*, *supra*, 2016 WL 5076214, *11-12 (allowing FCA lawsuit to proceed even though Defendant had complied with the ICB for many years) affirmed by *Rose*, 2018 WL 4038194. Thus, changes in the definition could limit Mountains' liability under the False Claims Act; it cannot erase it. This factual determination must be made by a jury. *Rose*, 2018 WL 4038194, *5; *Karczewski*, *supra*, 862 F.3d at 1017.

**3.      The Distance Requirement Is Not Too Ambiguous To Be Followed.**

To salvage a defense, Mountains strains to find ambiguity. It asks, "what route do you use? Shortest route in distance or in time?" These "questions" are not raised in good faith and are unavailing. The statute does not specify that the route must be the shortest because the point of the statute is the ability of patients or emergency personnel to get between the hospitals. It stands to reason that if *any* route is less than 15 miles of mountainous terrain or secondary roads, then the statutory requirement is absent.

Mountains' reliance on *United States ex rel. Burlbaw v. Orenduff*, 400 F.Supp.2d 1267 (D.N.M. 2005) and *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F.Supp.2d 822 (W.D. Mich. 2000) is unavailing because these cases are factually irrelevant. In *Burlbaw*, there was no fraud claim because no fraudulent statements were made; the government knowingly approved the conduct. In Swafford, there was no fraud where the work billed for was actually done even

though relator felt the quality could have been better than what was required. While *U.S. ex rel. Estate of Donegan v. Anesthesia Assocs. Of Kansas City, PC*, No. 4:12-cv-0876-DGK, 2015 WL 3616640 (W.D.Mo. June 9, 2015); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465 (9th Cir. 1996); and *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186 (8th Cir. 2010) hold that a defendant can take advantage of a disputed law, here, there is no dispute in the law. The statute has always required at least 15 miles of mountainous terrain or 15 miles of secondary roads. There was always only one definition of these terms in effect. That definition was easy to understand. The characteristics of the road do, or don't meet the requirement. The fact that most of Highway 18 is a four lane freeway, and that the roads from Blue Jay to the hospital are relatively flat negates any claim by Mountains that it did not know whether it complied with the law.

Refinements to that definition in the years since Mountains became a CAH do not relieve Mountains of the duty to comply with the requirement, as noted above. *See Rose Sept. 2016*, *supra*, 2016 WL 5076214, *11-12 affirmed by *Rose*, 2018 WL 4038194. But even if Mountains was confused as to its eligibility as a CAH, once Mountains discovers that it was not eligible for any period of time in the past, and as such was not eligible to receive the CAH monies "mistakenly" paid to it, Mountains must pay those monies back. 42 U.S.C. §1320a-7k. This is Relator's Reverse FCA claim.

**D.   The Existence Of A Regulatory Scheme Is Irrelevant.**

Mountains reargues that CMS' regulatory scheme for handling noncompliance makes this FCA case moot. That there is a regulatory scheme in place[15] does not render the FCA superfluous for the reasons previously explained in

---

[15] Mountains' states that the recertification survey process occurs on an annual basis. (Motion, 21:11-13.) Mountains' exhibit does not support this. Rather, CMS conducts surveys every year but it does not survey every single CAH every year. There is also no evidence that CMS has independently evaluated Mountains' distance requirement and certified it as a CAH. (Motion, 21:6-7). To the extent CMS has conducted a

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Relator's Opposition to Mountains' motion to dismiss the SAC. [See Docket No. 29.] The Ninth Circuit's recent opinion in *Rose* confirms that the existence of a regulatory scheme to deal with noncompliance is irrelevant. The Court affirmed the district court's denial of summary judgment even though the DOE had its own scheme for dealing with noncompliance. See *Rose*, 2018 WL 4038194, *9.

While Mountains invites the Court to accept as true its **unsupported**[16] allegation that CMS has taken no action against it, and speculate on the reasons why CMS has taken no action, both the district court, and the Ninth Circuit in Rose cautioned against such speculation. *Rose Sept. 2016*, 2016 WL 5076214, *6. Therefore, the Court should decline Mountains' speculative conclusion that "the government itself either believes there is no violation of law, or agency experts would prefer, to better administer the programs they are charged with overseeing, that the violation be addressed through administrative channels." (Motion, 20:12-14.) There is nothing to support Mountains' claim that the government has concluded this case has no merit. The government has not moved to dismiss the case. In Tahoe, the government has not declined to intervene. In sum, no one has concluded this is a frivolous lawsuit.

### III.   RELATOR'S CONDITIONAL MOTION TO AMEND

If the Court dismisses any claim for relief, Relator respectfully requests it grant leave to amend pursuant to FRCP Rule 15(a)(2). The practice of allowing leave to amend is important because: (1) the Federal Rules evidence a policy of deciding

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

---

recertification survey since this lawsuit was filed (or even since the OIG Report was issued) there is currently no evidence – because the parties have not conducted discovery – as to what representations Mountains made. Mountains' misuse of the concept reports could very well explain why Mountains remains certified as a CAH. These factual disputes are inappropriate at this stage. *Rose*, 2018 WL 4038194, *5; *Karczewski,* 862 F.3d at 1017.

[16] Mountains has submitted no declaration under penalty of perjury. No such declaration would be admissible at this stage of the proceedings. Factual disputes should not be resolved at this time.

Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Third Amended Complaint

cases on the basis of the substantive rights involved,[17] (2) the Federal Rules expressly provide that leave to amend a complaint should be "freely" given "when justice so requires,"[18] and (3) very real practical problems exist when dealing with complaints filed before any meaningful discovery has taken place, as those complaints are (by definition) drafted with less than perfect knowledge.

While Relator has amended his complaint before, the procedural history here shows that with each amendment, since the TAC was filed, the Ninth Circuit has provided more guidance on the materiality element. To the extent the Court in inclined to dismiss the lawsuit, Relator requests leave to amend to cure any deficiencies, given the Ninth Circuit's ruling in *U.S. ex rel. Rose v. Stephens Institute*, 2018 WL 4038194 [___ F.3d ___ ] (9th Cir. 2018).

## IV.   CONCLUSION

Based on the foregoing, relator respectfully requests that the Court deny Defendant's motion to dismiss this action.

DATED: September 3, 2018      **LAW OFFICE OF ESPERANZA CERVANTES ANDERSON**

By: ***/s/ Esperanza Cervantes Anderson***
         Esperanza Cervantes Anderson, Esq.
         Attorney for Plaintiff/relator
         FRANK ADOMITIS

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

---

[17]   *See, e.g., Tuley v. Heyd*, 482 F.2d 590, 595 (5th Cir. 1973); see also, *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("if the underlying facts relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits").
[18]   *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2), like all of the Federal Rules, is to be "construed and administered" to secure, *inter alia*, the "just" determination of "every action and proceeding." Given that premise, and Rule 15(a)(2)'s own concern with what "justice" "requires," this Court should grant leave to amend.