Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| United States of America, *ex rel.*, Frank Adomitis,<br><br>Plaintiff,<br><br>vs.<br><br>San Bernardino Mountains Community Hospital District;<br>Does 1 through 20, inclusive;<br><br>Defendants. | Case No.: 5:17-cv-00002-JGB-KK<br>(Hon. Jesus G. Bernal)<br><br>**Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the Third Amended Complaint**<br><br>*Date*: September 24, 2018<br>*Time*: 9:00 AM<br>*Courtroom*: 1 |
|---|---|

# Table of Contents
Page

Index of Authorities .................................................................................................... i

Introduction .................................................................................................................1

Argument ..................................................................................................................... 2

    1.    Summation of Relator's Materiality Arguments ......................................... 2

    2.    Relator Fails to Link CAH Certification Requirements With the Government's Obligation to Pay Claims ....................................................... 3

    3.    Perfect Compliance with Regulations is Not Required and the Absence of a Connection to the Payment of Claims is Fatal to Relator's Claims ..... 4

    4.    Implied False Certification Cases Require *Rose's* Two-Part Test .............. 5

    5.    Neither the *Rose* Case Nor Any Other Pleadings Offered by Relator Cure His Deficient Pleadings ................................................................... 7

    6.    The Absence of Past Departmental Action or Any Other Pleading to Show Materiality is Fatal to Relator's Claims ......................................... 10

    7.    Relator Should be Denied Any Further Leave to Amend ........................12

Conclusion ................................................................................................................12

i

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

# Table of Authorities

**Page(s)**

**Cases**

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .................................................................. 9, 10
*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ...................................... 14
*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) ......................................................................... 13
*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ........................................................................... 13
*Rose v. Stephens Inst.*,
    2016 WL 5076214 (N.D. Cal. Sept. 20, 2016) ............................................. 6, 8
*U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*,
    543 F.3d 1211 (10th Cir. 2008) ......................................................................... 4
*U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*,
    2017 WL 4323142 (C.D. Cal. June 27, 2017) ................................................. 4
*U.S. ex rel. Hendow v. Univ. of Phoenix*,
    461 F.3d 1166 (9th Cir. 2006) .................................................................. 10, 11
*United States ex rel. Campie v. Gilead Scis., Inc.*,
    862 F.3d 890 (9th Cir. 2017) ............................................................................ 6
*United States ex rel. Durkin v. Cty. of San Diego*,
    300 F. Supp. 3d 1107 (S.D. Cal. 2018) ............................................................ 4
*United States ex rel. Ferris v. Afognak Native Corp.*,
    2016 WL 9088706 (D. Alaska Sept. 28, 2016) ................................................ 4
*United States ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) .................................................................. 6, 7, 9
*United States ex rel. Mateski v. Raytheon Co.*,
    2017 WL 1954942 (C.D. Cal. Feb. 10, 2017) .................................................. 6
*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) ........................................................................... 10
*United States v. Stephens Inst.*,
    2018 WL 4038194 (9th Cir. Aug. 24, 2018) ............................................ Passim
*Universal Health Servs., Inc. v. United States*,
    136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) .............................................. Passim

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009).................................................................................. 14

Statutes

20 U.S.C. § 1094(a)(20) ............................................................................................ 8
42 U.S.C. § 1395i-4(c)(2)(B)(i)(I) ....................................................................... 2, 3
42 U.S.C.A. § 1395i-4(c)(2)(B) ................................................................................ 5

Rules

Fed. R. Civ. P. 15(a)(2) ............................................................................................13

Regulations

34 C.F.R. § 668.14(b)(22) ........................................................................................ 8
42 C.F.R. § 412.103 ................................................................................................ 12
42 C.F.R. § 485.601 .................................................................................................. 5
42 C.F.R. § 485.601(b) ............................................................................................. 5
42 C.F.R. § 485.610 .............................................................................................. 4, 5
42 C.F.R. § 485.610(c) .................................................................................. 2, 3, 7, 12

## INTRODUCTION

After *four* attempts to provide a complaint to resolve pleading deficiencies and materiality issues, Relator still fails to show materiality, and he cannot plead his case with adequate specificity to show that his claims are material to the government's obligation to pay. Relator now *quixotically* argues against the Court's previous findings and reasoning, with no proper basis. Relator misplaces his faith in <u>United States v. Stephens Inst.</u>, No. 17-15111, 2018 WL 4038194 (9th Cir. Aug. 24, 2018) ("***Rose***").

