UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 17-00002 JGB (KKx) | Date | September 27, 2018 |
|---|---|---|---|
| Title | *United States of America, et al. v. San Bernardino Mountains Community Hospital District, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order GRANTING Defendant's Motion to Dismiss and DISMISSING the Third Amended Complaint (Dkt. No. 41) WITHOUT Leave to Amend (IN CHAMBERS)

Before the Court is Defendant San Bernardino Mountains Community Hospital District's motion to dismiss Relator Frank Adomitis's Third Amended Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. ("Motion," Dkt. No. 41.) The Court held a hearing on September 24, 2018 and took the Motion under submission. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion and DISMISSES the Third Amended Complaint WITHOUT leave to amend.

## I. BACKGROUND

### A. Procedural Background

On January 3, 2017, Relator Frank Adomitis filed a complaint, on behalf of the United States of America, against Defendant San Bernardino Mountains Community Hospital District ("Mountains," (Dkt. No. 1.) The United States filed its notice, declining to intervene on May 10, 2017. (Dkt. No. 6.) Relator filed his First Amended Complaint on November 13, 2017. ("FAC," Dkt. No. 17.) On January 29, 2018, the Court granted Defendant's motion to dismiss the FAC. ("First Dismissal Order," Dkt. No. 23.)

Relator filed a second amended complaint on February 20, 2018. ("SAC," Dkt. No. 26.) The Court granted Defendant's motion to dismiss the SAC on June 14, 2018. ("Second Dismissal Order," Dkt. No. 39.) On June 22, Relator filed his Third Amended Complaint. ("TAC," Dkt. No. 40.) Relator's TAC raises three causes of action: (1) knowingly presenting false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A); (2) using false records or statements material to false claims under the FCA, 31 U.S.C. § 3729(a)(1)(B); and (3) failing to refund overpayments owed to the government in violation of 31 U.S.C. § 3729(a)(1)(G). (TAC ¶¶ 63-76.)

Mountains moved to dismiss the TAC on July 6, 2018. (Dkt. No. 41.)[1] On August 31, 2018, United States filed a statement of interest regarding specific issues raised in the Motion.

---

[1] In its motion, Mountains also requested judicial notice, which Relator did not oppose, of the following materials: the February 12, 2016 Centers for Medicaid and Medicare Services' ("CMS") Policy, Critical Access Hospital (CAH) Recertification Checklist for Evaluation of Compliance with the Location and Distance Requirements, (Exh. 1); Current CMS Provider Information Forms for Four California Hospitals, (Exh. 2); CMS Publication "Critical Access Hospitals Located in Counties That Will Lose Rural Status and Become Urban Effective October 1, 2014," (Exh. 3); Hospitals Located in Counties That Were Expected to Lose CMS Rural Status but Remain Critical Access Hospitals, (Exh. 4); Transportation Concept Report, State Route 18, District 8, (Exh. 5); Transportation Concept Report, State Route 173, District 8, (Exh. 7); Transportation Concept Report, State Route 189, District 8, (Exh. 8); April 19, 2013 CMS Guidance, Clarification of the Criticam Access Mountains (CAH) Criteria for Rural Location and Mountainous Terrain Distance Standard, (Exh. 9); and September 7, 2007, CMS Guidance, Critical Access Hospittals (CAHs): Distance from Other Providers and Relocation of CAHs with a Necessary Provider Designation, (Exh. 10). (Motion at 3-4.)

A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court finds that Exhibits 1-5 and 7-10 are proper subjects of judicial notice, as these are government agency documents in the public record and their accuracy "cannot reasonably be questioned." See, e.g., Paralyzed Veterans of America v. McPherson, 2008 WL 4183981, at *6 (N.D. Cal. Sep. 9, 2008) (taking judicial notice of documents on the California Secretary of State's website); United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citation omitted) ("Public records and government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet.").

