Clinton Mikel (SBN 251319)
cmikel@thehlp.com
The Health Law Partners, P.C.
32000 Northwestern Hwy., Suite 240
Farmington Hills, MI 48334
P: (248) 996-8510; F: (248) 996-8525
Attorneys for Defendant
San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| United States of America, *ex rel.*, Frank Adomitis, <br><br> Plaintiff, <br><br> vs. <br><br> San Bernardino Mountains Community Hospital District; Does 1 through 20, inclusive; <br><br> Defendants. | Case No.: 5:17-cv-00002-JGB-KK <br>(Hon. Jesus G. Bernal) <br><br> **Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses** <br><br> [Request for Judicial Notice (to the extent applicable) of Exhibits 1-3: Compilation of Records; Declaration of Clinton C. Mikel; Declaration of Charles Harrison; and [Proposed] Order contemporaneously filed herewith] <br><br> *Date*: November 12, 2018 <br> *Time*: 9:00 AM <br> *Courtroom*: 1 |

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

# TABLE OF CONTENTS

Page

1.   INTRODUCTION ..................................................................... 1

2.   DESCRIPTION OF THE SUBSTANTIVE ISSUES INVOLVED BETWEEN THE PARTIES ................................................................................. 2

3.   PROCEDURAL FACTS AND RELEVANT BACKGROUND ....................... 3

4.   RELATOR'S KNOWLEDGE OF PLEADING DEFICIENCIES AND CONTINUED RECALCITRANCE ............................................................... 5

5.   RELATOR HAS FILED MULTIPLE LAWSUITS ON THE BASIS OF HIS OWN SPECUALTIVE ASSERTIONS AND THE 2013 OIG REPORT ..................... 6

6.   ARGUMENT ......................................................................... 7

   a.   Attorneys' Fees Should be Awarded to Mountains Because Relator's Action was Clearly Frivolous and Vexatious ................................................ 8

   i.   Relator's Action Was Clearly Frivolous ..................................... 9

   ii.   Relator's Action Was Clearly Vexatious .................................... 11

   b.   Defendants' Attorneys' Fees and Expenses are Reasonable ........................... 15

   c.   Mountains has a Reasonable Hourly Rate .......................................... 15

   d.   Mountains Has a Reasonable Number of Hours .................................... 17

The Health Law Partners, P.C.

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

# Table of Authorities

Cases

*Amphastar Pharm. Inc. v. Aventis Pharma SA*,
    856 F.3d 696 (9th Cir. 2017) ......................................................................... 11

*Anderson v. Norfolk & W. Ry. Co.*,
    773 F.2d 880 (7th Cir. 1985) ......................................................................... 15

*Barjon v. Dalton*,
    132 F.3d 496 (9th Cir. 1997) ......................................................................... 16

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205 (9th Cir. 1986) ....................................................................... 16

*Crane-McNab v. Cty. of Merced*,
    773 F. Supp. 2d 861 (E.D. Cal. 2011) ............................................................. 8

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ....................................................................... 15

*Galen v. Cty. of Los Angeles*,
    477 F.3d 652 (9th Cir. 2007) ......................................................................... 11

*Harris v. Maricopa Cty. Superior Court*,
    631 F.3d 963 (9th Cir. 2011) ......................................................................... 17

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ................................. 15

*Hughes v. Rowe*,
    449 U.S. 5, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) ....................................... 9

*Hyde v. Midland Credit Mgmt., Inc.*,
    567 F.3d 1137 (9th Cir. 2009) ......................................................................... 8

*In Millner*,
    124 F.3d 204 ................................................................................................ 13

**Page iii**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

*Kerr v. Screen Extras Guild, Inc.*,

    526 F.2d 67 (9th Cir. 1975) ........................................................................... 15

*Klee v. Nissan N. Am., Inc., No.*,

    CV1208238AWTPJWX, 2015 WL 4538426 (C.D. Cal. July 7, 2015), aff'd ........................................ 16

*Maag v. Wessler*,

    993 F.2d 718 (9th Cir. 1993) ........................................................................... 8

*Mikes v. Straus*,

    274 F.3d 687 (2d Cir. 2001) ...................................................................... 8, 11

*Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp.*,

    124 F.3d 204 (7th Cir. 1997) ......................................................................... 13

*Millner*,

    124 F.3d ........................................................................................ 13

*Patton v. Cty. of Kings*,

    857 F.2d 1379 (9th Cir. 1988) ..................................................................... 9, 11

*Pfingston v. Ronan Eng'g Co.*,

    284 F.3d 999 (9th Cir. 2002) ................................................................... 8, 9, 11

*Ringgold-Lockhart v. Cty. of Los Angeles*,

    761 F.3d 1057 (9th Cir. 2014) ........................................................................ 12

*Tutor-Saliba Corp. v. City of Hailey*,

    452 F.3d 1055 (9th Cir. 2006) ......................................................................... 9

*U.S. ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*,

    422 F. Supp. 2d 225 (D.D.C. 2006) .................................................................. 12

*United States v. Johnson Controls, Inc.*,

    457 F.3d 1009 (9th Cir. 2006) ........................................................................ 11

*United States v. Safran Grp., S.A.*,

    No. 15-CV-00746-LHK, 2018 WL 558937 (N.D. Cal. Jan. 25, 2018) ........................................ 9

