1  Clinton Mikel (SBN 251319)
2  cmikel@thehlp.com
3  The Health Law Partners, P.C.
   32000 Northwestern Hwy., Suite 240
4  Farmington Hills, MI 48334
5  P: (248) 996-8510; F: (248) 996-8525
   Attorneys for Defendant
6  San Bernardino Mountains Community Hospital District

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| United States of America, *ex rel.*, Frank Adomitis, <br><br>Plaintiff, <br><br>vs. <br><br>San Bernardino Mountains Community Hospital District; Does 1 through 20, inclusive; <br><br>Defendants. | Case No.: 5:17-cv-00002-JGB-KK <br>(Hon. Jesus G. Bernal) <br><br>**Defendant's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses** <br><br>*Date:* November 19, 2018 <br>*Time:* 9:00 AM <br>*Courtroom:* 1 |
|---|---|

# Table of Contents

1. INTRODUCTION ........................................................................................................................ 1

2. MOUNTAINS HAS ESTABLISHED THE PROPER STANDARD OF REVIEW      2

3. ARGUMENTS .............................................................................................................................. 4

    a. Mountains' Evidence to Support an Award of Attorneys' Fees and Expenses Should be Considered by This Court .................................................................................................................. 4

    b. Noted Inconsistencies With Relator's Statements .............................................................. 5

    c. Relator's Argumentative Reiterations Offer Him No Help ................................................ 5

        i. Relator Misses the Point Concerning His Failure to Plead a Distance Violation ......................................................... 5

        ii. Relator Has Consistently Mis-Construed Materiality and Scienter ............................................................................. 8

    d. Relator's Argument That the Attorneys' Fees Requested are Unreasonable is Unsupported ......... 9

4. CONCLUSION ........................................................................................................................... 11

i

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

# Table of Authorities

Other Authorities

*Anderson v. Norfolk & W. Ry. Co.*,
   773 F.2d 880 (7th Cir. 1985) ................................................................................................ 10

*Baylor Cty. Hosp. Dist. v. Burwell*,
   163 F. Supp. 3d 372 (N.D. Tex. 2016) ................................................................................... 8

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*,
   434 U.S. 412, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978) ....................................................... 3, 6

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) .................................................................................................. 10

*McGrath on behalf of United States v. Microsemi Corp.*,
   No. CV-13-00864-PHX-DJH, 2017 WL 6626194 (D. Ariz. Feb. 2, 2017) ............................ 3

*Mikes v. Straus*,
   274 F.3d 687 (2d Cir. 2001) ................................................................................................... 3

*Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp.*,
   124 F.3d 204 (7th Cir. 1997) .................................................................................................. 2

*Ringgold-Lockhart v. Cty. of Los Angeles*,
   761 F.3d 1057 (9th Cir. 2014) ................................................................................................ 1

*United States v. Safran Grp., S.A.*,
   No. 15-CV-00746-LHK, 2018 WL 558937 (N.D. Cal. Jan. 25, 2018) ................................... 1

*United States v. Stephens Inst.*,
   901 F.3d 1124 (9th Cir. 2018) ................................................................................................ 9

*Universal Health Servs., Inc. v. United States*,
   136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) ......................................................................... 8, 9

*Workman v. Dist. 13 Tanque Verde Unified Sch.*,
   402 F. App'x 292 (9th Cir. 2010) ............................................................................................ 1

Regulations

31 U.S.C.A. § 3730(d)(4) (West) .................................................................................................. 2, 3

42 U.S.C.A. § 1988 (West) ................................................................................................................ 3

12

42 C.F.R. § 485.610(c) ........................................................................................................ 6, 7, 9, 11

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

# 1. INTRODUCTION

Relator, Frank Adomitis, after four attempts to plead his case, has been dismissed by this Court three times. In an attempt to validate his actions, Relator essentially relitigates his previous positions to this Court. Mistakenly, Relator attempts to persuade the Court that attorneys fees and expenses should not be awarded to San Bernardino Mountains Community Hospital District ("**Mountains**"), despite at least 591 pages of documents filed in support of Mountains' Motion for Attorneys' Fees and Expenses. (Doc. 49-1).