Relator cannot show that Mountains' Critical Access Hospital ("**CAH**") certification requirements are linked to the government's obligation to pay claims. He misplaces his reliance on a Centers for Medicare & Medicaid Services ("**CMS**") Form 2552-10 cost report. That report only broadly acknowledges compliance with laws in general, and asks demographically whether a hospital has been designated by CMS as a CAH,[1] all in a 161-page financial reporting document.[2] This Form 2552-10 **is a form that every hospital in the US must submit**. It does not show that, post-CAH certification, CMS conditions the payment of claims on a CAH's compliance with location and distance requirements.

Relator fails to repair his pleadings in conformity with the essential pleading requirements found to be necessary by this Court and the scenarios or requirements to establish materiality laid out by *Escobar*. (Dkt. 39). Mountains, contra, has provided ample proof to show that none of Relator's claims are material to the government's payment obligations. Mountains has shown that non-necessary providers continue to operate despite their alleged location and distance requirement deficiencies in the 2013 OIG

---

[1] On question 105, ***of 169 questions***, in the "HOSPITAL AND HOSPITAL HEALTH CARE COMPLEX IDENTIFICATION DATA" portion of the CMS 2552-10.

[2] https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R3P240f.pdf

Report.[3] (Dkt. 41-2). Furthermore, CMS' listing of CAHs scheduled to lose rural status and become urban in October 2014, resulted in ***all of those listed CAH's continuing to retain their CAH status***. (Dkt. 41-3 and 41-4).[4] Critically, Relator has failed to plead a single instance in which CMS took an adverse action against an existing CAH due to either location or distance requirements.

*Escobar* mandates that the true test of materiality is a "rigorous" and "demanding" inquiry into the "likely or actual behavior" of the government to determine whether it "would attach importance to the alleged misrepresentation in determining the [government agency's] choice of action in the transaction." <u>Universal Health Servs., Inc. v. United States</u>, 136 S. Ct. 1989, 2002–03, 195 L. Ed. 2d 348 (2016).

Even with *Rose*, Relator cannot show a history of past departmental or agency actions enforcing 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I)), 42 C.F.R. § 485.610(c), and the Agency's State Operations Manual ("**SOM**"). There are no allegations supporting the materiality of any claim for payment submitted by Mountains. Relator has not shown and cannot show a history of denied claims for an existing CAH's purported failure to comply with the distance or location requirements. In all of Relator's pleadings, no allegations exist to show that the government would recoup money or take any other action for violating these requirements. All of Relator's claims must be dismissed with prejudice.

## ARGUMENT

### 1. SUMMATION OF RELATOR'S MATERIALITY ARGUMENTS

Relator's theory of liability hinges on whether Mountains is or is not a properly established CAH. Relator makes no allegations and finds no qualm with any of the goods or services associated with the claims allegedly submitted by Mountains. Rather, Relator is basing his False Claims Act theory not upon the falsity of claims submitted to the government, but upon Mountains' qualification as a CAH. Relator would now have this

---

[3] Relator concedes that the OIG found that Mountains met the distance requirements in its 2013 Report.

[4] Relator provides this Court with evidence of "immateriality".

Court believe that the existence of repetitive laws, regulation, and agency guidance serve as a dispositive showing of materiality. (Dkt. 43, p. 18).[5] Relator believes that just because the government issues guidance or policies this serves as proof of materiality. (Dkt. 43, p. 15). As explained here and in Mountains' Brief in Support of its Motion to Dismiss, no case law, precedent, statute, or other binding authority stands for the proposition that the promulgation of statutes, regulations, or agency guidance alone is sufficient to establish materiality post-*Escobar*.