Defendant has not requested judicial notice of Exhibit 6, a screen shot of a Google map depicting a suggested route between Mountains and St. Bernardine Medical Center ("St. Bernardine"). While the Court does not take notice of this document, it has consulted a Google map of the relevant area, and takes judicial notice of the geography of the area and possible routes

("Second U.S. Statement," Dkt. No. 42.) On September 3, 2018, Relator opposed the Motion. ("Opposition," Dkt. No. 43.) Mountains replied on September 10, 2018. ("Reply," Dkt. No. 31.)

### B. Factual Background

In its First Dismissal Order, the Court gave a detailed overview of how the U.S. Department of Health and Human Services, through the Centers for Medicaid and Medicare Services' ("CMS") administers the Medicare program and certification of Critical Access Hospitals ("CAHs"), (First Dismissal Order at 2-3). The Court will again briefly summarizes this program: Medicare reimburses CAHs at higher rates than other acute care hospitals. (TAC ¶ 15.) In order to qualify and be certified as a CAH, a hospital offering acute care services must meet a number of requirements set forth in the CAH Conditions of Participation, including two location-related requirements. (Id. ¶¶ 17-18.) First, they must be located in a rural area. (Id. ¶ 18.) Second, they must be located either (a) more than a 35-mile drive from a hospital or another CAH or (2) more than a 15-mile drive from a hospital or another CAH in areas of mountainous terrain or areas where only secondary roads are available. (Id. ¶ 19 (citing 42 C.F.R. § 485.610(c)).)

The Court also detailed the allegations against Mountains in its First and Second Dismissal Orders, see First Dismissal Order at 3-4; Second Dismissal Order at 3-4, which remain for the large part unchanged. Mountains, opened in 1947, is a 37-bed facility located in Lake Arrowhead, California. (SAC ¶ 8.) Mountains is operated under the San Bernardino Mountains Community Healthcare District. (Id.) Around April 17, 2002 Mountains received an analysis showing it would have earned an additional $173,369 in Medicare reimbursement for the year analyzed if Mountains had been a CAH. (Id. ¶ 29.) One month later, on May 16, 2002, Mountains applied for CAH status, with Mountains' CEO James Hoss affirming they met the distance requirement. (Id. ¶ 30.) In July 2002, Mountains was certified as a CAH. (Id. ¶ 32.)

Relator alleges Mountains does not meet the location requirements for CAH certification. (Id. ¶ 34.) First, Relator claims there are two routes between Mountains and the nearest hospital, St. Bernardine, which are both 23.9 miles long and feature less than 15 miles of secondary roads or mountainous terrain: a route along California state highways 18 and 173 (the "18/173 Route") and a route along California state highways 18, 189, and 173 (the "18/189/173 Route"). (Id. ¶¶ 35-36.) Since 2002, Mountains has filed for reimbursements from Medicare for healthcare services provided to Medicare beneficiaries using CMC Form 2552, at rates authorized only for CAHs. (Id. ¶ 37.) Form 2252 contains certification statements that the

---

between the two Mountains and St. Bernardine. See United States v. Schultz, 537 F. App'x 702, 705 (9th Cir. 2013) ("We may take judicial notice of maps, including Google Maps, to determine distances and locations"); United States v. Perea-Rey, 680 F.3d 1179, 1182 (9th Cir. 2012) (taking notice of a Google map and satellite image as a "source whose accuracy cannot reasonably be questioned" for determining the "general location" of a home) (internal quotations omitted). The Court has not relied on Google maps to determine legally salient distances.

information provided is truthful and in compliance with the laws and regulations. (Id. ¶¶ 37-38.) As a result, Medicare has paid millions more dollars to Mountains than that to which it was legally entitled. (Id. ¶ 65.)

From July 1, 2007 through November 24, 2008, Relator worked as the Chief Financial Officer for Defendant Mountains. (TAC ¶ 55.) During his employment at Mountains, Relator was required by Hoss to submit claims to CMS representing Mountains as a CAH. (Id.) Hoss told Relator that Mountains was a CAH because it met the distance requirements. (Id.) Relator also alleges that, while he worked at Mountains, Defendant purposefully did not conduct a survey or audit to recertify or verify it met the CAH criteria, and Defendant was or should have been aware it did not meet the distance requirements. (Id. ¶ 57.)[2] In particular, Relator claims Hoss as well as other board members lived in Lake Arrowhead, California or areas of San Bernardino that would have required routine travel on Highway 18 sufficient to put them on notice Mountains did not meet the distance requirement. (Id. ¶ 55.)