*Universal Health Servs., Inc. v. United States*,

    136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) ............................................................ 11

**PAGE IV**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

*Van Gerwen v. Guarantee Mut. Life Co.*,

    214 F.3d 1041 (9th Cir. 2000) ............................................................................ 15

*Vernon v. City of Los Angeles*,

    27 F.3d 1385 (9th Cir. 1994) ............................................................................... 9

*Workman v. Dist. 13 Tanque Verde Unified Sch.*,

    402 F. App'x 292 (9th Cir. 2010) ...................................................................... 11

    Statutes

31 U.S.C.A. § 3729 (West) ..................................................................................... 1, 3

31 U.S.C.A. § 3730(d)(4) (West) ......................................................................... passim

42 U.S.C.A. § 1988 (West) ...................................................................................... 7, 8

PL 111-148 .................................................................................................................. 1

PL 111-21 .................................................................................................................... 1

    Regulations

42 C.F.R. § 485.610(c) ............................................................................................. 2, 9

42 C.F.R. § 485.610(c)'s ............................................................................................... 9

    Other Authorities

1986 U.S.C.C.A.N. 5266 .............................................................................................. 8

5294 ............................................................................................................................. 8

S. Rep. No. 99-345 ....................................................................................................... 8

**PAGE v**

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

## 1. INTRODUCTION

The alleged "whistle-blower," relator Frank Adomitis ("**Relator**") filed this lawsuit against San Bernardino Mountains Community Hospital District ("**Mountains**") in January 2017. Relator alleged that he was the Chief Financial Officer for Mountains from July 1, 2007, through November 24, 2008. Despite, Relator's limited employment with Mountains over 10 years ago, he filed a Complaint alleging causes of action against mountains from 2002 to the present under the Federal False Claims Act, 31 U.S.C.A. § 3729 (West), et seq. (the "**FCA**"), as amended; the Fraud Enforcement and Recovery Act of 2009, FRAUD ENFORCEMENT AND RECOVERY ACT OF 2009 (FERA), PL 111-21, May 20, 2009, 123 Stat 1617; the Patient Protection and Affordable Care Act of 2010, PATIENT PROTECTION AND AFFORDABLE CARE ACT, PL 111-148, March 23, 2010, 124 Stat 119; and unjust enrichment based upon his False Claims Act allegations. (Dkt. 5, ¶ 1).

The ensuing frivolous and vexatious litigation thereafter is the culminating product of a long history of harassment against Mountains. Since Relator's dismissal from Mountains in 2008, he has engaged in a scary smear and harassment campaign against Mountains and its executive officers. Moreover, despite repeated attempts to reason with Relator, Mountains had to move to dismiss the first complaint and three amended complaints, which has cost tax payer dollars and jeopardized Mountains' ability to administer health care to a rural community in Lake Arrowhead, San Bernardino, CA.

Mountains files this Motion for Attorneys' Fees and Expenses (the "**Motion**") pursuant to 31 U.S.C.A. § 3730(d)(4) on the grounds that (1) Mountains is the prevailing party to the litigation, and (2) Relator's action was frivolous, vexatious, and brought primarily for the purposes of harassment. In particular, Relator continued to litigate meritless FCA claims since the filing of his Complaint, despite several warnings from this Court and Mountains. Moreover, Relator's long history of harassment toward Mountains shows that his true intentions were to embarrass and harm Mountains irrespective of the merits of his case.

1   Defendants therefore request an award of attorneys' fees in the amount of
2   $272,495.00, and expenses in the amount of $8,383.85.

3

## 2. DESCRIPTION OF THE SUBSTANTIVE ISSUES INVOLVED BETWEEN THE PARTIES

6   Medicare reimburses Critical Access Hospitals ("**CAH**s") at higher rates than
7   other acute care hospitals. (Dkt. 40, ¶ 15). To qualify and be certified as a CAH, a hospital
8   offering acute care services must meet numerous requirements for CAH Conditions of
9   Participation, including a location-related requirement that was at issue between the
10  parties in this case. (Dkt. 40, ¶¶ 17-18). A CAH must be located either (a) more than a 35-
11  mile drive from a hospital or another CAH or (b) more than a 15-mile drive from a
12  hospital or another CAH in areas of mountainous terrain or areas where only secondary
13  roads are available. (Dkt. 40, ¶ 19 (citing 42 C.F.R. § 485.610(c)).)
14  The primary issues this Court resolved between the parties entailed whether
15  Mountains made implied false certifications for reimbursement that were material to the
16  governments obligation to pay Mountains. This Court found, in several instances, that
17  Relator failed to specifically plead a cognizable false claim in violation of the FCA and how
18  any of those claims were material to the government's obligation to reimburse Mountains.
19  In short summation, Relator, through multiple pleadings failed to ultimately show
20  this Court:
21  1) Allegations to substantiate an actual false claim with knowledge of alleged
22  regulatory non-compliance (Dkt. 23, pgs. 8-9) and (Dkt. 46, pg. 11)
23  2) Actual false claims or a scheme of alleged false claims submitted to the
24  government that triggered a government obligation to pay the claim, but for the alleged
25  non-compliance of Mountains' distance requirements (in other words, were the alleged
26  false claims material to the government's payment decision). (Dkt. 23, pg. 8), (Dkt. 39,
27  pg. 9), and (Dkt 46, pg. 11)
28

THE HEALTH LAW PARTNERS, P.C.