Furthermore, Relator's incessant and largely redundant amended complaints made this case more complex. Thus, more research, analysis, and attorney work was required because of the various issues found within Relator's amended complaints. During this litigation, Mountains advanced at least 7 theories for dismissal of Relator's Complaint, including, but not limited to: Public Disclosure Bar; Statute of Limitations; Failure to Plead a Fraudulent Scheme in Violation of the FCA; Materiality; Ambiguous Regulatory Guidance; Scienter; and Inappropriate Use of FCA Violations When Other Regulatory Schemes Govern Compliance. If Relator had proper grounds to file his complaint in the first place, it would not have taken him four complaints that ultimately ended in dismissal for the same reasons raised in his first complaint: materiality and scienter.

Relator's argument that his multiple amended complaints and previous instances of harassment should be disregarded flies in the face of overwhelming evidence and case law. *See Workman v. Dist. 13 Tanque Verde Unified Sch.*, 402 F. App'x 292, 293 (9th Cir. 2010) (the continuous litigation of claims despite their lack of merit warrants a grant of attorneys fees); *United States v. Safran Grp., S.A.*, No. 15-CV-00746-LHK, 2018 WL 558937, at *4 (N.D. Cal. Jan. 25, 2018) (the reassertion of the same theories of false certification in successive amended complaints without adding additional substantive facts warrants a finding of frivolity); *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (a review of a party's history is needed to determine whether the party's conduct is vexatious, harassing, or duplicative of other lawsuits). For instance, both the personal knowledge of Mr. Harrison and several emailed documents bearing Relator's origin of

1

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

authenticity clearly show he has engaged in a campaign of smearing Mountains and Mountains' executives, Charlie Harrison and Yvon Waggener (Doc. 49, ¶¶ 9, 19-20, 39, 45, and 48).[1] Relator studiedly fails to mention the *Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp.*, 124 F.3d 204, 6 (7th Cir. 1997), case, briefed in Dkt. 48, p. 13-14. Relator has a case that is worse than *Millner*, where the defendant was awarded attorney fees.

Relator, since his First Amended Complaint, has shockingly conceded that when the OIG conducted its review of *all* CAHs for this very issue in 2013, that the OIG found that Mountains meets the distance requirements when it conducted its nationwide survey of all CAHs![2] Yet, such was Relator's vendetta that he still persisted, while also knowing that it is CMS's ROs (not Mountains) who determine compliance with distance requirements. Relator also seemingly thinks that he cured his bad-acts, for attorney fee purposes, by waiting approximately 9 months to begin filing other mirror-image cases. The Court can see through these arguments.

Accordingly, Mountains respectfully requests that this Court find in its favor and grant it (and hence the taxpayers of San Bernardino) reasonable attorneys' fees and expenses in the amount of $280,878.85.

## 2. MOUNTAINS HAS ESTABLISHED THE PROPER STANDARD OF REVIEW

Relator mis-states the standard of review for attorneys' fees in several places. 31 U.S.C.A. § 3730(d)(4) (West) clearly states that an award of reasonable attorneys' fees and expenses for the prevailing party is warranted if "the court finds that the claim of the [*qui tam* relator] bringing the action was clearly frivolous, clearly vexatious, or brought *primarily* for purposes of harassment." (Emphasis added). Relator would have this Court believe that in order for Mountains to prevail it must show that Relator brought an action

---

[1] At no point in time does Relator deny or dispute his own correspondence or emails attached to Charles Harrison's Declaration.

[2] "Notably, the list of 846 hospitals that do not meet the location requirement put together by the OIG does not include Hospital." (FAC, Dkt. 17, ¶ 26).

against Mountains "*solely*" for the purpose of harassment. (Doc. 55, pgs. 1 and 5). The proper standard for Mountains is to show this Court that Relator's primary purpose for bringing this lawsuit was to harass Mountains.

In addition, Relator completely mischaracterizes the ruling in *Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001), *abrogated by Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016), by erroneously arguing that subjective bad faith is not a basis for an award of attorneys' fees and expenses in an FCA action. *Mikes*, 274 F.3d at 704–05. To the contrary *Mikes* and at least one court in this Circuit has utilized the *Christianburg* standard in determining the merits for an award of attorneys' fees. *McGrath on behalf of United States v. Microsemi Corp.*, No. CV-13-00864-PHX-DJH, 2017 WL 6626194, at *2 (D. Ariz. Feb. 2, 2017). Mountains is not suggesting that this Court needs to utilize the *Christianburg* standard, however; the result is the same.[3] The United States Supreme Court in *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978) held that attorneys' fees in civil rights cases should be awarded to a prevailing defendant where "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." The *Christianburg* Court went on to hold that an action brought by a plaintiff ultimately found to be vexatious is an independent ground for the award of attorneys' fees. *Id.* at 421. "[T]he term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Id.* Accordingly, the *Christianburg* standard cherry picked by Relator is not appropriate because it does not address the clear standard set forth in 31 U.S.C.A. § 3730(d)(4) which envisions subjective bad faith as a basis to impose attorneys' fees against relators acting badly.