## 2. Relator Fails to Link CAH Certification Requirements With the Government's Obligation to Pay Claims

As briefed, Relator's claims challenge the independent decision of CMS and its Regional Officers ("**RO**s") to grant certification and recertification on Mountains' condition of participation as a CAH. However, it is CMS' RO, not Relator, who is "responsible to verify compliance with the distance requirements mandated by 42 C.F.R. § 485.610(c)."[6] Even if an RO determined that recertification of a CAH were to be denied because of distance requirements (which has never happened) -- the result would be decertification following a correction period to re-certify as a hospital -- not recoupment of monies, treble damages, fines, levies, or denial of claims.

No statute, regulation, case precedent, guideline, document, other authority connects CAH certification of distance or location requirements with CMS' payment obligations to Mountains. Relator has failed to find a causal link between Mountains' location and distance requirements in 42 C.F.R. § 485.610 and a requirement to pay claims with either Medicare, Medicaid, or any other government funded program.

---

[5] Relator now argues that 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I), the regulation promulgated by the Agency (42 C.F.R. § 485.610 (c)), and the Agency's State Operations Manual ("**SOM**") are "triple conditions" to show materiality. Relator has previously briefed all of the foregoing to this Court (albeit without calling them "triple conditions"), resulting in two dismissals from this Court. Dkt. 39 and Dkt. 23.

[6] https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107c02.pdf (see page 251).

### 3. Perfect Compliance With Regulations is Not Required and The Absence of A Connection to the Payment of Claims is Fatal to Relator's Claims

The 10th Circuit and other courts, including the Central District of California, have found that perfect compliance with regulations as a condition of payment for either goods or services provided by a provider is not material to the government's obligation to pay, absent a causal connection to payment. *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008); *see also U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*, No. CV1307039SJOJEMX, 2017 WL 4323142, at *15 (C.D. Cal. June 27, 2017) (holding that Medicare cost report certifications requiring compliance with general laws and regulations (like Form 2552) cannot support an express certification theory of liability). A relator "must allege some facts that show that the government actually does not pay claims if they involve the statutory [, regulatory, or contractual] violations in question." *United States ex rel. Ferris v. Afognak Native Corp.*, No. 3:15-CV-0150-HRH, 2016 WL 9088706, at *3 (D. Alaska Sept. 28, 2016) (*cited by United States ex rel. Durkin v. Cty. of San Diego*, 300 F. Supp. 3d 1107, 1127 (S.D. Cal. 2018)).

The reliance upon a cost report and alleged violations of statutory or regulatory provisions alone wholly cannot support FCA claims against Mountains. Relator has failed to show how Mountains' location and distance requirements under 42 C.F.R. § 485.610 or any other applicable regulations or statutes are material or causally connected to the payment of claims by the government. In addition, he cannot plead that the government has denied any claims at an existing CAH because of a failure to meet location and distance requirements, rendering all of his claims appropriate for dismissal with prejudice.

Finally, Relator repeatedly, as he has done previously, argues that the distance requirement is the "first or [sic] only five conditions of participation identified by Congress in the statute authorizing the CAH program", and that this establishes

materiality. This defies the Court's findings,[7] the regulatory regime in place, and Relator's pleadings. Relator does not argue a violation of the statute, which leaves "mountainous terrain" undefined,[8] or the regulation, which leaves "mountainous terrain" undefined,[9] but rather that Mountains does not meet sub-regulatory guidance promulgated in 2013 as to what is "mountainous terrain"[10].

### 4. Implied False Certification Cases Require *Rose's* Two-Part Test

Relator's attempt to plead an implied false certification theory of liability fails as a matter of law. The 9th Circuit has wrestled with whether a Relator must plead specific fraudulent representations about goods or services as a requirement in an implied false certification claim.[11] Previously, this Court determined that it would not address Relator's pleading sufficiency regarding whether Relator had to plead that Mountains "ma[de] specific representations about the goods or services provided to state an implied false

---

[7] Dkt. 39, p. 8 (***emphasis added***): "Pertinent here, 42 C.F.R. § 485.601 states a hospital must meet the conditions set forth in the subpart of the Code of Federal Regulations to be designated as a CAH. 42 C.F.R. § 485.601(b). Among numerous other "conditions of participation" provisions… ***There are numerous laws and regulations a hospital must comply with to receive and maintain CAH designation***, and Relator does not point to a specific regulation, statute, or agreement "explicitly condition[ing]" the payment of claims on the location requirements, unlike in Hendow."