In August 2013, the Department of Health and Human Services Office of Inspector General issued a report entitled *Most Critical Access Hospitals (CAHs) Would Not Meet the Location Requirements if Requires to Re-Enroll in Medicare* ("OIG Report"). (Id. ¶ 24.) The OIG Report identified 846 hospitals that would not meet the location requirements for CAH certification if required to re-enroll in August 2013. (Id. ¶ 25) The OIG Report identified four hospitals located in the state of California that did not meet the CAH location requirements, but did not identify Mountains as one of them. (Id. ¶ 26.)

## II.   LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). In considering a Rule 12(b)(6) motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint, and construes the pleadings in the light most

---

[2] Relator again alleges Mountains was on notice due to its earlier litigation in 1995, dismissing Mountains' action to be classified as a "sole community hospital." (TAC ¶ 57.) However, the Court has already held that the 1995 litigation is "of questionable relevance" to the alleged fraud at issue here. Second Dismissal Order at 4 n. 4.

favorable to the nonmoving party.  See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Claims brought under the FCA must be pleaded pursuant to Federal Rule of Civil Procedure Rule 9(b).  Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pleaded with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b) applies also where the claim is "grounded in fraud" or "sound[s] in fraud."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false."  Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483 at *5 (C.D. Cal. Oct. 24, 2016) (quoting Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).  In the Ninth Circuit, it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  Ebeid, 616 F.3d at 999 (quoting United States ex rel. Grubbs v. Ravikumar Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).  However, "[m]ere conclusory allegations of fraud are insufficient."  United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016).

### III. DISCUSSION

Defendant argues Relator cannot establish Mountains failed to meet the minimum distance required by CMS, that Relator's reliance on sub-regulatory guidance issued by CMS is insufficient to support a claim under the FCA, and that Relator's claims lack materiality.  See Motion.  The Court considers each argument in turn.

A false certification claim under the False Claims Act requires (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit money due.  United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011).  The false statement requirement may be satisfied by either express or implied false certification.  Express false certification "means that the entity seeking payment falsely certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted."  United States ex rel. Scott Rose, et al., v. Stephens Institute, 2018 WL 4038194 (9th Cir. Aug. 24, 2018) ("Rose") (citing Ebeid ex rel. United States v. Lungwitz, 616 F. 3d 993, 998 (9th Cir. 2010) (internal quotations omitted).

A complaint alleging *implied* false certification, on the other hand, must plead with particularity allegations that "provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation."  Ebeid, 616 F.3d 993, 998 (9th Cir. 2010).  Thus, a relator can show implied false certification by "pointing to noncompliance with a law, rule, or regulation that is necessarily implicated in a defendant's claim for payment."  Rose at *4.

Two additional conditions must be satisfied in order to plead implied false certification: First, the Relator must show the claim does not merely request payment, but also makes specific representations about the goods or services provided. Rose at *4 (citing Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2001 (2016)). Second, the Relator must show defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. Id. (citing Escobar, 136 S. Ct. at 2001). Though prior to Rose District Courts in this Circuit were split on whether Escobar established a required two-part test for implied false certification claims, the Ninth Circuit's decision in Rose has now clarified that Relators "must satisfy Escobar's two conditions to prove falsity" under the FCA. Rose at *4.

### A. Compliance with CAH minimum distance requirements

As the Court has previously held, the core of Relator's FCA claim is that the falsity of the submitted claims resides not in the claims themselves, but in the external question of whether Mountains does or does not properly qualify as a CAH. Thus, if Relator can show that Mountains does not meet the location requirements for designation as a CAH, then each reimbursement claims may give rise to a false certification, so long as Relator also shows that the distance requirements were material and that Defendant knowingly misrepresented its compliance with them. Conversely, if Relator cannot show that Mountains failed to meet the location requirements for designation as CAH, then his claim must fail.