### 3. PROCEDURAL FACTS AND RELEVANT BACKGROUND

On January 3, 2017, Relator filed a Complaint alleging violations of the Federal False Claims Act, 31 U.S.C.A. § 3729, et seq. (the "**FCA**"), as amended. (Dkt. 5, ¶ 1). Relator pled that the most direct route between Mountains and St. Bernardine Medical Center, the nearest hospital, is 24.5 miles (Dkt. 5, ¶ 26.) Although somewhat unclear, Relator essentially pled the applicable route to be State Route 18/173 [sic] junctures.[1] (Dkt 5, ¶ 26). The United States filed a notice, declining to intervene on May 10, 2017. (Dkt. 6). Mountains filed a Motion to Dismiss. (Dkt. 16). In that Motion to Dismiss, Relator was clearly apprised of the deficiencies within his Complaint showing the lack of merit to his claims against Mountains. Of note, Relator was put on notice that his claims were not in accordance with Rule 9(b) and were not material to the government's obligation to pay claims. (Dkt. 16-1, pgs. 13-18 and 19-21). Accordingly, Relator's claims were doomed from the outset of his pleadings.

In response, Relator amended the complaint on November 13, 2017, the First Amended Complaint ("**FAC**"), and changed very little with his pleadings which prompted another Motion to Dismiss from Mountains. (*See* (Dkt. 17) and compare with (Dkt. 5)) (*See also* Dkt. 19). Again, Relator pled the applicable route to be State Route 18/173 [sic] junctures.[2] (Dkt 17, ¶ 31). On January 29, 2018, this Court dismissed Relator's first amended complaint, with leave to amend certain claims. (Dkt. 23). The Court determined that Relator failed to plead his claims with either adequate particularity or reliable indicia to establish violations of the FCA. (Dkt. 23 pgs. 8-9). **Moreover, the Court specifically held that Relator failed to plead how any of Mountains' claims were material to the government's obligation to pay claims.** (Dkt. 23, p. 8). **Relator's**

---

[1] Relator actually alleges State Route 178, however, this appears to be a clerical error as there is no State highway 178.

[2] Relator actually alleges State Route 178, however, this appears to be a clerical error as there is no State highway 178.

**attempt to use Form 2552 was found to be specifically unavailing by the Court.** (Dkt. 23, p. 8).

Relator at this time, and likely prior to filing initially, had in his possession the list of CAHs that the OIG had found did not meet the post-2013 sub-regulatory guidance in its nationwide survey (Mountains was not on the list). Yet, Relator proceeded. Then, as early as Dkt. 23, it was recognized by this Court that in 2013, applying the newer sub-regulatory guidance, that the OIG did not believe that Mountains was deficient regarding the distance requirements. Quoting this Court: "If anything, the OIG Report implies Mountains is not engaged in any fraudulent conduct by Mountains' absence on the list of CAHs that do not meet the location requirements." (Dkt. 23, p. 6). Yet, Relator persisted[3] to harass and harm Mountains, despite knowing the OIG's findings, and despite the previously briefed fact that CMS's ROs (not Mountains) determine CAHs' compliance with the distance requirements.

On February 20, 2018, Relator filed his third-iteration of pleadings, the Second Amended Complaint ("**SAC**"). (Dkt. 26). Again, Relator pled the applicable route to be State Route 18/173 [sic] junctures. [4] (Dkt 26, ¶¶ 35-36). This prompted another Motion to Dismiss from Mountains. (Dkt. 27). Relator added some additional pleading to buttress his claims against Mountains, however his repetitive pleading was still insufficient to survive Mountains' dispositive motion. (Dkt. 26).

Once again, the Court found that Relator failed to plead a causal connection that noncompliance with CAH distance requirements is material to the government's decision to pay Mountains' claims. (Dkt 39, pg. 9). Moreover, Relator failed to plead facts showing the government would have taken an adverse action towards Mountains' submitted claims

---

[3] It appears that the Relator was going to proceed no matter what – ultimately, whether this Court, CalTrans, CMS, CMS's RO, or the OIG, disagreed with him (and they all did), nothing would stop his proceeding to effectuate the penultimate stroke in his 10 year vendetta against Mountains.

[4] Relator actually alleges State Route 178, however, this appears to be a clerical error as there is no State highway 178.

1  despite the alleged noncompliance with CAH distance requirements. (Dkt 39, pg. 9).
2  Although Relator added some additional factual details to overcome some of his initial
3  pleading deficiencies, he added no additional pleading to show how any of the claims at
4  issue between the parties were material to the government's obligation to pay claims. On
5  June 14, 2018, this Court again dismissed Relator's SAC, with leave to amend certain
6  claims, warning that "[t]he Court advises Relator that a third request for leave to amend is
7  unlikely to be granted." (Dkt. 39).