---

[3] The 9th Circuit has not formally adopted the *Christianburg* standard which has been applied to 42 U.S.C.A. § 1988 (West) civil rights cases. However, both 31 U.S.C.A. § 3730(d)(4) and the *Christianburg* standard recognize an independent vexatious and harassing subjective basis to award attorneys' fees.

1   Mountains has more than adequately established this standard in Mr. Harrison and
2   the undersigned's Declarations with accompanying exhibits. Moreover, Relator simply
3   cannot plausibly refute the swath of emails, correspondence, and documentary evidence
4   against him clearly evidencing his campaign of vexatious harassment against Mountains.
5   (Doc. 49, pgs. 4-14). **Relator does not even attempt to deny the fact that he**
6   **aggressively approached Mr. Harrison in the parking lot screaming "that cunt**
7   **girlfriend of yours, Yvonne, had ruined his career at Mountains." (Internal citations**
8   **omitted) (Doc. 49, ¶39)** – instead, Relator attempts to re-direct focus to a time in the
9   courtroom when a bailiff was present, which occurred temporally prior to his aggression in
10  the parking lot. The evidence before this Court overwhelmingly shows Relator's: (1)
11  continuous pattern of denigrating Mountains and its executives; and (2) repugnant name
12  calling and aggressive confrontational behavior against Mountains' executives. (Doc. 49,
13  ¶¶ 34-39). Moreover, the relentless obsession with acquiring personal addresses of
14  Mountains' executives (Doc. 49, ¶¶ 23, 43, 44, and 46) as well as perpetual harassment
15  from Relator to put Mr. Harrison (and others) in fear of their safety is simply intolerable
16  and deserves a strong message from this Court. (Doc. 49, ¶¶ 38, 40, and 53). The actions
17  of Relator are nothing short of a personal vendetta against Mountains and its executives,
18  Charles Harrison and Yvonne Waggener, recently culminating in the litigation of this
19  lawsuit.

## 3. ARGUMENTS

### a. Mountains' Evidence to Support an Award of Attorneys' Fees and Expenses Should be Considered by This Court

Relator's Opposition Response (Doc. 55) incorporates Objections to Evidence (Doc. 55-3), which are addressed separately by Mountains in a Response to Objections to Evidence. Undoubtedly, Relator is struggling to suppress evidence he knows will show directly his vexatious and harassing litigation towards Mountains. This Court should consider both the Declarations of Clinton Mikel and Charlie Harrison and award Mountains reasonable attorneys' fees and expenses.

### b. Noted Inconsistencies With Relator's Statements

Relator has made various inconsistent statements to this Court that are easily identifiable. For example, Relator's statement that he "never made any attempts to find Mr. Harrison's current address or address at any time after he started working at Mountains," is not credible or plausible given the numerous correspondences from Relator attached to Mr. Harrison's declaration where Mr. Adomitis details his efforts to find Mr. Harrison's address! (See, *e.g.*, Doc. 49, ¶¶ 23, 43, 44, and 46). And, at no point in time was Relator prevented from making FOIA requests. (Doc. 55-1, p. 24). These inconsistent statements, as well as others (including statements about when Relator purportedly drove the route to Mountains), cut deep into Relator's credibility and his argument that he has not harassed Mountains or engaged in a frivolous lawsuit against Mountains.

### c. Relator's Argumentative Reiterations Offer Him No Help

Relator attempts to argue that his failure to plead: (1) a distance requirement violation material to the government's obligation to pay; (2) a distance requirement calculated in a manner to show noncompliance with the 15-mile mountainous terrain and/or secondary road requirement; and (3) scienter on the part of Mountains is not indicative of a frivolous lawsuit. All of these contentions by Relator hold no water and are contradicted by Relator's continual failure to establish materiality and applicable Federal pleading standards.