[8] 42 U.S.C.A. § 1395i-4(c)(2)(B).

[9] 42 C.F.R. § 485.610.

[10] Though not at issue at this procedural moment in the case, Mountains does, in fact, meet the statutory, regulatory, and sub-regulatory distance requirements, as briefed in Dkt. 41 at pp. 14-17.

[11] The Ninth Circuit has stated in United States ex rel. Kelly v. Serco, Inc., 846 F.3d 325 (9th Cir. 2017) that an FCA claim under an implied false certification theory requires claims with ***specific*** representations to be actionable in light of *Escobar*. *Kelly*, 846 F.3d 325, 332 (9th Cir. 2017). This interpretation has been adopted by this Court as well. United States ex rel. Mateski v. Raytheon Co., No. 206CV03614ODWKSX, 2017 WL 1954942, at *3 (C.D. Cal. Feb. 10, 2017). The Central District has held "mere claims for payment no longer suffice under an implied certification theory; instead, the claims must contain "***specific*** representations about [the defendant's] performance." *Mateski*, at *5 (citing *Kelly* at *6); United States ex rel. Campie v. Gilead Scis., Inc., 862 F.3d 890, 902 (9th Cir. 2017) (*pending appeal*) (a request for payment is not enough to establish a false claim, there must also be ***specific*** representations about the goods or services provided that are "misleading half-truths."); Rose v. Stephens Inst., No. 09-CV-05966-PJH, 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016) (the two conditions for an implied false certification case are not mandatory).

certification claim." (Dkt. 39, p. 6). There, during oral arguments, the Court noted that if the *Rose* case required a 2-part test for implied false claim theories it would support Mountains.

The *Rose* court so-held, in Mountains' favor. In <u>Rose v. Stephens Institute</u>, 2018 WL 4038194, at *4, the Court found that Escobar's two-part test is a requirement for all implied false claim theories of liability and is binding:

> "[T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes ***specific representations*** about the goods or services provided; and second, the defendant's failure to disclose noncompliance with ***material*** statutory, regulatory, or contractual requirements makes those representations misleading half-truths"—i.e., "representations that state the truth only so far as it goes, while omitting ***critical*** qualifying information."

(*emphasis added*). *Kelly*, 846 F.3d at 332 (*citing*) *Escobar*, 136 S. Ct. at 2000-01.

This Court has determined this is an implied false certification case, hence requiring the two-part test described above. (Dkt. 39, pgs. 6-7). First, Relator has wholly failed to allege, nor could he, a specific representation "about the goods or services provided" by Mountains that was false. Second, and critically, Relator, despite being given multiple opportunities by this Court, has failed to allege how location and distance requirements are material to the government's obligation to pay claims allegedly submitted by Mountains. Relator has attempted to use a Form 2552-10 cost report to show that Mountains is not a qualified CAH. However, this Court has considered this document and determined it to be too generalized to offer any substantive showing of materiality. (Dkt. 39, p. 8-9).[12] Nothing in Form 2552-10 or the other laws, regulations, or documents used by Relator show that noncompliance with location and distance requirements leads the government to "consistently refuse[] to pay claims," reimburse claims at a lower rate, or seek to retroactively recover payments. (Dkt. 39, p. 9) (*citing Escobar*, 136 S. Ct. at 2003).

---

[12] "By contrast, Mountains' claims only certified their compliance with a litany of Medicare rules and regulations, **including CAH status**." ***Emphasis added***.

6
Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

Relator not only fails to allege specific goods or services, he fails to allege how any specific goods or services claimed by Mountains are material and contingent upon satisfying 42 C.F.R. § 485.610(c). Relator's inability, and impossibility, to plead that the alleged goods and services claimed by Mountains are connected with and material to claims for payment eradicates all of Relator's FCA claims against Mountains.