Previously, the Court held that disputes over the labelling of segments of the route as mountainous terrain or secondary roads were "issues of fact and proof that are not properly before the Court on a motion to dismiss," and that the Court must "take as true Relator's factual assertions of the distance between Mountains and the nearest hospital, and the conclusion that parts of the route are or are not mountainous terrain or secondary roads as designated by CMS." (Second Dismissal Order at 7.) See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009) (at the 12(b)(6) stage, the Court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs"). Along with its most recent Motion, Defendant submitted public records published by CMS and the California Department of Transportation ("CalTrans") and argues that this question may be decided in its favor at the pleading stage. (Motion at 14-17.) The Court has taken judicial notice of Defendant's new submissions and will revisit this question in light of them. When considering a motion to dismiss, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" nor "conclusory allegations which are contradicted by documents in the complaint." Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014).

The only location requirement given in 42 C.F.R. § 485.610, which details the conditions of participation in the CAH program, is that CAHs must be "located more than a 35–mile drive (or, in the case of mountainous terrain or in areas with only secondary roads available, a 15–mile

drive) from a hospital or another CAH…"[3] 42 C.F.R. § 485.610(c).  To clarify the meaning of this application, CMS has at times provided guidance on the meaning of the "mountainous terrain and secondary roads" requirement.  Relator has alleged that, prior to April 19, 2013, CMS defined "mountainous terrain" as areas identified as such on any official maps or other documents published by the State agency responsible for highways in the State (typically a Department of Transportation or Highways) or by the United State Geological Survey.  (TAC ¶19 n. 3.)  On April 19, 2013, the Director of the CMS Survey and Certification Group issued a memorandum offering guidance on this question and stating that roads meet the mountainous terrain requirement if they are:

- Located in a mountain range; and
- Have either of the following the following characteristics:
  - Consist of extensive sections of roads with steep grades (i.e. greater than 5 percent), continuous abrupt and frequent changes in elevation or direction, or any combination of horizontal and vertical alignment that causes heavy vehicles to operate at crawl speeds for significant distance or at frequent intervals; or
  - The roads on the travel route are considered by the State Transportation or Highway agency to be located in the mountainous terrain based on significantly more complicated than usual construction techniques required to achieve compatibility between the road alignment and surrounding rugged terrain.

Memorandum from Director, Survey and Certification Group, Centers for Medicare & Medical Services, "Clarification of the Critical Access Hospital (CAH) Criteria for Rural Location and Mountainous Terrain Distance Standard," 13-26-CAH (April 19, 2013) ("Mountainous Terrain Memo") (Dkt. No. 41-9.)

As to the secondary roads requirement, the current CMS's State Operations Manual, ("CMS Manual") states that secondary roads are roads "where there are no primary roads."  CMS Manual, Pub. No. 10-007, Ch. 2 § 2256A.  Primary roads are defined as "any US highway," OR "a numbered State highway with 2 or more lanes each way," OR "a road shown on a map prepared in accordance with the U.S. Geological Survey's Federal Geographic Data Committee …Cartographic Standard for…as a "primary highway, divided by median strip."  Id.  Thus, state highways with only one lane in each direction, commonly referred to as "two-lane highways," are secondary roads for the purposes of the CAH location qualification.

Relator presents two possible routes between St. Bernardine and Mountains which he claims demonstrate that Mountains is non-compliant: the 18/173 Route and the 18/189/173 Route.  (TAC ¶ 36.)  Travelling from St. Bernardine, the 18/173 Route follows State Highway 18 for approximately 20 miles before turning onto State Highway 173 for approximately 4.3 miles to arrive at Mountains.  The 18/189/173 Route follows a similar route, beginning with approximately 20 miles along Highway 18, but exits Highway 18 approximately 3 miles earlier

---

[3] Unless designated as a necessary provider, which Mountains is not.

than the 18/173 Route and arrives at State Highway 173 via a short detour along State Highway 189. (See TAC ¶ 36.)