8

### 4. RELATOR'S KNOWLEDGE OF PLEADING DEFICIENCIES AND CONTINUED RECALCITRANCE

11      On or about May 17, 2018, Mountains came into possession of Caltrans
12  Transportation Concept Report and shared this information with Relator's counsel.
13  Essentially, this report showed that Mountains met regulatory location and distance
14  requirements regarding the route pled by Relator. (**Exhibit 1**, pgs. 5-82). In addition, on
15  June 8, 2018, counsel for Mountains sent to Relator's counsel a warning that a Rule 11
16  motion would be brought if Relator did not correct certain misrepresentations to the
17  Court. (**Exhibit 1**, pgs. 83-177). Nevertheless, Relator continued to plead and argue
18  otherwise in his SAC, opposition briefs, and TAC. (Dkt. 26, ¶ 36), (Dkt. 29, pg. 13, lines
19  13-15), (Dkt. 43, pgs. 7, 16-18, and 30), and (Dkt. 40, ¶ 36(v)). Moreover, Relator refused
20  to acknowledge that Caltrans Transportation Concept Reports showed in the very least
21  that Mountains was in compliance with regulatory location and distance requirements
22  prior to April 19, 2013. (Dkt. 40, ¶ 19 n. 3). This Court found as much in its Order. (Dkt.
23  46, pg. 10).

24      On June 22, 2018, having been apprised of the CalTrans Report, Relator filed his
25  fourth-iteration of pleadings, the Third Amended Complaint ("**TAC")**. (Dkt. 40).
26  Despite Relator previously contending that State Route 18/173 was the shortest distance
27  between Mountains and another acute care medical provider, he pled a *newly*
28  *discovered* route, Route 189. (Dkt. 40, ¶ 36). The Court did not find the additional

HLP  THE HEALTH LAW PARTNERS, P.C.

route(s) to be any more availing than Relator's previous pleadings. (Dkt. 46, pgs. 8-10). Rather, the Court found Mountains made a dispositive showing that it was unequivocally in compliance with statutory distance requirements at least before April 19, 2013. (Dkt. 46, pg. 10). Furthermore, the Court found the question of whether the distance requirements were material to the government's payment obligations to Mountains "significantly less close." (Dkt. 46, pg. 13). "The nature of Defendant's noncompliance with the mountainous location provision appears to be so 'minor or insubstantial' as to strongly weigh against materiality." (Dkt. 46, pgs. 12-13, n. 7)

On June 26, 2018, counsel for Mountains made a last-ditch effort to persuade Relator that none of his complaints substantively pled sufficient facts to withstand a Rule 12(b)(6) motion. (**Exhibit 1**, pg. 178). Accordingly, Relator was, again, apprised of his lack of substantive pleading to show a material regulatory violation against Mountains.

Mountains, through the course of this litigation, met and conferred with Relator about these issues several times which culminated in a detailed outline before the filing of Relator's final amended complaint, Dkt. 46. A true and accurate compilation of records providing notice to Relator regarding his claims is enclosed as **Exhibit 1**. In October and November 2017, Relator was specifically told that his claims lacked the particularity in pleading required of Rule 9b. In addition, Relator was apprised that his allegations against Mountains lacked materiality, knowledge, and intent. (**Exhibit 1**, pgs. 1-4).

## 5. RELATOR HAS FILED MULTIPLE LAWSUITS ON THE BASIS OF HIS OWN SPECUALTIVE ASSERTIONS AND THE 2013 OIG REPORT

In August 2013, the Office of Inspector General, U.S. Department of Health and Human Services ("**OIG**") publicly released an official investigation/audit report regarding a survey it did of all critical access hospitals in the United States – the official report is entitled "Most Critical Access Hospitals Would Not Meet the Location Requirements if Required to Re-Enroll in Medicare". Mountains refers to this as the "**OIG 2013 CAH Distance Audit/Investigation**". Relator's complaint and amended

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

complaints regarding Mountains purportedly not meeting the CAH distance requirements is the exact exercise/investigation previously conducted and publicly reported in the OIG 2013 CAH Distance Audit/Investigation. (Dkt. 16, pg. 3), (Dkt. 16-1, pg. 21) and (Dkt. 16-8). As demonstrated in Mountains' first Motion to Dismiss, the Complaint was essentially plagiarized using unique language from the OIG 2013 CAH Distance Audit/Investigation (Dkt. 16, pg. 3, n. 1 and Dkt. 16-8). Relator did not reveal the existence of the OIG 2013 CAH Distance Audit/Investigation to this Court, and Relator's counsel claimed in the very first meet and confer that she had no knowledge of the report, despite plagiarizing it. She later disclosed the report in her FAC. (Dkt. 17, ¶ 24 ).