#### i. Relator Misses the Point Concerning His Failure to Plead a Distance Violation

Relator spends approximately four pages of his brief contesting the Court's distance requirement ruling. (Doc. 55, pgs 10-14). Mountains will not rehash its previous arguments and the Court's previous rulings as detailed in its previous brief. (Doc. 48-1, pgs. 8-16). However, Mountains wishes to point out that Relator completely misses the point made by Mountains.

First, Relator attempts to argue that the Concept Reports from CalTrans could arguably be construed in a way that would lead Relator to believe he still had a viable FCA case against Mountains. In doing so, Relator attempts to argue the timing in which the Concept Reports were released, and the definitions associated with the "mountainous terrain" and other roads used in the Concept Report. These arguments are nonstarters. The fact that CalTrans, a state transportation agency, has designated portions of California's highways and roads as "mountainous terrain" and are representative of "secondary roads" as described in CMS State Operations Manuals effectively terminated the viability of all of Relator's claims against Mountains. As was previously discussed, 42 C.F.R. § 485.610(c) does not provide a definition for "mountainous terrain." Accordingly, CMS relies upon CalTrans and other state transportation agencies to show compliance with various CAH distance requirements. (Doc. 41-9, pgs. 7-8) and (Doc. 41-10, p. 6). Under both the pre-2013 CMS guidance and the post-2013 CMS guidance, mountainous terrain is clearly defined as that which is established by the State Transportation department, in this case, CalTrans. Since the Concept Transportation reports show well over 15 miles of both Mountainous terrain and secondary roads between St. Bernardine to Mountains, there is no way for Relator to plead a viable case against Mountains. (Doc. 46, p. 8). Moreover, Relator cannot show materiality in any of his claims in defiance of clear authority showing Mountains' compliance with State Operation Manual guidance. All of this was conveyed to Relator before the filing of his TAC. (Doc. 48-2, p. 6).

Relator's arguments here have further interest for the Court – Relator tries to argue that:

> "Importantly, these emails were not describing Hwy 18 or roads near Mountains. [Exhibit 7, Anderson Decl., ¶3.]… Mountains, and the roads at issue here, are located in District 8. [*Id*. The roads discussed in the 2012 emails were discussing roads in or around Truckee, California, which is located in District 3. [*Id*. These emails muddied the waters for Relator." (Dkt. 55, p. 6, ¶ 14-23)

The emails provided to Relator's counsel were clear. They contained OIG FOIA responses requesting any information submitted by CalTrans to the OIG in 2013, for its 2013 Report, related to "mountainous terrain" in California. Relator's arguments above are nonsensical and evidence that Relator failed to read the documents or continued to act in bad-faith.

In other words, HLP asked "what did the OIG think CalTrans believes meets the mountainous terrain requirements when OIG did its survey in 2013?" A true and accurate copy of CMS's response to that FOIA request, which was relayed to counsel for Relator, is set forth in (Doc. 48-2, pgs. 13-24). There, when the OIG posed its question to CalTrans, the OIG themselves acknowledged "We understand that mountainous terrain ***is a subjective designation***. We ask that you respond to this request only to the best of your State's ability."[4] (Doc. 48-2, p. 17), *emphasis added*. CalTrans then responds noting that they maintain a database that classifies ***roadways*** as Mountainous, Rolling, or Flat, and that in responding to the OIG's request that they are presenting their results "base [sic] on the roadway characteristics ***and not the*** landscape characteristics."[5] (Doc. 48-2, p. 15), *emphasis added*. The OIG concedes that CMS's new sub-regulatory guidance is ***subjective***, and yet CalTrans still states that their road database classifies roads as Mountainous. And even still, after having this information spoon-fed to him, Relator continued/continues to file fanciful and ominous-sounding pleadings about Mountains' fraud against the government.

Second, Relator attempts to argue against the Court that a mix match of either mountainous terrain or secondary roads was never permitted by the statute. There is simply no reading of 42 C.F.R. § 485.610(c) to permit the inference that the provision:

---

[4] The OIG's admission that the sub-regulatory guidance is subjective (versus objective) further undercuts Relator's specious theories about how ***Relator's*** flawed interpretation of ambiguous, subjective, sub-regulatory requirements could give rise to a claim of fraud.

[5] The sub-regulatory guidance definition discusses roads that are in "mountainous terrain". CalTrans points out that

> "The CAH is located more than a 35-mile drive (or, in the case of mountainous terrain or in areas with only secondary roads available, a 15-mile drive) from a hospital or another CAH…"

means anything other than the permitted use of both mountainous terrain or secondary roads when calculating the 15-mile distance requirement. (Doc. 46, pgs. 8 and 9 at n. 4).