### 5. Neither the *Rose* Case Nor Any other Pleadings Offered by Relator Cure His Deficient Pleadings

Relator attempts to use the *Rose* case, and *Rose v. Stephens Institute*, Case No. 09-cv-5966-PJH, 2016 WL 5076214, *5 (N.D. Cal. Sept. 20, 2016) ("**Rose Sept. 2016**"), as a crutch to support his inability to link claims for payment to CAH conditions of participation. However, an analysis of these cases offers no help to any of Relator's claims, and belies that this Court already knew of the *Rose Sept. 2016* case (citing it in its most recent Order, Dkt. 39, pp. 5-6). Relator further fails to realize that this Court has already dismissed the rationale Relator is belatedly offering when this Court distinguished the *Hendow* case.

The defendant in *Rose*, Stephens Institute, is an art school. *Rose*, 2018 WL 4038194, at *2. For Stephens Institute to qualify for grants through the Department of Education ("**DOE**"), the school engaged in a "program participation agreement," pledging to follow certain requirements in its admission policies. *Id.* One requirement was a prohibition against monetarily incentivizing admission representatives for enrolling more students.[13] *Id.* The school allegedly violated the ***incentive compensation ban*** when it implemented a policy bonusing admissions representatives up to $30,000 for high enrollment numbers.

---

[13] The relators in *Rose* specifically relied upon 20 U.S.C. § 1094(a)(20) and 34 C.F.R. § 668.14(b)(22). Relator in this case wrongly argues that "triple-conditioning" compliance with regulatory statutes or guidance is dispositive of materiality. To the Contrary, *Rose* states that multiple regulatory requirements may be probative evidence of materiality; however, in absence of further supportive evidence it "***may not be sufficient***" to prove materiality. *Rose*, 2018 WL 4038194, at *6.

From a claim submission factual stand point, *Rose* significantly differs from this case. Relator cites in his brief that in *Rose Sept. 2016*, the district court found that a "loan form submitted by [Defendant] shows, …, [Defendant's] ***request for payment*** represents that the student borrower is "eligible" and is enrolled "in an eligible program." (*emphasis added*) (Dkt. 43, p. 4) (*citing*) *Rose Sept. 2016* at *5. The *Rose* Court used the direct submission of a loan form that expressly requested payment for claims to attach liability.

The relators in *Rose* did not rely upon a cost report that merely asks informationally whether the hospital is qualified as a CAH. (Dkt. 43, p. 12). Moreover, no mention is made to any location or distance requirements in the 2552 cost report. (Dkt. 29-1, p. 46). Equally deficient is the cost report not containing any claims for specific goods or services. (Dkt. 29-1). The cost report's demographic/information questions contain questions with nothing to do with CAH certification or qualification. The form asks questions about the method of payment for out-patient services, cost reimbursement for I & R training programs, CRNA fee scheduling, and therapy services. (*Id.*). The cost report is derelict of any specific CAH qualification related questions, such as distance from another hospital. Accordingly, the Form 2552-10 cost report does not serve as a causal link to establish a connection between the payment of claims for specific goods or services and Mountains' location and distance CAH certification requirements. *Rose*, 2018 WL 4038194, at *4, has determined this to be a necessary requirement to any implied false certification claim and the absence of this requirement is fatal to all of Relator's claims.

The relator in *Kelly* faced the same issue that Relator faces in an implied false certification case using cost reports unrelated to actual claims for payment. *Kelly*, 846 F.3d at 329. In *Kelly* the relator alleged that the defendant was falsifying monthly cost reports to make the company's numbers look better than they actually were so the company could make the government's expected budget numbers. *Id.* at 329. However, the 9th Circuit held that FCA claims link liability to actual claims for payment, "not to the underlying fraudulent activity or the government's wrongful payment." *Id.* at 333. (*citing*)

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("The False Claims Act ... focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme."); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) ("[F]or a false statement or course of action to be actionable ..., it is necessary that it involve an actual *claim* ...."). As we have previously stated, "an actual false claim is the *sine qua non* of an FCA violation." *Cafasso, U.S. ex rel.*, 637 F.3d at 1055 (*citation and alterations omitted*).