Relator argues that neither of these routes have sufficient secondary roads or mountainous roads to meet the CAH location requirements. As to the "mountainous terrain" requirement, Relator's TAC presents descriptions of the physical characteristics of segments of the 18/189/173 and 18/17 Routes in order to demonstrate that they do not fall under the description of "mountainous terrain" provided by the CMS Mountainous Terrain Memo. (TAC ¶ 36.) Relator also alleges that both routes contain only 12.4 miles of secondary roads. (Id.)

Were the physical characteristics of a road the only means of determining whether the mountainous terrain requirement was met, the Court would find that the question of the designation of the 18/173 and 18/189/173 Routes is a mixed question of law and fact which cannot be resolved through a Rule 12(b)(6) motion. However, a road may also meet the mountainous terrain requirement if it has been designated as mountainous by the relevant state transportation agency, notwithstanding whether it meets the other criteria under the CMS guidance memo. Mountainous Terrain Memo at 1. The Court has taken judicial notice of the CalTrans Transportation Concept Report, State Route 18, District 8, which describes and classifies segments of Highway 18 in the relevant area. ("Highway 18 Report," Dkt. No. 41-5.) The report clearly shows that Sections 3, 4, an 5 of Highway 18, which together comprise 15.12 miles of Relator's 18/173 Route from St. Bernardine to Mountains, have all been designated as "Mountainous" by CalTrans. (Highway 18 Report at 6, 12.) Thus, under the clear language of the guidance issued by CMS, over 15 miles of the 18/173 Route qualify as "mountainous terrain." The 18/189/173 Route, however, avoids Section 5 of Highway 18 by turning off on to Highway 189. Thus, only the 12.34 miles of Sections 3 and 4 of Highway 18 have been designated as mountainous by CalTrans. However, while the Highway 189 detour has not been designated as "mountainous" by CalTrans, it is made up exclusively of two-lane state highway – that is, of secondary roads.

Relator argues that neither the statute nor the guidance support a "mix and match" approach to secondary roads and mountainous terrain. (Opposition at 11.) Rather, Relator argues, to meet the CAH requirement, there must be at least 15 miles of *exclusively* mountainous terrain *or* secondary roads between the qualifying CAH and the nearest hospital or other CAH. (Id.) While the Court acknowledges that there is no clear authority on this question, it is not persuaded by Relator's argument that qualifying routes must be exclusively either mountainous *or* secondary in order to qualify under the location requirement. First, Relator's interpretation is at odds with the plain purpose of the statute, its implementing regulations, and subsequent sub-regulatory guidance: ensuring access to medical care. See Baylor Cty. Hosp. Dist. v. Burwell, 163 F. Supp. 3d 372, 382 (N.D. Tex. 2016), aff'd sub nom. Baylor Cty. Hosp. Dist. v. Price, 850 F.3d 257 (5th Cir. 2017); CMS Manual § 2256F ("The intent of the CAH program is to keep hospital-level services in rural communities, thereby ensuring access to care…"). By it's plain language, 42 U.S.C. § 195i-4(C)(2)(B) is meant to make adjustments for increased inconvenience and travel time cause by being limited to driving either on mountainous or secondary roads. The provision of the same, significantly diminished distance requirements for both mountainous and

secondary roads suggests that Congress recognized that both categories of road presented equivalent barriers to hospital accessibility. The Court can think of no reason why either the statute or its implementing regulations and guidance would provide for accessibility accommodations where only one kind of accessibility barrier were present, rather than a mixture of them. Relator provides no answers in his briefing, and the Court finds nothing to support this position.