Despite Relator's lack of originality in utilizing the OIG 2013 CAH Distance Audit/Investigation, he subsequently filed (8 months after filing against Mountains) at least two other lawsuits against hospitals that he has no employment relation to, see *U.S. ex rel. Frank Adomitis v. Ojai Valley Community Hospital*, Case No. cv-17-06972, (C.D. Cal. September 21, 2017), and *U.S. ex rel. Frank Adomitis v. Tahoe Forest Hospital District,* Case No. cv-17-00934 (E.D. Cal. September 10, 2017), Dkt. 27 pgs. 21-22. In both, Relator has pled essentially the same allegations. All of Relator's amended complaints demonstrate that Relator is simply using publicly disclosed information to improperly bring lawsuits with little or no merit against CAH's in the California area. Relator did not even have any relation with either hospital, he merely looked to Google maps and made his own speculative or conclusory determinations using sub-regulatory guidance. Notably, as will be detailed below, Mr. Adomitis initially focused his ire against Mountains due to his longstanding vendetta against Mountains and its executives. His additional frivolous lawsuits came as a money-making afterthought, when he convinced his qui tam plaintiff attorney to pursue the claim.

## 6. ARGUMENT

THE HEALTH LAW PARTNERS, P.C.

Mountains brings this Motion and request for an award of attorneys' fees and expenses in the amount of $280,878.85  because Relator's action was clearly frivolous, vexatious, and/or brought primarily for the purpose of harassment.

### a. Attorneys' Fees Should be Awarded to Mountains Because Relator's Action was Clearly Frivolous and Vexatious

The FCA provides for an award of reasonable attorneys' fees and expenses for the prevailing party if "the court finds that the claim of the [*qui tam* relator] bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C.A. § 3730(d)(4). "Any of these three conditions is sufficient for an award of attorneys' fees." *Mikes v. Straus*, 274 F.3d 687, 704–05 (2d Cir. 2001), *abrogated by Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016). The FCA standard "tracks our formulation as to when fees are appropriate under 42 U.S.C.A. § 1988 (West) to a prevailing defendant." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005–06 (9th Cir. 2002). A court may grant attorneys' fees "under the limited circumstances where the action is frivolous, unreasonable, or without foundation." *Maag v. Wessler*, 993 F.2d 718, 719 (9th Cir. 1993). "As such, § 1988 cases are instructive in deciding whether fees are appropriate under the False Claims Act." *Pfingston*, 284 F.3d at 1005–06.

Congress added the FCA attorneys' fee provision "in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes." *Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1140 (9th Cir. 2009) (quoting S. Rep. No. 99-345, at 16, 1986 U.S.C.C.A.N. 5266, 5294). Accordingly, Congress "encourages courts to strictly apply this provision in frivolous or harassment suits as well as any applicable sanctions available under the Federal Rules of Civil Procedure." *Id.*

However, "fees are not awarded routinely or simply because the defendant succeeded." *Crane-McNab v. Cty. of Merced*, 773 F. Supp. 2d 861, 880 (E.D. Cal. 2011)

8

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

HLP  The Health Law Partners, P.C.

(*citing Patton v. Cty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988)). The "Ninth Circuit repeatedly has recognized that attorney's fees [] should only be awarded to a defendant in exceptional circumstances". 857 F.2d 1379

Exceptional circumstances exist in this case and merit an award to Mountains.

### i.   Relator's Action Was Clearly Frivolous

Pursuant to 31 U.S.C.A. § 3730(d)(4), "an action is 'clearly frivolous' when 'the result is obvious or the [relator]'s arguments of error are wholly without merit.'" *Pfingston,* 284 F.3d at 1006 (quoting *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994). A plaintiff's claims are frivolous when they lack a factual and legal basis at the outset of the litigation. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (affirming the district court's holding that plaintiffs constitutional claims were frivolous when they "lacked a factual and legal basis").

A Relator in an FCA action subsequently pleads at his own peril where a court's order of dismissal details the ways in which the factual allegations in the amended complaint are insufficient but pleads the same factual allegations again to no avail. *United States v. Safran Grp., S.A.*, No. 15-CV-00746-LHK, 2018 WL 558937, at *4 (N.D. Cal. Jan. 25, 2018) (citing *Pfingston*, 284 F.3d at 1006) ("In light of the Court's order dismissing the SAC, it was 'obvious' that reasserting the same theories of false certification in the TAC without adding any new facts would result in failure."). *See also Hughes v. Rowe*, 449 U.S. 5, 15, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (the frivolous nature of plaintiff's FCA lawsuit becomes apparent when "plaintiff continued to litigate after" his claim "clearly became" groundless or without foundation. *Id.* at *2-*3).

In this case, Relator has redundantly pled himself to folly. In addition to his failure to plead with the requisite particularity to establish not only the falsity, scienter, and causation requirements of an FCA action, he has shown a patterned failure to plead additional facts to support materiality. This Court's first Order of dismissal (Dkt. 23), as well as the meet and confer with Mountains and Mountains' motion (Dkt. 16), put Relator

9

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

THE HEALTH LAW PARTNERS, P.C.

on ample notice of his pleading deficiencies. In particular, this Court ultimately found, through three orders, that Relator ultimately failed to plead any additional facts to show how any of Relator's alleged FCA violations were: (1) made with knowledge as to a particular violation of an agency regulation; and (2) sufficiently material to the government's obligation to pay claims.