Third, Relator re-argues the *Baylor Cty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372 (N.D. Tex. 2016), *aff'd sub nom. Baylor Cty. Hosp. Dist. v. Price*, 850 F.3d 257 (5th Cir. 2017) case which has nothing to do with an FCA action and does not involve mountainous terrain. (Doc. 55, p. 13). *Baylor County Hospital District*, 163 F. Supp. 3d at 375. Mountains previously dispelled any applicable use of this case to the facts at hand. (Doc. 41, p. 19).

## ii. Relator Has Consistently Mis-Construed Materiality and Scienter

Relator fails to take an accurate accounting of the lack of substantive pleading in each and every one of his amended complaints. Instead, he takes the position that continually re-arguing the use of a CMS Form 2552-10 and various other agency standards is enough to pass materiality muster in a post *Escobar* world, despite this Court repeatedly ruling against Relator on this very issue. (Doc. 55, p. 14, 16, 18, and 19). *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003, 195 L. Ed. 2d 348 (2016). Throughout all of Relator's pleading, he has failed to plead any allegations establishing the government "consistently refuses to pay claims" reimburse claims at a lower rate, or seek retroactive recovery of payments from CAHs similarly situated to Mountains. *Universal Health Services, Inc.*, 136 S. Ct. at 2003. Moreover, "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Universal Health Services, Inc.*, 136 S. Ct. at 2003.

From the outset, Relator was put on significant notice as to his pleading deficiencies (Dkt. 23) and (Dkt. 16). Through three orders, this Court found that Relator failed to

8

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

plead any additional facts to show how any of Relator's alleged FCA violations were: (1) made with knowledge as to a particular violation of an agency regulation; and (2) sufficiently material to the government's obligation to pay claims. Yet, Relator persisted. Moreover, in all of the amended pleadings filed by Relator, not one of those pleadings alleged additional facts to show (1) the consistent refusal of the government to pay claims relating to distance or location requirements for previously certified CAHs; or (2) action taken by CMS to recoup monies for a certified CAH's alleged violation of a distance or location requirements. Aside from not meeting any of the standards to establish materiality, Relator has also consistently failed to address pleading deficincies to establish that Mountains knowingly violated 42 C.F.R. § 485.610(c) or its sub-regulatory guidance and actually caused false claims to be submitted to the government.[6]

### d. Relator's Argument That the Attorneys' Fees Requested Are Unreasonable is Unsupported

Relator's contention that Mountains has unreasonably requested a Lodestar multiplier is erroneous. First, no multiplier is requested – rather, Mountains negotiated a lower hourly rate with a success payment. The success payment brings HLP's already low-hourly-rate to a rate commensurate with the time and experience by those working on this case at The Health Law Partners P.C. – their standardly charged rates (Doc. 50, ¶¶

---

[6] With the advent of the *Rose* decision, Relator should have further realized the impossibility of advancing his implied false certification claims against Mountains. *United States v. Stephens Inst.*, 901 F.3d 1124, 1130 (9th Cir. 2018) (requiring the two part test to show false certification: "[t]he claim does not merely request payment, but also makes *specific representations* about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id. citing Universal Health Services, Inc.*, 136 S. Ct. 1989, 136 D.Ct. at 2001. (Emphasis added). Further, as noted by this Court, strikingly contra to here, in the *Rose* case the relator brought forth millions-and-millions of dollars in recoupments and other sanctions levied against similarly situated defendants.

9

Defendant San Bernardino Mountains Community Hospital District's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses
Case No.: 5:17-cv-00002-JGB-KK

11-21). In fact, the success fee billing rates are *still* lower than prevailing California rates, as previously determined by this Court. (Doc. 50, ¶ 24). Moreover, Relator fails to cite any authority that would use a different calculation aside from the Lodestar factors to determine any other reasonable rate.[7]

Lastly, Relator makes several misguided jabs at Mountains' attorneys fees. None of Mountains' Attorneys fees and expenses were unreasonable. Moreover, The Health Law Partners, P.C., made several deductions to Mountains' overall bill in the amount of $28,561.14. The determination of how much Mountains paid or its outstanding fees are irrelevant to the overall work performed and reasonably billed. More importantly, Relator fails to cite any authority for the prospect that a client has to pay all outstanding and billable fees in order for a firm to collect attorneys' fees from a court of competent jurisdiction.