"The False Claims Act is not ... a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S.Ct. at 2003. The *Rose* Court followed *Escobar's* materiality analysis in determining that "even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability." *Rose*, 2018 WL 4038194, at *6 (*citing Escobar*, 136 S.Ct. at 1996). Moreover, "the label the Government attaches to a requirement" is not dispositive. *Escobar*, 136 S.Ct. at 1996.[14]

The facts involved in *Rose* are drastically different from the allegations alleged in Mountains. In *Rose* the relators were at least able to show that the government payments to Stephens Institute were "conditioned on compliance with the incentive compensation ban, because of the Department's past enforcement activities…" *Id*. at *6. The government's **actual pursuit** against other schools for incentive compensation ban violations, **including the imposition of monetary sanctions**, showed that the government at least "care[d] about violations of the incentive compensation ban and did not allow

---

[14] In Judge N.R. Smith's dissent in *Rose*, the materiality analysis is not "*whether* payment is conditioned on compliance but *whether* the government would truly find such noncompliance material to a payment decision." *Rose*, 2018 WL 4038194, at *9. In addition, the United States Supreme Court repeatedly mentioned that materiality is "rigorous" or "demanding." *Escobar*, 136 S.Ct. at 1996. "[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," *Id*. at *6 (*citing*) *Escobar*, 136 S.Ct. at 2002.

9
Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the Third Amended Complaint
Case No.: 5:17-cv-00002-JGB-KK

schools simply to continue violating the ban while receiving Title IV funds." <u>Id</u>. at *7-8.[15] Moreover, the relators in *Rose* showed that the DOE actually took either remedial measures or other sanctions such as requiring corrective action ***or seeking monetary penalties*** because of specific violations of the incentive compensation ban. <u>Id</u>. at *8. Relator does none of the foregoing, nor can he.

Finally, Relator simply fails to recognize that this Court has already squarely addressed this issue and found Relator lacking. The *Rose* case is the progeny of *Hendow* – both are cases about alleged Title IV incentive compensation ban violations. This Court has previously determined that *Hendow* (and hence *Rose*) differs from the case-at-hand.[16]

### 6. The Absence of Past Departmental Action or Any other Pleading to Show Materiality is Fatal to Relator's Claims

In stark contrast to *Rose*, the government has taken no regulatory action when faced with alleged distance and location requirement violations for existing CAHs. Frank R. Howard Memorial Hospital, and Colorado River Medical Center (non-necessary providers found to have not met the distance or location requirements by the OIG), and all other like hospitals detailed in the 2013 OIG Report, are irrefutable examples to show that the government does not find the distance and location requirements to be material to the

---

[15] Although *Rose* predicates a showing of materiality with what the government has done in the past with related violations of the law, *Escobar* requires a "rigorous" and "demanding" inquiry into the "likely or actual behavior" of the government to determine whether it "would attach importance to [the misrepresentation] in determining [its] choice of action in the transaction." *(dissent) Rose*, 2018 WL 4038194, at *12 (*citing*) <u>Escobar</u> 136 S.Ct. at 2002-03. Judge N.R. Smith, in his dissent, found that the facts in *Rose* were not enough to withstand the "rigorous" and "demanding" inquiry into the "likely or actual behavior" of the Government to determine whether it "would attach importance to [the misrepresentation] in determining [its] choice of action in the transaction." <u>Id.</u>

[16] See Dkt. 39 at 7-8, ***emphasis added***: "In <u>Hendow</u>, the court analyzed an FCA implied false certification claim alleging a university falsely certified its compliance with the incentive compensation ban… There are numerous laws and regulations a hospital must comply with to receive and maintain CAH designation, and Relator does not point to a specific regulation, statute, or agreement "explicitly condition[ing]" the payment of claims on the location requirements, ***unlike in <u>Hendow</u>***. Moreover, the <u>Hendow</u> court distinguished between educational funds and the Medicare context, where regulatory compliance was "ensured by peer review and extensive monitoring." 461 F.3d at 1177."