Rather, the Court finds that a calculation which takes into account both accessibility barriers is permissible under the language of the statute and implementing regulations. The CMS Manual provides some guidance for this position, as it explicitly states that a CAH may meet the distance requirement so long as there are 15-miles of mountainous terrain *in total* along the route the nearest hospital or other CAH, even if the mountainous sections are separated by sections of non-mountainous terrain. CMS Manual § 2256A, "Verification Criteria." Similarly, "[a] CAH may qualify for application of the "secondary roads" criterion if there is a combination of primary and secondary roads between it and any hospital or other CAH, so long as more than 15 of the *total* miles … consists of areas in which only secondary roads or available." Id. (emphasis added). While the Court has found no other guidance on this issue, it is satisfied that the 15-mile requirement may be satisfied by any combination of mountainous terrain or secondary-roads, so long as there is no route between the CAH and the nearest hospital or CAH that does not have a total of 15-miles of such accessibility barriers.[4]

Relator raises two additional arguments in support of his claim that Mountains does not meet the distance requirement: first, that CalTrans never provided CMS with a letter designating the roads in question as mountainous and, second, that the CalTrans designations are not themselves based on the road characteristics requirements described in the Mountainous Terrain Memo.[5] (Opposition at 10-11.) Relator makes the allegations only "on information and belief," and provides no details as to the mountainous terrain designation process actually used by CalTrans. (TAC ¶ 36(v).) While the Court will address the sufficiency of this pleading in greater detail below, it finds that it cannot, based on the pleadings, determine that Mountains is fully in compliance with the distance requirements of CMS. Defendant's non-compliance boils down to the following questions: (1) whether CalTrans based its designation of portions of state

---

[4] Relator cites Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994) in support of its argument that the Court should not read the disjunctive "or" as allowing a "mix and match" interpretation of the statute and regulation. The Court does not find that Hawaiian Airlines states any such broad principle as to the interpretation of the disjunctive word "or." To the extent that it is apposite, Hawaiian stands primarily for the well-established principle against surplusage in statutory interpretation, upon which the Court's reading of §486.610(c) does not tread.

[5] Though Relator alleges that CalTrans never provided CMS with a letter designating the roads in question as mountainous, whether or not the status of the roads was properly documented is not relevant to allegations of fraud.

highway 18 as mountainous on factors similar to those listed in the Mountainous Terrain Memo and (2) whether CalTrans provided CMS with a letter in support of this designation.

However, as Relator alleges, prior to April 19, 2013, CMS considered roads in areas identified as "mountainous terrain" on any official maps or other documents published by the State agency responsible for highways in the State (typically a Department of Transportation or Highways) or by the United State Geological Survey, as satisfying the mountainous terrain requirement. (TAC ¶19 n. 3.) Relator has not alleged that CalTrans did not designate state highway 18 as mountainous prior to April 19, 2013, and indeed has made no allegations regarding the designation of either of its described routes. Because Relator has not sufficiently alleged facts to support a conclusion of non-compliance prior to April 19, 2013, the Court DISMISSES all claims arising from requests for reimbursement filed prior to April 19, 2013.

### B. Rule 9(b) pleading requirements

While Relator has sufficiently pled non-compliance with the location requirements after April 19, 2013, the narrow and technical bases on which his allegations of regulatory non-compliance rest raises significant doubt as to the sufficiency of his allegations of fraud. Defendant argues that "ambiguous regulatory confusion" such as that on which Relator's allegations rest, is not a proper subject of an FCA claim, citing Hagood v. Sonoma County Water Agency, 81 F. 3d 1465, 1477 (9th Cir. 1996). But the Ninth Circuit subsequently clarified that Hagood "does not stand for the proposition that a "reasonable interpretation" of a regulation precludes falsity." U.S. ex rel. Oliver v. Parsons Co., 195 F.3d 457, 463 (9th Cir. 1999). Rather, it held, even claims involving regulations that are "unquestionably technical and complex" may properly be brought under the False Claims Act. Id.