Indeed, despite pleading Form 2552 since the beginning of this case, Relator thereafter put forth no new facts over four (4) separate pleadings to show how Mountains even knew about CMS' sub-regulatory guidance interpreting 42 C.F.R. § 485.610(c), or whether Mountains even knew about the distance and location requirements as defined by 42 C.F.R. § 485.610(c).[5] As a result, Relator consistently failed to plead scienter which resulted in a fatal deficiency to all of his FCA claims against Mountains.

Even more amply clear is Relator's consistent failure to plead any additional facts to show how CMS would have never paid Mountains but-for the known presence of alleged regulatory violations. In Relator's first pleading, he pled a CMS Form 2552, and other forms to show that compliance with CAH distance and location requirements was material to the payment of claims. He also summarily pled that compliance with these requirements was a condition of CAH participation. (Dkt. 5, ¶¶ 27-37). In all subsequently amended pleadings filed by Relator, not one of those pleadings alleged additional facts to support materiality. In not one pleading filed by Relator did he (1) allege the consistent refusal of the government to pay claims relating to distance or location requirements for previously certified CAHs; or (2) allege any adverse action taken by CMS for a certified CAH's alleged violation of a distance or location requirements.

_____

[5] Although this Court made a specific ruling as to scienter in Dkt. 23, p. 8, that ruling did not consider (through no fault of the Court, because it had not been briefed) the Caltrans Transportation Concept Report or the differing sub-regulatory guidance interpreting 42 C.F.R. § 485.610(c). Moreover, Relator failed to show through all of his pleadings how Mountains would even know about 42 C.F.R. § 485.610(c)'s multiple interpretations through evolving sub-regulatory guidance.

1   *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003, 195 L. Ed. 2d 348

2   (2016).

3       As a result, Relator's repetitive pleadings only incurred additional attorney fees and

4   expenses upon Mountains. *See also Workman v. Dist. 13 Tanque Verde Unified Sch.*, 402 F.

5   App'x 292, 293 (9th Cir. 2010) (citing *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 653, 666–

6   68 (9th Cir. 2007) (attorneys' fee awards appropriate where plaintiffs have continued to

7   "litigate claims even after it became obvious that those claims were meritless.").

8       Lastly, Relator's multiple lawsuits and use of public information from the OIG 2013

9   CAH Distance Audit/Investigation only adds to the vexatious frivolity of his lawsuit

10  against Mountains. Courts have found that the FCA cuts both ways to protect the parties.

11  However, one of the key purposes of the 1986 amendments to the False Claims Act is "to

12  discourage 'parasitic' suits brought by individuals with no information of their own to

13  contribute to the suit." *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710

14  (9th Cir. 2017) (citing *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1017 (9th Cir.

15  2006)). **Mr. Adomitis has not worked at Mountains since 2008 – he had nothing to**

16  **contribute to this suit, just like he has nothing to contribute to his others.**

17      Accordingly, this Court should grant Mountains its reasonable request for attorneys'

18  fees and expenses.

19                    **ii.  Relator's Action Was Clearly Vexatious**

20      Even a cursory review of the facts mentioned above supports the finding that Relator

21  brought his action against Mountains as a means to harass and not for a proper purpose.

22  "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when

23  the plaintiff pursues the litigation with an improper purpose, such as to annoy or

24  embarrass the defendant." *Pfingston*, 284 F.3d at 1006 (citing *Patton*, 857 F.2d at 1381. 31

25  U.S.C.A. § 3730(d)(4) does not require any finding of subjective bad faith; an attorneys'

26  fees award is proper when the plaintiff's case was "objectively vexatious." *Mikes*, 274 F.3d

27  at 705.

28

HLP ﮳ The Health Law Partners, P.C.

The D.C. District Court had listed examples of evidence of vexatiousness or an intent to harass on the part of a plaintiff, such as (without limitation): (1) actions that deliberately delay the proceedings, **(2) attempts to relitigate a previously decided claim against the same defendant, (3) the raising of new allegations in an effort to circumvent the arguments in a defendant's motion**, **(4) and the inclusion of counts for which the available evidence defeats any inference of a false claim.** *U.S. ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 238 (D.D.C. 2006) (internal citations omitted).

The Ninth Circuit has also looked at a litigant's history in determining whether the case at hand is vexatious, harassing, or duplicative of other lawsuits *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014). Here, the manner in which Relator has litigated this case is clearly vexatious and constituted harassment.

Relator has engaged in an obsessed systemic pattern of harassment against Mountains and its executives over the years. (**Exhibit 2**, Declaration of Charles Harrison, ("**Harrison Decl**.")). The relentless harassment against Mountains began when he was terminated as an employee. (Harrison Decl., ¶ 4). Subsequently, for a period of 10 years, Relator has engaged in various instances of harassment against both Mountains and its executives. (**Exhibit 2**).

Although the declaration of Charles Harrison documents several instances of harassment, several key points are worth noting. First, Relator's primary form of harassment against Mountains and its executives consists of consistent derogatory communications and emails. (Harrison Decl., ¶¶ 9, 19-20, 45, and 48). Relator has continuously taken opportunities to denigrate Mountains and its executives. Second, Relator engaged in repugnant name calling and aggressive confrontational behavior against Mountains' executives. (Harrison Decl., ¶¶ 34-39). Third, Relator is obsessed with accumulating the personal addresses of Mountains' executives. (Harrison Decl., ¶¶ 23, 43, 44, and 46). Fourth, the continuous harassment from Relator has caused Mr. Harrison to fear for his safety. (Harrison Decl., ¶¶ 38, 40, and 53).