Next, Relator argues that The Health Law Partners P.C. ("**HLP**") should not have engaged in due diligence to explore insurance coverage in defraying costs to its client, and should not have reviewed court rules and procedures. This position taken by Relator merits little discussion and should be afforded no deference by this Court. The fact that Relator argued various procedural deficincies involving this Court's Local Rules should dispel any notions of unreasonableness argued by Relator. (Doc. 29).

---

[7] It is both perplexing and unclear as to why Relator would take the position that the Lodestar factors would not be used to determine reasonable attorney's fees and expenses. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). *Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880, 882 (7th Cir. 1985), n.8. ("(l) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation; and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.").

Relator also raises a nonissue regarding the hours involved in preparing various motions and responses to dispositive motion work. As previously stated, Mountains had to raise various arguments concerning multiple deficiencies within Relator's various amended complaints that resulted in several arguments over the course of this case. The hours worked by the HLP were required to effectively convey Mountains' arguments to the Court.

Furthermore, several Freedom of Information Act ("**FOIA**") requests were made to extrapolate information from various State and federal agencies concerning CAH distance and location requirements. The apparent wide spread non-enforcement and changing agency guidance of distance and location requirements in existing CAHs created a vacuum of useful guidance. Accordingly, the government's lack of guidance/precedent concerning the distance requirements in 42 C.F.R. § 485.610(c) is indicative of the proposition that CAHs are at a loss as to the interpretation and actual use of sub-regulatory guidance concerning 42 C.F.R. § 485.610(c). Relator's suggestion that Mountains acted with any deliberate ignorance or knowing disregard of the truth or falsity of the statements made to the government to receive payment is unsupported and implausible.

Lastly, Relator's arguments that travel expenses in connection with the motion hearing for dismissal of the SAC and messenger services are unreasonable is unfounded. Relator provides no basis to show that either the travel expenses or messenger services were unreasonable, other than his counsel's opinion. Furthermore, a review of the travel expenses involved with the motion hearing for dismissal of the SAC does not appear to be duplicative or unreasonable. (Doc. 50-2, pgs. 4-5).

## 4. CONCLUSION

Relator appears to understand the weakness in his arguments against Mountains' attorneys' fees and expenses, pleading that any award of attorneys' fees decided by this Court should be significantly reduced. (Doc. 55, p. 23). Moreover, Relator cannot

plausibly contest the Declaration of Mr. Harrison and its accompanying documents. Most of these documents either bear Relator's email address or his signature which serves as direct evidence of his vexatious intent to bring his frivolous lawsuit against Mountains. For the reasons mentioned in this Reply brief, Mountains respectfully requests it reasonable attorneys' fees and expenses in at least the amount of $280,878.85.[8]

Dated: November 5, 2018

/s/ Clinton Mikel
Clinton Mikel, Attorney for Defendant
San Bernardino Mountains Community
Hospital District

---

[8] If the Court desires to grant attorney fees and expenses, the Court should note that as of today (November 5, 2018), October billings are not yet available. Mountains anticipates that October billings will be available by the time of the hearing date and will supplement this Court with the same. If the Court would like to further explore the appropriate amount, Mountains would be happy to issue a supplemental filing solely on that issue.

# PROOF OF SERVICE
## STATE OF MICHIGAN, COUNTY OF OAKLAND

At the time of service, I was over 18 and not a party to this action. I am employed in the County of Oakland, State of Michigan. My business address is 32000 Northwestern Highway, Suite 240, Farmington Hills, Michigan, 48334.

On November 5, 2018, I served true copies of the foregoing document(s) described as **Defendant's Memorandum in Reply to Relator's Opposition to Motion for Attorneys' Fees and Expenses.**

on the interested parties:

Esperanza Cervantes Anderson (SBN 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue, Pasadena, California 91104
esperanza@andersonlitigation.com
Attorney for Plaintiff Relator
FRANK ADOMITIS

Kent A. Kawakami (SBN 149803)
Assistant U.S. Attorney
Room 7516, Federal Building, 300 North Los Angeles Street, Los Angeles, CA 90012
kent.kawakami@usdoj.gov
Attorney for Plaintiff United States of America

**CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on November 5, 2018, at Farmington Hills, Michigan.

1
2                              /s/Kalee Houle
3
  4828-0324-7737, v. 8
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28