government's obligation to pay claims at the CAH rate. (Dkt. 41-2). Relator concedes that "both continue to assert compliance with the distance requirement in Form 2552 cost reports," despite the government's knowledge of alleged distance and location requirement violations. (Dkt. 43, p. 16). Furthermore, Relator has shown that despite the OIG identifying various CAH's with alleged "rural status" violations in 2014 (as opposed to distance issues at-hand),[17] there is still yet to be one documented instance of a regulatory action taken against an existing CAH because of a "rural status" location requirement under 42 C.F.R. § 412.103. (Dkt. 41-3) and (Dkt. 41-4). In retort, Relator argues (without support) that between 8 and 15 unidentified CAHs have been decertified, but has failed to identify which hospitals or the reason for any of these unsupported alleged decertifications.[18] Not only can Relator not show that CMS has, in the "mine-run" of cases, denied payment to existing CAHs based on alleged distance violations, even when stretching to an unrelated "rural status" issue, Relator still fails.

With 4 four iterations of his complaint, Relator has still pled no additional facts to show materiality. Unlike *Rose*, the record here is derelict of any previous past regulatory enforcement activities by CMS against certified CAHs because of a purported failure to meet distance or location requirements. *Rose* and its lower court decisions offer no help to Relator. Relator cannot simply claim CAH conditions of participation under 42 C.F.R. § 485.610(c), or many other applicable COPs, are material to claims submitted for payment without pleading previous regulatory action by CMS taken against existing CAH's for location and distance requirement violations. *Rose,* 2018 WL 4038194, at *6. Furthermore, Relator's misplaced faith in the statute, regulation, regulatory guidance, the

---

[17] Rural status has nothing to do with distance requirements, as previously briefed in Dkt. 41.

[18] Did Relator compare the number of CAHs in 2013 versus in 2018? Where did this number come from, and why were the CAHs purportedly decertified? We are left to speculate – and being left to speculate is quite telling in this matter. CAH decertification could be the result of a multitude of different reasons that require speculation beyond the jurisdiction of this Court, such as bankruptcies. See, *e.g.*, https://www.hrsa.gov/enews/past-issues/2017/october-19/hospitals-closing-increase.html.

2013 OIG Report, and the CMS Operations Manual, all previously brought before this Court by Relator, provides no support to determine the likelihood of CMS' determination to pay claims. *Escobar*, 136 S.Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."). ***Despite agency standards for CAH's changing in 2013, CMS has not taken one adverse action against an existing CAH for alleged location and distance requirement related issues, despite CMS having a list of purportedly non-compliant CAHs[19] prepared by the OIG!*** The absence of history establishing a pattern of denied claims or governmental adverse action against existing CAHs for location or distance violations terminates the viability of all FCA claims against Mountains.

### 7. Relator Should be Denied Any Further Leave to Amend

This Court has determined that another "request for leave to amend is unlikely to be granted. (Dkt. 39, p. 11). If Relator is allowed to re-plead yet a fourth time it is highly unlikely that such an endeavor will satisfy pleading requirements in conformance with Fed. R. Civ. P. 15(a)(2), and it will violate the five factors weighing against amendment articulated in *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). See also *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); and, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009). No further pleading by Relator will create materiality or repair Relator's pleading deficiencies. Accordingly, any further attempt to amend would be futile and only cause further undue cost and expense. *Zucco Partners, LLC*, 552 F.3d at 1007.

### CONCLUSION

Allowing this suit to proceed would open the door to country wide parasitic FCA claims against CAHs around the country. Strong public policy favors dismissal.

---

[19] That doesn't include Mountains.

*CMS has a strong interest in ensuring access to care in areas like the one that Mountains services.* Mountains respectfully asks this Court to dismiss this case with prejudice.

Dated: September 10, 2018

/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community Hospital District

# PROOF OF SERVICE
## STATE OF MICHIGAN, COUNTY OF OAKLAND

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On September 10, 2018, I served true copies of the foregoing document(s) described as **Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion to Dismiss the Third Amended Complaint**

on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

1. I declare under penalty of perjury under the laws of the United States of America
2. that the foregoing is true and correct and that I am employed in the office of a member of
3. the Bar of this Court at whose direction the service was made.
4. Executed on September 10, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre

4832-4416-4209, v. 7