Still, the FCA does not authorize qui tam actions simply to enforce agency regulations: Relators must allege fraud. Thus, while false certification of compliance with technical regulatory requirements may properly be subject to suit under the FCA, Relator must also allege with specificity the other required elements of fraud in order to state a claim, i.e. scienter, materiality, and causation. United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011). Thus, the relevant question here is not the complexity of the regulation or the reasonableness of Defendant's reliance on the CalTrans designation, but rather whether Defendants knew if the CalTrans designation was not properly based on the factors in the Mountainous Terrain Memo and thus whether the scienter requirement was met. Id. While the Court accepts, for the purposes of this motion, that CalTrans' designation of highway 18 as mountainous was *not* based on the proper CMS criteria, it finds that Relator has made no allegations whatsoever that Defendant knew or should have known this fact. Rather, Relator's complaint alleges only that some executive officers of Mountains commuted along the relevant routes.

These allegations are insufficient, as Defendant's knowledge of the physical characteristics of the Routes has no bearing on their knowledge of the CalTrans designation. "Under the FCA's scienter requirement, 'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability." United States v. Cmty.

Recovery Res., Inc., No. 2:13-CV-01004-TLN-AC, 2017 WL 2257175, at *12 (E.D. Cal. May 23, 2017) (quoting United States v. Corinthian Colleges, 655 F.3d 984, 996 (9th Cir. 2011). Thus, while the requirements of Rule 9(b) are "relaxed" with respect to matters within the opposing party's knowledge, such as scienter, a Relator must still plead "the facts upon which the belief is founded" sufficiently to make entitlement to relief plausible. See Puri v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017); U.S., ex rel. Modglin v. DJO Glob. Inc., 114 F. Supp. 3d 993, 1011–12 (C.D. Cal. 2015), aff'd sub nom. United States v. DJO Glob., Inc., 678 F. App'x 594 (9th Cir. 2017). Because Relator has failed to demonstrate knowledge of non-compliance, each of his causes of action must fail. See Escobar, 136 S. Ct. at 2002 (noting that concerns about fair notice and open-ended liability under the FCA "can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements") (internal citations omitted).[6] The Court therefore GRANTS Defendant's Motion and DISMISSES all claims.

### C. Materiality

The technical quality of Defendant's non-compliance also significantly narrows the question of whether Defendant's alleged false certifications were material. To establish materiality, the false statement or conduct must be "material to the government's decision to pay out moneys to the claimant." United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1173 (9th Cir. 2006). The "key question is whether the government is likely to attach significance to the [statutory, regulatory, or contractual] requirement in deciding whether to tender payment." United States v. Celgene Corp., 226 F. Supp. 3d 1032, 1049 (C.D. Cal. 2016) (citing Escobar, 136 S. Ct. at 2002-03 (2016)). As this Court has previously noted in its First Dismissal Order, the Supreme Court has stated that "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Escobar, 136 S. Ct. at 2003.

Thus, a "condition of payment" is not automatically dispositive of materiality, but is relevant. Rose at *5 (citing Escobar, 136 S. Ct. at 2001.) Nor is it sufficient to allege that the government "would have the option to decline to pay if it knew of the defendant's noncompliance." Id. at 2003. Rather, the core of the materiality test is "'the effect on the likely or actual behavior of the recipient of the alleged misrepresentation,' meaning the government." Rose at *5 (quoting Escobar 136 S.Ct. at 2002.) Here, Relator has not pled facts sufficient to support the claim either that CalTrans' failure to properly base its designation on CMS criteria would lead to de-certification of Mountains or that Defendant's knowing false certification of such designation would have had a direct impact on CMS's payment of claims *without prior termination* of the hospital's CAH status.

Past department actions bear heavily on the materiality analysis. In Rose the Ninth Circuit looked to three scenarios of past departmental action bearing on materiality: (1) whether

---

[6] Though the majority in Rose referred diminished this language as giving "flavor," it was in the context of a discussion of the applicable test for materiality, not the separate scienter requirement. Rose at *5.