Relator's behavior is most similar to that of the relator in *Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp.*, 124 F.3d 204, 6 (7th Cir. 1997). In *Millner*, 124 F.3d 204, the relator:

>    1. Picketed his previous employer's property for over fifteen weeks bearing a sign that stated "Vietnam Veteran Fired From Army Contract. Thank You, ITT."
>    2. Conducted a defamatory letter-writing campaign directed at United States Senators and Representatives, the President of the United States, multiple branches of the armed services including numerous Generals, Admirals, and other ranking officers, and foreign heads of state.
>    3. Filed a baseless charge with the National Labor Relations Board and Equal Employment Opportunity Commission.

*Millner*, 124 F.3d at *6.

There, the Seventh Circuit found that this pattern of conduct after relator's employment termination was calculated to harass the defendant and cause it as much harm as possible. *Id*. Millner's primary purpose for his FCA claims against the defendant was to harass, and so the court granted the defendant their attorneys' fees pursuant to 31 U.S.C.A. § 3730(d)(4). *Id*.

Here, since his termination in 2008, Mr. Adomitis, in excess of even what the Relator in *Millner* did, has:

>    1. Caused Mountains executives to fear for their physical safety, and the safety of their health information. (Harrison Decl., ¶¶ 23, 38, 40, and 53);
>    2. Conducted voluminous defamatory writing campaigns[6] directed at Mountains' and Mountains' executives to the local press, to Mountains'

---

[6] The Court should note that Mr. Harrison has not detailed issues related to Mr. Adomitis' FOIA efforts related to Mountains. Though there are instances where the

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

board, to Mountains' personnel, and to others. (Harrison Decl., ¶¶ 9, 19-20, 45, and 48);

3. Filed a baseless defamation suit against Mountains. (Harrison Decl., ¶ 42);

4. Been banned from Mountains' premises. (Harrison Decl., ¶49);

5. Repeatedly, creepily, and in a manner that would cause a reasonable person fear, provided and sought information that essentially establishes that Relator has been stalking Mountains' executives (*e.g.*, repeatedly looking up home addresses, dropping hints that he has sought out work from their previous employers, talking about their relationships, *et cetera*). (Harrison Decl., ¶¶ 23, 43, 44, and 46);

6. Screamed in the face of Mountains' CEO, yelling that the CFO is a **"cunt"**. (Harrison Decl., ¶ 39); and

7. Repeatedly sought to personalize his firing as being caused by the prior-CEO,[7] and the personal relationship of Mountains' CEO and CFO. (Harrison Decl., ¶ 20).

In summary, Relator has inappropriately engaged in litigation against Mountains, not because of any wrongdoing by Mountains, but rather, out of personal animus towards Mr. Harrison, Ms. Waggener, Mountains, and Mountains' previous CEO, all arising from his termination nearly-10 years ago from Mountains. Relator's entire lawsuit against Mountains is merely a façade for a personal vendetta which unduly hurts not only the hospital, but the local community (and taxpayers) it services as a local agency. Relator did not bring this case in the interest of recouping alleged fraudulently gained funds but as a means to settle a personal score. As a result, Mountains respectfully requests its

seeking of public information can become abusive, Mountains does not desire to muddy the waters by introducing these issues.

[7] This Court will note from Mr. Harrison's Declaration how Relator (in his own words) views the prior-CEO, and the current CFO and CEO, of Mountains.

THE HEALTH LAW PARTNERS, P.C.

1  reasonable attorneys' fees and expenses in having to defend against a frivolous and

2  vexatious lawsuit that was employed to satiate Relator's ego and personal animus.

3  ### b. Defendants' Attorneys' Fees and Expenses are Reasonable

4      A determination of reasonable attorneys' fees in this case is calculated through the

5  "lodestar" method by taking the number of hours reasonably expended on the litigation

6  and multiplying it by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119

7  (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.

8  2d 40 (1983)). The applicant for attorneys' fees and expenses bears the burden of

9  documenting the appropriate hours expended in the litigation and must submit evidence

10  in support of those hours worked. *See Hensley*, 461 U.S. at 437. A district court may

11  exclude from the initial fee calculation hours that were "excessive, redundant, or

12  otherwise unnecessary." *Hensley*, 461 U.S. at 434.

13      A court may adjust the lodestar upward or downward using a "multiplier" based on

14  factors not subsumed in the initial calculation of the lodestar.[8] *Van Gerwen v. Guarantee*

15  *Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "The lodestar amount is presumptively

16  the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar

17  amount upward or downward only in 'rare' and 'exceptional' cases, supported by both

18  'specific evidence' on the record and detailed findings by the lower courts that the

19  lodestar amount is unreasonably low or unreasonably high." *Id.* (citations omitted).