the government consistently refuses to pay claims in the mine run of cases based on noncompliance with the relevant certification; (2) whether the government has paid a particular claim in full despite actual knowledge of non-compliance with the relevant certification; and (3) whether the government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated. Rose at *7. Relator has made no allegations as to the first or second scenarios. The third scenario, however, weighs strongly against a finding of materiality in this case, as Relator has scarcely shown that CMS has taken *any* action in response to violations of technical provisions of their guidance regarding the CAH location requirement. Rather, the TAC shows that the 2013 OIG report found that 846 CAHs have been identified as non-compliant with the CMS location requirements – that is, nearly two-thirds of all CAHs. (TAC ¶ 25.) Four of those 846 hospitals were located in California, not including Mountains, which was not identified as a non-location compliant hospital. (TAC ¶ 26.) Of those, all four retain their designation at CAHs as of the filing of Defendant's Motion. (Motion at 10; "Current CMS Provider Information Forms for Four California Hospitals," Dkt. No. 41-2). Indeed, Realtor fails to point to a *single hospital* whose reimbursement requests have been rejected or whose CAH designation has been terminated because of non-compliance with the location requirement. This is a substantial record of inaction despite actual knowledge of wide-scale non-compliance and is "strong evidence that the requirements are not material." Rose at *7 (quoting Escobar at 2003-2004.)

Relator argues that two facts support their claim of materiality: first, the very fact that CMS published the 2013 OIG report and, second, that, since the publication of the OIG report, "between 8 and 15" CAHs have lost their designation as such. (Opposition at 15-16.) This, he claims, shows that CMS cared about the locations designation and establishes materiality. As an initial matter, the mere fact that between 8 and 15 hospitals out of over a thousand have been decertified, without an allegations or evidence as to the reason for their decertification, does not establish that CMS has taken action based on their compliance with the CAH location requirements. Further, Relator reads Rose too broadly to support his claim of materiality. While Rose, in analyzing the materiality of an FCA claim under Title IV of Higher Education Act, did look to conduct other than denial of funding, the relevant government conduct in that case went far beyond the mere publication of an OIG report. Rather, in Rose the Department of Education (1) ordered 25 out of 32 non-compliant schools to take corrective action; (2) required 2 out of those 25 schools to pay fines as a penalty; (3) required 1 of the 32 schools to repay more than $187 million in misspent funds; (4) recouped more than $16 million in total liability; and (5) reached settlement agreements with 22 additional schools to recoup and additional $59 million in payments. Rose at *7. Here, in contrast, Relator has not pointed to a single instance where CMS sought to deny or recoup funds for any degree of non-compliance with the mountainous location requirement, much less non-compliance with technical sub-regulatory guidance such as that alleged here.[7]

---

[7] Even if Relator had alleged that CMS had taken some prior actions to recoup or deny funds based on non-compliance with the location requirement, the Court would still be inclined to dismiss without some allegations as to the seriousness of the underlying violation of the

The Court previously found that the question of materiality in this case was a close one. (Second Dismissal Order at 9.)  However, now that it is clear that Defendant's alleged non-compliance hinges on a technical provision of sub-regulatory guidance related to the certifying procedures of a state agency other than CMS, the Court finds that the question is significantly less close.  Having reached the crux of Defendant's alleged non-compliance, the Court finds that Relator's claims are ripe for decision at the pleadings stage and that further efforts to amend their pleadings are unlikely to develop their allegations into cognizable legal claims.  See Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 2004  (2016) (finding that the FCA materiality inquiry is not too fact intensive to be disposed up on a motion to dismiss  since "[t] standard for materiality…is a familiar and rigorous one. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity…by…pleading facts to support allegations of materiality.")  See also Kendall v. Visa USA, Inc., 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").  The Court therefore GRANTS Defendant's motion and DISMISSES all claims WITHOUT leave to amend.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion and DISMISSES all claims WITHOUT leave to amend.

The Court warns Defendant to adhere to the font requirements set forth in the Local Rules for all briefs filed with the Court.  The font in the footnotes of Defendant's brief appears smaller than permitted.  See L.R. 11-3.1.1.  Failure to follow the Local Rules in the future may result in the Court declining to consider the filed document.

**IT IS SO ORDERED.**

---

mountainous location provision leading to CMS action.  The nature of Defendant's non-compliance with the mountainous location provision appears to be so "minor or insubstantial" as to strongly weigh against materiality.  See Escobar at 2003; Rose at *8.