20  ### c. Mountains has a Reasonable Hourly Rate

21
22
23  [8] These factors include: "(l) the time and labor required, (2) the novelty and difficulty of

24  the questions involved, (3) the skill requisite to perform the legal service properly, (4)

25  the preclusion of other employment by the attorney due to acceptance of the case, (5)

26  the customary fee (6) whether the fee is fixed or contingent, (7) time limitations imposed

27  by the client or the circumstances, (8) the amount involved and the results obtained, (9)

28  the experience, reputation; and ability of the attorneys (10) the 'undesirability' of the

case (11) the nature and length of the professional relationship with the client, and (12)

awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).

*Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880, 882 (7th Cir. 1985), n.8.

The reasonable hourly rate is based on the experience, skill, and reputation of the attorney requesting fees. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g,* 808 F.2d 1373 (9th Cir. 1987). "Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party...     [but] the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* The relevant community is generally the forum in which the court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The Central District of California has found that hourly rates ranging from $370 to $695 are reasonable. *See, e.g., Klee v. Nissan N. Am., Inc.*, No. CV1208238AWTPJWX, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015), *aff'd* (Dec. 9, 2015) (Dec. 9, 2015) (listing other cases with similar rates). In addition, this Court has found hourly rates ranging from $650-$200 to be reasonable. *See* **Exhibit 3**, Declaration of Clinton Mikel ("**Mikel Decl.**"), ¶ 23, Exhibit 3, United States District Court for the Central District of California, Jesus G. Bernal, District Judge, Presiding, D.C. No. 5:14-cv-02336-JGB-DTB, pg. 3.

Here, Defendants seek hourly rates as follows:

- Partner Clinton C. Mikel, a rate of $302 per hour for the duration of the case. Mr. Mikel has practiced since 2007.
- Partner Adrienne Dresevic a rate of $400 per hour for 2017, and $410 per hour in 2018. Ms. Dresevic has practiced since 2002.
- Associate James R. Witham, a rate of $235 per hour for 2017, and $250 per hour in 2018. Mr. Witham has practiced since 2006.
- Associate Isaac S. Sternheim, a rate of $250 per hour for 2018. Mr. Sternheim has practiced since 2013.
- Associate Tim Burkhard, a rate of $260 per hour in 2017. Mr. Burkhard has practiced since 2009.
- Associate Sheerin Siddique, a rate of $245 per hour in 2017. Ms. Siddique has practiced since 2008.
- Law Clerk David Paladino, a rate of $130 per hour in 2017.

• Law Clerk Julia Peters, a rate of $145 per hour in 2018.

(Mikel Decl., ¶¶ 12-19)

### d. Mountains Has a Reasonable Number of Hours

This case was filed nearly two years ago. Mountains has submitted detailed billing for the work performed in this case.[9] Mr. Mikel worked 376.25 hours; Ms. Dresevic worked 3.8 hours; Mr. Witham worked 271.04 hours; Mr. Sternheim worked 20.5 hours; Mr. Burkhard worked 1.2 hours; Ms. Siddique worked 53.5 hours; Mr. Paladino worked 7.4 hours; Ms. Peters worked 8 hours. (Mikel Decl., **¶¶ 12-19**). Since all of Relator's FCA claims were subjected to the same or similar basis for dismissal in each motion to dismiss, there is no need to identify and subtract fees related to work for non-frivolous claims. *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 973 (9th Cir. 2011). The work on this case was related to conducting legal research, preparing documents for briefings, fact investigations, brief writing, document review, and preparing this motion for fees and expenses. (Mikel Decl., ¶ 38)**.** Given the complexity of this FCA case, the hours spent were reasonable. *(*Mikel Decl., ¶¶ 8,20, and 38). Accordingly, the hours spent were not excessive or unreasonable and Mountains' request for $272,495.00 in attorneys' fees and $8,383.85 in expenses is reasonable.

## VI.   <u>CONCLUSION</u>

As the prevailing party, Mountains was wrongfully subject to a lawsuit that was frivolous, vexatious, and harassing. Relator has essentially stalked the executives of Mountains over a prolonged period of time and engaged in rampant harassment against Mountains and its executives. For nearly two years, Mountains was forced to litigate a meritless case with fatally deficient pleadings. Moreover, the actions of Relator clearly demonstrate a pattern of vexatious and harassing behavior toward Mountains over a long

---

[9] These fees are through the end of the September 2018 billing cycle. Defendant will supplement this Court with work performed in October 2018, primarily related to this Motion, prior to the November hearing on this Motion.

period of time. Accordingly, Mountains respectfully requests an award of attorneys' fees and expenses in the amount of $280,878.85.

**Respectfully submitted,**
October 11, 2018

**THE HEALTH LAW PARTNERS, P.C.**
By:/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community Hospital District

Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

## PROOF OF SERVICE
## STATE OF MICHIGAN, COUNTY OF OAKLAND

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On October 11, 2018, I served true copies of the foregoing document(s) described as **Defendant Mountains' Memorandum of Points and Authorities in Support of its Motion for Attorneys' Fees and Expenses** on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on October 11, 2018, at Farmington Hills, Michigan.

/s/Marianna M. McIntyre

Marianna M. McIntyre